UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| ALICE KRAMER, as Personal Representative of the Estate of Arthur Kramer, | : | Case No.: 08 CV 2429-DAB-MHD |
| Plaintiff, | : | |
| —against— | : | |
| LOCKWOOD PENSION SERVICES, INC., ET AL., | : | |
| Defendants. | : | |

## NOTICE OF MOTION

PLEASE TAKE NOTICE that, based upon the accompanying memorandum of law,

Defendant, Lincoln Life & Annuity Company of New York ("Lincoln"), will move this Court

before the Honorable Deborah A. Batts, at the Courthouse for the Southern District of New

York, for an Order, pursuant to Federal Rule of Civil Procedure 12(b)(6), dismissing Plaintiff's

claims against Lincoln with prejudice.


Dated: New York, New York
       March 26, 2008

DRINKER BIDDLE & REATH LLP


/s/ Katherine L. Villanueva
Katherine L. Villanueva (KH 5283)
140 Broadway, 39th Floor
New York, NY  10005
(212) 248-3140

OF COUNSEL
Stephen C. Baker
Michael J. Miller
Drinker Biddle & Reath LLP
One Logan Square
18th & Cherry Streets
Philadelphia, PA  19103-6996

For Defendant, Lincoln Life & Annuity
Company of New York

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| ALICE KRAMER, as Personal Representative of the Estate of Arthur Kramer, | : : : : | |
| Plaintiff, | : : | Case No.: 08 CV 2429-DAB-MHD |
| —against— | : : : | |
| LOCKWOOD PENSION SERVICES, INC., ET AL., | : : : | |
| Defendants. | : : : : | |

## MEMORANDUM OF LAW OF LINCOLN LIFE & ANNUITY COMPANY OF NEW YORK IN SUPPORT OF ITS MOTION TO DISMISS

## I.    INTRODUCTION

Plaintiff, as the personal representative of Arthur Kramer's estate, admits that the life insurance policies at issue in this matter were obtained as part of a series of illegal "STOLI" transactions, but Plaintiff has nevertheless filed the complaint in this matter in an attempt to obtain the policy proceeds.[1]

As the basis for her relief, Plaintiff cites to N.Y. Ins. Stat. § 3205(b)(4), which, in pertinent part, provides that, if a life insurer pays policy proceeds under circumstances where there is a lack of the insurable interest, the estate of the decedent can sue to collect those proceeds from the party to whom the proceeds were paid. Significantly, this statute provides standing for a suit only against the party that has received the policy proceeds - not the insurer

---

[1] STOLI is an acronym for Stranger-Originated Life Insurance. In a STOLI transaction, there is a lack of insurable interest at the time of policy inception, and often, that lack of insurable interest is fraudulently concealed from the insurer.

that issued the policy.  Moreover, this statute is triggered, according to its own terms, only when policy proceeds have been paid.

Lincoln Life & Annuity Company of New York ("Lincoln") issued one of the several policies at issue in Plaintiff's complaint.  However, because there is no allegation that Lincoln is the party to which the proceeds have been paid, and because there is no allegation that the proceeds have even been paid, Plaintiff's claims against Lincoln should be dismissed.

## II.   **FACTS**

Alice Kramer ("Ms. Kramer"), as Personal Representative of the Estate of Arthur Kramer, filed her complaint on March 10, 2008.  The "Background" section of the complaint alleges as follows:

- This action involves an arrangement to procure life insurance policies with the purpose of immediately transferring the beneficial interests in those policies to stranger investors, in contravention of the "insurable interest rule" as codified in the New York Insurance Law.[2]  *See* Complaint ¶ 13.

- A typical STOLI arrangement is initiated by a stranger investor or an insurance agent who approaches an elderly person and encourages him to purchase life insurance, the death benefits of which will be immediately transferred to the stranger investor.  *See id.* ¶ 15.

- The investor typically agrees to pay the person an up-front payment, in addition to paying the insurance premiums, in return for the assignment of the ownership interest in the policy.  *See id.*

- The common characteristic of all STOLI arrangements is that they are structured so that the elderly person or a family member, rather than the stranger investor, is made to appear as the original beneficiary of the policy in order to try to evade the insurable interest requirement.  *See id.*

- The STOLI arrangement in this litigation was implemented by defendants to create the appearance that an insurable interest existed when Mr. Kramer took out several policies, so that the subsequent transfers of the beneficial interests in those policies to the stranger investors would appear lawful.  *See id.* ¶ 16.

---

[2] Transamerica Occidental Life Insurance Company and Phoenix Life Insurance Company also issued insurance policies on the life of Mr. Kramer, which policies are part of the subject matter of this litigation but not this motion.

- The transfers to investors took place immediately upon Mr. Kramer's obtaining of the policies at issue, and that was always their plan. *See id.*

- At no time were Mr. Kramer or any of his family members the true owners of the beneficial interests in the policies. Mr. Kramer never intended for the death benefits of the insurance policies to benefit his family. *See id.*

The "Facts" section of the complaint alleges as follows:

- As early as 2003, Steven Lockwood ("Mr. Lockwood"), the principal of Defendant, Lockwood Pension Services, Inc. ("LPS"), approached Mr. Kramer to solicit his participation in a STOLI arrangement that is the subject matter of this litigation. *See* Complaint ¶¶ 19-20.

- At no time would Mr. Kramer or any of his family members have a true beneficial interest in the policies. *See id.* ¶ 22.

- With respect to the Lincoln policy at issue, the STOLI arrangement involved Mr. Kramer, at the direction of LPS and possibly other defendants, establishing the Arthur Kramer Insurance Trust Dated August 29, 2005 (the "Trust"), in which Defendant, Hudson United Bank ("Hudson"), predecessor-in-interest to Defendant, TD Banknorth, Inc. ("TD Bank"), was named as the trustee. Mr. Lockwood and one of his associates witnessed the Trust agreement. *See id.* ¶ 31.

- Mr. Kramer's daughter, Liza, was named as the beneficiary of the Trust. *See id.*

- The Trust was prepared by LPS, who had a pre-existing relationship with Hudson and shared the same business address at 75 Rockefeller Plaza, New York, New York. *See id.* ¶¶ 32-33.

- Mr. Kramer had no prior business relationship with Hudson. *See id.* ¶ 34.

- In early 2006, Hudson was acquired by TD Bank, making TD Bank the current trustee of the Trust as successor-in-interest. *See id.* ¶ 35.

- On or about November 28, 2005, Lincoln issued a policy on the life of Mr. Kramer to the Trust having a death benefit of $10 million. *See id.* ¶ 39.

- At the direction of LPS and possibly other defendants, Mr. Kramer directed Liza to execute an assignment of her beneficial interest in the Trust to stranger investor Defendant, Life Products Clearing, LLC ("Life Products"). *See id.* ¶ 40.

- Mr. Kramer and Liza never paid any premiums on the Lincoln policy, and there was no period of time when Liza was the true beneficiary of the Trust. *See id.* ¶ 41.

3

- Mr. Kramer died on January 26, 2008, at the age of 81. *See id.* ¶ 18.

- Subsequently, Ms. Kramer or her representatives received various communications from representatives of LPS and certain stranger investors demanding copies of Mr. Kramer's death certificate from Ms. Kramer so that they could submit claims to the insurance companies for death benefits. Ms. Kramer has refused all such requests. *See id.* ¶ 43.

- Lincoln has either already paid or is about to pay the death benefit of $10 million to the Trust, or its nominees or assignees. *See id.* ¶ 44.

- Pursuant to Insurance Law Section 3205(b)(4), Plaintiff is entitled to the policy proceeds. *See id.* ¶ 52.

- In the alternative, if some or all of the policy proceeds have already been paid, then, pursuant to Insurance Law Section 3205(b)(4), Plaintiff is entitled to recover such proceeds. *See id.* ¶ 55.

## III.   ARGUMENT

### A.   Legal Standard

When deciding a motion to dismiss under Rule 12(b)(6), the court "must 'accept as true all of the factual allegations contained in the complaint' and 'draw all reasonable inferences in plaintiff's favor.'" *See Hunt v. Enzo Biochem, Inc.*, 530 F. Supp. 2d 580, 2008 U.S. Dist. LEXIS 1472, at *24 (S.D.N.Y. 2008) (discussing legal standard under Rule 12(b)(6) generally). However, even though the allegations in the complaint are taken as true, "the claim may still fail as a matter of law if the claim is not legally feasible." *Id.* A complaint subject to a Rule 12(b)(6) motion requires the plaintiff to "provide the 'grounds' of his 'entitlement to relief' [which] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *See Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* The court need not accord "'legal conclusions, deductions or opinions couched as factual allegations...a presumption of truthfulness.'" *See S.E.C. v. Collins & Aikman Corp.*, 524 F. Supp. 2d 477, 483 (S.D.N.Y. 2007) (discussing legal standard under Rule 12(b)(6) generally).

**B.**    **Plaintiff's Claims Fail Because She Lacks Standing.**

Plaintiff's complaint contains two counts.  In the first count, Plaintiff seeks a declaratory judgment that there was a lack of insurable interest in connection with the policies and that "[p]ursuant to Insurance Law Section 3205(b)(4), Plaintiff is entitled to a declaration that the death benefits of all the aforementioned policies should be paid to her." *See* Complaint ¶ 52.  In the second count, Plaintiff again cites to Insurance Law Section 3205(b)(4), and alleges that, if some or all of the death benefits of the policies involved have already been paid to any of the defendants or their representatives, then, pursuant to the statute, she is entitled to recover such death benefits. *See* Complaint ¶ 55.

N.Y. Ins. Stat. § 3205(b)(4) provides:

> If the beneficiary, assignee or other payee under any contract made in violation of this subsection [on procuring insurance, and including insurable interest] receives from the insurer any benefits thereunder accruing upon the death, disablement or injury of the person insured, the person insured or his executor or administrator may maintain an action to recover such benefits from the person receiving them.

This statutory language is clear and provides that the executor of the insured's estate may "maintain an action to recover such benefits *from the person receiving them*." N.Y. Ins. Stat. § 3205(b)(4) (emphasis added).  Thus, the statute, if triggered, only provides Plaintiff with standing to bring an action against the entity that received the benefits - not the insurer that issued the policy.

Many other states have enacted statutes similar to N.Y. Ins. Stat. § 3205(b)(4), and cases from these other states have uniformly held that the statutes (referred to herein as recovery statutes) provide estates with standing to sue parties that are in possession of policy proceeds, but not that the statutes provide estates with standing to sue the insurers that decided to pay (or decided to not pay) the policy proceeds. *See, e.g., In re Al Zuni Trading, Inc. v. Penick,* 947 F.2d 1403, 1404 (9th Cir. 1991) (state recovery statute modifies general rule that only insurer can raise objection of want of an insurable interest; therefore, personal representative had standing in

bankruptcy adversary proceeding to raise claim against trustee who received death benefits);

*Lewis v. Wal-Mart Stores, Inc.*, 2005 U.S. Dist. LEXIS 34470, at *23 (N.D. Okla. Dec. 1, 2005)

(named beneficiary of corporate-owned life policy received death benefits, and therefore,

personal representative's claim against the named beneficiary was not dismissed for lack of

standing); *Froiland v. Tritle*, 484 N.W.2d 310, 313 (S.D. 1992) (estate allowed to recover

proceeds from named beneficiary).  A true and correct copy of *Lewis* is attached hereto as

Exhibit A.

It is also worth noting that Plaintiff does not allege that she has a contractual right to the

Lincoln policy proceeds, nor does she allege that the estate is the beneficiary of the Lincoln

policy.[3]  Thus, the obligations, if any, of Lincoln in connection with the Lincoln policy, are owed

to a party other than Plaintiff.

**C.    Plaintiff's Claims Fail Because N.Y. Ins. Stat. § 3205(b)(4) Has Not Been Triggered.**

By its terms, N.Y. Ins. Stat. § 3205(b)(4) is triggered when the "beneficiary, assignee or

other payee, [under a life insurance policy made in violation of the insurable interest

requirements], *receives from the insurer* any benefits...accruing upon the death...of the person

insured." *See* N.Y. Ins. Stat. § 3205(b)(4) (emphasis added).  However, despite the fact that the

complaint in this matter is based on this statute, the complaint contains no allegation that the

proceeds have been paid.  Accordingly, the statute upon which Plaintiff bases her request for

relief has not been triggered, and Plaintiff's claims must be dismissed.

Interestingly, Plaintiff appears to concede that this statute only applies if the death

benefits have been paid, and in her complaint, she states, "[i]n the alternative, if some or all of

the death benefits of the aforementioned policies have already been paid to any of the defendants

_____

[3] The reason that there is no allegation that the estate is the beneficiary is because such an allegation would be inaccurate.  The estate is not the beneficiary.

6

or their representatives, then pursuant to this statute, Plaintiff is entitled to recover such death benefits." *See* Complaint ¶ 55. However, such a statement falls far short of properly alleging that a party is in possession of the proceeds. Indeed, the use of the word "if" has the effect of rendering the allegation meaningless.

