UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------- x

ALICE KRAMER, as Personal Representative of the
Estate of Arthur Kramer,

                Plaintiff,

– against –

LOCKWOOD PENSION SERVICES, INC., TALL
TREE ADVISORS, INC., LIFE PRODUCTS
CLEARING, LLC, TRANSAMERICA
OCCIDENTAL LIFE INSURANCE CO., PHOENIX
LIFE INSURANCE CO., LINCOLN LIFE &
ANNUITY CO. OF NEW YORK AND
JONATHAN S. BERCK,

                Defendants.

--------------------------------------- x

Civil Action No.

08 CV 2429 (DAB)(MHD)

ECF Case

AMENDED COMPLAINT



RECEIVED MAY 07 2008 U.S.D.C. S.D.N.Y. CASHIERS

    Plaintiff Alice Kramer, in her fiduciary capacity as the Personal Representative of the Estate of Arthur Kramer ("Plaintiff"), by and through her attorneys, Friedman & Wittenstein, A Professional Corporation, hereby alleges as follows for her Amended Complaint:

## PARTIES

    1.    Plaintiff is a citizen of the state of Connecticut, and resides in Stamford, Connecticut. She is the widow of Arthur Kramer and the Personal Representative of his Estate. She brings this action in that capacity.

    2.    Mr. Kramer died on January 26, 2008. At the time of his death, he was a citizen of the state of Connecticut.

    3.    Upon information and belief, defendant Lockwood Pension Services, Inc. ("LPS") is a New York corporation with its principal place of business located in New York, New York.

4. Upon information and belief, defendant Tall Tree Advisors, Inc. ("TTA") is a New York corporation with its principal place of business located in Pleasantville, New York.

5. Upon information and belief, defendant Life Products Clearing, LLC ("Life Products") is a Delaware limited liability company with its principal place of business located in New York, New York.

6. Upon information and belief, defendant Transamerica Occidental Life Insurance Co. ("Transamerica") is an Iowa corporation with its principal place of business located in Cedar Rapids, Iowa.

7. Upon information and belief, defendant Phoenix Life Insurance Co. ("Phoenix") is a New York corporation with its principal place of business located in East Greenbush, New York.

8. Upon information and belief, defendant Lincoln Life & Annuity Co. of New York ("Lincoln") is a New York corporation with its principal place of business located in Syracuse, New York.

9. Upon information and belief, defendant Jonathan S. Berck is a citizen of the state of New Jersey.

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction over this action pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, because an actual controversy exists among the parties; and pursuant to 28 U.S.C. § 1332(a) and (c) in that the parties are citizens of different states and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

11. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(a)(2) because a substantial part of the events giving rise to Plaintiff's claims occurred here.

## **BACKGROUND**

12. This action involves an arrangement to procure life insurance policies with the purpose of immediately transferring the beneficial interests in those policies to stranger investors, in contravention of the "insurable interest rule" as codified in the New York Insurance Law. As described herein, in a case such as this, where the procurement of life insurance violates the insurable interest rule, the remedy is either that the death benefits be paid to the personal representative of the decedent's estate (in this case, the Plaintiff) or, if already paid to a stranger investor, that they be disgorged and paid to the personal representative.

13. The "insurable interest rule" is a well-settled principle in New York insurance law that prevents the issuance of wager life insurance policies. New York Insurance Law Section 3205(b)(2) provides that one may not obtain an insurance policy on the life of another without having an "insurable interest" in the insured's life.

14. It is against public policy for parties to circumvent the insurable interest rule by participating in the procurement of what is known as "stranger-owned life insurance" ("SOLI"). A typical SOLI arrangement is initiated by a stranger investor or an insurance agent who approaches an elderly person and encourages him to purchase life insurance, the death benefits of which will be immediately transferred to the stranger investor. The appeal of a SOLI arrangement is that the purchase of life insurance is represented to the elderly person as a way to receive a payment of money on a risk-free basis at little or no cost. The investor typically agrees to pay the person an up-front payment in addition to paying the insurance premiums in return for the assignment of the ownership interest in the policy. The common characteristic of all SOLI arrangements is that they are structured so that the elderly person or a family member, rather than the stranger investor, is made to appear as the original beneficiary of the policy in order to

try to evade the insurable interest requirement. Such arrangements are contrary to public policy because they enable investors to speculate or wager on a person's death.

