UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

ALICE KRAMER, as Personal Representative of
the Estate of Arthur Kramer,

                             Plaintiff,

              - against -

LOCKWOOD PENSION SERVICES, INC., TALL
TREE ADVISORS, INC., LIFE PRODUCTS
CLEARING, LLC, TRANSAMERICA
OCCIDENTAL LIFE INSURANCE CO., PHOENIX
LIFE INSURANCE CO., LINCOLN LIFE &
ANNUITY CO. OF NEW YORK, AND
JONATHAN S. BERCK,

                        Defendants.

Case No. 08 CV 2429
(DAB)(MHD)

------------------------------------------------------------x

PHOENIX LIFE INSURANCE CO.,

                    Third-Party Plaintiff,

              - against -

STEVEN LOCKWOOD,

                   Third-Party Defendant.

------------------------------------------------------------x

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION
OF DEFENDANTS STEVEN LOCKWOOD, LOCKWOOD PENSION
SERVICES, INC., AND TALL TREE ADVISORS, INC. TO DISMISS
THE THIRD PARTY CLAIMS AND CROSS CLAIMS ASSERTED
BY PHOENIX LIFE INSURANCE CO.**

**ROSENFELD & KAPLAN, L.L.P.**
Attorneys for Defendants Lockwood
Pension Services, Inc. and Tall Tree
Advisors, Inc. and Third Party
Defendant Steven Lockwood
535 Fifth Avenue
Suite 1006
New York, New York 10017
(212) 682-1400

# TABLE OF CONTENTS

Page(s)

TABLE OF AUTHORITIES...................................................................................i

PRELIMINARY STATEMENT........................................................................ 1

FACTS........................................................................................................ 4

ARGUMENT............................................................................................... 12

I.    STANDARDS FOR
      DECIDING THIS MOTION................................................................. 12

II.   THERE IS NO
      UNDERLYING FRAUD........................................................................ 13

III.  PHOENIX'S RICO CLAIMS
      FAIL AS A MATTER OF LAW.......................................................... 16

      A.    The Absence Of Any Actionable Fraudulent Conduct
            Mandates Dismissal Of These Claims................................. 18

      B.    There Is No RICO "Continuity"........................................... 20

            Closed-Ended Continuity Is Absent.................................. 20

            The Allegations Fail To Establish Open-Ended Continuity ...............25

      C.    Phoenix Has Failed To Plead A RICO Enterprise................................. 27

            Phoenix Has Not Alleged A Viable Association In
            Fact In Its Combined RICO Claim .................................... 27

            LPS And Tall Tree Cannot Be The Enterprise
            In The Cross Claim Against Lockwood.............................. 30

      D.    Phoenix Has Failed To Plead The Allegations Of Mail And
            Wire Fraud With The Requisite Particularity........................ 31

      E.    Phoenix Has Suffered No Injury.......................................... 35

IV.    THE MYRIAD STATE LAW CROSS CLAIMS
AND THIRD PARTY CLAIMS MUST BE DISMISSED............................ 36

    A.    Phoenix Has Failed To Allege Actionable Claims
For Fraud Or Aiding And Abetting Fraud ......................................... 37

    B.    The Fiduciary Duty Claims Must Be Dismissed................................. 42

    C.    The Remaining Claims Against Lockwood Must Be Dismissed........46

        Negligence................................................................................. 46

        Contractual Indemnification........................................................ 48

        Unjust Enrichment...................................................................... 49

        Breach Of Contract..................................................................... 50

CONCLUSION............................................................................................... 53

## TABLE OF AUTHORITIES

Page(s)

### CASES

A.I.A. Holdings v. Lehman Brothers, Inc., 1998 WL 159059 (S.D.N.Y. 1998)..................37

American Motorists Ins. Co. v. Salvatore, 102 A.D.2d 342, 476 N.Y.S.2d 897
(1st Dep't 1984)............................................................................................................44

Anza v. Ideal Steel Supply Corp., 547 U.S. 451 (2006)........................................................36

Avnet, Inc. v. American Motorists Ins. Co., 115 F.R.D. 588 (S.D.N.Y. 1987)....................38

AXA Corporate Solutions Ins. Co. v. Lumbermens Mut. Cas. Co., 2005 WL
1649045, (S.D.N.Y. 2005).......................................................................................51

Bank of America Corp. v. Lemgruber, 385 F.Supp.2d 200 (S.D.N.Y. 2005).......................43

Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955 (2007)....................................................4, 12

Bennett v. United States Trust Co., 770 F.2d 308 (2d Cir. 1985).........................................30

Campaniello Imports, Ltd. v. Saporiti Italia S.p.A., 117 F.3d 655 (2d Cir. 1997)...............39

CBS Broadcasting Inc. v. Jones, 460 F.Supp.2d 500 (S.D.N.Y. 2006)..................................50

Cedar Swamp Holdings, Inc. v. Zaman, 487 F.Supp.2d 444 (S.D.N.Y. 2007)....................27

Chahales v. Westchester Joint Water Works, 850 N.Y.S.2d 145 (2d Dep't 2008)..............47

Chambers v. Time Warner, Inc., 282 F.3d 147 (2d Cir.2002)...............................................12

Clark-Fitzpatrick, Inc. v. Long Island R. Co., 70 N.Y.2d 382, 521 N.Y.S.2d 653
(1987)........................................................................................................................50

Clemens Realty, LLC v. New York City Dept. of Educ., 47 A.D.3d 666, 850 N.Y.S.2d
172 (2d Dep't 2008) ................................................................................................48

Crafton Building Corp. v. St. James Constr. Corp., 221 A.D.2d 407, 633 N.Y.S.2d 795
(2d Dep't 1995)........................................................................................................37

Cromer Finance, Ltd. v. Berger, 137 F.Supp.2d 452 (S.D.N.Y.2001)...........................40, 41

CVC Claims Litigation LLC v. Citicorp Venture Capital Ltd., 2006 WL 1379596,
(S.D.N.Y. 2006)..................................................................................46

Cyber Media Group, Inc. v. Island Mortgage Network, Inc., 183 F.Supp.2d 559
(E.D.N.Y. 2002)..................................................................................31

DiVittorio v. Equidyne Extractive Indus.Inc., 822 F.2d 1242 (2d Cir. 1987)..........31, 32, 37

Fagan v. First Security Investments, Inc., 2006 WL 2671044 (S.D.N.Y. 2006)................44

Fernandez v. Elemam, 25 A.D.3d 752, 809 N.Y.S.2d 513 (2d Dep't 2006)........................47

First Capital Asset Management, Inc. v. Satinwood, Inc.,385 F.3d 159
(2d Cir. 2004).................................................................21,25, 27, 29, 30

First Nationwide Bank v. Gelt Funding Corp., 27 F.3d 763 (2d Cir. 1994)........................12

Furman v. Cirrito, 828 F.2d 898 (2d Cir. 1987).................................................................33

Frota v. Prudential-Bache Securities, Inc., 639 F.Supp. 1186 (S.D.N.Y.1986)....................43

G-I Holdings, Inc. v. Baron & Budd, 2004 WL 1277870 (S.D.N.Y. 2004)...........................33

GICC Capital Corp. v. Technology Finance Group, Inc., 67 F.3d 463 (2d Cir. 1995)..........26

Gebhardt v. Allspect, Inc., 96 F.Supp.2d 331 (S.D.N.Y. 2000).............................................51

Global Minerals and Metals Corp. v. Holme, 35 A.D.3d 93, 824 N.Y.S.2d 210
(1st Dep't 2006)..................................................................................45

Goren v. New Vision Intern., Inc., 1997 WL 321673 (N.D.Ill.1997)....................................30

Gregory v. Daly, 243 F.3d 687 (2d Cir.2001).................................................................12

H.J. Inc. v. Northwestern Bell Tel. Co, 492 U.S. 229 (1989).................................................20

Hecht v. Commerce Clearing House, Inc.,  897 F.2d 21 (2d Cir. 1990).................................35

Highlands Ins. Co. v. PRG Brokerage, Inc., 2004 WL 35439
(S.D.N.Y. 2004).................................................................39, 44, 48

In re Sharp Intern. Corp., 403 F.3d 43 (2d Cir. 2005).........................................................45

International Telecom, Inc. v. Generadora Electrica del Oriente S.A., 2002 WL
    465291 (S.D.N.Y. 2002)......................................................................................34

Isanaka v. Spectrum Technologies USA Inc., 131 F.Supp.2d 353 (N.D.N.Y. 2001)..............43

Jeanette Coquette Co., Inc. v. Hartford Fire Ins. Co., 1995 WL 363864 (S.D.N.Y 1995)......34

Katzman v. Victoria's Secret Catalogue, 167 F.R.D. 649 (S.D.N.Y. 1996)............................17

Kimm v. Chang Hoon Lee and Champ, Inc., 196 Fed.Appx. 14, 16 (2d Cir. 2006)...............35

King v. George Schonberg & Company, 233 A.D.2d 242, 650 N.Y.S.2d 107
    (1st Dep't 1996)..............................................................................................41

Kolbeck v. LIT America, Inc.,939 F.Supp. 240 (S.D.N.Y. 1996)...........................................40

La Salle Nat'l Bank v. Duff & Phelps Credit Rating Co., 951 F.Supp. 1071
    (S.D.N.Y.1996)................................................................................................29

Lakonia Management Ltd. v. Meriwether,106 F.Supp.2d 540 (S.D.N.Y. 2000)......................19

Landes v. Sullivan,  235 A.D.2d 657, 651 N.Y.S.2d 731 (3d Dep't 1997)..............................37

Lesavoy v. Lane, 304 F.Supp.2d 520 (S.D.N.Y. 2004).............................................18, 32

Leung v. Law, 387 F.Supp.2d 105 (E.D.N.Y. 2005).............................................................17

Life Product Clearing, LLC. v. Angel, 530 F.Supp.2d 646 (S.D.N.Y. 2008)..........................16

Lumbermens Mut. Cas. Co. v. Franey Muha Alliant Ins. Services, 388 F.Supp.2d 292
    (S.D.N.Y. 2005)...........................................................................................43, 47

Madeira v. Affordable Housing Foundation, Inc., 521 F.Supp.2d 319
    (S.D.N.Y. 2007)..............................................................................................49

Mathon v. Marine Midland Bank, N.A., 875 F.Supp. 986 (E.D.N.Y.1995)............................13

Mandelblatt v. Devon Stores, Inc., 132 A.D.2d 162, 521 N.Y.S.2d 672 (1st Dep't 1987)......43

Moore v. PaineWebber, Inc., 189 F.3d 165 (2d Cir.1999)....................................................19

Morin v. Trupin, 778 F.Supp. 711 (S.D.N.Y. 1991)............................................................24

-iii-

Moss v. Morgan Stanley, Inc., 719 F.2d 5 (2d Cir. 1983)......................................17

Muller-Paisner v. TIAA, 446 F.Supp.2d 221 (S.D.N.Y. 2006)............................47

National Group for Communications and Computers Ltd.v.Lucent Technologies Inc.,
    420 F.Supp.2d 253 (S.D.N.Y. 2006)......................................................27

National Westminster Bank USA v. Weksel, 124 A.D.2d 144, 511 N.Y.S.2d 626
    (1st Dep't 1987).....................................................................41, 42

New England Mutual Life Ins. Co. v. Caruso, 73 N.Y.2d 74, 538 N.Y.S.2d 217 (1989)......14

New York University v. Continental Ins. Co., 87 N.Y.2d 308, 639 N.Y.S.2d 283
    (N.Y.1995)..................................................................................47

Odyssey Re (London) Ltd. v. Stirling Cooke Brown Holdings Ltd., 85 F.Supp.2d 282
    (S.D.N.Y. 2000)..........................................................................20

Official Committee of Asbestos Claimants of G-I Holding, Inc. v. Heyman, 277 B.R. 20
    (S.D.N.Y. 2002)..........................................................................43

Pinnacle Consultants, Ltd. v. Leucadia Nat. Corp., 101 F.3d 900 (2d Cir. 1996)..................19

Renner v. Chase Manhattan Bank, 1999 WL 47239 (S.D.N.Y. 1999)....................................40

Reves v. Ernst & Young, 507 U.S. 170 (1993)..........................................................28

Riverwoods Chappaqua Corp. v. Marine Midland Bank, 30 F.3d 339 (2d Cir 1994).............30

Rothberg v. Chloe Foods Corp., 2007 WL 2128376 (E.D.N.Y. 2007)..................................13

S.Q.K.F.C., Inc. v. Bell Atlantic TriCon Leasing Corp., 84 F.3d 629 (2d Cir. 1996).............19

Schlaifer Nance & Co. v. Estate of Warhol, 119 F.3d 91 (2d Cir. 1997)................................21

Schmidt v. Fleet Bank, 16 F.Supp.2d 340 (S.D.N.Y.1998).........................................17, 29

Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479 (1985)..................................................36

Shamis v. Ambassador Factors Corp., 1997 WL 473577 (S.D.N.Y. 1997)............................24

Sloane v. Landauer-Metropolitan, Inc., 2001 WL 776952 (S.D.N.Y. 2001)...........................49

-iv-

Smith v. Local 819 I.B.T. Pension Plan, 291 F.3d 236 (2d Cir. 2002)....................................51

Spool v. World Child International Adoption Agency, 520 F.3d 178
    (2d Cir. 2008)...................................................................................20, 21, 26

Stern v. Leucadia Nat. Corp., 844 F.2d 997 (2d Cir. 1988) .....................................................39

Trump-Equitable Fifth Aven. Co. v. Gliedman, 62 N.Y.2d 539, 478 N.Y.S. 2d 846
    (1984)......................................................................................................14

United States v. Turkette, 452 U.S. 576 (1981).....................................................................27

United States Fire Ins. Co. v. United Limousine Service, Inc., 303 F.Supp.2d 432
    (S.D.N.Y. 2004)......................................................................................29

Vermonty v. Taormina, 1988 WL 3191 (E.D.N.Y. 1988).......................................................37

Wai Ming Ng v. Tow, 260 A.D.2d 574, 688 N.Y.S.2d 647 (2d Dep't 1999).........................52

Watral v. Silvernails Farm LLC, 51 Fed. Appx. 62 (2d Cir. 2002)........................................21

West 79th Street Corp. v. Congregation Kahl Minchas Chinuch, 2004 WL 2187069
    (S.D.N.Y. 2004).....................................................................................17

Whitman Realty Group, Inc. v. Galano, 41 A.D.3d 590, 838 N.Y.S.2d 585
    (2d Dep't 2007).......................................................................................50

Williams v. Bank Leumi Trust Co., 1997 WL 289865 (S.D.N.Y. 1997)....................40, 41, 42

Zaro Licensing, Inc. v. Cinmar, Inc., 779 F.Supp. 276 (S.D.N.Y.1991)................................18

## STATUTES

N.Y. INSURANCE LAW §3205.....................................................................................6

N.Y. INSURANCE LAW §3205(b)(1).........................................................................13

N.Y. INSURANCE LAW §3205(b)(2).........................................................................15

## RULES

Federal Rule of Civil Procedure 9(b)...............................................................................1

Federal Rule of Civil Procedure 12(b)(6)........................................................................1

## ADMINISTRATIVE MATERIALS

New York Insurance Department, Office of General Counsel Opinion No. 04-08-07
    dated August 17, 2004.................................................................................................14

New York Insurance Department, Office of General Counsel Opinion No. 01-08-19
    dated August 29, 2001.................................................................................................14

## MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF DEFENDANTS STEVEN LOCKWOOD, LOCKWOOD PENSION SERVICES, INC., AND TALL TREE ADVISORS, INC. TO DISMISS THE THIRD PARTY CLAIMS AND CROSS CLAIMS ASSERTED BY PHOENIX LIFE INSURANCE CO.