Similarly, Plaintiff's allegation that Lincoln, among others, has "either already paid, or [is] about to pay," the proceeds is not sufficient. *See* Complaint ¶ 44. Indeed, this allegation is also meaningless. The alternatives are binary; in other words, there are only two possible scenarios. The first is that the proceeds have been paid, and the second is that they have not. To allege that "either" the proceeds have been paid or not is no allegation at all.[4]

Other states have interpreted and applied their respective recovery statutes in a manner that simply reinforces the plain language. Indeed, virtually all the recovery statute cases arise in a context where the insurer has paid the proceeds. *See, e.g., Penick,* 947 F.2d at 1404 (citing to statute in the context where insurer had paid proceeds); *Froiland,* 484 N.W.2d at 311 (same). Moreover, in *Lewis,* the court dismissed the claims of a number of plaintiffs, who were personal representatives of estates, because the proceeds had not been paid. *See Lewis,* 2005 U.S. Dist. LEXIS 34470, at *21; *see also Beard v. Am. Agency Life Ins. Co.*, 550 A.2d 677, 687 n.3 (Md. 1988) (explaining that the Maryland recovery statute is triggered "when a beneficiary who lacks an insurable interest receives the payment of the insurance proceeds from the insurer" but "does not specify what sanctions are to be imposed when, as here, the insurer has not yet paid a beneficiary who lacks an insurable interest").

---

[4] The reason that there is no allegation of payment is because such an allegation would be inaccurate. The proceeds have not been paid. If necessary, Lincoln can submit an affidavit to this effect, in which case this motion to dismiss may be treated as a motion for summary judgment pursuant to Rule 12(d) of the Federal Rules of Civil Procedure.

IV.   **CONCLUSION**

        The statute upon which Plaintiff relies creates a potential cause of action only against the person who received the proceeds, not Lincoln or any other insurer.  Moreover, the statute upon which Plaintiff relies is triggered by the payment of policy proceeds, and Plaintiff has not and cannot allege that the proceeds in this matter have been paid.  Therefore, Plaintiff has failed to state a claim upon which relief can be granted, and Lincoln's motion to dismiss should be granted.

                                              Respectfully submitted,

Dated: New York, New York              DRINKER BIDDLE & REATH LLP
March 26, 2008

                                        /s/ Katherine L. Villanueva
                                        Katherine L. Villanueva (KH 5283)
                                        140 Broadway, 39th Floor
                                        New York, NY  10005
                                        (212) 248-3140

                                        OF COUNSEL
                                        Stephen C. Baker
                                        Michael J. Miller
                                        Drinker Biddle & Reath LLP
                                        One Logan Square
                                        18th & Cherry Streets
                                        Philadelphia, PA  19103-6996

                                        For Defendant, Lincoln Life & Annuity
                                        Company of New York

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| ALICE KRAMER, as Personal Representative of the Estate of Arthur Kramer, | : : : | |
| Plaintiff, | : : | Case No.: 08 CV 2429-DAB-MHD |
| —against— | : : : | |
| LOCKWOOD PENSION SERVICES, INC., ET AL., | : : : : | |
| Defendants. | : : : | |

## <u>AFFIDAVIT OF KATHERINE L. VILLANUEVA</u>

STATE OF PENNSYLVANIA    )
                              )   SS:
COUNTY OF PHILADELPHIA   )

Katherine L. Villanueva, being duly sworn, affirms the following under penalties of perjury:

1.     I am a member of the Bar of the State of New York, am admitted to practice in the Southern District of New York, and am an associate of the law firm of Drinker Biddle & Reath LLP, attorneys for Defendant, Lincoln Life & Annuity Company of New York, in the above-entitled action. I am familiar with all the facts and circumstances herein. I make this affidavit in support of the Memorandum of Law of Lincoln Life & Annuity Company of New York in Support of Its Motion to Dismiss.

2.     Attached as Exhibit A to the Memorandum of Law of Lincoln Life & Annuity Company of New York in Support of Its Motion to Dismiss is a true and correct copy of *Lewis v. Wal-Mart Stores, Inc.*, 2005 U.S. Dist. Lexis 34470 (N.D. Okla. Dec. 1, 2005).

Dated: March 20, 2008

_____
Katherine L. Villanueva

Sworn to before me this
26th day of March 2008

_____
Notary Public

```
NOTARIAL SEAL
Renay L. Wanser, Notary Public
City of Philadelphia, Philadelphia County
My commission expires July 06, 2010
```

## CERTIFICATE OF SERVICE

I, Katherine L. Villanueva, hereby certify that on the date set forth below, I electronically filed copies of (1) Notice of Motion, (2) Memorandum of Law of Lincoln Life & Annuity Company of New York in Support of its Motion to Dismiss, and (3) Affidavit of Katherine L. Villanueva, using the CM/ECF system, which will send notification of such filings to CM/ECF participants.

I also hereby certify that on the date set forth below, I submitted courtesy copies of the aforementioned, marked as courtesy copies, by overnight Federal Express to the following:

The Honorable Deborah A. Batts, USDJ
United States Courthouse
500 Pearl St., Room 2510
New York, NY 10007
(two copies)

The Honorable Michael H. Dolinger, USMJ
United States Courthouse
500 Pearl St., Room 1670
New York, NY 10007
(1 copy)

/s/ Katherine L. Villanueva
Katherine L. Villanueva (KH 5283)
Drinker Biddle & Reath LLP
140 Broadway, 39th Floor
New York, NY  10005
(212) 248-3140

Dated: March 26, 2008

# Exhibit A

LEXSEE 2005 U.S. DIST. LEXIS 34470

**FRANK O. LEWIS, et al., Plaintiffs v. WAL-MART STORES, INC., et al, Defendants**

**Case No. 02-CV-0944-CVE-FHM**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OKLAHOMA**

*2005 U.S. Dist. LEXIS 34470*

**December 1, 2005, Decided**

**SUBSEQUENT HISTORY:** Motion granted by, Motion denied by *Lewis v. Wal-Mart Stores, 2005 U.S. Dist. LEXIS 34461 (N.D. Okla., Dec. 2, 2005)*

**COUNSEL:** [*1] For Frank O Lewis, Plaintiff: James Collins Hodges, Eller & Detrich, Tulsa, OK; Michael D Myers, McClanahan & Clearman LLP, Houston, TX; Robert Henry Espey, II, McClanahan & Clearman LLP, Houston, TX; Scott M Clearman, McClanahan & Clearman LLP, Houston, TX; Shanann Pinkham Passley, Eller & Detrich, Tulsa, OK

For Herbert Sarty, Plaintiff: James Collins Hodges, Eller & Detrich, Tulsa, OK; Michael D Myers, McClanahan & Clearman LLP, Houston, TX; Robert Henry Espey, II, McClanahan & Clearman LLP, Houston, TX; Scott M Clearman, McClanahan & Clearman LLP, Houston, TX; Shanann Pinkham Passley, Eller & Detrich, Tulsa, OK

For Rodney Bizal, Plaintiff: James Collins Hodges, Eller & Detrich, Tulsa, OK; Michael D Myers, McClanahan & Clearman LLP, Houston, TX; Robert Henry Espey, II, McClanahan & Clearman LLP, Houston, TX; Scott M Clearman, McClanahan & Clearman LLP, Houston, TX; Shanann Pinkham Passley, Eller & Detrich, Tulsa, OK

For Jeff Todd Brown, Plaintiff: James Collins Hodges, Eller & Detrich, Tulsa, OK; Michael D Myers, McClanahan & Clearman LLP, Houston, TX; Robert Henry Espey, II, McClanahan & Clearman LLP, Houston, TX; Scott M Clearman, McClanahan & Clearman LLP, Houston, [*2] TX; Shanann Pinkham Passley, Eller & Detrich, Tulsa, OK

For Tab Art Brown, Plaintiff: James Collins Hodges, Eller & Detrich, Tulsa, OK; Michael D Myers, McClanahan & Clearman LLP, Houston, TX; Robert Henry Espey, II, McClanahan & Clearman LLP, Houston, TX; Scott M Clearman, McClanahan & Clearman LLP, Houston, TX; Shanann Pinkham Passley, Eller & Detrich, Tulsa, OK

For Wal-Mart Stores, Inc., Defendant: Craig Alan Fitzgerald, Bryant Law Firm, TULSA, OK; David Len Bryant, Bryant Law Firm, TULSA, OK

For Wal-Mart Stores, Inc. Corporation Grantor Trust, Defendant: Craig Alan Fitzgerald, Bryant Law Firm, TULSA, OK; David Len Bryant, Bryant Law Firm, TULSA, OK

For AIG Life Insurance Company, Defendant: James F Jorden, Washington, DC; Paul A Fischer, Washington, DC; Todd Alan Nelson, Fellers Snider Blankenship Bailey & Tippens (Tulsa), TULSA, OK

For Kenneth Frank Jacobson, Plaintiff: James Collins Hodges, Eller & Detrich, Tulsa, OK; Michael D Myers, McClanahan & Clearman LLP, Houston, TX; Robert Henry Espey, II, McClanahan & Clearman LLP, Houston, TX; Scott M Clearman, McClanahan & Clearman LLP, Houston, TX; Shanann Pinkham Passley, Eller & Detrich, Tulsa, OK

For [*3] Janet Switzer, Plaintiff: James Collins Hodges, Eller & Detrich, Tulsa, OK; Michael D Myers, McClanahan & Clearman LLP, Houston, TX; Robert Henry Espey, II, McClanahan & Clearman LLP, Houston, TX; Scott M Clearman, McClanahan &

Case 1:08-cv-02429-DAB    Document 8-2    Filed 03/26/2008    Page 3 of 22

Page 2
2005 U.S. Dist. LEXIS 34470, *3

Clearman LLP, Houston, TX; Shanann Pinkham Passley, Eller & Detrich, Tulsa, OK

For Terry Scott Shelnut, Plaintiff: James Collins Hodges, Eller & Detrich, Tulsa, OK; Michael D Myers, McClanahan & Clearman LLP, Houston, TX; Robert Henry Espey, II, McClanahan & Clearman LLP, Houston, TX; Scott M Clearman, McClanahan & Clearman LLP, Houston, TX; Shanann Pinkham Passley, Eller & Detrich, Tulsa, OK

**JUDGES:** CLAIRE V. EAGAN, CHIEF JUDGE, UNITED STATES DISTRICT COURT

**OPINION BY:** CLAIRE V. EAGAN

**OPINION**

**OPINION AND ORDER**

Now before the Court are the Wal-Mart Defendants' Motion for Summary Judgment (Dkt. # 88) and the Plaintiffs' Cross-Motion for Summary Judgment (Dkt. # 133). Plaintiffs brought this action on December 18, 2002, by filing a "Class Action Complaint," but the Court has not certified the action as a class action. Plaintiffs have amended their complaint three times. [1] As the personal representatives of the estates of eight individuals who were employed [*4] by Wal-Mart Stores, Inc. in Oklahoma, plaintiffs seek to recover life insurance benefits they claim the Wal-Mart defendants [2] wrongfully received upon the deaths of the Wal-Mart employees whom they represent. In both the Second and Third Amended Class Action Complaints, all of the plaintiffs specifically allege a violation of *Okla. Stat. tit. 36, § 3604*, unjust enrichment, and misappropriation. Plaintiff Rodney Bizal, on behalf of the estate of Shelly Bizal-Webb, also alleges an individual claim against AIG Life Insurance Company ("AIG") for the policy benefits due to Shelly Bizal-Webb's estate. Wal-Mart Stores, Inc. has been substituted for AIG as the real party in interest with respect to that claim and AIG has been dismissed. [3]

[1] At a hearing on October 15, 2003, the Court granted plaintiffs' motion for leave to amend to file a third amended complaint (Dkt. # 38) in part: plaintiffs were permitted to assert a claim against AIG Life Insurance Company, but that portion of the motion for leave to amend which served as a request to revise or assert new claims against

Wal-Mart was taken under advisement pending the Court's consideration of Wal-Mart's motion for summary judgment as to the Second Amended Complaint. On June 22, 2005, plaintiffs filed a Motion for Leave to File Fourth Amended Complaint (Dkt. # 132) which, like their motion for leave to file a third amended complaint, modifies their request to plead a multi-state class. Both motions for leave to amend (Dkt. # 38, 132) are pending.

[*5]

[2] Plaintiffs named both Wal-Mart Stores, Inc. and Wal-Mart Stores Inc. Corporation Grantor Trust as defendants, referenced herein collectively as "Wal-Mart."

[3] When plaintiffs filed a Third Amended Class Action Complaint (Dkt. # 36) on July 31, 2003, they added Hartford Life Insurance Company and Wachovia Bank of Georgia, N.A. as party defendants. However, that pleading was stricken on October 15, 2003, when the Court permitted the plaintiffs to file a revised Third Amended Complaint to assert a claim against AIG only. Plaintiffs filed the revised pleading on October 20, 2003 without naming Hartford or Wachovia and, consequently, these party defendants have been terminated as party defendants in the case.

**I.**

Before Wal-Mart filed its motion for summary judgment, the Court ruled upon similar claims in *Tillman v. Camelot Music, Inc., 2003 U.S. Dist. LEXIS 21662, 02-CV-761 EA(J), slip op. (N.D. Okla. Sept. 29, 2003)*. That opinion explains the context in which this case arises as well:

As recounted in several news articles submitted by Camelot, COLI [corporate-owned life insurance] policies were purchased [*6] by numerous companies, including Fortune 500 companies, in the 1990s to take advantage of a tax loophole. Companies borrowed money from the insurer to cover the cost of the policies, took a tax deduction on the interest, and repaid the loans with proceeds from the benefits they collected when employees covered by the policies

died. Most companies, like Camelot, claimed that they purchased the policies as part of a strategy to increase resources they could devote to other employee benefit programs. Some companies informed their employees of the policies and gave them the option to be excluded from coverage. Many would provide incentives to the employees by offering life insurance benefits in amounts smaller than the company would receive if the employees would agree to coverage. The companies paid the premiums for COLI policies; covered employees paid nothing.