15. As further described below, defendants participated in an elaborate and unlawful SOLI arrangement where every detail, from drafting the trust agreements to choosing the trustees and investors, was structured for the sole purpose of trying to avoid the insurable interest rule. The arrangement was implemented by defendants to create the appearance that an insurable interest existed when Mr. Kramer took out several policies, so that the subsequent transfers of the beneficial interests in those policies to the stranger investors would appear lawful. However, the transfers to investors took place <u>immediately</u> upon Mr. Kramer's obtaining of the policies at issue, and that was always their plan. At no time were Mr. Kramer or any of his family members the true owners of the beneficial interests in the policies. Upon information and belief, Mr. Kramer never intended for the death benefits of the insurance policies to benefit his family.

16. The putative assignments of the beneficial interests in the death benefits of the policies are void under New York law.

## FACTS

17. Arthur Kramer was a retired attorney at the time of his death on January 26, 2008 at the age of 81.

18. Upon information and belief, as early as 2003, Steven Lockwood, the principal of LPS, approached Mr. Kramer to solicit his participation in a SOLI arrangement.

19. Upon information and belief, during 2005, Mr. Lockwood introduced Mr. Kramer to the SOLI arrangement that is the subject matter of this litigation.

20. Upon information and belief, the SOLI arrangement worked as follows: Mr. Kramer, at the direction of LPS and possibly other defendants, would establish trusts, naming

4

himself as the depositor and one or more of his children as the initial beneficiaries. An LPS affiliated person or entity would be appointed as the trustee. The witnesses to the trust instrument would be Mr. Lockwood and one of his associates. Upon the issuance of the policies, Mr. Kramer, again acting at the direction of LPS and possibly other defendants, would immediately direct his children to execute a putative assignment of their nominal interest in the trust to a stranger third-party investor arranged by Mr. Lockwood. (The three children from Mr. Kramer's marriage to Plaintiff are Andrew Kramer ("Andrew"), Rebecca Kramer ("Rebecca") and Liza Kramer ("Liza")).

21.     Upon information and belief, the insurance policies were procured on Mr. Kramer's life with the intention of _immediately_ effectuating the assignment of the beneficial interests in the policies to an investor. At no time would Mr. Kramer or any of his family members have a true beneficial interest in the policies.

22.     Upon information and belief, LPS and certain other defendants employed the above-described SOLI arrangement with respect to a series of life insurance policies totaling approximately $56,200,000 on the life of Mr. Kramer. These policies were issued by defendants Transamerica, Phoenix and Lincoln.

**The Transamerica Policies**

23.     On or about June 6, 2005, Mr. Kramer, at the direction of LPS and possibly other defendants, established the Arthur Kramer Insurance Trust (the "June Trust") and named Lori Callegari as trustee. Mr. Kramer also listed Andrew and Rebecca as the putative beneficiaries thereunder. Mr. Lockwood and his associate witnessed the June Trust agreement. Under the terms of the June Trust agreement, the trust is governed by New York law.

24. Upon information and belief, the June Trust agreement was prepared by counsel for LPS, and Mr. Kramer had no involvement in its drafting.

25. Upon information and belief, Mr. Kramer had no prior business relationship with Ms. Callegari, who at the time was employed by LPS or TTA. Upon information and belief, Ms. Callegari is presently a Vice President of LPS, and works for Mr. Lockwood at 75 Rockefeller Plaza.

26. Upon information and belief, Ms. Callegari is no longer the trustee of the June Trust. Upon information and belief, defendant Jonathan S. Berck is the current trustee.

27. Upon information and belief, Mr. Kramer had no business relationship with defendant Mr. Berck prior to the SOLI arrangement that is the subject matter of this litigation.

28. Upon information and belief, in June and July 2005, Transamerica issued one or more insurance policies to the June Trust having a total death benefit of approximately $18,200,000 (the "Transamerica Policies") on the life of Mr. Kramer.

29. Upon information and belief, upon issuance of the policies, and at the direction of LPS and possibly other defendants, Mr. Kramer directed Andrew and Rebecca to execute putative assignments of their beneficial interests in the June Trust to stranger investor TTA.