### Preliminary Statement

Defendants Lockwood Pension Services, Inc. and Tall Tree Advisors, Inc. and third-party defendant Steven Lockwood respectfully submit this memorandum of law in support of their motion pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6) to dismiss the cross-claims and third party claims asserted against them by defendant Phoenix Life Insurance Co. ("Phoenix").

Phoenix has asserted three cross-claims and seven third party claims premised on the same underlying assertion: that the life insurance policies that it issued on the life of decedent Arthur Kramer were procured by Kramer for a stranger investor with no insurable interest in his life; that Kramer's procurement of these policies was part of a scheme engaged in by Lockwood Pension Services, Inc., Tall Tree Advisors, Inc. and Steven Lockwood to avoid New York's insurable interest rule and to fraudulently induce Phoenix to issue the policies.

Contrary to Phoenix's assertion, Kramer's application for insurance and the issuance of the policies were fully consistent with New York law, which specifically allows for the insured to name as a beneficiary of his or her choice whether or not the beneficiary has an insurable interest in the insured, and allows for the transfer of a life insurance policy immediately after issuance. There is nothing to suggest that Kramer lacked the means or ability to take out or maintain the policies, or that his designation of the beneficial interest in those policies or the subsequent transfer of the beneficial interest after issuance was improper or invalid. As there is no basis to

argue that the issuance of the policies was improper, let alone fraudulent, each of Phoenix's claims should be dismissed.

Phoenix's claims are otherwise deficient even were the Court to overlook this fallacious assertion of fraudulent conduct. Phoenix's two federal law claims, which assert violations of the RICO statute, each must be dismissed for failure to meet the rigorous pleading requirements of RICO. The supposed scheme which Phoenix claims was engaged in concerned the issuance of life insurance policies to three individuals over a period of less than six months with no threat of further acts in the future. Such a short lived alleged scheme simply cannot satisfy the requirement of either closed-ended or open ended continuity.

Similarly, Phoenix has failed to allege the existence of a cognizable RICO enterprise, asserting without any factual basis that an association in fact existed. Phoenix's failure to allege any facts as to the management, hierarchy or organization of the supposed enterprise, or the supposed participants' control over this enterprise renders the claims that such an enterprise existed specious, at best. Phoenix also has failed to plead the supposed predicate acts of mail or wire fraud with the particularity required by Rule 9(b). To the contrary, Phoenix's key allegations are asserted on "information and belief" without a basis on which such information and belief is grounded. Finally, Phoenix has not set forth a cognizable RICO injury, speculating instead that if certain events transpire it might suffer future harm.

Phoenix's state law claims stand on no better footing than its RICO claims. As with its RICO predicate acts, Phoenix's fraud claim against Lockwood is alleged upon information and belief and fails to identify a single allegedly false or fraudulent statement. The entire premise of Phoenix's fraud claim is that Lockwood "implicitly represented" facts which were false. A fraud

claim without false statements or factual allegations, and based on "implicit" representations, simply cannot stand and must be dismissed. Given the absence of a viable fraud claim, the claim against Tall Tree and Lockwood Pension Services for aiding and abetting in that fraud, must also be dismissed.

The claims for breach of fiduciary duty and aiding and abetting a breach of fiduciary duty also must be dismissed because they are based on the very same insufficient allegations of fraud. Moreover, Phoenix has failed to allege any facts to support its assertion that Lockwood, who indisputably was acting as insurance broker, owed it a fiduciary duty.

The remaining third party claims asserted against Lockwood also are defective. As with its breach of fiduciary duty claim, Phoenix failed to allege any facts that would support its assertion that Lockwood owed it a duty of care. Absent such duty, Phoenix's negligence claim against Lockwood must be dismissed.

Phoenix's claim for contractual indemnification against Lockwood must be dismissed because it is premature. The law is clear that until there has been a finding of liability against Phoenix as the prospective indemnitee and Phoenix has made a payment related to the liability, it cannot bring a claim for indemnification.

Phoenix's claim for unjust enrichment cannot be maintained because the issues in dispute, i.e., Lockwood's right to commissions or other compensation as a result of his placement of the insurance policies issued by Phoenix, arise under the terms of Lockwood's contractual agreements with Phoenix. It is black letter law that a claim for unjust enrichment may not be maintained where the subject matter in dispute is covered by the terms of a contract.

Finally, Phoenix's breach of contract claim against Lockwood must be dismissed as it failed to identify any conduct by Lockwood which would rise to the level of a breach of any specific provision of the agreements between them. Once again, Phoenix's conclusory allegations of supposed misconduct simply cannot be allowed to substitute for well pleaded factual allegations of actual conduct.

The United States Supreme Court in <u>Bell Atlantic Corp. v. Twombly</u>, 127 S.Ct. 1955, 1965 (2007) has made it clear that even under the liberal pleading requirements of the federal courts a party must allege sufficient facts to establish that there are "plausible grounds" to support the allegations that are made. Phoenix has failed to provide plausible grounds to support any of its claims, and, accordingly, that provides a further and additional ground for their dismissal.

## FACTS

On or about March 10, 2008, Alice Kramer as a personal representative of the Estate of Arthur Kramer (the "Kramer Estate") commenced this Action seeking to contest the assignment of certain death benefits of insurance policies (the "Kramer Policies") issued on the life of attorney Arthur Kramer. On or about May 10, 2008, plaintiff filed an Amended Complaint.

The gravamen of both pleadings is that the Kramer Policies were procured without any "insurable interest," as the New York State Insurance Law requires, and as part of an elaborate and unlawful so called stranger-owned life insurance scheme ("SOLI") structured by various non-insurance company defendants to avoid the insurable interest rule. Defendants are alleged to have helped Kramer establish insurance trusts with the intent and purpose of transferring immediately

the beneficial interest in those trusts to third parties.[1]

   This theory of relief contradicts the plain language and meaning of New York Insurance Law. Section 3205, the statutory provision on which plaintiff predicates her entire case, allows Kramer, as he did, to procure the Kramer Policies, to create an insurance trust, to designate beneficiaries, in this instance his children, who, by statutory definition, have an insurable interest, and allows those beneficiaries to _immediately_ transfer their interest in the insurance trust to any person or entity all without implicating the insurable interest rule. Despite the clarity of this Statute and the purposeful conduct engaged in by Kramer and his family, the Amended Complaint seeks, among other things, a determination that the transfer of the beneficial interest in the Kramer Policies to third parties is void under New York law, and a declaration from the defendant insurance companies that the Kramer Estate is entitled to any death benefits which have been or may be paid pursuant to the Kramer Policies.

   In response to the Complaint, on or about April 9, 2008, and, again, on May 9, 2008, in response to the Amended Complaint, defendant Phoenix Life Insurance Company ("Phoenix"), an issuer of three of the Kramer Policies, asserted a broad and far-ranging series of cross claims and third party claims against the non-insurance company defendants all predicated on the same legal theory underlying plaintiffs' claims; that the procurement of the Kramer Policies issued by Phoenix (the "Phoenix Policies") was part of a "formulaic method of circumventing New York's

---

[1]The plaintiff advances this claim despite her admission that it was Kramer (and not the defendants) who selected his children as beneficiaries of the trust and it was Kramer (and not the defendants) who directed his children to transfer their beneficial interests in the trust. (Compl. ¶20 ).

insurable interest rule" and therefore constituted an alleged "SOLI scheme."[2] (Phoenix Ans. ¶6).[3]

Phoenix's claims are dependent on the assertion that the multi-million dollar Phoenix Policies were the result of fraudulent STOLI arrangements; that Phoenix was completely unaware of how these transactions were being structured; and that Phoenix would have declined to issue these ostensibly premium-rich policies had it been provided with full disclosure. Despite the severity of the accusations, Phoenix's pleadings, based almost entirely on information and belief, are devoid of any specific factual support.

Although Kramer is alleged to have "colluded" in each of the steps that Phoenix claims demonstrate the supposed "SOLI scheme"-- the application for the insurance policy,  the creation of his insurance trust,  the designation of trust beneficiaries and the transfer of the beneficial interest in the trust to a third party (Phoenix Ans. ¶8)-- there are no facts alleged to support Kramer's supposed collusive role or, for that matter, how his activities are inconsistent with the rights of an insured under the applicable insurance statutes. ( Phoenix Ans. ¶ 8).

Phoenix concedes that Kramer established the 2005 Arthur Kramer Insurance Trust ( "the Kramer August Trust") (Phoenix Ans. ¶11), and goes on to make the naked assertion that "the only advantage and purpose of the Kramer August Trust was to effectuate a transfer of rights to death proceeds payable under the requested life insurance policies in a fraudulent manner that would be not be apparent to Phoenix" (Phoenix Ans. ¶ 12).  Phoenix alleges no facts to support

---

[2]Phoenix's Answer to Amended Complaint with Counterclaims, Cross-Claims and Third Party Complaint is referred to as the "Phoenix Ans."

[3]Named as the alleged participants in this purported SOLI scheme are the same non-insurance company defendants named in the Amended Complaint: Lockwood Pension Services, Inc. ("LPS"), Tall Tree Advisors, Inc. ("Tall Tree"), Life Product Clearing LLC ("LPC") and Jonathan Beck, the Trustee of the various life insurance trusts, along with Steven Lockwood ("Lockwood") the contractual broker of the Kramer Policies.

this allegation.

Also devoid of substance are the allegations regarding what Phoenix attempts to cast as the "fraud" allegedly associated with Kramer's submission in early September, 2005 of his life insurance application to Phoenix (the "Phoenix Application"). According to Phoenix, "Kramer did not apply for life insurance on his own initiative, but rather was induced to do so by an offer of ready cash" (Phoenix Ans.¶14); and "Kramer had no intention of procuring life insurance for the benefit of himself or his family," but rather, was attempting to procure a policy "for the benefit of a stranger investor with no insurable interest in his life." (Phoenix Ans. ¶15). Phoenix provides no support for this speculative characterization of Kramer's motives and intentions.

To the contrary, despite Phoenix's extensive description of the representations purportedly made by Kramer, Phoenix does not point to a single misstatement or misrepresentation in that Application. Rather, Phoenix relies for each of its claims on the unsubstantiated assertion that Kramer, Lockwood and the Trustee "implicitly represented that: (a) the Kramer August Trust would be the true owner and beneficiary of the requested Phoenix Policies. . . and (b) the Kramer August Trust and its intended beneficiary had an insurable interest in Mr. Kramer's life." (Phoenix Ans.¶22).

Relying on its novel theory of "implicit representations," Phoenix characterizes the steps taken by Kramer and the non-insurance company defendants after the submission of the Phoenix Application and the decision by Phoenix to issue the Phoenix Policies, including delivery and acknowledgment of receipt of the Phoenix Policies and the transfer of the beneficial interest in the Kramer August Trust, as part of "the clear characteristics of a SOLI scheme." (Phoenix Ans.¶¶31-32). Phoenix also baldly asserts that "the identity of parties, the clear characteristics of a SOLI

-7-

scheme, the timing of the applications and transfers and the sheer number and value of the

policies involved provide clear and convincing evidence of an intent to procure the Phoenix

Policies for the benefit of a stranger-investor who had no valid insurable interest." (Phoenix

Ans.¶32)

Each of the cross-claims and third party claims rely on these same thinly pled assertions

regarding defendants' alleged participation in a "SOLI scheme."

Phoenix's first cross claim alleges that LPS and Tall Tree aided and abetted a fraud by

"knowingly" and "substantially" participating in a "fraudulent SOLI scheme." The only behavior

attributed to these entities is a purported "arrangement" to make an unspecified payment to

Arthur Kramer and/or his daughter after the issuance of the Phoenix Policies (Phoenix Ans. ¶63).

While it is alleged that LPS and Tall Tree "knew" of Kramer's and Lockwood's "duties to make

accurate and truthful representations on the Phoenix Application" (Phoenix Ans. ¶55), and that

LPS and Tall Tree knew that Phoenix would rely on them (Phoenix Ans.¶58), no substantive facts

are alleged which would show how LPS and Tall Tree acquired such knowledge. It is also claimed

that LPS and Tall Tree "knew" that the purported lack of a valid insurable interest was not

disclosed on the Phoenix Application although, again, no explanation is provided as to how they

allegedly acquired that knowledge. (Phoenix Ans. ¶59).

Phoenix's second cross claim accuses LPS and Tall Tree of knowing that Lockwood owed

Phoenix a purported fiduciary duty and aided and abetted his alleged breach of that duty by "

substantially participating" in an alleged "STOLI scheme."(Phoenix Ans. ¶69)  This claim of

substantial participation is based upon the same litany of unsubstantiated allegations as the

previous claim: that LPS and Tall Tree assisted in Lockwood in "inducing Kramer to apply for life

insurance policies for the benefit of a person or persons without any insurable interest" in his life; in "facilitating the creation of trust and/or related documents"; and in "arranging for the transfer of the beneficial interest in the Kramer August Trust (and thus the Phoenix Policies) . . . immediately after the Phoenix Policies were delivered." No factual detail is provided as to how these entities engaged in any of the acts that form the alleged basis of their purported liability." (Phoenix Ans. ¶69)

Each of Phoenix's third party claims asserted against Lockwood relies similarly on the supposition that Lockwood was a participant in a purported SOLI scheme, and is based on his alleged failure to disclose information to Phoenix regarding the structure of the transactions pursuant to which Kramer purchased the Phoenix Policies and subsequently arranged for the transfer of the beneficial interest in those policies. In the first third party claim, Phoenix alleges that Lockwood engaged in fraud because he allegedly deceived Phoenix "with respect to the true beneficiary of the Phoenix Policies and with respect to the true beneficiary's lack of an insurable interest in Mr. Kramer's life." (Phoenix Ans. ¶74)

Phoenix's second third party claim for breach of fiduciary duty asserts that Lockwood "[a]s a producer of the Phoenix Policies," owed Phoenix a fiduciary duty, and that Lockwood's failure to disclose the same information was a breach of this purported fiduciary obligation to make full disclosure with respect to the Phoenix Application, including a purported duty "not to procure SOLI policies," which, it alleges "Lockwood knew Phoenix would decline to issue if Phoenix knew of the true nature of those policies." (Phoenix Ans. ¶78). Phoenix does not allege any facts to support its conclusion that Lockwood owed it a fiduciary duty or how Lockwood supposedly knew that Phoenix would not issue the policies.

Phoenix's third third party claim alleges that Lockwood's purported participation in the asserted SOLI scheme constituted a breach of his 2005 Producer Agreement and 2007 Broker Agreement with Phoenix.[4] (Phoenix Answer ¶¶88-89).