The Internal Revenue Service ("IRS") began contesting the interest deductions on COLI policies, see *American Elec. Power. Co., Inc. v. United States, 326 F.3d 737 (6th Cir. 2003); Dow Chemical Co. and Subsidiaries v. United States, 250 F. Supp. 2d 748 (E.D. Mich. 2003); Winn-Dixie Stores, Inc. v. Commissioner, 113 T.C. 254, 1999 WL 907566 (U.S. Tax. Ct. 1999),* [*7] *aff'd, 254 F.3d 1313 (11th Cir. 2001),* . . . Employees, or their estates, also began challenging the COLI policies similar to the way in which plaintiff challenges Camelot's policies in this matter, and at least one court has ruled in favor of covered employees. See *Mayo v. Hartford Life Ins. Co., 220 F. Supp. 2d 714, 780-84 (S.D. Tex. 2002).* Plaintiff brings this suit in the wake of the Mayo decision.

*Tillman, 2003 U.S. Dist. LEXIS 21662, 02-CV-761-EA(J), slip op. at 4-5.*

The Mayo court ruled against Wal-Mart at the same time as it ruled against Camelot. See *Mayo v. Hartford Life Ins. Co., 220 F. Supp. 2d 714, 791-93 (S.D. Tex. 2002);* see also *Mayo v. Hartford Life Ins. Co., 220 F. Supp. 2d 794, 808 (S.D. Tex. 2002).* In Tillman, this Court disagreed with some aspects of the Mayo opinion and agreed with others by holding (1) a three-year statute of limitations did not bar Tillman's claim, (2) Oklahoma law applied to Tillman's claim, (3) the insurance policy at issue was constructively delivered in Oklahoma, (4) Camelot had an insurable interest in Tillman's life, and

(5) Camelot was not unjustly enriched when it received [*8] life insurance proceeds as a result of Tillman's death. While Tillman was on appeal, the Fifth Circuit affirmed and remanded the lower court Mayo decision. *Mayo v. Hartford Life Ins. Co., 354 F.3d 400 (5th Cir. 2004).* Subsequently, the Tenth Circuit Court of Appeals affirmed this Court's rulings in Tillman on constructive delivery and unjust enrichment, but reversed the ruling on insurable interest. *Tillman v. Camelot Music. Inc., 408 F.3d 1300 (10th Cir. 2005).* The Tenth Circuit did not address the statute of limitations issue, as Camelot did not appeal that ruling. Here, Wal-Mart was permitted to supplement its motion for summary judgment in light of the Tenth Circuit's decision in Tillman.

Wal-Mart instituted its COLI program in December 1993 and ended it in January 2000. [4] In December 1993, Wal-Mart established the Wal-Mart Stores Inc. Corporation Grantor Trust ("Trust") in Georgia to act, allegedly, as the legal holder of, and recipient of performance under, any COLI policies to be issued insuring the lives of Wal-Mart employees residing in the United States. The instrument establishing the Trust provided that Georgia law would [*9] govern issues relating to the Trust's "construction, validity and administration," and it appointed as trustee Atlanta's Wachovia Bank of Georgia, N.A., an entity which already served as trustee for Wal-Mart's profit-sharing plan. See Motion for Summary Judgment, Dkt. # 88, Ex. 1 (Ex. 3 attached thereto). Wal-Mart claims that its COLI programs were sited in Georgia on the basis of the certainty and clarity afforded by Georgia laws on insurable interest and based on the understanding that Georgia's premium tax rates were comparatively low. The AIG and Hartford policies were applied for in person in Atlanta, Georgia, and were issued and delivered in person to, and accepted in person by, the trustee of the Trust in Atlanta, Georgia. In addition, the Trust paid the policy premiums by wire payment from Georgia.

---

4   Many of the facts set forth herein are as stated by Wal-Mart in its original motion since plaintiffs did not respond, as the local rules require, with "a concise statement of material facts to which the party asserts genuine issues of fact exist." LCvR 56.1(c). The rule provides: "All material facts set forth in the statement of the material facts of the movant shall be deemed admitted for the purpose of summary judgment unless specifically controverted by the statement of material facts of

Case 1:08-cv-02429-DAB    Document 8-2    Filed 03/26/2008    Page 5 of 22

Page 4
2005 U.S. Dist. LEXIS 34470, *9

the opposing party." Id.

[*10] Until July 1995, the Trust periodically purchased COLI policies covering more than 350,000 of Wal-Mart's "associates" or employees. COLI policies purchased from AIG insured hourly-rate employees; COLI policies purchased from Hartford Life Insurance Company ("Hartford") insured salaried employees. The first block of AIG COLI policies were purchased on December 23, 1993. Although AIG policies insuring individual Wal-Mart employees varied in amount of benefits payable upon the death of the insured, all of the 1993 AIG COLI policies provided coverage in accordance with the terms of the same AIG master form policy.

In purchasing the policies, Wal-Mart provided AIG and Hartford with the name, social security number, gender, date of birth, state and zip code of residence, and annual compensation of its employees. The Wal-Mart COLI plans were "experience rated," meaning that the actual "cost of insurance" was adjusted periodically to account for actual mortality experience within the pool of insured associates. The policies were permanent whole life insurance policies and were not renewable from year to year, but were designed to accumulate cash value through payment of premiums and remain [*11] in effect throughout the life of the insured employee.

Wal-Mart asserts that it spends millions of dollars annually to recruit, screen, train, and retain its employees because its success depends on a trained and experienced work force in stores, distribution centers, its home office, and at other locations. It does not consider its employees to be fungible. Wal-Mart also claims to incur substantial costs resulting from employee deaths, such as the costs associated with employee replacement, retraining, sickness and death-related benefits and expenses, and lost productivity. Wal-Mart purports to have analyzed its economic interest in the continued lives of its employees insured under its COLI programs to determine appropriate benefit amounts under the policies.

Since prior to 1992, Wal-Mart has administered and funded the Wal-Mart Health & Welfare Plan (the "Benefits Plan"). Subject to eligibility requirements specified in the COLI policies, Wal-Mart's COLI programs were structured to cover all Wal-Mart employees who were enrolled in the Benefits Plan when the blocks of policies were purchased and who chose not to opt out of the COLI programs, regardless of the

employee's rank or [*12] status in the company. Where Wal-Mart later determined that employees initially listed as COLI participants did not meet the eligibility requirements, it cancelled the policies insuring such employees and any premiums paid were returned.

The Benefits Plan provided various benefits to Wal-Mart employees, including company-paid life insurance in an amount equal to the employee's annual pay rounded to the nearest $ 1,000 up to $ 50,000, payable to the beneficiary designated by the employee. In addition, Wal-Mart provided to employees who did not opt out of the COLI plans a special death benefit payable to the same beneficiary as named for the company-paid life insurance. The special death benefit for active employees was $ 5,000 and an additional $ 5,000 for accidental death. When purchases of COLI policies were discontinued, Wal-Mart also discontinued the special death benefit.

Wal-Mart argues that, unlike Camelot, it informed its employees of the COLI program and gave them the option to be excluded from coverage. Wal-Mart's Vice-President of Benefits, Thomas G. Emerick, testified that he prepared and distributed a memorandum, dated December 14, 1993, to all Wal-Mart location managers [*13] advising them of the new COLI plans and attaching a brochure (the "1993 brochure"). [5] The brochure describes participation in the COLI program and special death benefits flowing from such participation. It also informs eligible employees that they may opt-out of participation. Emerick affies that he instructed all location managers to distribute the brochure to all eligible employees. Plaintiffs dispute that the brochure was distributed, and they dispute that it served to inform eligible employees of Wal-Mart's COLI policies.

> [5] On the eve of the October 5, 2005 hearing in this matter, plaintiffs filed an objection to Wal-Mart's summary judgment evidence (Dkt. # 164) which includes an objection to Emerick's December 11, 2003 affidavit and the documents attached thereto, and an objection to Emerick's July 27, 2005 supplemental affidavit. Plaintiff's objection is not only exceedingly untimely, but also an improper attempt to exceed page limitations imposed by local rule and the Court for summary judgment briefs. Further, it appears that many of the objections, including the

objection to the 1993 brochure, are based on hearsay, to which the exception for business records (*Fed. R. Evid. 803(6)*) would apply. Finally, the Court was advised at the October 5, 2005 hearing that Wal-Mart made available a *Rule 30(b)(6)* witness to testify as a records custodian, but plaintiffs' counsel decided not to take that individual's deposition. Hence, plaintiffs' objections as to authenticity of the documents attached to Emerick's affidavit are not well-taken. The objection (Dkt. # 164) is hereby stricken as untimely, improper, and without merit.

[*14] In addition to the 1993 brochure, Wal-Mart claims that it sent a notice in February 1994 informing employees of a $ 1,000 special death benefit for COLI participants who either cancelled their medical coverage but continued to work for Wal-Mart, or terminated employment with Wal-Mart. As employees became eligible for enrollment in the COLI program after December 1993, they were provided with an individual "Personal Choice" form containing disclosures consistent with the 1993 brochure. Wal-Mart claims that more than 450 employees from locations across the country returned opt-out forms. As further evidence of notice, Wal-Mart points out that an article appearing in the October 23, 1995 issue of Newsweek discussed COLI programs in general and Wal-Mart's program in particular. Similar articles specifically discussing Wal-Mart's COLI programs also appeared around the same time in The Washington Post and The New York Times.

The Health Insurance Portability and Accountability Act of 1996 (HIPAA) effectively eliminated interest deductions on policy holder loans to fund a COLI plan. Wal-Mart claims that passage of HIPAA led Wal-Mart to unwind its COLI programs because the interest [*15] deductions were integral to their financial viability. Wal-Mart ultimately surrendered all of its remaining COLI policies by January 2000 and contemporaneously waived any death benefits with respect to the surrendered policies. The insurers returned certain premium and investment funds they had held for Wal-Mart in connection with the COLI program. The IRS challenged the tax benefits that Wal-Mart expected from its COLI plans, and Wal-Mart claims that it entered into a settlement which preserved only a small portion of the originally expected tax benefits.

The Tillman case involved only one plaintiff, and

Camelot received life insurance proceeds upon that employee's death. This case involves eight plaintiffs. Wal-Mart received benefits upon the death of only one of the individuals whose estate is represented by a named plaintiff herein, Alene Jacobson. Before any policy claim was made, Wal-Mart cancelled the policies as to three other individuals whose estates are represented herein: Shelly Bizal-Webb, Eavy Marie Brown and Nellie May Lewis. Three additional individuals represented herein, Alice Fay Haskins, Irene Brasher and Troy Allen Brasher, were never insured under Wal-Mart's [*16] COLI policies. The policy of the remaining individual represented herein, Hazel Lee Sarty, was rescinded after she was determined to be ineligible for the insurance.

Wal-Mart contends in its supplemental brief in support of its summary judgment motion that the Tenth Circuit's decision in Tillman has no impact on (1) Wal-Mart's statute of limitations defense, (2) the Bizal-Webb claim, and (3) Wal-Mart's defense to plaintiffs' claims for the tort of misappropriation. Wal-Mart also argues that, under the Tenth Circuit's decision in Tillman. plaintiff's claims for unjust enrichment fail as a matter of law. Finally, Wal-Mart argues that the Tenth Circuit Tillman decision supports Wal-Mart's position that Oklahoma's insurable interest statute does not apply and, under the version of the insurable interest statute in effect in 1993, the presence of an employer's lawful and substantial economic interest in the life of any employee may be shown by evidence that Wal-Mart, unlike Camelot, can produce.

In their cross-motion for summary judgment, plaintiffs move for summary judgment on Wal-Mart's affirmative defenses of limitations, consent, waiver, estoppel, laches, and ERISA preemption. [*17] They also seek a ruling that Wal-Mart did not have an insurable interest in the lives of its rank-and-file employees, including Nellie Mae Lewis, Shelly Bizal-Webb, Alene Jacobson, and Eavy Marie Brown. Plaintiffs specifically argue that summary judgment is proper on Wal-Mart's limitations defense because the doctrines of collateral estoppel and issue preclusion bar Wal-Mart from arguing that it made effective disclosures to its employees, and the summary judgment record shows that Wal-Mart's limitations defense is contrary to the facts. They argue that summary judgment is proper as to Wal-Mart's equitable defenses of waiver, estoppel, consent, and laches because plaintiffs did not have full knowledge of the operative facts, and because Wal-Mart knew its COLI

policies were unlawful when it bought them. Plaintiffs rely on rulings from other courts to assert that Wal-Mart's ERISA preemption defense is barred, and to assert that Wal-Mart lacked an insurable interest in the lives of its rank-and-file employees.

## II.

Summary judgment pursuant to *Fed. R. Civ. P. 56* is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter [*18] of law. *Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); Anderson v. Liberty Lobby. Inc., 477 U.S. 242, 250, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986); Kendall v. Watkins, 998 F.2d 848, 850 (10th Cir. 1993).* The plain language of *Rule 56(c)* mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex, 477 U.S. at 317.* "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Id. at 327.*

"When the moving party has carried its burden under *Rule 56(c)*, its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)* [*19] (citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." *Anderson, 477 U.S. at 252.* In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id. at 250.* In its review, the Court construes the record in the light most favorable to the party opposing summary judgment. *Garratt v. Walker, 164 F.3d 1249, 1251 (10th Cir. 1998).*

## III.

## A. Statutory Violation

### 1. Standing

As to persons entitled to maintain a cause of action for violation of Oklahoma's insurable interest statute (with respect to personal insurance), the statute provides:

> If the beneficiary, assignee or other payee under any contract made in violation of this section receives from the insurer any benefits thereunder accruing upon the death, disablement, or injury of the individual insured, the individual insured or the executor or [*20] administrator, as the case may be, may maintain an action to recover such benefits from the person so receiving them.