30. Upon information and belief, at the direction of LPS and possibly other defendants, in 2007, defendant Mr. Berck in his capacity as trustee of the June Trust, sold the ownership interests in the Transamerica Policies to a non-party individual or entity.

31. Mr. Kramer, Andrew and Rebecca never paid any premiums on the Transamerica Policies, and there was no period of time when Andrew and Rebecca were the true beneficiaries of the June Trust after the Transamerica Policies were issued.

**The Phoenix Policies**

32.   On or about August 29, 2005, Mr. Kramer, at the direction of LPS and possibly other defendants, established the Arthur Kramer 2005 Insurance Trust (the "August Trust") and named Hudson United Bank ("Hudson") as trustee. Mr. Kramer also listed Liza as the putative beneficiary thereunder. Mr. Lockwood and one of his associates witnessed the August Trust agreement. Under the terms of the August Trust agreement, the trust is governed by New York law.

33.   Upon information and belief, the August Trust agreement was prepared by counsel for LPS, and Mr. Kramer had no involvement in its drafting.

34.   Upon information and belief, at the time the August Trust was created, Hudson and LPS had a pre-existing business relationship and shared the same business address at 75 Rockefeller Plaza, New York, New York.

35.   Upon information and belief, Mr. Kramer had no prior business relationship with Hudson.

36.   Upon information and belief, Hudson is no longer the trustee of the August Trust. Upon information and belief, defendant Mr. Berck is the current trustee.

37.   Upon information and belief, in July 2005, Phoenix issued one or more insurance policies to the August Trust having a total death benefit of approximately $28,000,000 (the "Phoenix Policies") on the life of Mr. Kramer.

38.   Upon information and belief, upon issuance of the policies, and at the direction of LPS and possibly other defendants, Mr. Kramer directed Liza to execute putative assignments of her beneficial interest in the August Trust to stranger investor TTA.

39.     Upon information and belief, at the direction of LPS and possibly other defendants, in 2007, defendant Mr. Berck in his capacity as trustee of the August Trust, sold the ownership interest in the Phoenix Policies to a non-party individual or entity.

40.     Upon information and belief, Mr. Kramer and Liza never paid any premiums on the Phoenix Policies, and there was no period of time when Liza was the true beneficiary of the August Trust after the Phoenix Policies were issued.

### The Lincoln Policies

41.     Upon information and belief, on or about November 28, 2005, Lincoln issued one or more insurance policies to the August Trust having a total death benefit of $10,000,000 (the "Lincoln Policies") on the life of Mr. Kramer.

42.     Upon information and belief, upon issuance of the policies, and at the direction of LPS and possibly other defendants, Mr. Kramer directed Liza to execute putative assignments of her beneficial interest in the August Trust to stranger investor Life Products.

43.     Mr. Kramer and Liza never paid any premiums on the Lincoln Policies, and there was no period of time when Liza was the true beneficiary of the August Trust after the Lincoln Policies were issued.

### Arthur Kramer's Death

44.     Mr. Kramer died on January 26, 2008.

45.     Subsequently, Plaintiff or her representatives have received various communications from representatives of defendant LPS and certain stranger investors demanding copies of Mr. Kramer's death certificate so that they may submit claims to the insurance companies for a total of approximately $56,200,000 in death benefits. Plaintiff has refused all such requests.

46. Pursuant to New York Insurance Law Section 3203(a)(3), all of the aforementioned life insurance policies are incontestable because they were in force during the life of Mr. Kramer for more than two years. However, upon information and belief, none of the insurance company defendants have paid out the proceeds of any of the policies. On April 9, 2008, approximately one month after the initial Complaint in this action was filed, Phoenix filed a pleading in this action indicating, <u>inter alia</u>, its intention not to pay any death benefits in connection with the Phoenix Policies. On or about April 16, 2008, approximately five weeks after the initial Complaint in this action was filed, defendant Lincoln filed an action in Connecticut state court indicating its intention, <u>inter alia</u>, not to pay any death benefits in connection with the Lincoln Policies. Defendant Transamerica has not yet responded to the initial Complaint in this action, and was granted until June 15, 2008 to do so.