Phoenix's fourth third party claim alleges that as "producer of the Policies, Lockwood owed a common law duty of care to Phoenix," and that Lockwood's failure to make the same disclosures to Phoenix regarding the alleged SOLI scheme constituted a breach of that duty giving rise to a claim for actionable negligence. (Phoenix Answer ¶¶92-93)

Phoenix's fifth third party claim seeks to hold Lockwood liable under the indemnification language of his Producer and Broker Agreements for the above described "fraud negligence and unauthorized conduct" in the event [Phoenix] is required to pay death benefit pursuant to the Phoenix Policies. (Phoenix Ans. ¶98) Phoenix's sixth third party claim alleges that Lockwood has been unjustly enriched as a result of his receipt of commissions arising out of his purported participation in the alleged SOLI scheme. (Phoenix Answer ¶¶101-104)

Phoenix also has taken its boilerplate allegations regarding the purported SOLI scheme and used them as a basis for accusing Lockwood of federal RICO violations. In its seventh third party claim Phoenix has alleged that Lockwood, as the RICO "person", "devised a scheme to submit a fraudulent life insurance application on behalf of Mr. Kramer and the Kramer August Trust to Phoenix and thereby procure a STOLI policy." (Phoenix Ans. ¶116) LPS and Tall Tree are alleged to be the RICO "enterprise" for the purposes of this claim. Phoenix also alleges that "the intent of Lockwood to defraud Phoenix is further confirmed by his participation in virtually

---

[4]Remarkably, the Broker Agreement that Phoenix relies upon as basis, in part, for both its third and fifth third party claims is not alleged to have been executed until January 2, 2007 and, therefore, was not in effect at the time and cannot create a basis for liability with regard to the Phoenix Policies that were issued back in 2005.

identical SOLI schemes targeting Transamerica and Lincoln Life."[5] (Phoenix Claims ¶122)

Phoenix attempts to assert a RICO "pattern" by reference to the separate policies issued by Phoenix on the life of Irwin Levinson, and by Lincoln Life on the life of Leon Lobel. Phoenix alleges as to the policy issued by Lincoln Life that "Lockwood devised a scheme to submit a fraudulent life insurance application upon behalf of Mr. Lobel and the Lobel Trust to Lincoln Life and thereby to secure a SOLI policy." (Phoenix Ans. ¶ 152) As it does with the Phoenix Policies, Phoenix claims that Lockwood's conduct "intended to deprive Lincoln Life of property by causing it to issue a policy that it would not have issued but for the fraudulent SOLI scheme." Phoenix asserts that it has suffered a Rico "injury" by virtue of the fact that it may have to pay death benefits at some date in the future. [6] (Phoenix Ans. ¶173)

Finally, Phoenix has asserted a cross-claim and third party claim against Lockwood, LPS and Tall Tree alleging a virtually identical RICO scheme. Phoenix asserts that each of Lockwood, LPS and Tall Tree are the RICO persons, and that the enterprise is now an association of fact consisting of Lockwood, Tall Tree, LPS, LPC and Berck. (Phoenix Ans. ¶¶177-178). Phoenix once again asserts that Lockwood, LPS and Tall Tree's procurement of the Phoenix Policies was part of a pattern of racketeering activity and that this pattern included its procurement in the same manner the policies on the life of Irwin Levinson and Leon Lobel. (Phoenix Ans. ¶¶194, 200) Once again, this purported RICO scheme involved insurance policies issued in 2005 (over approximately a four month period).

---

[5] References to Transamerica and Lincoln Life are to defendants Transamerica Occidental Life Insurance Co. and Lincoln Life & Annuity Co. of New York.

[6]All of the policies that form the basis for Phoenix's alleged Rico pattern were issued in 2005.

### ARGUMENT

I.    **STANDARDS FOR
      DECIDING THIS MOTION**

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of a complaint that fails to state a claim on which relief may be granted. In reviewing a motion to dismiss, a court is required to read a complaint liberally, "accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002) (citing Gregory v. Daly, 243 F.3d 687, 691 (2d Cir. 2001). A motion to dismiss should be granted only when the pleading party has failed to allege sufficient "factual matter (taken as true) to suggest" that there are "plausible grounds" to support the allegations. Bell Atlantic Corp., 127 S.Ct. at 1965.

While factual allegations in a complaint must be deemed to be true, it is equally clear that "'conclusions of law or unwarranted deductions of fact are not admitted.'" First Nationwide Bank v. Gelt Funding Corp., 27 F.3d 763, 771 (2d Cir. 1994), quoting 2A Moore & Lucas, Moore's Federal Practice ¶ 12.08, at 2266-69 (2d ed. 1984). As the Supreme Court has recently made clear, simply claiming, for example, that parties are acting in concert or conspiring together, is not enough: even under Rule 8's liberal pleading requirements there must be a factual predicate alleged to support broad and conclusory assertions. Bell Atlantic Corp., 127 S.Ct. at 1966. "This principle applies with even greater force in a fraud case governed by the more stringent pleading requirements of Fed.R.Civ.P. 9(b)." First Nationwide Bank, 27 F.3d at 771.

When a party has attempted to assert claims under the federal RICO statute, as Phoenix has in this action, the factual allegations are subject to heightened scrutiny: "In reviewing motions to dismiss RICO claims, courts of this circuit have noted that RICO violations 'must be reviewed with appreciation of the extreme sanctions [the statute] provides, so that actions traditionally

brought in state courts do not gain access to treble damages and attorneys fees in federal court simply because they are cast in terms of RICO violations.'" Rothberg v. Chloe Foods Corp., 2007 WL 2128376, at *11 (E.D.N.Y. 2007), quoting Mathon v. Marine Midland Bank, N.A., 875 F.Supp. 986, 1001 (E.D.N.Y. 1995).

Even accepting as true the factual allegations asserted by Phoenix, Phoenix has failed to state actionable claims as against Lockwood, LPS or Tall Tree. Putting aside the myriad of conclusory assertions, unsubstantiated allegations of fraud made on "information and belief," and unwarranted suppositions, the claims asserted simply do not have a sufficient legal or factual foundation. This motion should be granted in its entirety, and the claims dismissed.

## II.   THERE IS NO UNDERLYING FRAUD

Phoenix's claims all suffer from the same fundamental flaw: each claim is predicated on the argument that the Phoenix Policies were procured without an "insurable interest," required by New York State Insurance Law, and as part of an elaborate and unlawful so-called stranger owned life insurance scheme ("SOLI") structured to avoid the insurable interest rule. This argument fails as to each claim, however, because it is contrary to New York law.

New York Insurance Law §3205(b)(1) expressly permits an individual to procure or effect a contract of insurance on his/her own life or for the benefit of a third party.

Section 3205(b)(1) states:

Any person of lawful age may on his own initiative procure or effect a contract of insurance upon his own person for the benefit of any person, firm, association or corporation. Nothing herein shall be deemed to prohibit the immediate transfer or assignment of a contract so procured or effectuated.

As interpreted by the Office of the General Counsel of the New York State Insurance Department, Section 3205 is satisfied where, as here, an insured has authorized an insured-

established trust to be the policy owner and policy beneficiary. See New York Insurance

Department Office of General Counsel Opinion No. 04-08-07, dated August 17, 2004, a copy of

which is attached as Exhibit A. Put simply, where the Trust is created by the party whose life is

insured, there is no need to prove the "insurable interest" of any beneficiary of the trust.[7]

Phoenix would have this Court believe that a person acting at his own initiative may not

transfer beneficial interest of a policy for value received. Phoenix's claim must fail, however,

because there is no legal support for such a position. The Insurance Department has opined,

however, that an insured's intention immediately to assign or surrender an insurance policy upon

purchase does not affect the validity of a subsequent sale. Office of General Counsel Opinion No.

01-08-19, dated August 29, 2001, a copy of which is attached as Exhibit B.

The New York State Insurance Department's Opinions on the issue are consistent with the

reasoning of the New York State Court of Appeals. In the seminal case of New England Mutual

Life Insurance Company v. Caruso, 73 N.Y.2d 74, 77-78, 538 N.Y.S.2d 217, 219 (1989) the Court

of Appeals confirmed that the public policy behind the insurable interest rule was to diminish the

"temptation for murder." Applying that public policy, New York's highest court distinguished

between circumstances where the insured consents to the purchase of life insurance in his or her

own name, in which case public policy defers to the judgment of the insured who presumably has

no temptation to murder him or herself, and where a third party takes out the insurance, a more

speculative situation in which public policy requires generally that the insurance policy be

---

[7]The Insurance Department's Office of General Counsel's legal opinions concerning New
Insurance Law are interpretations of a New York statue by the administrative agency charged
with its enforcement, and as such, are entitled to "great weight" and deferential treatment by this
Court. See Trump-Equitable Fifth Ave. Co. v. Gliedman, 62 N.Y.2d 539, 545, 478 N.Y.S. 2d
846, 849 (1984) (the "[i]nterpretation given a statue by the agency charged with its enforcement
is, as a general matter, given great weight and judicial deference, so long as the interpretation is
neither irrational, unreasonable nor inconsistent with the governing statue.")

-14-

invalidated unless the third party is a person/entity with a familial or economic relationship and thus, presumably, without the temptation to murder the insured. Id.

Caruso also makes clear that the insurable interest rule applies only at the time the life insurance contract is created: "The statute requires that the policyholder have an insurable interest in the life of decedent only at the time the contract was made (Insurance Law §3205(b)(2). . .)," 73 N.Y.2d at 82, 538 N.Y.S.2d at 222. The relevant allegations before the Court are found in Paragraphs 14 and 15 of the Third-Party Complaint. Plaintiff states in paragraph 14 that "on information and belief, Mr. Kramer did not apply for life insurance on his own initiative, but rather was induced to do so by the offer of ready cash." Plaintiff also states in paragraph 15 that "on information and belief, at the time he submitted the Phoenix Application, Mr. Kramer had no intention of procuring life insurance for the benefit of himself or his family; rather, Mr. Kramer was attempting to procure a policy for the benefit of a stranger investor with no insurable interest in his life." The allegations in these paragraphs have no legal merit, unless the Court were to determine that the rights specifically granted by Section 3205(b)(1) are erased by the "offer of ready cash." It defies logic to suggest that one may not act "on his own initiative" just because he was offered cash as an incentive. This allegation is simply insufficient to create a triable issue as to whom initiated the policy.

As the uniform weight of authority makes clear, Kramer had an absolute right to insurable interest in the Phoenix Policies which he "procured," and designated the original beneficiaries. Phoenix's argument as to the purported lack of an insurable interest in these policies because the beneficial interest in them was acquired by third parties must fail because it is contrary to law. The Phoenix Policies were not taken out originally by a third party and therefore there is no requirement that the beneficiary of the policy possess an insurable interest in the life of the

-15-

Insured. See N.Y. Ins.Law. 3205(b)(2).[8]

The underlying premise of paragraph 15 is that the creation of the August Trust, the acquisition of the Phoenix Policies and the transfer of Kramer's beneficial interest in those policies were fraudulent because they were designed to benefit a stranger third party. Phoenix argues that since that third party did not have an independent insurable interest the entire series of transactions is fraudulent and void. Since §3205 (b)(1) applies, this argument fails as a matter of law, premised on (b)(2).

Since there is no underlying wrongful conduct, all of Phoenix's claims must fall like a house of cards. As set forth below, Phoenix's claims under RICO, for fraud and for breach of fiduciary duty, all are based on the allegation of an improper "SOLI scheme." As there is nothing improper in the alleged conduct, however, these claims must be dismissed.

## III.   PHOENIX'S RICO CLAIMS FAIL AS A MATTER OF LAW

As alleged by Phoenix, it had a contractual relationship with Lockwood, pursuant to which Lockwood acted in connection with the insurance policies at issue. Phoenix also had contractual relationships with Kramer and other policy holders who elected to buy life insurance from Phoenix. The contracts between Phoenix and Lockwood and the insurance policies may give rise to contractual liabilities and obligations of the parties. Breach of these contracts, or even a

---

[8]In Life Product Clearing, LLC. v. Angel, 530 F.Supp.2d 646 (S.D.N.Y. 2008) the Court found issues of fact to exist as to the permissibility of the transfer by Leon Lobel, a retired butcher, of the beneficial interest in the trust created to hold insurance on his life. In that case, where there were issues as to whether Lobel had the financial means to afford the policy or pay for the policy premiums, and whether he had misstated the amount of his net worth, the Court found there to be a question as to whether Lobel had "procure[d] the policy 'on his own initiative.'" 530 F.Supp. At 655. The Court concluded that given these questions, and in light of the fact that "Lobel's pre-assignment intent is central" to the issues in dispute, that summary disposition was inappropriate. 530 F.Supp.2d at 656. In contrast, Kramer, a prominent attorney, is not alleged to have lacked the financial ability to pay for or afford the policies.

misrepresentation in connection with the contracts is not a RICO violation. In fact, were the Court to accept the allegations herein as sufficient to state a RICO claim, the Court would invite all aggrieved parties to a contract to sue in Federal Court under RICO, in addition to bringing a claim for breach of contract.

The RICO laws as the courts in this Circuit have repeatedly observed, were not designed to encompass claims such as those asserted by Phoenix. Indeed, it has been noted, because "'[Civil RICO] is an unusually potent weapon - - the litigation equivalent of a thermonuclear device ... courts must always be on the lookout for the putative RICO case that is really nothing more than an ordinary fraud case clothed in the Emperor's trendy garb.'" Leung v. Law, 387 F.Supp.2d 105, 113 (E.D.N.Y. 2005), quoting Schmidt v. Fleet Bank, 16 F.Supp.2d 340, 346 (S.D.N.Y. 1998). "'Because the 'mere assertion of a RICO claim ... has an almost inevitable stigmatizing effect on those named as defendants, ... courts should strive to flush out frivolous RICO allegations at an early stage of the litigation.'" West 79th Street Corp. v. Congregation Kahl Minchas Chinuch, 2004 WL 2187069, at *5 (S.D.N.Y. 2004), quoting Katzman v. Victoria's Secret Catalogue, 167 F.R.D. 649, 655 (S.D.N.Y. 1996).

To state a claim under for damages under RICO, Phoenix must allege "(1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly . .  . participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce." Moss v. Morgan Stanley, Inc., 719 F.2d 5, 17 (2d Cir. 1983). It has been stated that:

> "'RICO is a specialized statute requiring a particular configuration of elements. These elements cannot be incorporated loosely from a previous narration, but must be tightly particularized and connected in a complaint.' Parroting statutory language while generally referring the reader back to the previous 100 paragraphs in a complaint is inadequate."

-17-

Lesavoy v. Lane, 304 F.Supp.2d 520, 532 (S.D.N.Y. 2004), quoting Zaro Licensing, Inc. v.

Cinmar, Inc., 779 F.Supp. 276, 284 (S.D.N.Y.1991)

Phoenix has asserted two RICO claims in its pleadings: its Seventh Third Party Claim

against Lockwood (the "Third Party RICO Claim") and its Combined Cross-Claim and Third

Party Claim against Lockwood, LPS and Tall Tree (the "Combined RICO Claim"). Both claims

attempt to convert a business dispute with Lockwood, LPS and Tall Tree over the parameters of

when an insurance policy may be issued and how an insurance application should be complted,

into a racketeering scheme. By doing so, they both fall woefully short of alleging the necessary

elements of RICO and must be dismissed.