*Okla. Stat. tit. 36, § 3604(B).* The undisputed facts are that former Wal-Mart employees Alice Fay Haskins, Irene Brasher and Troy Allen Brasher were never insured under Wal-Mart's COLI policies. Former Wal-Mart employee Hazel Lee Sarty was insured in 1993 but determined to be ineligible on June 2, 1994. Wal-Mart received no benefits accruing upon the deaths of these individuals, and none of these individuals, or their personal representatives, ever received any benefits under the Wal-Mart COLI policies. Accordingly, none of them has standing to assert any claim under *Okla. Stat. tit. 36, § 3604.*

The "irreducible constitutional minimum" for establishing standing in Article III courts requires "that the plaintiff must have suffered an 'injury in fact' -- an invasion of a legally protected interest which is (a) concrete and particularized, and (b) 'actual or imminent, not conjectural or hypothetical.'" *Lujan v. Defenders of Wildlife, 504 U.S. 555, 560, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992)*(citations omitted). In addition, "there must be a causal connection between the injury [*21] and the conduct complained of," and "it must be 'likely' . . . that the injury will be 'redressed by a favorable decision.'" *Id. at 560-61.* Plaintiff Janet Switzer represents the estates of Troy Allen Brasher and Irene Brasher, Terry Scott Shelnut represents Alice Fay Haskins' estate, and Herbert Sarty represents the estate of Hazel Lee Sarty. Because these decedents were never insured, the statutory claims of personal representative plaintiffs Switzer, Shelnut and Sarty must be dismissed for lack of standing.

Similarly, the personal representatives of the estates of former Wal-Mart employees Nellie Mae Lewis, [6] Shelly Bizal-Webb, and Eavy Marie Brown lack standing to assert a violation of *Okla. Stat. tit. 36, § 3604* because: (1) they never received any benefits under the Wal-Mart COLI policies, even though these decedents had been insured; (2) the employees themselves never received any benefits under the Wal-Mart COLI policies; and, (3) contrary to plaintiffs' argument, Wal-Mart received no death benefits or policy "proceeds" upon the deaths of these employees. Wal-Mart surrendered the COLI policies before any claims were made, and Wal-Mart waived any death benefits [*22] when it surrendered all of its remaining COLI policies. The "payment" Wal-Mart received in January 2000 was a refund of certain premium and investment funds the insurers had held for Wal-Mart in connection with the COLI program. Presumably, the insurers would have paid death benefits and policy proceeds from those funds if the policies had not been surrendered, but it would be contrary to the plain meaning of the statute to find that the return of those funds to Wal-Mart in exchange for release of contractual obligations constitutes "benefits [] accruing upon the death, disablement, or injury of the individual insured[s]." Accordingly, the statutory claims of personal representative plaintiffs Frank O. Lewis, Rodney Bizal, [7] Jeff Todd Brown and Tab Art Brown must be dismissed because these plaintiffs have no standing to assert that Wal-Mart violated *Okla. Stat. tit. 36, § 3604* by its purchase of COLI policies.

6   Nellie Mae Lewis was insured on March 1, 1995 -- after the Oklahoma legislature amended the statute to permit COLI policies, but "only with the written consent of the insured." *Okla. Stat., tit. 36, § 3604(C)(4)(a).* It is undisputed that Wal-Mart did not obtain the written consent of Nellie Mae Lewis.

[*23]

7   Plaintiff Rodney Bizal's claim for policy benefits is an offshoot of his claim for violation of the statute and fails for similar reasons. Neither he nor Shelly Bizal-Webb, whose estate he represents, was a signatory to the contract between Wal-Mart and AIG, and neither paid any premium for the life insurance. Although Shelly Bizal-Webb died in 1999 before Wal-Mart cancelled its COLI policy insuring her life, Wal-Mart never made a claim for or received any policy benefits accruing upon her death. Thus, he

has no standing as to this claim, and Wal-Mart, substituted for AIG, is entitled to summary judgment.

The remaining statutory claim is that of Kenneth Frank Jacobson, the plaintiff representing Alene Jacobson. Alene Jacobson died on September 12, 1996, and on November 14, 1996 Wal-Mart actually received COLI benefits which accrued upon her death. Thus, the Court must address the following additional issues as to this claim: Wal-Mart's statute of limitations defense; other affirmative defenses raised by Wal-Mart; and whether Wal-Mart had an insurable interest in Alene Jacobson's life.

### [*24]  2. Statute of Limitations

Wal-Mart initially argued that all of the plaintiffs' claims are barred because they accrued more than three years before the action was commenced and the limitations period is not tolled by alleged fraudulent concealment. Plaintiffs argued, with respect to the Jacobson claim in particular, that Wal-Mart's position contradicts the Mayo decisions, and that the statute of limitations on Jacobson's claim is tolled by the discovery rule and Wal-Mart's fraudulent concealment of its COLI policies. In response to Wal-Mart's supplemental briefing on the statute of limitations issue, plaintiffs filed their cross-motion for summary judgment, arguing that the doctrines of collateral estoppel and issue preclusion bar Wal-Mart from arguing that it made effective disclosures to its employees. Plaintiffs also assert that the summary judgment record before the Court proves that Wal-Mart's limitations defense is contrary to the facts.

As discussed in the Court's Tillman decision, Oklahoma's insurable interest statute does not contain its own statute of limitations or tolling provisions. *Tillman, 2003 U.S. Dist. LEXIS 21662, 02-CV-761-EA(J), slip op. at 13.* The Court found applicable [*25] the three-year statute of limitations for an "action upon a liability created by statute other than a forfeiture or penalty; . . ." *Okla. Stat. tit. 12, § 95(2),* given that "a liability created by statute is defined as a liability which would not exist but for the statute." *Lincoln Bank and Trust Co. v. Neustadt, 1996 OK CIV APP 10, 917 P.2d 1005, 1008 (Okla. Ct. App. 1996)*(citations omitted). The Court also found, in Tillman, that the limitations period for Tillman's claim for violation of Oklahoma's insurable interest statute commenced the day Camelot bought the policy because, theoretically, Tillman could have sought

a declaratory judgment that Camelot had no insurable interest. *Id.* 2003 U.S. Dist. LEXIS 21662 at 15. [8] Tillman failed to bring suit within three years of that date. Thus, the Court addressed three key issues: whether the limitations period was tolled by Camelot's alleged fraudulent concealment, whether Tillman's representative had constructive notice of her claims, and if so, when. *Tillman, 2003 U.S. Dist. LEXIS 21662, 02-CV-761-EA(J), slip op. at 15.*

> 8  One court has found likewise, at least as to the accrual of claims for commercial misappropriation, unjust enrichment, civil conspiracy and declaratory judgment. See *Rice v. Wal-Mart Stores, Inc.,* 2004 U.S. Dist. LEXIS 14109, No. Civ. 02-390-B, 2004 WL 1638241, *2 (D.N.H. July 23, 2004); Keenan v. AIG Life Ins. Co., No. Civ. 03-31- 2003 WL 21696185, *3 (D.N.H. July 11, 2003).

[*26] Plaintiffs' counsel in this case challenge the Court's finding in Tillman as to when the cause of action accrues on claims for unjust enrichment and violation of *Okla. Stat. tit. 36, § 3604* arising out of a corporation's COLI program. [9] Relying on the Fifth Circuit's decision in Mayo, they assert that these causes of action accrued when Wal-Mart received the proceeds of the policy from the insurer after the employee's death. See *354 F.3d at 410.* The Mayo court explained that those proceeds should go to the deceased employee's estate, *Id.* Assuming the Fifth Circuit is correct, plaintiff still must show that the limitations period was tolled by Wal-Mart's alleged fraudulent concealment, and/or that Jacobson's personal representative had no notice of the statutory claim more than three years before he filed suit.

> 9  Under Oklahoma law, "an action accrues when a litigant can first maintain an action to a successful conclusion." *Digital Design Group, Inc. v. Information Builders, Inc.,* 2001 OK 21, 24 P.3d 834, 839 (Okla. 2001).

[*27] **a. Fraudulent Concealment**

In diversity actions, federal courts apply the state statutes of limitations and any related state tolling provisions. E.g., *Futura Music, Inc. v. Gates Radio Co.,* 399 F.2d 308, 310 (10th Cir. 1968). Plaintiffs bear the burden to provide evidence of fraudulent concealment sufficient to withstand a motion for summary judgment. *Williams v. Borden, Inc.,* 637 F.2d 731, 739 (10th Cir.

1980); see *King & King Enter, v. Champlin Petroleum Co.,* 446 F. Supp. 906, 911 (E.D. Okla. 1978); cf. *Tice v. Pennington,* 2001 OK CIV APP 95, 30 P.3d 1164, 1173 (Okla. Ct. App. 2001)). Further, plaintiff "must not only show that he did not know facts constituting a cause of action, but that he exercised reasonable diligence to ascertain such facts." *Funnell v. Jones,* 737 P.2d 105, 107 (Okla. 1985)(quoting *Kansas City Life Ins. Co. v. Nipper,* 1935 OK 1127, 174 Okla. 634, 51 P.2d 741 (Okla. 1935)). This is known as the "discovery rule" or the "diligence-discovery rule." E.g., *Weathers v. Fulgenzi,* 1994 OK 119, 884 P.2d 538, 540-41 (Okla. 1994); *Tice,* 30 P.3d at 1171. Regardless of whether a plaintiff has [*28] "exact knowledge," tolling resulting from fraudulent concealment ends "when the plaintiff knows, or reasonably should know, of enough critical facts about the injury and its cause to protect himself or herself by seeking legal assistance." *Tice,* 30 P.3d at 1171. [10]

> 10  Wal-Mart initially cited this authority in its motion for summary judgment, Dkt. # 88, at 26. In its reply brief, however, Wal-Mart argues that the discovery rule applies only in limited tort cases. Reply Br. Dkt. # 105, at 11 (citing *Smith v. Baptist Foundation of Oklahoma,* 2002 OK 57, 50 P.3d 1132, 1137-38 (Okla. 2002)); see *Lovelace v. Keohane,* 1992 OK 24, 1992 OK 624, 831 P.2d 624, 629 (Okla. 1992). This Court recognizes that no Oklahoma case has applied the discovery rule to a claim for violation of *Okla. Stat. tit. 36, § 3604,* and does not hold that Oklahoma courts necessarily would extend the rule to this claim. However, it is assumed, for purposes of this motion, that the rule applies.

In Tillman, this Court explained [*29] that "fraudulent concealment by a wrongdoer of the injured party's cause of action will toll the period of limitations until the injured party is placed on reasonable notice of the wrong." *2003 U.S. Dist. LEXIS 21662, No. 02-CV-761-EA(J), slip op. at 15 (citing Telex Corp. v. Int'l Bus. Machines Corp.,* 367 F. Supp. 258, 360 (N.D. Okla.), rev'd on other grounds, 510 F.2d 894 (10th Cir. 1973): *Funnell,* 737 P.2d at 107; *Liberty Nat'l Bank of Weatherford v. Lewis,* 1935 OK 492, 172 Okla. 103, 44 P.2d 127. 129 (Okla. 1935); *Tice,* 30 P.3d at 1171). Based on statements made during related litigation, the Court found that Camelot had fraudulently concealed the existence of its COLI policies. Id. The Court noted that, under Oklahoma law, "the mere failure to disclose that a

cause of action exists is not sufficient to prevent the running of the statute. There must be something more; some actual artifice to prevent knowledge of the facts; some affirmative act of concealment or some misrepresentation to exclude suspicion and prevent inquiry." *Tillman, 2003 U.S. Dist. LEXIS 21662, No. 02-CV-761-EA(J), slip op. at 16* (quoting *McClenahan v. Oklahoma R. Co., 1928 OK 197, 131 Okla. 73, 267 P. 657, 658 (Okla. 1928)*: [*30] accord *Wills v. Black & West, 1959 OK 162, 344 P.2d 581, 584 (Okla. 1959))*. The "something more" was Camelot's effort to hide the insurance benefits in an account for executive compensation. Id.

There is no evidence of a similar "artifice," "affirmative act of concealment," or "misrepresentation" in this case that would have prevented the individuals represented by plaintiffs from ascertaining that Wal-Mart carried corporate-owned life insurance on their lives and would have received policy proceeds when they died. To the contrary, the 1993 brochure disclosed Wal-Mart's COLI policies to Wal-Mart employees. It included a "Personal Benefits News" bulletin with an accompanying notice captioned "For Your Information." It informed employees that, beginning January 1, 1994, Wal-Mart would provide all active associates (employees) participating in the company's group health plan an additional "death benefit" of at least $ 5,000 per employee. Importantly, the notice explained the source of the new benefits to employees, as well as the right of any eligible employee to prevent the company from owning insurance on the employee's life:

> Wal-Mart is providing these new death benefits [*31] as a result of financial gains from life insurance policies Wal-Mart will purchase which will cover the lives of associates who participate in the group health plan. That Wal-Mart owned life insurance will result in financial benefits for the corporation. Any net life insurance proceeds payable to Wal-Mart from this life insurance as a result of the death of an active associate will be contributed to the profit sharing plan. [11]

> Participation in the new death benefits and the Wal-Mart owned life insurance will be automatic for associates enrolled in

the group health plan. However, if you do not wish to be covered by these programs, please fill in the information below and return it to Wal-Mart's Benefits Department by January 31, 1994.