## **FIRST CLAIM FOR RELIEF**

## **(DECLARATORY JUDGMENT)**

47. Plaintiff hereby repeats and realleges each and every allegation contained in paragraphs 1-46 above.

48. New York Insurance Law Section 3203(a)(3) provides:

> (a) All life insurance policies, except as otherwise stated herein, delivered or issued for delivery in this state, shall contain in substance the following provisions, or provisions which the superintendent deems to be more favorable to policyholders:
>
> * * *
>
> (3) that the policy shall be incontestable after being in force during the life of the insured for a period of two years from its date of issue . . .

49. New York Insurance Law Section 3205(b)(2) provides:

> No person shall procure or cause to be procured, directly or by assignment or otherwise any contract of insurance upon the person of another unless the benefits under such contract are payable to the person insured or his personal representatives, or a person having, at the time when such contract is made, an insurable interest in the person insured.

50. New York Insurance Law Section 3205(a)(1) defines an "insurable interest" as "(A) in the case of persons closely related by blood or by law, a substantial interest engendered by love and affection; (B) in the case of other persons, a lawful and substantial economic interest in the continued life, health or bodily safety of the person insured, as distinguished from an interest which would arise only by, or would be enhanced in value by, the death, disablement or injury of the insured."

51. Neither TTA nor Life Products held an insurable interest in the life of Mr. Kramer.

52. TTA and Life Products procured or caused to be procured, directly or by assignment or otherwise, contracts of insurance upon the person of Mr. Kramer.

53. TTA lacked an insurable interest in Mr. Kramer at the time the Transamerica and Phoenix Policies were issued. Life Products lacked an insurable interest in Mr. Kramer at the time the Lincoln Policies were issued.

54. In the case of TTA, the Transamerica and Phoenix Policies on the life of Mr. Kramer were procured with the view to their immediate assignment to TTA. In the case of Life Products, the Lincoln Policies on the life of Mr. Kramer were procured with the view to their immediate assignment to Life Products.

55. Pursuant to New York Insurance Law Sections 3203(a)(3) and 3205(b)(2), Plaintiff is entitled to a declaration that the insurance company defendants must pay the death benefits under the aforementioned policies, and that such death benefits must be paid to her.

## SECOND CLAIM FOR RELIEF

### (AGAINST DEFENDANTS LOCKWOOD PENSION SERVICES, INC., TALL TREE ADVISORS, INC., LIFE PRODUCTS CLEARING, LLC AND JONATHAN S. BERCK FOR THE RECOVERY OF DEATH BENEFITS)

56. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1-55 above.

57. New York Insurance Law Section 3205(b)(4) provides:

> If the beneficiary, assignee or other payee under any contract made in violation of this subsection [(b)] receives from the insurer any benefits hereunder accruing upon the death, disablement or injury of the person insured, the person insured or his executor or administrator may maintain an action to recover such benefits from the person receiving them.

58. In the alternative, if some or all of the death benefits of the aforementioned policies have already been paid to LPS, TTA, Life Products, Mr. Berck or their representatives or assignees, or to other persons or entities that may claim the right to receive such death benefits, then pursuant to this statute, Plaintiff is entitled to recover such death benefits.

WHEREFORE, Plaintiff prays for judgment against Lockwood Pension Services, Inc., Tall Tree Advisors, Inc., Life Products Clearing, LLC, Transamerica Occidental Life Insurance Co., Phoenix Life Insurance Co., Lincoln Life & Annuity Co. of New York and Jonathan S. Berck as follows:

A. Declaring that the insurance company defendants must pay the death benefits under the aforementioned life insurance policies, and that such death benefits must be paid to Plaintiff;

B. Awarding Plaintiff the death benefits of all the aforementioned policies;

C. Awarding Plaintiff reasonable attorneys' fees, and the costs and disbursements of this action; and

D. Awarding Plaintiff such other and further relief as this Court may deem just and proper.

Dated: New York, New York
May 7, 2008

FRIEDMAN & WITTENSTEIN
A Professional Corporation

By: *[signature]*
Stuart I. Friedman (SF-9186)
Andrew A. Wittenstein (AW-1943)
Claire L. Chau (CC-4738)

600 Lexington Avenue
New York, New York 10022
(212) 750-8700

*Attorneys for Plaintiff*