### A.   THE ABSENCE OF ANY ACTIONABLE FRAUDULENT CONDUCT MANDATES DISMISSAL OF THESE CLAIMS

As predicate acts in support of its RICO claims Phoenix has asserted various incidents of

the use of the mails and wires in furtherance of what it describes as the Kramer-Phoenix SOLI

Scheme, the Levinson-Phoenix SOLI Scheme and the Lobel-Lincoln Life SOLI Scheme. (RICO

Statement p. 5). Each of these supposed predicate acts, however, is premised on the assertion

that the procurement of the insurance policies was the result of a purported SOLI arrangement

which was "illegal and contrary to strong public policy issues." (RICO Statement p. 1)

As detailed in Section II, supra, the procurement of the Phoenix Policies, and the practices

followed by defendants Lockwood and LPS in connection with the procurement of those policies,

as well as in connection with the procurement of the Levinson and Lobel insurance policies, were

consistent with the applicable New York insurance law. Contrary to Phoenix's assertions, there

was no fraud engaged in by either Lockwood or LPS in connection with the procurement or

issuance of any of these insurance policies.

-18-

A RICO "complaint alleging mail and wire fraud must show (1) the existence of a scheme to defraud, (2) defendant's knowing or intentional participation in the scheme, and (3) the use of interstate mails or transmission facilities in furtherance of the scheme." S.Q.K.F.C., Inc. v. Bell Atlantic TriCon Leasing Corp., 84 F.3d 629, 633 (2d Cir. 1996). With respect to the first element, it has been stated:

> "The first element, a scheme to defraud, 'requires fraudulent or deceptive means, such as material misrepresentation or concealment.' [Citation omitted] As the Second Circuit recently stated in Moore v. PaineWebber, Inc., 189 F.3d 165, 170 (2d Cir.1999), 'For RICO liability to exist as a result of a violation of [the mail and wire fraud] statutes, the defendant must have made misrepresentations that are material to the harm caused to the victim.'"

Lakonia Management Ltd. v. Meriwether, 106 F.Supp.2d 540, 553 (S.D.N.Y. 2000).

In Pinnacle Consultants, Ltd. v. Leucadia National Corporation, 101 F.3d 900, 904 (2d Cir. 1996), plaintiff asserted a RICO scheme based on alleged fraudulent misstatements in the defendants' proxy statements. The Court stated:

> "The first three predicate acts involved Leucadia's 1985, 1991 and 1992 Proxy Statements, which Pinnacle alleged failed to disclose that the 1985, 1991 and 1992 Warrants would be issued in violation of BCL § 505. The fourth predicate act involved the 1990 Proxy Statement, which Pinnacle alleged failed to disclose a violation of BCL § 612(b). Pinnacle contends that the failure to make these disclosures rendered the proxy statements false and misleading. These acts would state a claim of mail or wire fraud if it were shown that the defendant knowingly or intentionally participated in a scheme to defraud using interstate mails or transmission facilities."

101 F.3d at 904. The Court examined the underlying alleged conduct, however, and found that there was no fraud involved in the issuance of the warrants. Id. at 905. Since, the Court held, there was no underlying fraud, there could be no predicate acts based on such conduct. Id. at 906. Accordingly, the RICO claims were dismissed. See, e.g. Odyssey Re (London) Ltd. v. Stirling Cooke Brown Holdings Ltd., 85 F.Supp.2d 282, 303 (S.D.N.Y. 2000).

-19-

Every one of the alleged predicate acts here is based on the underlying claim that the Phoenix Policies along with the policies issued to Lobel and Levinson were SOLI policies, and that the issuance of such policies violated New York insurance law and public policy. Phoenix asserts that the issuance of these life insurance policies were the result of a scheme to defraud, and that it is a victim of this alleged fraud. Since, however, the issuance of these life insurance polices, and the alleged conduct engaged in by Lockwood, LPS and the other defendants were consistent with the applicable law, any claim of fraud must fail, and with it, any alleged predicate acts based on such conduct.

### B.    THERE IS NO RICO "CONTINUITY"

The pleading requirement of a "pattern" of racketeering activity is well established. A party alleging a RICO pattern must allege facts demonstrating "that the racketeering predicates are related *and* that they amount to or pose a threat of continued criminal activity." H.J. Inc. v. Northwestern Bell Tel. Co, 492 U.S. 229, 239 (1989) (emphasis in original). Continuity, as defined by the Supreme Court in H.J., "is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." 492 U.S. at 241. Closed-ended continuity requires "a series of related predicate acts extending over a substantial period of time," while open-ended continuity can be shown by alleging past activity coupled with "activity that poses a threat of continuing criminal conduct beyond the period during which the predicate acts were performed." Spool v. World Child Int'l Adoption Agency, 520 F.3d 178, 183 (2d Cir. 2008).

### Closed-Ended Continuity Is Absent

Phoenix's allegations fail to meet the requirements of pleading either closed-ended or open-ended continuity. As to closed-ended continuity, the courts in this Circuit have made it clear that while "'continuity is primarily a temporal concept, other factors such as the number and

-20-

variety of predicate acts, the number of both participants and victims, and the presence of separate schemes are also relevant in determining whether closed-ended continuity exists." Watral v. Silvernails Farm LLC, 51 Fed. Appx. 62, 64 (2d Cir. 2002), quoting Cofacredit, S.A. v. Windsor Plumbing Supply Co., Inc., 187 F.3d 229, 242 (2d Cir. 1999). In reviewing the length of an alleged scheme, the "relevant period, moreover, is the time during which RICO predicate activity occurred, not the time during which the underlying scheme operated, or the underlying dispute took place." Spool v. World Child Int'l Adoption Agency, 520 F.3d at 184.

In examining an alleged RICO pattern, the courts of the Second Circuit have "never found a closed-ended pattern where the predicate acts spanned fewer than two years." First Capital Asset Management, Inc. v. Satinwood, Inc., 385 F.3d 159, 181 (2d Cir. 2004)."[W]hile two years may be the *minimum* duration necessary to find closed-ended continuity, the mere fact that predicate acts span two years is insufficient, without more, to support a finding of a closed-ended pattern." Id. (emphasis in original)   "[C]ourts must take care to ensure that the plaintiff is not artificially fragmenting a singular act into multiple acts simply to invoke RICO." Schlaifer Nance & Co. v. Estate of Warhol, 119 F.3d 91, 98 (2d Cir. 1997).

Phoenix asserts that "by his SOLI scheme . . . Lockwood intended to deprive Phoenix of property by causing it to issue the Phoenix policies without an insurable interest that it would not have issued but for the fraudulent SOLI scheme, and eventually to pay out death benefits pursuant to such policies." (Phoenix Ans. ¶121) Phoenix claims that it suffered injury "by virtue of issuing the Kramer Policies," (Phoenix Ans. ¶118) and "by virtue of issuing the Levinson policy," (Phoenix Ans. ¶146), while , it asserts, Lincoln Life was injured "by virtue of issuing the Lobel policy." (Phoenix Ans. ¶170)

Here, even giving credit to Phoenix's allegations, all of the purported relevant events took place within a limited and short time frame. As to the Kramer policies, Phoenix alleges that:

-21-

9.   On or about July 1, 2005, Lockwood and Phoenix entered into a contract pursuant to which Lockwood would serve as an independent producer of various Phoenix products, including life insurance policies.

10.   On or about August 29, 2005, Mr. Kramer established the Arthur Kramer 2005 Insurance Trust (the "Kramer August Trust").

13.   Mr. Kramer submitted (through Lockwood) a life insurance application to Phoenix in early September, 2005 (the "Phoenix Application").

24.   In reliance upon the truth of the representations made in the Phoenix Application, Phoenix issued the Phoenix Policies.

27.   On October 21, 2005, Mr. Kramer signed three Policy Acceptance Forms acknowledging receipt of the Phoenix Policies.

As to the issuance of the Levinson policy, Phoenix has alleged:

125.   In November 2005, Lockwood and LPS submitted a life insurance application to Phoenix on behalf of Irwin Levinson and the Irwin Levinson Insurance Trust II (the "Levinson Trust"). In the application, Mr. Levinson, the Levinson Trust, and Lockwood represented that the Policy applied for would be owned by the Levinson Trust, which was also to be the designated primary beneficiary of any policy issued.

132.   In reliance upon the truth of the representations made in the application, Phoenix issued the Policy (No. 97304016) with a Policy Date of November 27, 2008 [sic], a basic policy amount of $5,000,000 and a planned annual premium of $270,000.[9]

146.   Phoenix was injured by virtue of issuing the Levinson policy and paying the associated commissions.

As to the issuance of the Lobel policy by Lincoln Life, Phoenix has alleged:

154.   Pursuant to the agreed-upon SOLI scheme, on or about November 15, 2005, Mr. Lobel established the Lobel Trust.

156.   Also on or about November 15, 2005, Mr. Lobel signed a written application for a $10 million life insurance policy and authorized the submission of that application (the "Lobel

---

[9]Presumably, Phoenix meant to reference November 27, 2005 as the policy issuance date.

Application") to Lincoln Life.

165.    On information and belief, Lincoln Life relied on the fraudulent Lobel Application, and the misrepresentations contained therein, in issuing the Lobel Policy.

167.    On information and belief, on or about December 20, 2005, approximately (6) six days after the policy was issued, Mr. Lobel sold his interest in the Lobel Trust - - and thus the right to any insurance proceeds upon his death - - to Life Product.

All of the events connected to the alleged injury, the issuance of the policies, and the asserted fraud engaged in by Lockwood, LPS and Tall Tree allegedly to induce Phoenix to issue the policies, took place, by Phoenix's own admission, over a four month period in the second half of 2005. All of the predicate acts relevant to the alleged scheme also took place within this brief period.

Clearly aware that the alleged RICO scheme is far too short to meet the requirement of closed-ended continuity, Phoenix attempted to tack on events that occurred after the issuance of the Kramer, Levinson and Lobel insurance policies, and thus after the occurrence of the alleged injury. For example, as to Kramer, Phoenix has alleged predicate acts consisting of the mailing of premium payments in 2006 (Phoenix Ans.¶119 (a; b; c)), a letter advising Phoenix of a change in the trustee for the Kramer Trust in 2006 (Phoenix Ans. ¶119 (d)); and "several" telephone calls in 2006 and 2007 "to request life insurance illustrations." (Phoenix Ans. ¶119 (e)). None of these alleged acts relates to the issuance of the insurance policies and therefore, they are not the basis of Phoenix's claimed injury.

Similarly, with respect to the issuance of the Levinson policy, Phoenix has inserted a series of predicate acts consisting of the mailing of premium payments in 2005 and 2006 (Phoenix Ans.¶147 (g; h, I)), a letter advising Phoenix of a change in the trustee for the Levinson Trust in 2007 (Phoenix Ans.¶147(d)); and a letter in 2007 following Levinson's death requesting the

payment of death benefits on the issued policy. Once again, none of these alleged acts gave rise to the injury claimed to have arisen from the issuance of the Levinson policy. As to Lobel, Phoenix has alleged only predicate acts (in December 2005 and January, 2006) that occurred within the short time span of the alleged scheme.

"'[A]cts... [that] are unrelated to the predicate acts which allegedly injured plaintiff... cannot be considered as part of the activity to extend the scope of the pattern.'" Shamis v. Ambassador Factors Corp., 1997 WL 473577, at *15 (S.D.N.Y. 1997), quoting Ray Laren Assocs., Inc. v. Nikko Amer., Inc., 1996 WL 442799, at *7 (S.D.N.Y. 1996). See Morin v. Trupin, 778 F.Supp. 711, 719 (S.D.N.Y. 1991) ("Even if this claim was properly pleaded against Abrams, however, it could not stand as a RICO predicate act because the complaint does not sufficiently allege that the Alberti plaintiffs were injured in [their] business or property by reason of a violation of Section 1962, 18 U.S.C. § 1964(c). The injury allegedly suffered by the Alberti plaintiffs consists of the amounts invested in Sacramento Associates and amounts incurred by reason of any adverse tax consequences resulting from the investments. . . Any damage leading to these alleged injuries was done as of the date the Alberti plaintiffs were induced to purchase limited partnership interests. The letters and the transfer of control of Sacramento Associates all post-date this event."). Here the activity that allegedly injured Phoenix started and ended in 2005. The RICO scheme that has been alleged lasted, at most, over a period of four months, a period far too short to meet the requirement of continuity.

Even were this Court to consider the attenuated events asserted by Phoenix, these events barely surpass the two year threshold. Just to meet this minimum threshold the Court would have to credit the faxing of a letter by Lockwood on March 22, 2005 "requesting Mr. Levinson's medical history" (Complaint ¶147 (a)), and a letter from Lockwood to Levinson on April 5, 2005, "regarding Mr. Levinson's net worth and medical records," (Complaint ¶147 (b)) as predicate

-24-

acts in furtherance of the alleged scheme, and then similarly credit the August 20, 2007 claim

letter (Complaint ¶147 (k)) as the final act in the supposed ongoing scheme.

"[W]hile two years may be the *minimum* duration necessary to find closed-ended

continuity, the mere fact that predicate acts span two years is insufficient, without more, to

support a finding of a closed-ended pattern." First Capital Asset Mgmt, Inc., 385 F.3d at 181 (2d

Cir. 2004).   In First Capital the Court declined to find closed-ended continuity even though a

predicate act was alleged more than two years after the commencement of the alleged scheme

where that act did nothing to further the scheme, or add to the damages allegedly incurred:

> "The first adequately pled predicate act committed by Sohrab, a
> fraudulent conveyance, occurred in April 1997. Sohrab committed
> additional fraudulent conveyances until July 17, 1997, when he filed
> a false bankruptcy petition. He then gave false testimony at a
> meeting with his creditors on September 4, 1997 and at his Rule
> 2004 examination on September 16, 1997; submitted a falsified
> trust agreement to the Bankruptcy Court in November 1997; and
> filed a false affidavit relating to that agreement in June 1998. After
> this, no additional predicate acts occurred for more than a year-until
> October 1999, when Sohrab perjured himself in a trial before the
> Bankruptcy Court. That perjury, however, involved the same
> misrepresentations that Sohrab made to his creditors on September
> 4, 1997. Although we stop short of holding that Sohrab's final act of
> perjury does not qualify as a predicate act, we note that it did not
> incrementally injure Plaintiffs or the Bankruptcy Estate, [citations
> omitted] .   .   . and that the other predicate acts spanned only a little
> more than a year.

385 F.2d at 182.

Phoenix has failed to set forth a sufficient basis for a finding of closed-end continuity and

its RICO claim should be on that basis alone, dismissed.