Motion for Summary Judgment Appendix ("MSJ App."), Dkt. # 89, Ex. 1.17 (underscore in original). As employees became eligible for participation in the COLI program after December 1993, Wal-Mart provided them with an individual "Personal Choice" form disclosing the same material. Id., Ex. 1.22.

> [11] Plaintiffs maintain that no proceeds were ever contributed to the profit sharing plan. The Court finds this undisputed fact irrelevant to the determination of whether Wal-Mart fraudulently concealed its COLI policies or whether the 1993 brochure notified Wal-Mart employees of the COLI plan.

[*32] In addition, the national news media reported on COLI programs, and Wal-Mart's in particular, in 1995. A September 24, 1995 article in The New York Times explained how COLI policies worked and named Wal-Mart as one of the well-known companies that utilized COLI policies. MSJ App., Dkt. # 89, Ex. 1.26. A subsequent article in The Washington Post was published on October 17, 1995. It focused on Wal-Mart's COLI program and quoted Emerick at length. Id. Ex. 1.25. The author explained in detail "how American's biggest corporations are cashing in on your mortality" and stated, among other things: "A company takes out whole life insurance policies on thousands of its employees. This isn't like regular corporate-provided insurance. Here, when an employee dies, the money goes to the company, not to his family." Id. The same article was published in Newsweek on October 23, 1995. Id., Ex. 1.24. The Court finds the summary judgment record devoid of evidence that Wal-Mart fraudulently concealed its COLI policies.

**b. Notice**

Even if Wal-Mart had fraudulently concealed its COLI policies, thus tolling the limitations period, the tolling would have ceased when the [*33] personal representative for Alene Jacobson knew, or reasonably should have known, about the COLI policies. See *Tice, 30 P.3d at 1171*. Wal-Mart contends that the 1993 brochure and subsequent "Personal Choice" form, as well as the 1995 news articles, not only demonstrate a lack of

fraudulent concealment but also demonstrate that all of the plaintiffs had notice. In Oklahoma, "whatever is notice enough to excite attention and put the party on guard and call for inquiry, is notice of everything to which such inquiry might have led." *State ex rel. Oklahoma Bar Ass'n v. Scroggs, 2003 OK 21, 70 P.3d 821, 827 (Okla. 2003)*. The common law rule has been codified, as explained by *In re Estate of Pope, 1990 OK 125, 808 P.2d 640 (Okla. 1990)*:

> "Notice is either actual or constructive." *25 O.S. 1981 § 10*. "Actual notice consists in express information of a fact." *25 O.S. 1981 § 11*. "Constructive notice is notice imputed by the law to a person not having actual notice." *25 O.S. 1981 § 12*. "Every person who has actual notice of circumstances sufficient to put a prudent man upon inquiry as to a particular fact, and who omits to make such inquiry with reasonable diligence, [*34] is deemed to have constructive notice of the fact itself." *25 O.S. 1981 § 13*.

*Id. at 646 n.32.*

Plaintiffs attack Wal-Mart's arguments on two fronts: first, they argue that the notice was vague, misleading, and superficial; second, they assert that the 1993 brochure and subsequent notices were never received by the Wal-Mart employees whom they represent. In particular, plaintiffs contend that Wal-Mart knew about and could have used a disclosure similar to one made by the Woolworth Corporation which stated that "no associate or his or her heirs or beneficiaries will have any entitlement to any policy or its proceeds" and required the employee to sign a consent form acknowledging that the company would be sole owner and beneficiary of the COLI policy on his or her life. See Resp. Br. Dkt. # 102, Ex. 29; A-6.

Further, plaintiffs argue that the primary subject of the 1993 brochure is the new "special death benefit" and makes no explicit reference to COLI policies in the first two paragraphs. The third paragraph is vague, plaintiffs argue, because there are several life insurance programs offered to Wal-Mart associates, two of which were group insurance programs, [*35] and the Wal-Mart employee handbooks for 1994 and 1995 addressed the new special death benefit in the section describing one of these group

programs -- Wal-Mart's company paid life insurance program -- in which the employee designated the beneficiary. Finally, plaintiffs challenge the 1993 brochure statement that the insurance would result in "financial benefits" for the company. Emerick testified that Wal-Mart intended to convey that it would receive tax benefits from the policies. He did not mention the death benefits paid to Wal-Mart upon the death of employees covered by the COLI policies.

In support of these arguments, plaintiffs rely on the Mayo decisions and assert that the doctrines of collateral estoppel and issue preclusion prevent Wal-Mart from relying on the 1993 brochure and subsequent similar information. In the context of a discussion of Texas statutes permitting written consent by employees for insurance on their lives and the particular beneficiary and owner designations, the district court in Mayo remarked that, "there is no proof that Sims actually received the December 1993 flyer [the 1993 brochure] or any other notice about the insurance and the beneficiary [*36] designation prior to Wal-Mart's purchase of the COLI policy on his life." *220 F. Supp. 2d at 807*. The district judge also described Wal-Mart's explanation of its insurance program as "vague," "superficial, bare of any data or concrete information," and a "mere suggestion" that insurance on employees' lives was involved, *Id. at 806-07*. The judge stated that "Wal-Mart did not explain the financial arrangements in writing or in plain English." *Id. at 807*. On appeal, the Fifth Circuit assumed the Wal-Mart had purchased the COLI policies without the employee's knowledge or consent. *Mayo, 354 F.3d at 410*.

Wal-Mart points out that the Mayo district court, in a decision issued the day prior to the one in which the statements quoted above were made, specifically stated that the court was not deciding whether the disclosures were sufficient to constitute notice or claim discovery for statute of limitations purposes:

> The Court need not resolve AIG's argument that Sims was placed on notice of the existence of the COLI policies through the flyer distributed by Wal-Mart in December 1993. First, Plaintiff Sims Estate [*37] does not rely on the discovery rule. Second, the evidence on which these Defendants [rely] to establish 'notice' to Sims raises a question of fact as

to whether Sims actually received the flyer and whether the information in it gave meaningful notice of the benefits Wal-Mart would receive from the insurance.

*229 F. Supp. 2d 759 at 770-71 n.202 (2002).* Similarly, the Fifth Circuit's assumption as to the employee's knowledge of Wal-Mart's COLI policies occurs in the context of its discussion of the Mayo plaintiff's unjust enrichment claim. See *Mayo, 354 F.3d at 410*. It was not a determination that the plaintiff had no notice for discovery rule purposes. This Court is more interested in the Mayo lower court's determination that the evidence on which the defendants relied to establish notice raised a question of fact. The evidence here raises a similar question of fact not only as to whether Alene Jacobson received the 1993 brochure, but also as to whether her personal representative knew or should have known about it when the claim accrued after her death.

Significantly, the federal district court in New Hampshire has held, on two separate occasions, [*38] that the 1993 brochure was delivered and that Wal-Mart employees had notice of Wal-Mart's COLI plan as a result of the 1993 brochure. In Keenan v. AIG Life Ins. Co., No. Civ. 03-31-B, 2003 WL 21696185, *3 (D.N.H. July 11, 2003), the district judge remarked that the plaintiff had not argued that the 1993 brochure was confusing or ambiguous. A year later the same district judge made the same ruling without a similar observation as to another Wal-Mart employee and that employee's personal representative. *Rice v. Wal-Mart Stores, Inc., 2004 U.S. Dist. LEXIS 14109, No. Civ. 02-390-B, 2004 WL 1638241 (D.N.H. July 23, 2004)*, but, at the October 5, 2005 hearing, Wal-Mart's counsel quoted from a brief in which the Rice plaintiff made that argument. In Rice, the district judge explicitly found: "The notice [i.e., the 1993 brochure] clearly provided information that Wal-Mart was going to purchase life insurance policies on its employees' lives, and that it -- not the employees' survivors -would receive the financial gains." *2004 U.S. Dist. LEXIS 14109, 2004 WL 1638241, at *3.*

The court deciding the Rice and Keenan cases did not, however, differentiate between the Wal-Mart employees and [*39] their personal representatives, as he did not decide the accrual date in the context of a New Hampshire statutory claim similar to those asserted here. The plaintiffs in those cases did not allege a violation of

an insurable interest statute; instead, they claimed that they were entitled to a declaratory judgment that Wal-Mart lacked an insurable interest in the lives of the Wal-Mart employees in New Hampshire who were insured by COLI policies purchased by Wal-Mart. See *Rice v. Wal-Mart Stores. Inc., 2004 U.S. Dist. LEXIS 14109, No. Civ. 02-390-B, 2003 WL 22240349 (D.N.H. Sept. 30, 2003)*. They also alleged claims for breach of contract, commercial appropriation, intrusion upon seclusion, breach of fiduciary duty, intentional infliction of emotional distress, unjust enrichment, and civil conspiracy. Id. The court dismissed all claims against one of the insurance companies that issued the COLI policies except for plaintiffs' claims for civil conspiracy and unjust enrichment. Id. The court dismissed the declaratory judgment claim, in particular, because, in New Hampshire, only the insurer can challenge the "want of insurable interest." *Id. 2004 U.S. Dist. LEXIS 14109, at *1.* [12]

> 12    The common law in Oklahoma permitted only the insurer to contest validity of a policy for lack of an insurable interest. *Ryan v. Andrewski, 1952 OK 119, 206 Okla. 199, 242 P.2d 448, 452 (Okla. 1952)*. The statute, however, permits the personal representative to recover death benefits from a person receiving them under a contract made in violation of the statute. *Okla. Stat. tit. 36, § 3604(B)*.

[*40] In this case, as in the *Rice* and Keenan cases, plaintiffs have submitted numerous affidavits by former Wal-Mart employees, managers, supervisors, and representatives of deceased Wal-Mart employees. These individuals assert, among other things, that they had no knowledge of Wal-Mart's coverage, that they were never told about the coverage, and that they cannot recall receiving the written information about COLI policies from Wal-Mart. See Resp. Br., Dkt. # 102, at 34-35. One individual testified that, after receiving an advertisement letter from plaintiffs' counsel, she went to the Wal-Mart store where her deceased husband had worked. She met with the store's personnel manager who searched through files and found no documents as to the COLI coverage. The personnel manager also contacted Wal-Mart's benefits department and its legal department and was told that Wal-Mart did not insure the lives of its employees. Id. at 35. [13]

> 13    Plaintiffs submitted a similar affidavit by

another individual in support of their cross-motion for summary judgment. See Cross-Motion, Dkt. # 133, Ex. D.

[*41] In opposition, Wal-Mart has submitted evidence that approximately 450 employees, and at least one in Oklahoma, completed and returned a form permitting them to "opt-out" of the COLI program. The Mayo decision indicates that "approximately 1000 employees out of 350,000 in fact opted out." *220 F. Supp. 2d at 807 n.36*. Wal-Mart also submits that the information provided to the personnel manager and, consequently, to the wife of a deceased Wal-Mart employee was correct because the inquiry was made after Wal-Mart had cancelled its COLI policies.

The Rice court, considering similar affidavits offered by the plaintiffs here, found that "none of the affiants directly challenge[s] Emerick's claim that all Wal-Mart employees received the memorandum informing them of the COLI policies in December 1993." *2004 U.S. Dist. LEXIS 14109, 2004 WL 1638241, at *3*. The Rice court concluded that "Rice has failed to produce sufficient responsive evidence to permit a reasonable jury to conclude that the discovery rule[] tolled the running of the statute of limitations." Id. This Court finds the Rice court's rationale persuasive but distinguishable because plaintiffs in *Rice* and [*42] Keenan did not assert a violation of the insurable interest statute, and the district judge there found that the asserted claims (for unjust enrichment, civil conspiracy, commercial appropriation, declaratory relief) accrued when Wal-Mart purchased the COLI policies. If one assumes a claim for violation of the statute accrues when the employer receives benefits on account of the death of the insured employee, the claim belongs to the personal representative, and the relevant issue is whether the personal representative had notice, not whether the insured employee did. [14]

> 14    Of course, evidence that an insured had notice may be circumstantial evidence from which a jury could conclude that the personal representative had notice, viz., that a reasonable insured would inform her spouse.

The competing evidence offered by the parties leads the Court to conclude that, although Wal-Mart did not fraudulently conceal the existence of its COLI policies from its employees or their personal representatives, a genuine [*43] issue of material fact remains as to whether Alene Jacobson or her personal representative

had notice. The evidence appears to indicate that many of the Wal-Mart employees whose lives were covered by Wal-Mart's COLI policies may have had actual notice of the program and the remainder may have had constructive notice of it by virtue of the 1993 brochure and subsequent "Personal Choice" forms. Yet, there is no specific evidence in the summary judgment record as to whether the brochure was actually distributed by the manager in the Wal-Mart store where Alene Jacobson worked. There is disputed evidence as to whether her husband and personal representative, Kenneth Frank Jacobson, had or should have had actual or constructive notice. He affies that his wife never told him about the policies, that she would have told him about such policies, and that he found nothing in her papers after her death to indicate that Wal-Mart had a COLI policy on her life. Resp. Br., Ex. # 102, Ex. G.