### The Allegations Fail To Establish Open-Ended Continuity

Phoenix has not even attempted to allege facts which would show the existence of open-

ended continuity. Open-ended continuity requires a party to assert facts which demonstrate "a

threat of continuing criminal activity beyond the period during which the predicate acts were

performed." <u>First Capital Asset Management, Inc.</u>, 385 F.3d at 180, quoting <u>Cafacredit</u>, 187 F.3d at 242. Where an alleged scheme is "inherently terminable," by virtue of having a natural ending point, there can be no open-ended continuity. <u>Id.</u> <u>See</u> <u>Spool</u>, 520 F.3d at 186 (in rejecting an assertion of open-ended continuity, holding: "the enterprise cannot be said to pose a threat of continuing conduct. At most, the amended complaint states that World Child's branch office fraudulently continued to process client cases over a period of several months following the fallout between Spool and Goolsby and the defection of Dibble and Whitaker. A scheme of this sort is 'inherently terminable' because once the defendants conclude the fraudulent 'processing,' they have no more CFA-related files with which to work"); <u>GICC Capital Corp. v. Technology Finance Group, Inc.</u>, 67 F.3d 463, 466 (2d Cir. 1995) (in rejecting an assertion of open-ended continuity based on the claim that "the defendants would have continued to loot [the victim] if not for the fact that all available funds had already been looted," the Court stated: "Even if we assume that defendants' scheme was designed to deprive TFG of its assets, it is clear that the scheme was *inherently* terminable. It defies logic to suggest that a threat of continued looting activity exists when, as plaintiff admits, there is nothing left to loot.").

Other than the purely conclusory that "the pattern of racketeering activity and virtually identical SOLI schemes alleged herein confirm [the alleged RICO scheme participants'] intent to defraud the insurers involved in the SOLI schemes . . . and also reveal a continued threat of criminal activity," (Phoenix Ans. ¶¶ 114, 186) Phoenix makes no mention of any continuing threat, nor asserts any further acts. Nor could it. Lockwood's ability to act on behalf of Phoenix was subject to the 2005 Independent Producer contract between Lockwood and Phoenix, and the 2007 Broker Agreement between Lockwood and Phoenix pursuant to which Lockwood was authorized to act as independent producer of various Phoenix products. (Phoenix Ans. ¶9). Phoenix does not allege that these agreements are still in effect today. Nor does Phoenix allege

that Lockwood has any continuing ability to act upon Phoenix's behalf. The absence of such factual assertions, undermines any notion that Lockwood poses a continuing threat and any basis for this Court to find the existence of open-ended continuity.

### C.    PHOENIX HAS FAILED TO PLEAD A RICO ENTERPRISE

**Phoenix Has Not Alleged A Viable Association in Fact In Its Combined RICO Claim**

A RICO "association in fact" enterprise has been defined as "'a group of persons associated together for a common purpose of engaging in a course of conduct,' the existence of which is proven 'by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit.'" First Capital Asset Management, Inc., 385 F.3d at 173, quoting, United States v. Turkette, 452 U.S. 576, 583 (1981).

Critical to whether an enterprise is an "ongoing organization" whose associates "function as a continuing unit" is the requirement that an association in fact enterprise have an "ascertainable structure." "[C]ourts in this Circuit look to the 'hierarchy, organization, and activities' of the association to determine whether 'its members functioned as a unit.' Accordingly, merely stringing together a list of defendants and labeling them an enterprise is insufficient to state a RICO claim." Cedar Swamp Holdings, Inc. v. Zaman, 487 F.Supp.2d 444, 450 (S.D.N.Y. 2007), quoting, First Capital Asset Mgmt, Inc., 385 F.3d at 174-175; Nat'l Group for Commun. and Computers Ltd. v. Lucent Technologies Inc., 420 F.Supp.2d 253, 271 (S.D.N.Y. 2006) ("despite the length of the most recent complaint, plaintiff fails to set forth facts to support the conclusion that all seventeen defendants were actually working with one another or associated together in a single ongoing organization or continuing unit where members worked together to accomplish a common purpose").

-27-

Phoenix's allegations are glaring in their failure to allege the necessary elements.  In its

Combined RICO Claim, Phoenix has alleged the existence of an association-in-fact enterprise

consisting of Lockwood, LPS, Tall Tree, Life Product and Berck. (Phoenix Ans. ¶177). Phoenix

has asserted no facts to support this claim, and, indeed, has provided no support at all other than to

argue, in conclusory fashion, that each of Lockwood, LPS, Tall Tree, Life Product and Berck, on

"information and belief," "participated in the operation or management" of the alleged SOLI

enterprise.  (Phoenix Ans. ¶¶180-184)  Neither Phoenix's pleadings, nor its RICO Statement,

provide any detail as to the management or operation of the supposed enterprise: while certain

allegations are made on "information and belief", such as the services provided by each of the

supposed enterprise members, no facts are alleged  as to the management of the supposed

enterprise, its hierarchy or organization, or whether any of the supposed enterprise participants

exercised any management or control over its operations.

Fatal to Phoenix's claim is the total absence of any allegation as to each participant's role in

the management and control of the enterprise. The Supreme Court has held that, "[i]n order to

'participate, directly or indirectly, in the conduct of [an] enterprise's affairs,' one must have some

part in directing those affairs. Of course, the word 'participate' makes clear that RICO liability is

not limited to those with primary responsibility for the enterprise's affairs  .  .  .  but *some* part in

directing the enterprise's affairs is required." <u>Reves v. Ernst & Young</u>, 507 U.S. 170, 179 (1993).

In applying this requirement it has been held that:

> In this Circuit, the "operation and management" test is an extremely
> rigorous test. <u>Schmidt v. Fleet Bank</u>, 16 F.Supp.2d 340, 346
> (S.D.N.Y.1998) (quoting <u>LaSalle Nat'l Bank v. Duff & Phelps Credit
> Rating Co.</u>, 951 F.Supp. 1071, 1090 (S.D.N.Y.1996)). There is a
> "substantial difference between actual control over an enterprise and
> association with an enterprise in ways that do not involve control;
> only the former is sufficient under *Reves* because the 'test is not

involvement but control.' " [Citations omitted.]

United States Fire Ins. Co. v. United Limousine Service, Inc., 303 F.Supp.2d 432, 451 (S.D.N.Y. 2004).

It is not enough to claim that the various members of the supposed enterprise played certain roles in the enterprise, or even that they had knowledge of the other members of the enterprise. To plead a RICO claim a party must identify the mechanism for controlling and directing the affairs of the enterprise, and the function of each participant with respect to such control and management. Phoenix has failed to meet this Circuit's "extremely rigorous test" by failing to identify any supposed participant's role in the management and control of the enterprise.

Equally fatal to Phoenix's allegation of a RICO enterprise is its failure to demonstrate that the alleged enterprise existed separate and distinct from the asserted racketeering activity. Courts in this Circuit have required a party to plead facts which clearly distinguish the underlying enterprise from the alleged pattern of racketeering activity. See e.g. First Capital Asset Mgmt. Inc., 385 F.3d at 174 ("The Amended Complaint fails, however, to detail any *course* of fraudulent or illegal conduct separate and distinct from the alleged predicate racketeering acts themselves - - a requirement in this Circuit."). Here, the supposed function of the alleged SOLI enterprise, and the alleged racketeering activity are indistinguishable. The sole function of the alleged enterprise as set forth both in Phoenix's pleadings (Phoenix Ans. ¶178) and its RICO Statement (RICO Statement p. 29) is to service the very same "SOLI scheme" that is the racketeering activity alleged. Phoenix has failed to set out a factual basis from which this Court could conclude that the alleged enterprise in any way existed separate and apart from the alleged pattern of racketeering activity

-29-

**LPS and Tall Tree Cannot Be the Enterprise**
**in the Cross Claim Against Lockwood**

Section 1962(c) requires that the "person" alleged to have violated RICO be distinct from

the asserted enterprise. First Capital Asset Mgmt, Inc. v. Satinwood, Inc., 385 F.3d at 173;

Riverwoods Chappaqua Corp. v. Marine Midland Bank, 30 F.3d 339, 343 (2d Cir. 1994); Bennett v.

United States Trust Co., 770 F.2d 308, 315 (2d Cir. 1985), cert. denied, 474 U.S. 1058 (1986).

Phoenix has failed to allege such distinct "person" and "enterprise" in its Third Party RICO Claim.

Phoenix impermissibly attempts, in the alternative, to assert that LPS and Tall Tree are both

the RICO enterprise and person. Phoenix has alleged an identical RICO scheme in both its Third

Party RICO Claim and the Combined RICO Claim. The supposed purposes of both schemes - - to

submit "fraudulent" life insurance applications and procure SOLI life insurance policies - - are

identical, as are the alleged predicate acts. Indeed, in its RICO Statement, Phoenix makes no

distinction between the supposed pattern of racketeering activity in its Third Party RICO Claim and

the Combined RICO Claim, nor identifies any different factual allegation between one claim and

the other.

The only difference between these claims is that in the Third Party RICO claim Phoenix has

alleged that LPS and Tall Tree were the RICO enterprise through which Lockwood, as the "person"

conducted his racketeering activity. By contrast, in the Combined RICO Claim LPS and Tall Tree

are identified as "persons" in the scheme.

In Goren v. New Vision International, Inc., 1997 WL 321673 (N.D.Ill. 1997) the plaintiff

attempted to evade the requirement that an enterprise and person must be distinct by using one set

of operative facts and asserting multiple RICO counts with each party alleged to be the RICO

person in one count and alleged to be the RICO enterprise others. The court found such pleading

gymnastics to be what they clearly were: a bald-faced attempt to avoid the pleading requirements of

-30-

RICO:

> "It is clear that, under 1962(c) (the section of RICO under which the
> claims appear to have been brought), the enterprise and the person
> must be distinct.[Citations omitted].   Here, the plaintiff has not
> alleged that the same parties were both persons and enterprises within
> the same counts. Instead, in each count, she leaves one defendant out
> of the list of enterprises, and identifies that omitted defendant as the
> person in that count. In the next count, a different defendant is then
> subjected to the same treatment. Nevertheless, the same set of
> operative facts gives rise to each count. Thus, this method of naming
> defendants as an enterprise in one count and a person in the next can
> only be described as a naked attempt to evade the rule requiring that
> persons be distinct from enterprises. The attempt must fail."

1997 WL 321673 at *4.

Phoenix's failure to identify a distinct enterprise is fatal to its Third Party RICO Claim.

**D.    PHOENIX HAS FAILED TO PLEAD THE
       ALLEGATIONS OF MAIL AND WIRE
       FRAUD WITH THE REQUISITE PARTICULARITY**

Rule 9(b) of the Rules of Civil Procedure provides that "In alleging fraud or

mistake, a party must state with particularity the circumstances constituting fraud or mistake.

Malice, intent, knowledge and other conditions of a person's mind may be alleged generally."

"[W]here violations by multiple defendants are alleged, Plaintiffs must set forth the specific nature

of each defendant's participation in the alleged fraud." Cyber Media Group, Inc. v. Island Mortgage

Network, Inc., 183 F.Supp.2d 559, 570 (E.D.N.Y. 2002).  See DiVittorio v. Equidyne Extractive

Indus.Inc., 822 F.2d 1242, 1247 (2d Cir. 1987).  The requirement of particularity applies with even

greater force when allegations of mail and wire fraud are alleged as the predicate acts of a RICO

claim: "When the predicate acts of a civil RICO claim are grounded in fraud, the concerns

associated with pleading fraud with particularity take on an even greater importance than usual."

Lesavoy, 304 F.Supp.2d at 532 -533, quoting De La Rocke v. Calcagnini, 1997 WL 292108, at *7

(S.D.N.Y. 1997).

The facts supporting an alleged RICO fraud scheme cannot be alleged upon information and belief. DiVittorio, 822 F. 2d at 1247. Despite these clear requirements, Phoenix has failed to plead its fraud allegations with either specificity or based on actual knowledge. For example, Phoenix alleges:

"116.   On information and belief, Lockwood devised a scheme to submit a fraudulent life insurance application on behalf of Mr. Kramer and the Kramer August Trust to Phoenix and thereby to procure a SOLI policy as alleged herein. [A similar allegation is made in ¶188].

120.   On information and belief, Lockwood caused all of the above uses of the mails or wires [the alleged predicate acts], either by personal direction or authorization or by virtue of the fact that such uses were reasonably foreseeable, or likely to follow in the regular course of the Kramer-Phoenix SOLI scheme. [A similar allegation as to Lockwood, LPS and Tall Tree is made in ¶192].

121.   On information and belief, by his SOLI scheme and by the above uses of the mails and wires, Lockwood intended to deprive Phoenix of property by causing it to issue the Phoenix Policies without and insurable interest that it would not have issued but for the fraudulent SOLI scheme  . . .

123.   On information and belief, Lockwood and LPS submitted a fraudulent life insurance application on behalf of Mr. Kramer to Lincoln Life through the mail.  On information and belief, when they mailed that application Lockwood and LPS had a specific intent to defraud Lincoln Life . . .

124.   On information and belief, Lockwood and LPS submitted a fraudulent life insurance application on behalf of Mr. Kramer to Transamerica through the mail.  On information and belief, when they mailed that application Lockwood, LPS and Tall Tree had a specific intent to defraud Transamerica . . ..

145.   On information and belief, the creation of the Levinson Trust, the Levinson application for the policy, and the assignment of the beneficial interest in the Levinson Trust . . . were all part of a single transaction, which had as its purpose the procurement of an insurance policy on Mr. Levinson's life for the benefit of a person having no insurable interest on his life.  On information and belief, Lockwood and LPS devised this fraudulent SOLI scheme, advised Mr. Levinson with respect to the transaction, induced Mr. Levinson to participate in

-32-

the scheme, and facilitated the transfer of the rights to the death
benefits to an outside investor.

148.   On information and belief, Lockwood caused all of the above
uses of the mails or wires [the Levinson alleged predicate acts], either
by personal direction or authorization or by virtue of the fact that such
uses were reasonably foreseeable, or likely to follow in the regular
course of the Kramer-Phoenix SOLI scheme.  [A similar allegation as
to Lockwood and LPS is made in ¶198].

152.   On information and belief, Lockwood, Life Product and others
devised a scheme to submit a fraudulent life insurance application on
behalf of Mr. Lobel and the Lobel Trust to Lincoln Life, and thereby
to procure a SOLI policy.  [A similar allegation is made as to
Lockwood and LPS in ¶200].

153.   On information and belief, Lockwood, together with another
insurance broker, colluded with Mr. Lobel to participate in a
fraudulent SOLI arrangements. . . .

172.   On information and belief, Lockwood caused, by personal
action, direction, or authorization, all of the above [the Lobel
predicate acts] uses of the mails.  [A similar allegation as to
Lockwood and LPS is made in ¶204].

Phoenix alleges the existence and relationship of the supposed association in fact among

Lockwood, LPS, Tall Tree, Life Product, and Berck "on information and belief," (Phoenix Ans.

¶¶177, 178), and participation in the operation or management of the purported SOLI enterprise by

each of Lockwood  (Phoenix Ans. ¶180), LPS (Phoenix Ans. ¶181), Tall Tree (Phoenix Ans. ¶182),

Life Product (Phoenix Ans. ¶183), and Berck (Phoenix Ans. ¶184), on "information and belief."

The Second Circuit has made it clear that when a RICO claim based on mail or wire fraud

has been alleged that it "look[s] with a jaundiced eye upon allegations of fraud based upon

information and belief." Furman v. Cirrito, 828 F.2d 898, 900 (2d Cir. 1987). See G-I Holdings,

Inc. v. Baron & Budd, 2004 WL 1277870, at *1 to *3 (S.D.N.Y. 2004) (refusing to allow plaintiff to

file an amended pleading where its RICO fraud allegations had been made on "information and

belief" while failing to provide "a statement of facts upon which the belief is founded"); Int'l

-33-

Telecom, Inc. v. Generadora Electrica del Oriente S.A., 2002 WL 465291, at *7 (S.D.N.Y. 2002) (dismissing fraud claims alleged on "information and belief," and noting that the "'sources of the information and belief should be sufficiently identified so as to allow each defendant and the Court to review the sources and determine, at the pleading stage, whether an inference of fraud may be fairly drawn from the information contained therein"). Even where the supposed information is peculiarly within the adverse parties' knowledge, the pleading party must provide a statement of facts providing the basis on which the allegations are made. Jeanette Coquette Co., Inc. v. Hartford Fire Ins. Co., 1995 WL 363864, at *2 (S.D.N.Y 1995).