The Court does not rely for notice on the news articles in which Wal-Mart's COLI policies were discussed. The Court ruled in Tillman that the same 1995 Newsweek article upon which Wal-Mart relies did not [*44] support Camelot's argument that the Tillman plaintiff had constructive notice in 1995 because the article did not specifically inform the reader that *Camelot* had purchased COLI policies covering its employees as well as officers and, even if the article had mentioned Camelot, there was no indication that the Tillman plaintiff saw the article, and no reason that it would have led her to believe that the deceased employee whom she represented was covered under the policy or that she might otherwise have a cause of action. That employee died in January 1992, and the article did not appear until October 1995. Here, Alene Jacobson died after the article appeared, and the author did focus on Wal-Mart, but there is no evidence that Alene Jacobson or her husband and personal representative saw that or any similar article. Accordingly, the Court finds that summary judgment is not appropriate as to Wal-Mart's statute of limitations defense to the statutory claim of personal representative plaintiff Kenneth Frank Jacobson.

### c. Collateral Estoppel and/or Issue Preclusion

Plaintiffs' collateral estoppel and issue preclusion arguments do not compel different findings. In their [*45] cross motion for summary judgment, [15] plaintiffs point out that the United States Supreme Court has sanctioned the offensive use of collateral estoppel, permitting a plaintiff to "foreclose the defendant from litigating an

issue the defendant has previously litigated unsuccessfully in an action with another party." *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 326 n.4, 99 S. Ct. 645, 58 L. Ed. 2d 552 (1979). They contend that, in Mayo, Wal-Mart was unsuccessful in litigating the issue of whether it put employees on written notice of its COLI policies and therefore, Wal-Mart cannot litigate the issue again in this subsequent case brought by plaintiffs. They specifically contend that Wal-Mart argued, in Mayo, that the plaintiffs' state law claim for benefits of a COLI policy were barred by the statute of limitations because Wal-Mart gave written notice of its COLI policies to all 350,000 employees whose lives were covered by the policies.

> 15  Wal-Mart points out that plaintiffs' motion is defective because it does not comply with the local rule requirement that a motion for summary judgment contain a concise statement of material facts as to which the movant contends no genuine issue exists. LCvR 56.1 (a). The Court notes that the motion also fails to comply with local rule requiring footnotes to be in 12 pitch font and requiring an indexed table of contents and authorities for briefs exceeding fifteen pages in length. LCvR 7.1 (c). Although the Court takes these infractions seriously, it will not disregard to the merits of plaintiffs' motion, as they are inextricably intertwined with Wal-Mart's motion for summary judgment and supplemental motion.

[*46] Wal-Mart notes that the doctrine of nonmutual offensive collateral estoppel is sometimes described by the more modern term "issue preclusion." See *State ex rel. Dept. of Transp. v. Little,* 2004 OK 74, 100 P.3d 707, 719 n.47 (Okla. 2004). Because Mayo was a diversity case, its preclusive effect, if any, is determined by Texas law except insofar as that law is incompatible with federal interests. See *Semtek Intern., Inc. v. Lockheed Martin Corp.,* 531 U.S. 497, 508, 121 S. Ct. 1021, 149 L. Ed. 2d 32 (2001); *Hartsel Springs Ranch of Colorado, Inc. v. Bluegreen Corp.,* 296 F.3d 982, 986 (10th Cir. 2002). In Texas, "[a] party seeking to establish the bar of collateral estoppel must establish that (1) the facts sought to be litigated in the second action were fully and fairly litigated in the first action; (2) those facts were essential to the judgment in the first action; and (3) the parties were cast as adversaries in the first action." *Sysco Food Servs., Inc. v. Trapnell,* 890 S.W.2d 796, 801, 37 Tex. Sup. Ct. J. 1130 (Tex. 1994). However, mutuality is

required only as to the party against whom collateral estoppel is asserted. Id. Texas courts have emphasized that the issue of fact or [*47] law decided in the first action must be identical to an issue in a pending action. See *Getty Oil Co. v. Ins. Co. of North America,* 845 S.W.2d 794, 801, 36 Tex. Sup. Ct. J. 169 (Tex. 1992); *Avila v. St. Luke's Lutheran Hosp.,* 948 S.W.2d 841, 847 (Tex. App. 1997); *Tex. Dep't of Pub. Safety v. Petta,* 44 S.W.3d 575, 579, 44 Tex. Sup. Ct. J. 597 (Tex. 2001).

As set forth above, the Mayo court did not decide the identical issue presented in this case: whether, assuming the discovery rule applies, the 1993 brochure or other information was sufficient, under Oklahoma law, to constitute actual or constructive notice of claims to plaintiffs or their decedents. The Mayo court refrained from deciding that issue under Texas law because the estate of the plaintiff in that case did not rely on the discovery rule and the evidence raised a question of fact. *220 F. Supp. 2d at 770-71 n.202.* The Mayo district court later described the 1993 brochure as vague and superficial, among other things, but it did so in the context of an analysis of whether the COLI policies could be said to comport with Texas public policy as reflected in a state statute permitting Texans to designate [*48] their own life insurance beneficiaries. *Id. at 806-07.* The Fifth Circuit decision in Mayo, in describing the Mayo plaintiff's unjust enrichment claim, assumed that Wal-Mart took out an insurance policy on the Mayo plaintiff without his knowledge or consent. *354 F.3d at 410.* It did not determine that the plaintiff had no notice for discovery rule purposes. Hence, this case does not involve the identical issue as Mayo, plaintiffs have not shown that the facts to be litigated in this action were fully and fairly litigated in Mayo, and those facts were not essential to the judgment in Mayo.

Even if plaintiffs had met the technical requirements of issue preclusion, courts do not permit offensive use of nonmutual issue preclusion where it would be unfair to the party sought to be precluded. The Parklane Hosiery Court gave trial courts broad discretion to determine when the doctrine should be applied and the Court outlined various circumstances in which it should be denied. *439 U.S. at 331.* Among other things, the Supreme Court stated: "Allowing offensive collateral estoppel may . . . be unfair to a defendant if the judgment [*49] relied upon as a basis of the estoppel is itself inconsistent with one or more previous judgments in favor of the defendant." *Id. at 330.* Subsequent federal

2005 U.S. Dist. LEXIS 34470, *49

decisions have applied this Parklane Hosiery "fairness factor." E.g., *Setter v. A.H. Robins Co. Inc.*, 748 F.2d 1328, 1330-31 (8th Cir. 1984)(Dalkon-Shield litigation); *Hardy v. Johns-Manville Sales Corp.*, 681 F.2d 334, 345-46 (5th Cir. 1982)(asbestos litigation). [16] Again, as discussed above, the Rice and Keenan decisions held that the 1993 brochure gave clear notice to the Wal-Mart employees represented in those cases, and that notice triggered the statute of limitations on the claims of their personal representatives. Although these decisions were not prior to the Mayo decisions, they are inconsistent. Mayo is not entitled to issue preclusive effect with respect to Wal-Mart's statute of limitations defense in this case.

> 16   Wal-Mart does not argue that any of the other "fairness factors" apply. These are "whether the use of collateral estoppel would reward a plaintiff who could have been joined in the earlier suit but chose to "wait and see." . . . whether the defendant in the first suit had the incentive to litigate that suit fully and vigorously. . . . [and] whether the second suit will afford the defendant procedural opportunities available in the first suit that could cause a different result." *State Farm Fire and Cas. Co. v. Fullerton*, 118 F.3d 374, 386 (5th Cir. 1997)(quoting *Finger v. Southern Refrigeration Servs.*, 881 S.W.2d 890, 896 (Tex. App. 1994)).

[*50] Further, Mayo does not preclude Wal-Mart from arguing that plaintiffs' decedents consented to Wal-Mart's obtaining life insurance on their lives because they did not opt out when they received the 1993 brochure. The district court in Mayo accepted Wal-Mart's contention that it actually distributed its alleged disclosures, 220 F. Supp. 2d at 759, but later stated that "there is no concrete evidence that in fact the [1993 brochure] was received by all these managers, that they distributed the attached flyer, or that they discussed its contents with employees," *id. at 807 n.34.* This dicta is insufficient to preclude or estop Wal-Mart from asserting the affirmative defense of consent.

Neither are plaintiffs entitled to summary judgment on Wal-Mart's affirmative defenses of waiver, estoppel, or laches. Plaintiffs point out that wavier is the voluntary and intentional relinquishment of a known right. E.g., *Phillips v. New Hampshire Ins. Co.*, 263 F.3d 1215, 1220 (10th Cir. 2001). They also recite that a party to be estopped "must know the facts" and the party asserting

estoppel "must be ignorant of the true facts" if the affirmative [*51] defense of estoppel applies. *North Tex. Prod. Credit Ass'n v. McCurtain County Nat'l Bank*, 222 F.3d 800, 802 (10th Cir. 2000). Finally, they assert that the affirmative defense of laches requires an "inexcusable delay in instituting suit." *Brunswick Corp. v. Spinit Reel Co.*, 832 F.2d 513, 523 (10th Cir. 1987). All of these affirmative defenses are foreclosed, plaintiffs argue, because Wal-Mart did not notify its employees about the COLI policies on their lives. Since the Court has found that notice involves a genuine issue of material fact, summary judgment is not appropriate as to these affirmative defenses.

Plaintiffs also argue that summary judgment is proper because Wal-Mart's conduct was not equitable, and "he who comes into equity must come with clean hands," *Estate of Bruner v. Bruner*, 338 F.3d 1172, 1177 (10th Cir. 2003). Relying on the Fifth Circuit decision in Mayo and *Wal-Mart Stores v. AIG Life Ins. Co.*, 872 A.2d 611, 622-23 (Del. Ch. 2005), plaintiffs assert that Wal-Mart's purchase of the COLI policies and designation of itself as policy beneficiary was unlawful and in bad faith, Wal-Mart knew [*52] it, and thus, it lacks the "clean hands" necessary to seek equitable relief. Whether Wal-Mart's conduct was unlawful is the issue at the heart of this case and others, and resolution of it depends on a difficult, state-by-state, case-by-case, insured-by-insured analysis of laws, without the assistance of clear precedent at the state level. The Delaware Court of Chancery did not find that Wal-Mart acted in bad faith; it merely found that Wal-Mart took a known risk that it would be found to lack an insurable interest in the lives of its rank-and-file employees and Wal-Mart attempted to minimize that risk by focusing certain activities in Georgia, a state that allowed employers to have an insurable interest in employees. *Id. at 622.* The Delaware court made that finding as part of several bases for rejecting the commercial frustration theory advocated by Wal-Mart. *Id. at 621-23.* The Delaware opinion does not collaterally estop Wal-Mart from asserting the affirmative defenses of consent, waiver, estoppel or laches.

Finally, plaintiffs' assertion of issue preclusion, at least as to the preclusiveness of the Mayo decisions, is untimely. Issue preclusion [*53] or collateral estoppel, like the related doctrine of res judicata, must be affirmatively alleged by the party seeking to enforce it, *Fed. R. Civ. P. 8(c); see Blonder-Tongue Laboratories,*

*Inc. v. Univ. of Illinois Found.*, 402 U.S. 313, 350, 91 S. Ct. 1434, 28 L. Ed. 2d 788(1971), and it was not here. Plaintiffs have filed a motion for leave to amend, but untimeliness alone is an adequate reason to refuse the requested leave. See, e.g., *Duncan v. Manager. Dep't of Safety, City and County of Denver*, 397 F.3d 1300, 1315 (10th Cir. 2005). Plaintiffs have not offered any explanation for their failure to allege issue preclusion when they filed the motion for leave to file a fourth amended complaint on June 22, 2005, the same day they filed their cross motion for partial summary judgment. The Mayo decision on which they rely for this argument was issued in August 2002, and the Fifth Circuit affirmed on January 5, 2004.

Under Texas law, "while the judgment requirement for collateral estoppel does not always require a final, appealable judgment, the test for finality is 'whether the conclusion in question is procedurally definite.' *Restatement (Second) of Judgments § 13, comment(g)*(1982). [*54] " *Van Dyke v. Boswell, O'Toole, Davis & Pickering*, 697 S. W.2d 381, 385, 28 Tex. Sup. Ct. J. 457 (Tex. 1985). In determining finality, a court is to consider whether "the parties were fully heard, [whether] the court supported its decision with a reasoned opinion [and whether] the decision was subject to appeal or was in fact reviewed on appeal." Id. (quoting *Restatement (Second) of Judgments § 13, comment(g)*(1982)). Wal-Mart contends that each of these factors is met with respect to those portions upon which plaintiffs rely except the ERISA determination, which was not certified for interlocutory appeal. [17]

> 17  Wal-Mart also asserts that a settlement was reached the day before the Fifth Circuit issued its decision in Mayo and plaintiffs' counsel knew that it would end the Mayo litigation as to Wal-Mart. Yet, they did not raise the possibility that they would assert issue preclusion in this case, and thus they deprived Wal-Mart of any meaningful opportunity to include that issue in the Mayo settlement negotiations.

[*55] Final judgment was entered in the Mayo district court case on October 29, 2004. However, if one assumes that the Mayo court decided the issue of whether Wal-Mart put its employees on written notice of its COLI policies by distributing the 1993 brochure, the Van Dyke factors were met when the Mayo decision was issued in August 2002, or, at the latest, when the Fifth Circuit

affirmed on January 5, 2004. Plaintiffs' assertion of collateral estoppel or issue preclusion is untimely.