Phoenix's RICO allegations are precisely the type of pleading found impermissible by the courts of this Circuit. Virtually all of the critical allegations as to the association of the parties, the alleged fraudulent conduct and the alleged fraud, have been alleged on information and belief. This glaring failure is then compounded in Phoenix's RICO Statement, where, in response to the mandate that it provide detail as to the alleged fraud, Phoenix repeats the same conclusory assertions as in its Third Party Claim and Combined Claim, stating again "on information and belief" the critical allegations of fraud. (RICO Statement, pp. 12-23). No detail is provided, nor any facts asserted which would sustain these information and belief allegations.

In Jeanette Coquette, the court dismissed a RICO claim where all of the key allegations of fraud were asserted on information and belief. 1995 WL 363846, at *2 to *3. There, the court noted that the RICO plaintiff had done nothing more than repeat the mantra that a fraud had been committed, but had failed to provide any basis on which to support its allegations of fraud: the "most serious manner in which Hartford has failed to conform to the requirements of Rule 9(b) is that it has totally failed to offer any support for its conclusory allegations that JCCI and Fadida have engaged in fraudulent activities. Hartford simply labels particular activities as fraudulent, without providing any explanation for why Hartford deems them so." Id. at *4.

-34-

E.   **PHOENIX HAS SUFFERED NO INJURY**

Phoenix's supposed RICO claims must also be dismissed because it failed to allege any

actual injury arising from the asserted RICO violation.  "Because a plaintiff must show injury 'by

the conduct constituting the violation' of RICO, [citation omitted], the injury must be caused by a

pattern of racketeering activity violating section 1962 or by individual RICO predicate acts."  Hecht

v. Commerce Clearing House, Inc., 897 F.2d 21, 23 (2d Cir. 1990).

Speculative or potential future injuries cannot provide the basis for the required RICO

injury. In Hecht the court found that an injury based on a claim of lost future commissions to be

insufficient to sustain the RICO claim: "This injury is too speculative to confer standing, because

Hecht only alleges that he would have lost commissions in the future, and not that he has lost any

yet." Id. at 24. See Kimm v. Chang Hoon Lee and Champ, Inc., 196 Fed.Appx. 14, 16 (2d Cir.

2006) ("the generalized reputational harms alleged, including the risk of future lost business

commissions, are too speculative to constitute an injury to business or property").

Phoenix has not suffered, and may never suffer, any injury from the alleged conduct.

Phoenix describes its purported injury as follows:

> "Phoenix has been injured in that the RICO defendants have caused it
> to issue life insurance policies, including those issued on the lives of
> Mr. Kramer and Mr. Levinson, as alleged in Sections 2, 4(a) and 5(c)
> herein, that it would not have issued but for the RICO defendants'
> unlawful conduct.  **If Phoenix is required to pay any death benefits**
> pursuant to the Phoenix Policies, as demanded by Plaintiff,
> Lockwood, LPS and Tall Tree will have caused Phoenix to suffer
> damages in the amount of such payments.  They will have caused
> Phoenix to suffer additional damages, including but not limited to
> commissions paid on the Levinson policy and the Phoenix Policies."

(RICO Statement, p. 33)(emphasis added).   To date, Phoenix has declined to pay any death benefits

on the policies at issue.  Phoenix has taken the position in this lawsuit that the Kramer and Levinson

policies should be deemed void from their inception, and that it should be relieved of any obligation

to pay death benefits on those policies.  If Phoenix prevails in this position it will have avoided the payment of the very sums it now asserts are its damages from the alleged RICO scheme.

Alternatively, if this Court were to find that the Kramer and Levinson policies were properly issued, that they are not violative of New York law or public policy, and that Phoenix must make payment of the death benefits as a result thereof, the injury to Phoenix would not be causally related to the alleged predicate acts, all of which are premised on the assertion that Lockwood, LPS and Tall Tree were engaged in an impermissible SOLI scheme.[10]  At this stage of the litigation, however, whether Phoenix ever will suffer compensable injury, and if so, whether such injury can be deemed to be proximately caused by the alleged RICO predicate acts, is entirely speculative.

As there has been no RICO injury alleged or suffered, Phoenix lacks standing to assert its RICO claims, which, for this reason alone, must be dismissed.

## IV.  THE MYRIAD STATE LAW CROSS CLAIMS AND THIRD PARTY CLAIMS MUST BE DISMISSED

In addition to the claims asserted under the federal RICO statute, Phoenix also has asserted a host of state law cross claims and third party claims against Lockwood, LPS and Tall Tree.  As set forth below, each of those claims must be dismissed.

---

[10]In Anza v. Ideal Steel Supply Corp., 547 U.S. 451, 457 (2006), the Supreme Court held that to establish the injury component of a RICO claim the predicate acts must be the proximate cause of the alleged injury: the plaintiff must establish that "the compensable injury flowing from a violation of that provision 'necessarily is the harm caused by predicate acts sufficiently related to constitute a pattern, for the essence of the violation is the commission of those acts in connection with the conduct of an enterprise.'" quoting Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 497 (1985).  Where the supposed injury flows from events other than those asserted as the RICO predicate acts, proximate cause is absent and the RICO claim fails. Anza at 458.

### A. PHOENIX HAS FAILED TO
### ALLEGE ACTIONABLE CLAIMS FOR
### <u>FRAUD OR AIDING AND ABETTING FRAUD</u>

Phoenix has asserted a claim for common law fraud against Lockwood in its first third party

claim, and aiding and abetting that fraud against LPS and Tall Tree in its first cross claim.

As with the allegations of fraud underlying its RICO claims, Phoenix's allegations of fraud

against Lockwood are subject to the particularity requirements of Rule 9(b). <u>See</u> <u>e.g.</u>  <u>DiVittorio</u>

822 F.2d at 1247.  This pleading requirement applies equally to claims of aiding and abetting fraud

as it does to claims of fraud generally.  <u>See</u> <u>e.g.</u> <u>A.I.A. Holdings v. Lehman Brothers, Inc.</u>, 1998 WL

159059, at *8 (S.D.N.Y. 1998); <u>Vermonty v. Taormina</u>, 1988 WL 3191 (E.D.N.Y. 1988).  As with

its RICO pleadings, Phoenix has fallen woefully short of alleging actionable fraud.

To assert an actionable claim for common law fraud a party must allege:

> (1) that the defendant made a representation, (2) as to a material fact,
> (3) which is false, (4) and known to be false by the defendant, (5) that
> the representation was made for the purpose of inducing the other
> party to rely upon it, (6) that the other party rightfully did so rely, (7)
> in ignorance of its falsity, (8) to his injury.

<u>Crafton Building Corp. v. St. James Constr. Corp.</u>, 221 A.D.2d 407, 408, 633 N.Y.S. 2d 795 (2d

Dep't 1995).  <u>See</u>, <u>e.g.</u> <u>Landes v. Sullivan</u>, 235 A.D.2d 657, 658, 651 N.Y.S.2d 731, 733 (3d Dep't

1997).

A careful parsing of Phoenix's pleadings make clear that it has failed to identify any false

statements made by Lockwood.   Instead, Phoenix attempts to utilize creative drafting to assert that

Lockwood **"implicitly represented that: (a)** the Kramer August Trust would be the 'true owner and

beneficiary of the requested Phoenix Policies...and that (b) the Kramer August Trust and its

intended beneficiary had an insurable interest in Mr. Kramer life." (Phoenix Ans. ¶22 ); that **"on**

**information and belief"** that Lockwood failed "to disclose information that he knew Phoenix

would deem relevant to its decision to issue the Phoenix Policies" (Phoenix Ans. ¶73 ); or that, **on**

**information and belief,** that "[i]n signing the Phoenix Application, Lockwood represented that the

true owner and beneficiary of the Phoenix Policies was the Kramer August Trust and that the

Kramer August Trust had a valid insurable interest - - representations that Lockwood knew to be

incomplete and false when made." (Phoenix Ans. ¶73 ).

In Avnet, Inc. v. American Motorists Ins. Co., 115 F.R.D. 588 (S.D.N.Y. 1987) the court

dismissed fraud and RICO claims arising out of the defendants' refusal to pay certain insurance

claims. The court noted: "The complaint, instead of succinctly outlining the alleged fraud, gives a

rambling account of defendants' refusal on three occasions to promptly compensate plaintiff for

losses it asserts were covered by the insurance policies." 115 F.R.D. at 591. The Court went on to

conclude:

> "In sum, it cannot be gleaned from the complaint the nature of the
> representations alleged to be fraudulent, let alone any inference of
> fraud fairly attributable to those statements. Rather, the pleading upon
> its face with its charges of racketeering violations based on the three
> asserted claims of coverage under the policies, which AMICO
> disputed, appears designed to force insurance companies who dispute
> coverage to forthwith pay such disputed claims. Without particularity
> as to the alleged fraudulent representations made, these allegations
> cannot stand. The motion to dismiss the RICO and fraud claims for
> failure to comply with Fed.R.Civ.P. 9(b) is granted, with leave to
> serve an amended complaint."

Id.

In Highlands Ins. Co. v. PRG Brokerage, Inc., 2004 WL 35439 (S.D.N.Y. 2004), the

plaintiff insurance company asserted claims of fraud (along with RICO and breach of fiduciary

duty) against the defendant insurance broker. There, as here, the plaintiff claimed that the broker

had fraudulently induced it to issue policies that it claimed it would otherwise not have issued by

virtue of "material misrepresentations and/or omissions of fact." Id. at *2. Beyond broad allegations

of fraud, however, the Court found the complaint devoid of the specific details required, and, accordingly, dismissed the fraud claims: "Highlands' allegations consist only of broad and general accusations that do not satisfy Rule 9(b)'s pleading requirements." Id. Phoenix's failure to specify the alleged fraudulent statements by Lockwood, and its failure to provide any detail as to the alleged fraud mandate the dismissal of the third-party fraud claim against Lockwood.

Moreover, even were it found that Phoenix had asserted facts supporting a claim of fraud against Lockwood, virtually all of those assertions are made on "information and belief". As with its RICO allegations of fraud, it is simply impermissible to assert factual allegations of fraud on "information and belief" except as to matters "peculiarly within the opposing party's knowledge; even then, however, the allegations must be accompanied by a statement of facts upon which the belief is founded." Stern v. Leucadia Nat. Corp., 844 F.2d 997, 1003 (2d Cir. 1988) (in dismissing fraud claims the Court noting that the assertion of "conclusory suspicions as to defendants' motives" was no substitute for well pleaded assertions of fact). See Campaniello Imports, Ltd. v. Saporiti Italia S.p.A., 117 F.3d 655, 664 (2d Cir. 1997) (noting that "[e]ven if [appellee's] financial status was peculiarly within appellees' knowledge, appellants have failed to provide a statement of facts upon which the belief is founded. The unsupported nature of the allegation weighs against finding it indicative of fraudulent intent.").[11] Phoenix's allegations both are devoid of any factual detail and fail to allege the basis of those allegations pled upon information and belief.

Given the fatal flaws in the assertions of fraud against Lockwood, the first cross-claim against LPS and Tall Tree, in which they are alleged to have aided and abetted in the fraud must also be dismissed. To state a claim for aiding and abetting fraud under New York law, a plaintiff

---

[11]As with its RICO claims, Phoenix has not alleged that it has suffered any actual injury as of this time, a fatal defect to the fraud claim as well as the other claims asserted.

must prove: "(1) the existence of a violation by the primary wrongdoer; (2) knowledge of this

violation on the part of the aider and abettor; and (3) substantial assistance by the aider and abettor

in the achievement of the primary violation." <u>Williams v. Bank Leumi Trust Co.</u>, 1997 WL 289865,

*4 (S.D.N.Y. 1997). <u>See</u> <u>Cromer Finance, Ltd. v. Berger</u>, 137 F.Supp.2d 452, 470 (S.D.N.Y. 2001).

As Phoenix failed to adequately allege the "existence of a violation by the primary wrongdoer,"

there can be no aiding and abetting liability.

Even assuming, *arguendo*, that an underlying claim of fraud has been alleged, the aiding and

abetting claim still must be dismissed. "The pleading requirements of Rule 9(b) . . . apply to a

claim for aiding and abetting fraud." <u>Renner v. Chase Manhattan Bank</u>, 1999 WL 47239, 12

(S.D.N.Y. 1999). To satisfy the knowledge element of an aiding and abetting claim, plaintiff must

demonstrate the alleged aider and abettor had actual knowledge of the primary wrong . "New York

courts and federal courts in this district have required actual knowledge." <u>Renner v. Chase</u>

<u>Manhattan Bank</u>, 2000 WL 781081, at *6, quoting <u>Kolbeck v. LIT America, Inc.</u>, 939 F.Supp. 240,

246 (S.D.N.Y. 1996).

Simply knowing that a fraud may be taking place, or engaging in incidental actions which

may in some way help a fraudulent course of conduct to proceed is insufficient to satisfy the

"substantial assistance" element of an aiding and abetting claim. <u>Nat'l Westminster Bank USA v.</u>

<u>Weksel</u>, 124 A.D.2d 144, 148, 511 N.Y.S.2d 626,630 (1st Dep't 1987). "Substantial assistance

requires the plaintiff to allege that the actions of the aider/abettor proximately caused the harm on

which the primary liability is predicated.[Citations omitted.] 'But-for' causation is insufficient:

aider and abettor liability requires the injury to be a direct or reasonably foreseeable result of the

conduct." <u>Cromer Finance, Ltd. v. Berger</u>, 137 F.Supp.2d at 470.

Even if LPS or Tall Tree can be held to have knowledge of the alleged fraud, there are no

allegations that meet the substantial assistance requirement. Phoenix asserts in its counterclaims, cross claims and third party claims that it was injured by virtue of being wrongfully induced to issue the Phoenix Policies. Yet there is not a single allegation that LPS or Tall Tree participated in that alleged inducement, or that their actions caused the alleged harm. To the contrary, all that is alleged with respect to LPS and Tall Tree is that they took steps **after** the issuance of the policies by Kramer.[12] Phoenix simply fails to allege facts which show that either LPS or Tall Tree took any actions that rise to the level of "substantial assistance," in the chain of events leading to Phoenix's decision to issue or its issuance of the Phoenix Policies. See King v. George Schonberg & Co., 233 A.D.2d 242, 243, 650 N.Y.S.2d 107, 108 (1st Dep't 1996).

The decision in Cromer Finance, is particularly instructive. That case involved a claim arising under New York law from losses suffered by plaintiff from his investment in the primary defendant's investment fund. In furtherance of this alleged fraud, it was asserted that the primary defendant had created false and fictitious account statements that were sent to the plaintiff and which were used to conceal the losses that plaintiff was sustaining. 137 F.Supp.2d at 463.