As discussed above, issue preclusion is also unavailable because the issue here is not identical to that decided in *Mayo* or the AIG case in Delaware, and it would be unfair to Wal-Mart to apply the doctrine given the decisions in *Rice* and *Keenan*. The doctrine of collateral estoppel or issue preclusion does not bar Wal-Mart from arguing that it made effective disclosures to its employees or that those employees' personal representatives had notice. Nor does it bar Wal-Mart from asserting its affirmative defenses. Of course, that does not mean that Wal-Mart will ultimately be successful; it merely means that plaintiffs are not entitled to summary judgment with regard to Wal-Mart's [*56] affirmative defenses as to the statutory claim relating to Alene Jacobson.

### 3. Insurable Interest

#### a. "Special Importance"

Alene Jacobson was insured on December 28, 1993; she died on November 4, 1996; death benefits were paid by the insurer to Wal-Mart on November 14, 1996. Wal-Mart agrees that, if Oklahoma law applies, the statute in effect in 1993 is applicable to the statutory violation claim of Alene Jacobson's personal representative, Kenneth Frank Jacobson. [18] In relevant part, the statute provides:

> Except as provided in subsection D of this section, no person shall procure or cause to be procured any insurance contract upon the life or body of another individual unless the benefits under such contract are payable to the individual insured or his personal representatives, or to person having, at the time when such contract was made, an insurable interest in the individual insured.
>
> * * *
>
> "Insurable interest" with reference to personal insurance includes only interests as follows:
>
> 1. In the case of individuals related closely by blood or by law, a substantial

2005 U.S. Dist. LEXIS 34470, *56

interests engendered by love and affection;

2. In the case of other persons, a lawful [*57] and substantial economic interest in having the life, health, or bodily safety of the individual insured continue, as distinguished from an interest which would arise only by, or would be enhanced in value by, the death, disablement or injury of the individual insured; . . . .

*Okla. Stat. tit. 36, § 3604(A), (C).*

18    As Wal-Mart points out, Oklahoma's insurable interest statute was amended, effective July 1, 1994, to permit employers to insure the life of any employee who gives written consent. As Alene Jacobson did not provide written consent, Wal-Mart references the 1994 amendment merely to imply that public policy in Oklahoma does not view COLI policies as "abhorrent." Supp. Br., Dkt. # 137, at 13.

In Tillman, the Tenth Circuit held that, under the 1993 version of the statute, the employer had no insurable interest in the life of the plaintiff, a "rank-and-file" employee as distinguished from a "key" employee. *408 F.3d at 1306-07.* The Tenth Circuit stated:

Absent evidence [*58] of considerable expenditures in relation to the company's overall budget or other relevant evidence establishing the substantial nature of the expenditure, human resources' monies spent to attract and keep employees is a general cost of doing business and is not sufficient alone to support a finding of a *substantial* interest in a specific employee's continued life.

*Id. at 1306* (emphasis in original). Wal-Mart seizes upon this statement in an effort to show that it has the evidence Tillman lacked. However, Wal-Mart presents its "economic interest" evidence in terms of what it spends on all of its employees, not on Alene Jacobson or any of the other plaintiffs in particular. Alene Jacobson was a telephone switch-board operator insured under the AIG policy in the face amount of $ 62,056. Wal-Mart's argument ignores the Tenth Circuit's requirement that the employer establish each insured employee's "special

importance" to the company. Id. The Tenth Circuit characterized the evidence submitted by the employer as "costs associated with Camelot's general employees, not just with those who add significant pecuniary benefit to the company." Id. This Court [*59] agrees that Wal-Mart's COLI plans did not implicate the public policy served by Oklahoma's insurable interest statute, i.e., to prevent "speculating upon the hazards of a life." *Mutual Aid Union v. Stephens, 1924 OK 215, 97 Okla. 283, 223 P. 648, 649 (Okla. 1924).* The Court is also mindful of the amendment to the statute in 1994 which permits an employer or trust to have an insurable interest "in nonmanagement and retired employees to an amount agreed to by the employee or in the absence of such agreement an amount of aggregate projected death benefits commensurate with the aggregate projected liabilities to such employees under all employee welfare benefit plans, . . ." Id. *§ 3604(C)(4)(d).* [19] Nonetheless, Tillman dictates that the Court's ruling be specific to the individual insured. Wal-Mart has not established that it had a substantial interest in Alene Jacobson's life or that she was of "special importance" to the company. Hence, Wal-Mart had no insurable interest in her life.

19    In this respect, the 1994 amendment is consistent with a recent ruling by a federal court in Minnesota holding that, under Colorado common law, a corporate employer may have an insurable interest in the lives of "non-key" employees who consented to be insured under the employer's corporate-owned life insurance policies. *Xcel Energy, Inc. v. United States of America, 2005 U.S. Dist. LEXIS 25461, No. Civ. 04-1449DWFFLN, 2005 WL 2577112 (D. Minn. Oct. 12, 2005).* The Xcel court also reasoned that the employer had a "reasonable right to expect some pecuniary advantage from a continuance of the life of [its employees] or to fear the loss from [their] death." *Id. 2005 U.S. Dist. LEXIS 25461 at *5* (quoting *Lampkin v. Travelers' Ins. Co., 11 Colo. App. 249, 52 P. 1040, 1045 (Colo. Ct. App. 1898)).*

### [*60] b. Constructive Delivery

Wal-Mart argues that Oklahoma law is inapplicable because its COLI policies were issued and delivered in Georgia, a state which permits employers to have an insurable interest in the lives of rank-and-file employees. Again, Tillman is dispositive as to this issue. In Tillman,

the Tenth Circuit held the COLI policy at issue had been "constructively delivered" within Oklahoma for purposes of applying Oklahoma's insurable interest statute. *408 F.3d at 1303-04.* The Oklahoma Insurance Code does not apply to "policies or contracts not issued for delivery in Oklahoma nor delivered in Oklahoma, except upon subjects of insurance other than life and disability insurance located or to be performed in Oklahoma, . . ." *Okla. Stat. tit. 36, § 3601.* The Tenth Circuit noted that the insurer had never produced, and the employer had never received, a physical copy of the policy; further, the insurer had provided a form insurance contract to the employer in another state and generated the rest of the contracts electronically. However, the Tenth Circuit found that the policy was constructively delivered in Oklahoma where the insurance contract stated [*61] that "information regarding the method of calculating policy value and cost of insurance 'has been filed with the insurance official in the jurisdiction in which this policy is delivered,'" and the employer conceded that it filed the policy with the Oklahoma Department of Insurance for approval. *408 F.3d at 1304.*

Wal-Mart does not concede that it filed its COLI policy with the Oklahoma Department of Insurance for approval. Wal-Mart relies on the actual physical delivery, in Georgia, of the AIG master policy, and the language of the policy indicating that the policy was issued in Georgia, on forms approved by the Georgia Department of Insurance. Wal-Mart acknowledges that AIG filed a form policy with the Oklahoma Department of Insurance, but that policy, Wal-Mart contends, was on a form that differed from the policies later issued and delivered to the Trust in Georgia and had nothing to do with AIG's sale of Georgia-form policies to the Wal-Mart Trust. Wal-Mart also concedes that AIG paid premium taxes to states, including Oklahoma, in which the insured employees resided. *Okla. Stat. tit. 36, § 624* requires a foreign insurer to pay such taxes. Wal-Mart argues, however, [*62] that such payment does not reflect any intention of the parties for Wal-Mart's policies to be delivered in Oklahoma for purposes of *section 3601.*

The Court finds these arguments unavailing. It is clear that Wal-Mart intended for Georgia law to govern any disputes as to insurable interest, given the favorable treatment Georgia law gave COLI policies at the time. Nonetheless, AIG filed a form of the Wal-Mart COLI policy with the Oklahoma Department of Insurance and paid premium taxes to the state. In this respect, the Court

is particularly cognizant of the Tenth Circuit's comment in Tillman: "Interpreting the statute to require physical delivery of the contract within state borders would allow all insurance companies to skirt Oklahoma insurance regulations merely by electronically storing the insurance contracts in another jurisdiction." *408 F.3d at 1304.* Wal-Mart, via AIG, "delivered" its COLI policy in Oklahoma. Holding otherwise would permit Wal-Mart to unjustifiably "skirt Oklahoma insurance regulations."

### c. Choice of Law

Wal-Mart also argues that Georgia law applies because Oklahoma follows the *lex loci contractus* rule whereby "the nature, validity [*63] and interpretation of a contract is governed by the law where the contract is made." *Bohannan v. Allstate Ins. Co., 1991 OK 64, 820 P.2d 787, 797 (Okla. 1991).* Further, Wal-Mart argues that, if there were a conflict between Oklahoma and Georgia law concerning the existence of Wal-Mart's insurable interest, Georgia law governs. As plaintiffs point out, this Court already rejected those arguments. In Tillman, this Court concluded that Oklahoma law applied primarily because the relationship between the employer and employee was centered in Oklahoma, the employee's death triggered the employer's right to claim benefits under the policy, the employee lived, worked for the employer, and died, in Oklahoma, and the employer was domesticated in Oklahoma and did business here. *Tillman, 2003 U.S. Dist. LEXIS 21662, 02-CV-761-EA(J), slip op. at 12.*

In Oklahoma, conflict of laws relating to contracts is governed under the *lex loci contractus* rule unless the law of the state where the contract was made is "contrary to the public policy of Oklahoma, or unless the facts demonstrate that another jurisdiction has the most significant relationship with the subject matter and the parties." *Bohannan v. Allstate Ins. Co., 1991 OK 64, 820 P. 2d 787, 797 (Okla. 1991).* [*64] Like Wal-Mart, Camelot argued in part that Georgia law should apply because the parties to the COLI policy intended for Georgia law to apply and performed certain acts to reflect that intention. *Tillman, 2003 U.S. Dist. LEXIS 21662, 02-CV-761-EA(J), slip op. at 7.* This Court rejected Camelot's argument because the plaintiff was not suing for breach of contract. *Id. 2003 U.S. Dist. LEXIS 21662, at 8.* The Tillman plaintiff sued for violation of an Oklahoma statute, and for unjust enrichment as a result of conduct allegedly in violation of that statute. This Court

reasoned that neither the employee nor the plaintiff representing him signed the contract, and that Camelot was doing business in Oklahoma and was subject to the same obligations as an Oklahoma corporation. *Okla. Stat. tit. 18, § 1130(D)*. In particular, Camelot was subject to Oklahoma's laws concerning its relationship with its employees. See id.*§§ tit. 40, 165.1-187*. The Tillman case, like this one, did not involve a dispute between an employer and its life insurance company. *Tillman, 2003 U.S. Dist. LEXIS 21662, 02-CV-761-EA(J), slip op. at 8.*

This Court found persuasive the analysis by the district court in Mayo, which applied the "most significant relationship test" described in [*65] the Restatement (Second) of Conflict of Laws (hereinafter "Restatement") *§ 6* (1971), as well as the contacts listed in Restatement *§ 188* applicable to contract actions. See *Mayo, 220 F. Supp. 2d at 728-63.* However, as it was not clear whether Oklahoma courts would apply this test, this Court also found instructive Restatement *§ 192*, which specifically addresses life insurance contracts, and Restatement *§ 221*, which applies to claims for unjust enrichment not sounding in contract or tort. *Tillman, 2003 U.S. Dist. LEXIS 21662, 02-CV-761-EA(J), slip op. at 8-10.* Relying on Bohannan as well as the Restatement, this Court found that Oklahoma had the most significant relationship with the subject matter and the parties. *Tillman, 2003 U.S. Dist. LEXIS 21662, 02-CV-761-EA(J), slip op. at 11-12.*

The Tenth Circuit did not address this analysis on appeal; instead, the Tenth Circuit held that Oklahoma law applied because Camelot's COLI policy was constructively delivered in Oklahoma. See *Tillman, 408 F.3d at 1303-04.* The Fifth Circuit did address this issue in its review of the district court decision in Mayo, and like this Court, found that a contract choice of law analysis [*66] was not appropriate because the employee was not a party to the insurance contract on his life. *354 F.3d at 403-04.* The Fifth Circuit analyzed the argument by reference to Restatement *§§ 145* (relevant to tort actions), *188, 192,* and *221,* and affirmed the lower court's ruling that Texas law applied. *Mayo, 354 F.3d at 404-06.*

Alene Jacobson was not party to the COLI insurance policy contract between Wal-Mart and AIG. Her personal representative has sued for violation of an Oklahoma statute. Wal-Mart does business in Oklahoma and is subject to the same obligations as an Oklahoma

corporation. *Okla. Stat. tit. 18, § 1130(D)*. In particular, Wal-Mart is subject to Oklahoma's laws concerning its relationship with its employees. See id. *§§ tit. 40, 165.1-187.* This case does not involve a dispute between Wal-Mart and AIG. Oklahoma law applies not only because the policy was constructively delivered here, but also because (1) the relationship between Wal-Mart and Jacobson was centered in Oklahoma, (2) her death triggered Wal-Mart's right to claim benefits under the policy, (3) she lived, worked for Wal-Mart, and died, in Oklahoma, and (4) Wal-Mart is domesticated [*67] in Oklahoma and does business here. Since Oklahoma law forbade Wal-Mart from procuring an insurance contract upon her life, Jacobson is entitled to judgment as a matter of law on the merits of this claim if the finder of fact determines that the statute of limitations has not run.