Plaintiff also brought suit against Bear Stearns, asserting that it provided "substantial assistance" to the primary defendant by over-extending margin credit to him, by allowing him to violate concentration limitations usually applied by Bear Stearns, and by not freezing the account when required to do so by regulations. Id. The plaintiff claimed that as a result the primary defendant was able to continue with his fraudulent activities. Id.

---

[12]For example, paragraph 62 of Phoenix's Cross Claims alleges that "[o]n information and belief, Tall Tree and LPS had arranged to make payments to Arthur and/or Liza Kramer **immediately after** the issuance of the Phoenix Policies. . . ." Paragraph 63 alleges that "[o]n information and belief, Tall Tree and LPS paid Arthur and/or Liza Kramer to transfer the beneficial interest in the Kramer August Trust shortly after the Phoenix Policies were issued."

The Court rejected plaintiff's attempt to impose aiding and abetting liability on Bear Stearns. Although the Court found the first two prongs of the aiding and abetting standard to have been met - - existence of the fraud and knowledge of it - - it found the above facts to be insufficient to meet the third requirement under New York law because it was not the proximate cause of the plaintiff's losses. Id. At 470-72; see, Williams, 1997 WL 289865, at *5 (dismissing claims for aiding and abetting under New York law against bank whose accounts had been used in furtherance of fraudulent scheme, even though bank may have been aware of the scheme, since the bank's participation did not rise to the level of substantial assistance); Nat'l Westminster Bank USA, 124 A.D.2d 144, 148-49, 511 N.Y.S.2d 626, 630-61 (1st Dep't 1987).

The aiding and abetting fraud claim must be dismissed for any one of a host of reasons. As an initial matter, because there was no fraud, and Phoenix has failed to plead an actionable fraud, there can be no actionable claim for aiding and abetting fraud. Moreover, separate and apart from its failure to plead an underlying fraud, Phoenix failed to set forth an actionable claim for aiding and abetting fraud because its allegations fall woefully short of establishing "substantial assistance."

## B. THE FIDUCIARY DUTY
## CLAIMS MUST BE DISMISSED

Similarly deficient is Phoenix's unsubstantiated claims of breach of fiduciary duty by Lockwood, and aiding and abetting that breach by LPS and Tall Tree.

"Under New York law, the elements of a claim for breach of fiduciary duty are (1) existence of fiduciary relationship and (2) breach of a fiduciary duty." Off'l Comte. of Asbestos Claimants of G-I Holding, Inc. v. Heyman, 277 B.R. 20, 37 (S.D.N.Y. 2002). A "'fiduciary relation exists between two persons when one of them is under a duty to act or to give advice for the benefit of the other upon matters within the scope of the relation.'" Bank of America Corp. v. Lemgruber, 385 F.Supp.2d 200, 224 (S.D.N.Y. 2005), quoting Mandelblatt v. Devon Stores, Inc., 132 A.D.2d 162,

168, 521 N.Y.S.2d 672, 676 (1st Dep't 1987). "It is well-settled that the absence of a duty is fatal to a negligence or fiduciary duty claim." Lumbermens Mut. Cas. Co. v. Franey Muha Alliant Ins. Services, 388 F.Supp.2d 292, 304 (S.D.N.Y. 2005).

Phoenix's claim must fail because it is based on the claim that Lockwood caused it to issue improper SOLI policies. As previously discussed, the Phoenix Policies were issued in a manner consistent with New York law, and their issuance cannot give rise to a breach of any duty by Lockwood.

Further, when a breach of fiduciary duty supposition is premised, as it is here, on allegations of fraud, the fiduciary duty claim is subject to the stringent pleading requirements of Rule 9(b). See Frota v. Prudential-Bache Securities, Inc., 639 F.Supp. 1186, 1193 (S.D.N.Y.1986) ("Rule 9(b) extends to all averments of fraud or mistake, whatever may be the theory of legal duty-statutory, common law, tort, contractual, or fiduciary"); Isanaka v. Spectrum Technologies USA Inc., 131 F.Supp.2d 353, 362 (N.D.N.Y. 2001) ("When a claim for breach of fiduciary duty is based primarily upon alleged fraudulent conduct, the heightened pleading requirements of Fed.R.Civ.P. 9(b) apply"). Here, the allegations of breach of fiduciary duty suffer from the same infirmities as do the assertions of fraud. Phoenix thus claims that Lockwood had a "duty" to make full disclosure of "any and all information" with respect to the Kramer Application (Phoenix Ans. ¶78), that he "fail[ed] to disclose . . . information he knew Phoenix would deem relevant," (Phoenix Ans. ¶79), and that by his conduct he "caused Phoenix to issue the Phoenix Policies." (Phoenix Ans. ¶80). Again, however, Phoenix utterly fails to attribute any false statements to Lockwood, or provide any detail as to the alleged omissions that Lockwood purportedly had a duty to make.

Most glaring of all the pleading failings, however, is the utter absence of any pleaded basis for the claim that Lockwood owed a fiduciary duty to Phoenix. Phoenix's sole allegation is "as producer of the Phoenix Policies, Lockwood owed a fiduciary duty to Phoenix." (Phoenix Ans.

-43-

¶78) Phoenix neither claims that Lockwood's broker agreement created such a duty, nor provides any factual basis at all to support its claim that such a duty existed.

There is no allegation, nor could there be, that Lockwood functioned as anything more than an insurance broker with respect to Phoenix. The law is clear, however, that such relationship does not give rise to any fiduciary obligations: "It has been long recognized in this state that there is a distinction between insurance agents and brokers. [Citations omitted.] The former acts as agent of an insurance carrier and the latter appears as representative of the insured. American Motorists Ins. Co. v. Salvatore, 102 A.D.2d 342, 345, 476 N.Y.S.2d 897, 900 (1st Dep't 1984). See Highlands Ins. Co. v. PRG Brokerage, Inc., 2004 WL 35439, *5 (S.D.N.Y. 2004)("Under New York law, an insurance broker is in an agency relationship with the insured, and not the insurance carrier.").

Phoenix's conclusory assertion that Lockwood owed it a fiduciary duty - - with nothing more alleged - - is, under the most liberal pleading standard, deficient. In Fagan v. First Sec'ty Investments, Inc., 2006 WL 2671044, at *5 (S.D.N.Y. 2006) the Court dismissed a breach of fiduciary duty claim where the plaintiff had simply asserted that a such duty existed, but failed to provide any factual support: "Here, there is nothing in the Complaint to suggest the existence of a fiduciary relationship between First Security and/or McGrath, on the one hand, and Plaintiffs, on the other, except Plaintiffs' conclusory allegation that 'Defendants' were fiduciaries." Id. Having failed to allege any facts to establish the existence of such a duty, Phoenix's breach of fiduciary duty claim must be dismissed.

As with its fraud claims, once the breach of fiduciary duty claim falls, the claim against LPS and Tall Tree for aiding and abetting in the breach of fiduciary duty must fall with it. To state a claim for aiding and abetting a breach of fiduciary duty under New York law a party must plead three elements: "The first element is 'a breach by a fiduciary of obligations to another,' of which the

aider and abettor had 'actual knowledge'. [Citations omitted.] The second element is 'that the

defendant knowingly induced or participated in the breach'; and the third element is that 'plaintiff

suffered damage as a result of the breach.'" In re Sharp Int'l Corp., 403 F.3d 43, 49- 50 (2d Cir.

2005).

      As noted, as there was no breach of fiduciary duty, Phoenix cannot meet the first element.

Nor has it satisfied the other requirements of pleading an aiding and abetting claim.  The only

allegations Phoenix advances relative to its assertion that LPS or Tall Tree provided substantial

assistance in the alleged breach of fiduciary duty are the conclusory allegations in paragraph 69 of

its Answer.  Phoenix asserts, without any factual support, that LPS and Tall Tree "substantially

participated in Lockwood's breach" by "inducing Mr. Kramer to apply for life insurance," by

"facilitating the creation of the trust," and "arranging the transfer of the beneficial interest."

(Phoenix Ans. ¶69).  Conclusory assertions as to the supposed effect of LPS and Tall

Tree's conduct aside, there are simply no allegations of what LPS and Tall Tree supposedly did.

      In Global Minerals and Metals Corp. v. Holme, 35 A.D.3d 93, 101-102, 824 N.Y.S.2d 210,

217 (1st Dep't 2006) the court dismissed an aiding and abetting claim based on similarly

unsubstantiated and conclusory allegations.  There, the court held that "[a] person knowingly

participates in a breach of fiduciary duty only when he or she provides 'substantial assistance' to the

primary violator. [Citation omitted].  Actual knowledge, as opposed to merely constructive

knowledge, is required and a plaintiff may not merely rely on conclusory and sparse allegations that

the aider or abettor knew or should have known about the primary breach of fiduciary duty." Id.

See  CVC Claims Litigation LLC v. Citicorp Venture Capital Ltd., 2006 WL 1379596, at * 8

(S.D.N.Y. 2006) (Batts, J) (the Court dismissing an aiding and abetting claim under Delaware law,

finding "conclusory statements, that [the defendant] knowingly participated in any breach of

fiduciary duty" insufficient to state a claim).

Phoenix has failed to plead facts to support a claim for aiding and abetting a breach of

fiduciary duty. That claim must also be dismissed.

### C. THE REMAINING CLAIMS AGAINST LOCKWOOD MUST BE DISMISSED

In addition to the fraud and fraud based claims against Lockwood, LPS and Tall Tree,

Phoenix has also asserted a number of other state law third party claims against Lockwood for

breach of contract (the Third Cross Claim), negligence (the Fourth Cross Claim), contractual

indemnification (the Fifth Cross Claim), and for unjust enrichment (the Sixth Cross Claim).  None

of these cross claims should be sustained.

### Negligence

Phoenix's Fourth Third Party Claim for negligence must be dismissed for the same reason as

its claim for breach of fiduciary duty.  Phoenix has based its entire claim on the conclusory

allegation that "Lockwood owed a common law duty of care to Phoenix." (Phoenix Ans. ¶91)  As

Phoenix failed to allege facts sufficient to establish that Lockwood owed it a fiduciary duty, it

similarly cannot be found to have alleged facts which show that a common law duty of care existed.

See, Muller-Paisner v. TIAA, 446 F.Supp.2d 221, 232 (S.D.N.Y. 2006).

As with a claim for breach of fiduciary duty, the "absence of a duty is fatal to a negligence"

claim.  Lumbermens Mut. Cas. Co., 388 F.Supp.2d at 304.  "To establish a claim for common-law

negligence, a plaintiff must first demonstrate that a defendant breached a legal duty owed to him or

her [citation omitted]. However, in the absence of a duty, there is no breach and without a breach

there is no liability." Fernandez v. Elemam, 25 A.D.3d 752, 753, 809 N.Y.S.2d 513, 515 (2d Dep't

2006). See Chahales v. Westchester Joint Water Works, 850 N.Y.S.2d 145, 145 -146 (2d Dep't

2008) ("It is axiomatic that 'before a defendant may be held liable for negligence it must be shown

that the defendant owes a duty to the plaintiff . . . In the absence of duty, there is no breach and without a breach there is no liability'").

In New York University v. Continental Ins. Co., 87 N.Y.2d at 316-17, 639 N.Y.S.2d at 288 the plaintiff insured sought to recover for breach of an alleged duty of care against its insurance company, alleging that "Continental fraudulently induced the University (and others) to purchase insurance, and to maintain such insurance, by falsely representing that it would evaluate claims in good faith and in compliance with applicable law and by concealing that it is and has long been engaged in a scheme and practice of refusing to indemnify its policyholders and then vindictively and improperly terminating their insurance coverage." Id. In dismissing this claim the Court held that the defendant owed plaintiff no duty of care which would give rise to a cause of action. In so ruling the Court recognized that while "the provisions of the Insurance Law reflect State policy that insurers must deal fairly with their insureds and the public at large," such law did not "impose a tort duty of care flowing to the insured separate and apart from the insurance contract." 87 N.Y.2d at 317-18, 639 N.Y.S.2d at 288.

Phoenix has done nothing more than assert, without any factual support, that Lockwood owed it a duty of care. Such conclusory, and unsubstantiated pleadings cannot set forth an actionable negligence claim. As has been held, "'[s]imply alleging a duty of due care does not transform a breach of contract action into a tort claim.'" Clemens Realty, LLC v. New York City Dept. of Educ., 47 A.D.3d 666, 850 N.Y.S.2d 172, 173 (2d Dep't 2008), quoting Briar Contr. Corp. v. City of New York, 156 A.D.2d 628, 629, 550 N.Y.S2d 717 (2d Dep't 1989). The Court rejected an attempt to create a duty of care in a similar insurance company/insurance broker relationship in Highlands Ins. Co., 2004 WL 35439, at *7, holding that "Highlands' generalized allegations that PRG did not exercise reasonable care are an attempt to stretch PRG's duty of care to Highlands

-47-

beyond that allowed under New York law. As a matter of law, Highlands cannot maintain either a negligence or breach of fiduciary duty cause of action against PRG because it cannot show that the broker-insurer relationship gave rise to a duty of care broad enough to cover the allegations in the complaint."[13]

## Contractual Indemnification

Phoenix's claim for contractual indemnification against Lockwood must be dismissed as premature. Phoenix asserts that "[i]f Phoenix is obliged to pay death benefits pursuant to the Phoenix Policies, it is entitled to indemnification from Lockwood in the amount of such payments." (Phoenix Ans. ¶91). Phoenix also claims that it is entitled to indemnification for other damages that Lockwood has caused it to suffer, including commissions and attorneys' fees. (Phoenix Ans. ¶91).

All of Phoenix's indemnification claims are fully contingent on the outcome of this action. There has been no finding that Phoenix has suffered any damages, or that Lockwood has engaged in any wrongdoing. The determination of whether Phoenix will have to pay a claim remains undecided, as is the question of whether Lockwood engaged in any actionable conduct.

The law is clear. A "cause of action for indemnity arises under New York law only upon the payment of the primary liability by the putative indemnitee. . . . ." Sloane v. Landauer-Metropolitan, Inc., 2001 WL 776952, at *1 (S.D.N.Y. 2001). A claim for indemnification is premature until a judgment have been entered and both the issue of liability and the amount of liability has been established. See, e.g. Madeira v. Affordable Housing Fdtn., Inc., 521 F.Supp.2d

---

[13]In the Highland's case, the plaintiff had alleged in its complaint that a duty of care arose because "(1) PRG failed to 'exercise reasonable care in hiring and supervising employees, whom they knew or should have known were dishonest;' (2) PRG failed to 'have reasonable safeguards to protect against dishonest acts of employees;' and (3) PRG failed to 'reasonably or adequately take steps to prevent or discover fraudulent claims and claims practices.'" 2004 WL 35439, at *7.

319, 321 (S.D.N.Y. 2007).

Phoenix's Fifth Third Party Claim must be dismissed.[14]

## Unjust Enrichment

Phoenix's Sixth Third Party Claim against Lockwood for unjust enrichment also must be dismissed. Phoenix claims that as a result of Lockwood having "solicited and procured the Phoenix Policies," that Lockwood received benefits . . . including but not limited to commissions that he received from Phoenix for procuring the Phoenix Policies." (Phoenix Ans. ¶¶100, 101). Lockwood's right to his commissions, and to his compensation arising from the issuance of the policies, arises from his broker agreement with Phoenix. Any claim that Phoenix may have to recover commissions paid to Lockwood is subject to that contract, and to a determination of the contractual rights and obligations of the parties.