**B. Unjust Enrichment**

Plaintiffs' unjust enrichment claim is based on plaintiffs' assertion that Wal-Mart was enriched by the receipt of benefit payments upon the deaths of Jacobson, Lewis, Bizal-Webb, and Brown. As shown above, Wal-Mart received a death benefit under its COLI policy for only one of the Wal-Mart employees represented by a plaintiff in this action, Alene Jacobson. Thus, none of the other plaintiffs has standing to assert an unjust enrichment claim. As to Jacobson's unjust enrichment claim, plaintiffs initially intermingled it with their other claims by arguing that Wal-Mart was unjust enriched by misappropriating confidential information on Wal-Mart employees to obtain the COLI policies and it did so in violation of the Oklahoma statute mandating that no life insurance policy may be taken out on an individual without that individual's consent.

The Tenth Circuit's decision in [*68] Tillman is dispositive as to the claim for unjust enrichment. The Tenth Circuit affirmed summary judgment on this claim because Camelot, the employer, did not retain a benefit "at the expense of another,"and because the alleged enrichment was not "coupled with a resulting injustice." *Tillman, 408 F.3d at 1309* (quoting *Lapkin v. Garland Bloodworth, Inc., 2001 OK CIV APP 29, 23 P.3d 958, 961 (Okla. Ct. App. 2000),* and *Teel v. Public Serv. Co. of Okla., 1985 OK 112, 767 P.2d 391, 398 (Okla. 1985)*(superceded by statute on other grounds)). The Tenth Circuit explained: "In this case, there is no evidence of an advantage enuring to Camelot's benefit at Mr. Tillman's expense. Camelot paid all of the premiums

Case 1:08-cv-02429-DAB    Document 8-2    Filed 03/26/2008    Page 20 of 22

Page 19
2005 U.S. Dist. LEXIS 34470, *68

for the COLI policy on Mr. Tillman's life, In so doing, Mr. Tillman was not prevented from obtaining life insurance himself." Id.

The Tenth Circuit also found that the alleged enrichment, i.e., the death benefit paid to the employer, did not result in the injustice for which the plaintiff complained: that the employer violated the law in obtaining insurance on the employee's life. Citing to Oklahoma law preventing courts from invoking their equitable jurisdiction [*69] "when an adequate legal remedy is available. *Hydro Turf, Inc. v. International Fidelity Ins. Co., 2004 OK CIV APP 45, 91 P.3d 667, 673 (Okla. Ct. App. 2004)*, the Tenth Circuit held that the Tillman plaintiff had an adequate remedy at law under *section 3604* of Oklahoma insurance code. Id. Similarly, no advantage enured to Wal-Mart's benefit at Jacobson's expense, and Jacobson's personal representative has an adequate remedy at law under *Okla. Stat. tit. 36, § 3604* if he proves to the finder of fact that the statute of limitations has not run.

Plaintiffs argue that the Tenth Circuit erred because it did not consider *Okla. Stat. tit. 36, § 3607*, which grants all persons the right to choose who may benefit from their death by requiring an application or consent from the insured person before any insurance contract may be made. They assert that Wal-Mart was enriched by taking the statutory right from its employees when it used their personal information, obtained through the employer/employee relationship, to insure its employees' lives without their consent. The Court views this argument as another version of plaintiffs' misappropriation claim, which would lend credence to the [*70] Tenth Circuit's point: where an adequate remedy at law is available to plaintiffs through another claim, the court should not invoke its equitable jurisdiction to address the unjust enrichment issue. Wal-Mart is entitled to summary judgment on plaintiffs' unjust enrichment claim.

## C. Misappropriation

Plaintiffs seize upon a footnote in the Tillman decision of the Tenth Circuit discussing the unjust enrichment claim. There, the Tenth Circuit stated:

> Plaintiff not only claims violation of statute as a basis for the unjust enrichment claim, but also claims Camelot improperly used confidential information to obtain the

COLI policy. . . . Had Plaintiff properly pled invasion of privacy as one of the bases for the unjust enrichment claim, Plaintiff may have had another adequate remedy at law. *McCormack v. Oklahoma Pub. Co., 1980 OK 98, 613 P.2d 737, 740 (Okla. 1980)*.

*408 F.3d at 1309 n.9.* [20] Plaintiffs claim that Wal-Mart committed the tort of misappropriation, one of the four invasion of privacy torts, when it used its employees' names, Social Security numbers, dates of birth and other information for the commercial purpose of buying COLI [*71] policies on their lives and receiving death benefits when they died.

> 20   This dictum does not necessarily imply that the Tillman plaintiff would have succeeded on the merits of a misappropriation claim or that the statute of limitations for such claim had not run.

In its original motion for summary judgment, Wal-Mart essentially claimed that its limited use of basic employee information in the purchase of COLI policies does not constitute misappropriation because, as the Rice court found, "Wal-Mart did not exploit [its insured employees'] reputations or prestige when it purchased COLI policies in their names." *Rice, 2003 U.S. Dist. LEXIS 17288, 2003 WL 22240349, at *2.* Plaintiffs counter that Wal-Mart's reliance on Rice is misplaced because the Rice court relied on New Hampshire law for which there is no similar precedent under Oklahoma law. Relying upon the Restatement (Second) of Torts, plaintiffs contend that misappropriation claims are not limited to instances where the plaintiff's name is used [*72] for good will or publicity in advertisements.

In *McCormack v. Oklahoma Pub. Co., 1980 OK 98, 613 P.2d 737 (Okla. 1980)*, the Oklahoma Supreme Court recognized the tort of invasion of privacy in all four categories as set out in the Restatement, *Id. at 740*. Those categories are:

> (a) unreasonable intrusion upon the seclusion of another, as stated in *§ 652B*; or

> (b) appropriation of the other's name or likeness, as stated in *§ 652C*; or

2005 U.S. Dist. LEXIS 34470, *72

(c) unreasonable publicity given to the other's private life, as stated in § 652D; or

(d) publicity that unreasonably places the other in a false light before the public, as stated in § 652E.

Restatement, § 652A(1977). Plaintiffs rely on the second category. Section 652C provides: "One who appropriates to his own use or benefit the name or likeness of another is subject to liability to the other for invasion of his privacy." Id. Comment b to the section is significant:

The common form of invasion of privacy under the rule here stated is the appropriation and use of the plaintiff's name or likeness to advertise the defendant's business or product, or for some similar commercial purpose. [*73] Apart from statute, however, the rule stated is not limited to commercial appropriation. It applies also when the defendant makes use of the plaintiff's name or likeness for his own purposes and benefit, even though the use is not a commercial one, and even though the benefit sought to be obtained is not a pecuniary one. Statutes in some states have, however, limited the liability to commercial uses of the name or likeness.

Id. The Reporter's Note states: "Under the statutes in New York, Oklahoma, Utah, and Virginia, the appropriation must be for advertising, or for purposes of trade." Id. There is no specific reference as to the applicable statute in Oklahoma, but presumably the Reporter was referring to Okla. Stat. tit. 21, § 839.1-.3 and Okla. Stat. tit. 12, § 1449, which Wal-Mart argues are not applicable under the facts of this case because the information about the individuals represented by plaintiffs was not used "for purposes of advertising or selling, or soliciting purchases of products, merchandise, goods or services, . . ." Okla. Stat. tit. 12, § 1449. Indeed, section 1449 is commonly referenced as Oklahoma's "right of publicity" statute. See, e.g. [*74] , Cardtoons, L.C. v. Major League Baseball Players Ass'n, 868 F.Supp. 1266, 1268(N.D.Okla. 1994). "The purpose of the Oklahoma statute is to protect individuals, celebrities or otherwise, from having distinguishing characteristics of their person exploited, to the commercial benefit of another." Id. at 1269.

Here, the information about the Wal-Mart employees represented by plaintiffs was used to obtain a life insurance policy, which is arguably a commercial contract. The issue is not whether the employees were "celebrities," but whether the information was used to Wal-Mart's commercial benefit. Plaintiffs rely on the common law -- they have not alleged a violation of Oklahoma's right of publicity statute. The Court finds the Tenth Circuit dictum in Tillman persuasive. Wal-Mart obtained, or sought to obtain, tax benefits, and it received death benefits upon the death of Alene Jacobson. Whether these could be considered "commercial" benefits is for the finder of fact to decide.

In addition, the finder of fact will have to decide whether the factual issues inherent in the analysis of the statute of limitations or other affirmative defenses bar plaintiffs' [*75] misappropriation claim, and, if not, whether those plaintiffs are entitled to any damages. Plaintiffs representing former Wal-Mart employees Alice Fay Haskins, Irene Brasher and Troy Allen Brasher were never insured under Wal-Mart's COLI policies and, as there is no evidence indicating that Wal-Mart used personal information about them to obtain life insurance, they have no standing to assert a misappropriation claim. All of the remaining five named plaintiffs have standing because Wal-Mart used personal information about them to obtain life insurance. The issue for the plaintiffs representing employees for whom Wal-Mart received no death benefits is whether they can prove damages. Those employees were Hazel Lee Sarty, Nellie Mae Lewis, Shelly Bizal-Webb, and Eavy Marie Brown. Proving damages does not present the same problem for the plaintiff representing Alene Jacobson, but the issues relating to the statute of limitations and other defenses remain for that plaintiff as well as the plaintiffs representing Sarty, Lewis, Bizal-Webb and Brown.

Plaintiffs' misappropriation claim against Wal-Mart is governed by a one-year statute of limitations if it is characterized as an action for [*76] defamation; a two-year limitations period applies if it is characterized as an action for invasion of privacy. See Okla. Stat. tit. 12, P 95(3), (4). The same considerations discussed above in reference to Wal-Mart's statute of limitations defense to plaintiff Jacobson' statutory violation claim and in reference to Wal-Mart's affirmative defenses of consent, waiver, estoppel, and laches are relevant here. A genuine issue of material fact exists as to if and when Wal-Mart employees Sarty, Lewis, Bizal-Webb, Brown, and

2005 U.S. Dist. LEXIS 34470, *76

Jacobson received notice of Wal-Mart's COLI policies, which would have triggered their right to assert a misappropriation claim.

Accordingly, Wal-Mart is entitled to summary judgment on the misappropriation claims of plaintiff Janet Switzer (representing the estates of Troy Allen Brasher and Irene Brasher) and Terry Scott Shelnut (representing the estate of Alice Fay Haskins). Wal-Mart is not entitled to summary judgment on the misappropriation claim of Herbert Sarty (representing the estate of Hazel Lee Sarty),

Frank O. Lewis (representing the estate of Nellie Mae Lewis), Rodney Bizal (representing the estate of Shelly Bizal-Webb), Jeff Todd Brown and Tab Art [*77] Brown (representing the estate of Eavy Marie Brown), and Kenneth Frank Jacobson (representing the estate of Alene Jacobson).

**IV.**

Construing all of the evidence in the light most favorable to plaintiffs, the Court finds that (1) there is a genuine issue of material fact as to whether Wal-Mart employee Alene Jacobson and her personal representative had notice of the Wal-Mart COLI policy insuring Alene Jacobson's life and, thus, whether the statute of limitations precludes the statutory violation claim of Kenneth Frank Jacobson, Alene Jacobson's personal representative; (2) there are genuine issues of material fact as to Wal-Mart's affirmative defenses; (3) all other plaintiffs lack standing as to the claim for violation of the insurable interest statute; (4) there is no genuine issue of material fact as to all plaintiffs' claims for unjust enrichment; and (5) genuine issues of material fact exist as to the claims of plaintiffs Kenneth Frank Jacobson (personal representative of the estate of Alene Jacobson), Herbert Sarty (personal representative of the estate of

Hazel Lee Sarty), Frank O. Lewis (personal representative of the estate of Nellie May Lewis), Rodney Bizal (personal [*78] representative of the estate of Shelly Bizal-Webb), Jeff Todd Brown and Tab Art Brown (personal representatives of the estate of Eavy Marie Brown) for misappropriation.

Wal-Mart is entitled to dismissal for lack of standing of the statutory violation claims of all plaintiffs except Kenneth Frank Jacobson. Wal-Mart is entitled to summary judgment as to the unjust enrichment claims of all plaintiffs, and the misappropriation claims of Janet Switzer (personal representative of the estates of Troy Allen Brasher and Irene Brasher) and Terry Scott Shelnut (personal representative of Alice Fay Haskins' estate), as the Wal-Mart employees represented by these plaintiffs were never insured. Plaintiffs are entitled to partial summary judgment that Wal-Mart had no insurable interest in the lives of its rank-and-file employees in Oklahoma, but not as to Wal-Mart's affirmative defenses.

Accordingly, the Wal-Mart Defendants' Motion for Summary Judgment (Dkt. # 88) is **granted in part and denied in part;** the Plaintiffs' Cross-Motion for Summary Judgment (Dkt. # 133) is **granted in part and denied in part.** The only remaining claims in this lawsuit are the statutory violation claim of Kenneth [*79] Frank Jacobson and the claims for misappropriation asserted by Kenneth Frank Jacobson, Herbert Sarty, Frank O. Lewis, Rodney Bizal, Jeff Todd Brown and Tab Art Brown. All of Wal-Mart's affirmative defenses remain.

**IT IS SO ORDERED** this 1st day of December, 2005.

CLAIRE V. EAGAN, CHIEF JUDGE

UNITED STATES DISTRICT COURT