A claim for unjust enrichment may not be maintained where the subject matter of the issue in dispute is covered by the terms of an enforceable contract. It has been held that "[t]he existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter. [Citations omitted]. A 'quasi contract' applies only in the absence of an express agreement, and is not really a contract at all, but rather a legal obligation imposed in order to prevent a party's unjust enrichment." Clark-Fitzpatrick, Inc. v. Long Island R.R. Co., 70 N.Y.2d 382, 388, 521 N.Y.S.2d 653, 656 (1987). See Whitman Realty Group, Inc. v. Galano, 41 A.D.3d 590, 593, 838 N.Y.S.2d 585, 588 (2d Dep't 2007) ("Recovery for unjust enrichment is barred by a valid and enforceable contract").

---

[14]Moreover, to the extent that Phoenix's claim is premised on the terms of the 2007 Broker Agreement, which is not attached to its Answer, such claim is clearly unsupportable, as all of the alleged wrongful conduct, and in particular, all of the conduct giving rise to the issuance of the policies to Kramer, pre-dated the execution of this agreement.

In <u>CBS Broadcasting Inc. v. Jones</u>, 460 F.Supp.2d 500 (S.D.N.Y. 2006) the plaintiff brought an action against a former broadcaster seeking the recovery of advance compensation that had been paid. Although the defendant had been employed pursuant to an employment contract, plaintiff asserted a claim for unjust enrichment. In finding the assertion of an unjust enrichment claim to be invalid the Court noted that "[u]nder New York law, however, '[t]he existence of a valid and enforceable written contract governing a particular subject matter precludes recovery in quasi-contract or unjust enrichment for occurrences or transactions arising out of the same matter.'" 460 F.Supp.2d at 506, quoting <u>Eagle Comptronics, Inc. v. Pico Prods., Inc.</u>, 256 A.D.2d 1202, 682 N.Y.S.2d 505, 506 (4th Dep't 1998). The Court went on to reject the plaintiff's assertion that, under the "lenient provisions for alternative pleading under Rule 8(e)(2) of the Federal Rules of Civil Procedure," it should be allowed to pursue this claim, finding instead that "there is a valid and enforceable contract between the parties, and the subject matter of the unjust enrichment claim is covered by the contract." <u>Id.</u>

Any claim that Phoenix may have against Lockwood for recovery of commissions or compensation paid to Lockwood is governed by the contractual agreements between them. Accordingly, as a matter of law, the unjust enrichment claim must be dismissed.

**Breach of Contract**

Phoenix's breach of contract claim against Lockwood suffers from the same deficiencies as its other claims. Phoenix asserts that Lockwood violated the terms of Section 1 of the 2005 Independent Producer Contract Section which provided that "he would make recommendations [to Phoenix] on reasonable grounds . . ." (Phoenix Ans. ¶87), and Section 11 in which he agreed to "give complete and accurate answers in the application and associated forms." (Phoenix Ans. ¶85). Yet once again, Phoenix provides absolutely no factual detail as to how Lockwood violated these

contractual provisions.

As this Court has observed:

> "Under New York law, a claim for breach of contract must allege: (1)
> the existence of a contract; (2) that the plaintiff has performed his or
> her obligations under the contract; (3) that the defendant failed to
> perform his or her obligations thereunder; and (4) resulting damages
> to the plaintiff. [Citations omitted]. 'In pleading these elements, a
> plaintiff must identify what provisions of the contract were breached
> as a result of the acts at issue.' [Citations omitted]. Pleading
> requirements under the Federal Rules of Civil Procedure are
> construed liberally. However, '[l]iberal construction has its limits, for
> the pleading must at least set forth sufficient information for the court
> to determine whether some recognized legal theory exists upon which
> relief could be accorded the pleader. If it fails to do so, a motion
> under Rule 12(b)(6) will be granted.'"

AXA Corporate Solutions Ins. Co. v. Lumbermens Mut. Cas. Co., 2005 WL 1649045, at *4

(S.D.N.Y. 2005) (Batts, J.), vacated on other grounds, 241 Fed. Appx. 718 (2d Cir. 2007).

"'[C]onclusory allegations or legal conclusions masquerading as factual conclusions will

not suffice to prevent a motion to dismiss.'" Smith v. Local 819 I.B.T. Pension Plan, 291 F.3d 236,

240 (2d Cir. 2002), quoting Gebhardt v. Allspect, Inc., 96 F.Supp.2d 331, 333 (S.D.N.Y. 2000).

Yet all of the "facts" alleged by Phoenix in support of its breach of contract claim are nothing more

than conclusory assertions without any alleged factual underpinnings.  Phoenix asserts that

Lockwood engaged in "inducing" Kramer, in "facilitating" the creation of the Kramer Trust, in

failing to disclose information "he knew Phoenix would deem relevant" and "arranging" for the

transfer of the beneficial interests in the Kramer Trust.  (Phoenix Ans. ¶88).  Phoenix has not

alleged, for example, how Lockwood's "facilitating" the creation of the Kramer Trust, or alleged

inducement of Kramer,  was either a failure to "give complete and accurate answers in the

application and associated forms," or a failure to make recommendations on reasonable grounds to

Phoenix, which are the contractual clauses allegedly breached.  Phoenix simply cannot shoehorn its

allegations of what it claims was Lockwood's fraud into inapplicable contract provisions which do not provide it with a basis for relief.[15]

Moreover, Phoenix has also once again failed to allege the necessary element of damages. Phoenix alleges, as it has done with its other claims that "If Phoenix is required to pay death benefits pursuant to the Phoenix Policies, Lockwood **will have caused** Phoenix to suffer damages. . . ." (Phoenix Ans. ¶89, emphasis added). To state a claim for breach of contract, however, a claim for damages "may not be 'merely speculative, possible or imaginary, but must be reasonably certain and directly traceable to the breach, not remote or the result of other intervening causes.'" Wai Ming Ng v. Tow, 260 A.D.2d 574, 575, 688 N.Y.S.2d 647, 649 (2d Dep't 1999), quoting Kenford Co. v. Cty. of Erie, 67 N.Y.2d 257, 261, 502 N.Y.S.2d 131 (1986). As previously noted, it is unclear if Phoenix will ever have to pay the death benefits, or if it does, the reason for such payment. At this time there is no way to determine, even if a breach of contract were to be found, whether if Lockwood has caused any actual injury to Phoenix.

The breach of contract claim should be dismissed.

---

[15]In addition to the above, Phoenix has also failed to allege that it performed its obligations under the contract, a necessary element of a breach of contract claim.

## CONCLUSION

For the foregoing reasons, defendants Lockwood Pension Services, Inc. and Tall Tree

Advisors, Inc. and third party defendant Steven Lockwood respectfully request that this Court

dismiss all of the Cross-Claims and Third Party Claims asserted against them by defendant Phoenix

Life Insurance Co.

Dated: July 7, 2008

                                              ROSENFELD & KAPLAN, LLP.

By:                                     _____
                                    Tab K. Rosenfeld (TR- 9212)
                                    Steven M. Kaplan (SK-4228)
                                    Robert M. Klingon (RK-0574)
                                    535 Fifth Avenue
                                    New York, New York 10017
                                    Tel: (212) 682-1400
                                    Attorneys for Defendants Lockwood Pension
                                    Services, Inc. and Tall Tree Advisors, Inc. and
                                    Third Party Defendant Steven Lockwood

**EXHIBIT A**



**STATE OF NEW YORK**
**INSURANCE DEPARTMENT**
25 BEAVER STREET
NEW YORK, NEW YORK 10004

George E. Pataki                                                    Gregory V. Serio
Governor                                                              Superintendent

The Office of General Counsel issued the following opinion on August 17, 2004, representing the position of the
New York State Insurance Department.

**RE: Life Insurance Policy with Trust as Beneficiary**

**Question Presented**

May the proceeds of an insurance policy on the life of the grantor of an irrevocable trust be paid into the trust as
beneficiary of the policy to be distributed in accordance with the trust documents?

**Conclusion**

Yes. The proceeds of a life insurance policy may be paid into the trust as the designated beneficiary on the policy
for distribution in accordance with the trust documents.

**Facts**

An individual establishes a trust and names the trustee and the beneficiaries of the trust. The trust, upon the
grantor's request, buys a life insurance policy on the life of the grantor. The trust is the owner and the beneficiary
of the policy. The proceeds of the life insurance policy will be paid to the trust as beneficiary to be distributed in
accordance with the trust agreement.

**Analysis**

The grantor of a trust, on his/her own initiative, may instruct the trust to purchase a life insurance policy on the
grantor's life designating the trustee as the beneficiary. N. Y. Ins. Law § 3205(b)(1) (McKinney 2004) provides:

> Any person of lawful age may on his own initiative procure
> or effect a contract of insurance upon his own person for
> the benefit of any person, firm, association or corporation.
> Nothing herein shall be deemed to prohibit the immediate
> transfer or assignment of a contract so procured or
> effectuated.

N.Y. Est. Powers & Trusts Law § 13-3.3(a)(1) (McKinney 2001) provides:

> The proceeds of thrift, savings, pension, retirement, death
> benefit, stock bonus and profit-sharing plans, systems or
> trusts, of life, group life, industrial life or accident and health
> insurance policies and of annuity, endowment and
> supplemental insurance contracts (hereinafter referred to
> as "proceeds") may be made payable to a trustee
> designated as beneficiary in the manner prescribed by this

section and named as:

> (1) Trustee under a trust agreement or declaration of trust in existence at the date of such designation, and identified in such designation, and such proceeds shall be paid to such trustee and be held and disposed of in accordance with the terms of such trust agreement or declaration of trust, including any amendments thereto, as they appear in writing on the date of the death of the insured, employee or participant. It shall not be necessary to the validity of any such trust agreement or declaration of trust that it have a trust corpus other than the right of the trustee as beneficiary to receive such proceeds.

In accordance with this section the designation of a trustee as beneficiary of life insurance proceeds must be preceded by a trust instrument, which is identified in the designation. See Matter of Stein, 131 A.D.2d 68, 520 N.Y.S.2d 157 (2d Dep't 1987), *appeal dismissed*, 72 N.Y.2d 840, 530 N.Y.S.2d (1987).

The proceeds of the life insurance policy can be paid to the trust as beneficiary and administered in accordance with the trust documents, as they appear in writing, through the date of the insured's death. 27B Carmody-Wait2d § 164:54 (West 2004).

This opinion is limited to an interpretation of the N.Y. Insurance Law. The inquirer may wish to consult an attorney who can advise the inquirer on the law of trusts and the taxation implications of the inquirer's proposal. Also enclosed are several articles on this subject that may be of interest.

For further information one may contact Supervising Attorney Joan Siegel at the New York City Office.

**EXHIBIT B**

**STATE OF NEW YORK**
**INSURANCE DEPARTMENT**
25 BEAVER STREET
NEW YORK, NEW YORK 10004

The Office of General Counsel issued the following informal opinion on August 29, 2001, representing the position of the New York State Insurance Department.

**Re: Life Settlement Contracts in New York**

<u>Issue</u>

May a licensed viatical settlement company purchase life insurance policies from individuals who are not viators, as that term is defined in the Insurance Law?

<u>Conclusion</u>

There is no prohibition against such an activity.

<u>Facts</u>

Attorney A's client, Corporation B, is a domestic corporation that is licensed as a viatical settlement company pursuant to New York Insurance Law §7802(a), and desires to purchase life insurance policies from individuals who do not have a life threatening illness (Life Settlement Contracts). Such Life Settlement Contracts are, as this Department understands, usually purchased either from individuals who have owned life insurance policies for some time and desire to receive more money than they could receive by surrendering the policy for the cash surrender value or who purchase a life insurance policy with the intent of immediately surrendering the policy.

Attorney A seeks confirmation that this Department no longer adheres to the position expressed in its April 21, 1999 opinion that a licensed viatical settlement company could not legally purchase Life Settlement Contracts.

<u>Analysis</u>

New York Insurance Law Article 78 (McKinney 2001) was enacted to regularize and regulate the purchase of policies of individuals with a terminal illness. New York Insurance Law §7801(a) defines, in pertinent part, a viatical settlement company:

> 'Viatical settlement company' means an individual, partnership, corporation or other entity not prohibited from acting as a viatical settlement company . . . that enters into an agreement with a person owning a life insurance policy insuring the life of a person who has a catastrophic or life threatening illness or condition, under the terms of which the viatical settlement company pays compensation or anything of value, which compensation or value is less than the expected death benefit of the insurance policy, in return for the policyowner's assignment, transfer, sale, devise or bequest of the death benefit or ownership of the insurance policy to the viatical settlement company. . . .

New York Insurance Law §7801(b) defines a viator:

> 'Viator' means the owner of a life insurance policy insuring the life of a

person who has a catastrophic or life threatening illness or condition, who enters into an agreement under which the viatical settlement company will pay compensation or anything of value, which compensation or value is less than the expected death benefit of the insurance policy, in return for the viator's assignment, transfer, sale, devise or bequest of the death benefit or ownership of the insurance policy to the viatical settlement company. Viator may also include a person insured under a group life insurance policy who is not prohibited from assigning his or her rights or benefits and who assigns those rights or benefits by a viatical settlement.

New York Insurance Law §3205 (McKinney 2001) regulates insurable interest with respect to life insurance. New York Insurance Law §3205(a)(1) defines insurable interest:

The term 'insurable interest' means: (A) in the case of persons closely related by blood or by law, a substantial interest engendered by love and affection; (B) in the case of other persons, a lawful and substantial economic interest in the continued life, health or bodily safety of the person insured, as distinguished from an interest which would arise only by, or would be enhanced in value by, the death, disablement or injury of the insured.

New York Insurance Law §3205(b) sets forth specific restrictions on issuance of life insurance policies:

(1) Any person of lawful age may on his own initiative procure or effect a contract of insurance upon his own person for the benefit of any person, firm, association or corporation. Nothing herein shall be deemed to prohibit the immediate transfer or assignment of a contract so procured or effectuated.

(2) No person shall procure or cause to be procured, directly or by assignment or otherwise any contract of insurance upon the person of another unless the benefits under such contract are payable to the person insured or his personal representatives, or to a person having, at the time when such contract is made, an insurable interest in the person insured.

An individual naming another as beneficiary thereby confers the requisite insurable interest. Corder v. Prudential Insurance Company, 42 Misc. 2d 423, 348 N.Y.S. 2d 265 (Sup. Ct. Erie County 1964). Under New York Insurance Law §3205(b), a viatical settlement company may legally make solicitations to purchase policies immediately upon their issuance, so long as the policy would initially be issued to one with an insurable interest at the time when the contract was made. It is also clear that the insured individual could validly assign his or her policy to any other individual or entity immediately and there is no statutory prohibition on soliciting such assignments from individuals owning existing policies. Accordingly, there is nothing in New York Insurance Law Article 78 that restricts a viatical settlement company to only purchasing the policy of a viator.

For further information you may contact Principal Attorney Alan Rachlin at the New York City Office.