UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
─────────────────────────────────────────x
ALICE KRAMER, as Personal Representative of the    :    **Civil Action No.**
Estate of Arthur Kramer,                            :    **08 CV 2429 (DAB)(MHD)**
                                                    :
                     Plaintiff,                     :    **ECF Case**
                                                    :
          – against –                               :
                                                    :
LOCKWOOD PENSION SERVICES, INC., TALL               :
TREE ADVISORS, INC., LIFE PRODUCTS                  :
CLEARING, LLC, TRANSAMERICA                         :
OCCIDENTAL LIFE INSURANCE CO., LINCOLN              :
LIFE & ANNUITY CO. OF NEW YORK AND                  :
JONATHAN S. BERCK,                                  :
                                                    :
                     Defendants.                    :
─────────────────────────────────────────           :
          Various Third-Party Actions               :
─────────────────────────────────────────x


**PLAINTIFF'S MEMORANDUM OF LAW IN RESPONSE TO
DEFENDANT-THIRD-PARTY PLAINTIFF LIFE PRODUCT CLEARING
LLC'S MEMORANDUM OF LAW, DATED JULY 21, 2008, REGARDING
<u>LINCOLN'S MOTION TO DISMISS THE AMENDED COMPLAINT</u>**


FRIEDMAN & WITTENSTEIN
A Professional Corporation

600 Lexington Avenue
New York, New York 10022
(212) 750-8700

*Attorneys for Plaintiff*

# **TABLE OF CONTENTS**

**Page(s)**

Preliminary Statement .................................................................................................... 1

ARGUMENT

PLAINTIFF HAS STANDING TO ASSERT HER RIGHTS
TO THE DEATH BENEFITS UNDER THE LINCOLN POLICY ................................. 3

    A.    Plaintiff is Clearly Within the "Zone of Interests"
           of New York Insurance Law Section 3205(b)(4) ..................................................... 3

    B.    A Declaratory Judgment Action Is the Ideal
           Mechanism for Adjudicating the Present Controversy ........................................... 4

    C.    Life Product's "Public Policy" Arguments Are Without Merit .............................. 7

Conclusion ............................................................................................................. 9

# **TABLE OF AUTHORITIES**

**Cases**                                              **Page(s)**

Caprer v. Nussbaum,
   36 A.D.3d 176, 825 N.Y.S.2d 55 (2d Dept. 2006) ........................................................ 4

Elk Grove Unified Sch. Dist. v. Newdow,
   542 U.S. 1, 124 S. Ct. 2301 (2004) ............................................................................... 4

Hartford Life Ins. Co. v. Einhorn,
   497 F. Supp. 2d 398 (E.D.N.Y. 2007) .......................................................................... 8

Kidder, Peabody & Company, Inc. v. Maxus Energy Corp.,
   925 F.2d 556 (2d Cir. 1991) ...................................................................................... 6-7

Life Product Clearing LLC v. Angel,
   530 F. Supp. 2d 646 (S.D.N.Y. 2008) ........................................................................... 6

Simon v. Philip Morris Inc.,
   200 F.R.D. 21 (E.D.N.Y. 2001). ................................................................................ 5, 7

Warth v. Seldin,
   422 U.S. 490, 95 S. Ct. 2197 (1975) ............................................................................. 4

**Statutes**

Fed. R. Civ. P. 1 ................................................................................................................. 7

Fed. R. Civ. P. 22 ............................................................................................................... 8

N.Y. C.P.L.R. § 1006 ......................................................................................................... 8

N.Y. Ins. Law § 3205(b)(4). ....................................................................................... 2-5, 7

28 U.S.C. § 1335 ................................................................................................................ 8

28 U.S.C. § 1397 ................................................................................................................ 8

28 U.S.C. § 2201 ................................................................................................................ 6

Plaintiff Alice Kramer, in her capacity as Personal Representative of the Estate of Arthur Kramer ("Plaintiff" or "Estate"), respectfully submits this memorandum of law in response to the brief submitted by Defendant Life Product Clearing LLC ("Life Product") dated July 21, 2008. As explained below, the arguments in Life Product's brief – which Life Product submitted in support of a motion to dismiss made by Defendant Lincoln Life & Annuity Co. of New York ("Lincoln") – are without merit.

## Preliminary Statement

By way of background, Plaintiff filed an Amended Complaint (the "Complaint") on May 7, 2008. Pursuant to the Federal Rules of Civil Procedure, Life Product initially had until May 20, 2008 to respond. Life Product requested an extension to June 20, 2008 to answer, move or otherwise respond to the Complaint, and Plaintiff consented to the request. The Court granted Life Product's request on May 19, 2008.

Life Product did not make any motion in response to the Complaint. Rather, on June 20, 2008, Life Product filed an Answer to Amended Complaint with Counterclaims and Cross-Claims.

On June 3, 2008, Defendant Lincoln filed a motion to dismiss the Complaint. Plaintiff filed her brief in opposition to Lincoln's motion on July 11, 2008, and Lincoln filed its reply brief on July 21, 2008. At no time did Life Product ever join in Lincoln's motion, nor (as noted above) did Life Product ever make a motion to dismiss on its own.

Nevertheless, on July 21, 2008 – the same day on which Lincoln filed its reply brief – Life Product filed a brief entitled "Defendant-Third-Party Plaintiff Life Product Clearing LLC's Memorandum of Law in Response to Defendant Lincoln Life & Annuity Company of New York's Motion to Dismiss the Amended Complaint and Plaintiff's Opposition Thereto"

1

("Life Product Br."). In its brief, Life Product makes various arguments – previously unasserted – as to why Plaintiff's claim for a declaratory judgment against Lincoln should be dismissed.

As shown below, Life Product's brief fails to address any of the principles of standing under federal and state law; fails to discuss the all-important "zone of interests" test that is fundamental to the law of standing; fails to even mention the zone of interests test or cite to a single case that applies it; fails to cite a single case that deals with any other aspect of standing; and fails to address why a declaratory judgment action is not the appropriate vehicle for dealing with the present dispute. Instead, Life Product spends most of its brief arguing that a claim brought under New York Insurance Law Section 3205(b)(4) will not lie until someone receives death benefits from an insurer. However, it is the Defendant Lincoln itself that has frustrated the legislative purpose of Section 3205(b)(4) by refusing to pay the death benefits to anyone, thereby necessitating this declaratory judgment action. Moreover, Life Product's arguments regarding "public policy" considerations are without merit and fail to take into account the enormous waste of judicial resources that would occur if a declaratory judgment action were not available to the Plaintiff under the facts of this case.

If anything, Life Product's brief compellingly drives home the point that a declaratory judgment action is the perfect vehicle for adjudicating the present dispute. Reduced to its essence, Life Product agrees with Plaintiff that Lincoln – because the two-year contestability period has passed – must pay out the insurance proceeds, but claims that it (i.e., Life Product) is entitled to receive those proceeds, rather than the Plaintiff. We are thus confronted with a classic "stakeholder" situation for which a declaratory judgment action is ideally suited. To the extent that there could be any doubt about this, it is surely removed by the fact that – as set forth below (and conveniently omitted from Life Product's brief) – Life Product

2

itself has counterclaimed in this case for a declaratory judgment that the proceeds of the policy at issue should be paid to Life Product and not the Plaintiff. In so doing, Life Product alleged that there is "an actual controversy of a justiciable nature" as to whether Life Product or Plaintiff should receive the proceeds of the policy, thereby confirming beyond question the appropriateness of the declaratory judgment remedy.

## ARGUMENT

### PLAINTIFF HAS STANDING TO ASSERT HER RIGHTS TO THE DEATH BENEFITS UNDER THE LINCOLN POLICY

**A.     Plaintiff is Clearly Within the "Zone of Interests" of New York Insurance Law Section 3205(b)(4)**

Life Product, at pages 5-7 of its brief, argues that a direct claim by Plaintiff under New York Insurance Law Section 3205(b)(4) would not come into play until an insurer has paid the death benefits to someone other than the insured's estate. That argument, however, is beside the point. Indeed, even a cursory review of Plaintiff's Complaint demonstrates that Plaintiff is fully aware that a direct claim under Section 3205(b)(4) would not arise until someone other than the insured's estate actually received payment from the insurer. Thus, the First Claim for Relief in Plaintiff's Complaint – which is the only claim brought against Lincoln and which covers the scenario under which an insurer has not yet paid out the proceeds to anyone – is for a declaratory judgment. The Second Claim for Relief – which is specifically pled "[i]n the alternative" – states that "if some or all of the death benefits have already been paid," then Plaintiff is entitled to recover such benefits under Section 3205(b)(4) from the persons or entities that received the death benefits. (Emphasis added). Thus, the argument that Life Product is making – namely, that a claim brought directly under Section 3205(b)(4) arises when the insurer has already paid out the proceeds to someone – is superfluous.

That, however, is not the end of the matter. As set forth in Plaintiff's opposition brief, both federal and state standing law rely on the "zone of interests" test, pursuant to which the court examines whether a plaintiff is within the zone of interests sought to be protected under the law. Here, Section 3205(b)(4) provides a ready answer to that question, because the New York State Legislature has determined that where a life insurance policy is procured in violation of the insurable interest rule – and a dispute develops between the "stranger investor" and the insured's estate as to who is entitled to the proceeds – <u>the insured's estate prevails</u>. Since the statute decrees that the estate of the insured – and not the stranger investor – should be the ultimate recipient of the proceeds where the insurable interest rule has been violated, the Estate is clearly within the "zone of interests" for bringing a declaratory judgment action in which it seeks to collect those proceeds. <u>See</u>, <u>e.g.</u>, <u>Elk Grove Unified Sch. Dist. v. Newdow</u>, 542 U.S. 1, 11-12, 124 S. Ct. 2301 (2004); <u>Warth v. Seldin</u>, 422 U.S. 490, 500, 95 S. Ct. 2197 (1975); <u>Caprer v. Nussbaum</u>, 36 A.D.3d 176, 825 N.Y.S.2d 55, 62-63 (2d Dept. 2006). Indeed, given the wording of the statute, the Estate is the <u>only</u> entity that is within the zone of interests. Life Product has not cited one single case to the contrary.

**B.    A Declaratory Judgment Action Is the Ideal
       <u>Mechanism for Adjudicating the Present Controversy</u>**

It is true, of course, that Lincoln has not yet paid out the proceeds to anyone, including the stranger investor Life Product, and that Lincoln has thereby prevented a direct claim by Plaintiff under Section 3205(b)(4) from coming into play. In short – despite the passage of the two-year contestability period – Lincoln is improperly holding on to funds to which Plaintiff will ultimately be entitled. The answer to the stalemate that Lincoln has created, however, is not to leave Plaintiff with no remedy at all; rather, the obvious solution – and the only course of action that makes sense – is for Plaintiff to bring a declaratory judgment action

seeking a declaration that the proceeds should be paid to Plaintiff, which is the First Claim for Relief in her Complaint. As the court held in Simon v. Philip Morris Inc., 200 F.R.D. 21, 26 (E.D.N.Y. 2001):

> [T]he drafters of the Federal Rules of Civil Procedure insisted that trial judges have an affirmative duty to exercise their authority <u>to ensure the availability of a fair and efficient remedy for every wrong</u> so that "civil litigation is resolved not only fairly, but also without undue cost or delay."

Id. (emphasis added) (citation omitted).[1]

Moreover, Life Product never tries to explain why a declaratory judgment action is not the ideal vehicle for adjudicating the present controversy. Nor could Life Product ever make such an argument, because <u>Life Product itself</u> – in an act of pure hypocrisy – has sought a declaratory judgment on the <u>exact same issue that Plaintiff has</u> – <u>i.e.</u>, whether Life Product or the Estate should receive the proceeds of the $10 million policy issued by Lincoln on the life of Mr. Kramer (the "Lincoln Policy"). Thus, in its first Counterclaim, which Life Product asserted in this action on June 20, 2008, Life Product alleged:

> 87. In light of the Estate's allegations in the Complaint which seek to collect the death benefit under the Lincoln Policy for the benefit of the Estate (which allegations LPC denies, as more specifically set forth above), <u>there is now an actual controversy of a justiciable nature regarding whether the proceeds of the Lincoln Policy are owing and payable to the August Trust (or to LPC [Life Product], or at LPC's direction), rather than the Estate</u>.

(Defendant Life Product Clearing LLC's Answer to Amended Complaint with Counterclaims

---

[1] As noted above, a direct claim under Section 3205(b)(4) comes into play <u>if</u> a life insurance company pays the insurance proceeds to someone with no insurable interest. Significantly, however, Section 3205(b)(4) does not curtail in any way the rights that an estate may have if an insurance company refuses to pay anyone at all. Certainly the statute does not provide that it constitutes the sole and exclusive remedy that an estate may have.

5

and Cross-Claims, dated June 20, 2008, ¶ 87) (emphasis added).[2]  As the Court is well aware, an "actual controversy" is the exact language utilized in the Declaratory Judgment Act to describe the types of matters covered by the Act.  See 28 U.S.C. § 2201.

The Second Circuit has held that a declaratory judgment action "should be entertained when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue."  Kidder, Peabody & Company, Inc. v. Maxus Energy Corp., 925 F.2d 556, 562 (2d Cir. 1991).  Not only would such a "useful purpose" be served here, but a procedural nightmare would likely occur without a declaratory judgment action.  It is important to remember that under New York law, a person may obtain life insurance on his own initiative – "with a genuine intent to obtain insurance protection for a family member, loved one, or business partner" – and thereafter decide to assign the policy to a person who does not have an insurable interest in his life.  Life Product Clearing LLC v. Angel, 530 F. Supp. 2d 646, 653 (S.D.N.Y. 2008).  There is nothing unlawful about such a transaction.  However, if the policy was taken out with a view to its immediate assignment to a stranger investor – and the insured never had even an initial intent to benefit a family member or business partner – then a stranger-owned life insurance ("SOLI") scheme is involved and the insurable interest rule is violated.  Id. at 653-54.

The issue of whether or not a SOLI scheme was involved here is squarely before this Court in this action, not only as the crux of Plaintiff's Complaint, but also as the crux of various counterclaims, cross-claims and third-party claims asserted by Life Product and Defendant Phoenix Life Insurance Co.  If this Court determines in a declaratory judgment action (i) that Lincoln must pay out the death benefits because the policy is incontestable, and (ii) that Plaintiff (as opposed to Life Product) is entitled to receive those death benefits, the Court can so

---

[2] The "August Trust" refers to the Arthur Kramer 2005 Insurance Trust, in which the beneficial interest is putatively held by Life Product.

6

declare.  Similarly, if the Court determines – contrary to what we believe the evidence will show – that Life Product is entitled to the proceeds, it can also so declare.  Such a declaration would "afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." Kidder, Peabody, 925 F.2d at 562.

Without a declaratory judgment remedy, however, there is a vast potential for utterly wasteful litigation.  If, for example, the Court were to determine that a SOLI scheme was involved, thereby entitling Plaintiff to the insurance proceeds – but that Plaintiff's only remedy was a direct action under Section 3205(b)(4) against a recipient of those proceeds – the Court would have to direct Lincoln to pay those proceeds to the wrong party (the stranger investor Life Product), and then have Plaintiff engage in further litigation to recover the proceeds from that wrong party.  Not only is it difficult to imagine that a court would direct the payment of proceeds to an entity that the court knew was not entitled to them, but such a scenario cannot be squared with the goal of the Federal Rules of Civil Procedure, which is to "secure the just, speedy, and inexpensive determination of every action."  See Fed. R. Civ. P. 1; see generally Simon, 200 F.R.D. at 26.

**C.    Life Product's "Public Policy" Arguments Are Without Merit**

Life Product's arguments based on so-called "public policy" are obviously self-serving.  Indeed, when one examines the arguments, it is clear that they are designed to get the $10 million in proceeds from the Lincoln Policy into the hands of Life Product, not to vindicate any public policy at all.

First, Life Product argues that insurers could handle the payment of claims more "efficiently" if they paid the proceeds to the named beneficiary of the policy – which, in the

7

present case, just happens to be Life Product.[3]  However, in the present case, there was nothing to prevent Lincoln from paying Life Product, and Lincoln clearly had the option of doing so (as would any other insurance company in similar circumstances); rather, Lincoln's failure to pay Life Product – or anyone else, for that matter – is ostensibly based on Lincoln's position that it can somehow extricate itself from the two-year incontestability clause mandated by New York law and contained in the Lincoln Policy.

Life Product also argues that declaratory claims such as Plaintiff's would cause insurers to become unnecessarily embroiled in litigation.  That argument makes no sense, however, because the insurance company always has the option of paying the insurance proceeds into court, in effect washing its hands of the matter and letting the competing claimants for the funds "fight it out," so to speak, among themselves.  See 28 U.S.C. § 1335 (federal interpleader statute); 28 U.S.C. § 1397 (federal interpleader statute); Fed. R. Civ. P. 22 (interpleader); N.Y. C.P.L.R. § 1006 (state interpleader statute).  See also Hartford Life Ins. Co. v. Einhorn, 497 F. Supp. 2d 398, 399 (E.D.N.Y. 2007) (where there were competing claimants for proceeds of life insurance policy, insurance company commenced interpleader action, deposited the proceeds of the policy with the court registry, and was released from liability to any party).  Lincoln could have chosen that option, but has instead decided to fight its obligation to pay out the proceeds to anyone.

In addition, Life Product argues that under a declaratory judgment scenario, an insurer would have to negotiate with "multiple parties" where "insurable interest" claims were involved.  Once again, however, the insurance company has the simple option – not followed by

---

[3] More precisely, the named beneficiary on the Lincoln Policy is the Arthur Kramer 2005 Insurance Trust, in which the beneficial interest is putatively held by Life Product.  (See p. 6, n. 2, supra).

8

Lincoln here – of paying the proceeds into court and having no part of the negotiations regarding who ultimately gets the money.

Finally, Lincoln's "public policy" arguments make no mention of the wastefulness that would occur if the declaratory judgment remedy were not available in a case such as the present one. As noted above, if the Court determines that Life Product is **not** entitled to the insurance proceeds – and that Plaintiff *is* entitled to those proceeds – it would be a travesty of justice for the Court to have to order Lincoln to pay the proceeds to Life Product, only to have Plaintiff then engage in further litigation to recover those proceeds from Life Product. Purely in terms of judicial economy and efficiency, a declaratory judgment delineating the parties' obligations to one another makes eminent sense.

## Conclusion

For all the foregoing reasons, Defendant Lincoln Life & Annuity Co. of New York's Motion to Dismiss the Amended Complaint should be denied.

Dated: New York, New York
       July 28, 2008

                        FRIEDMAN & WITTENSTEIN
                        A Professional Corporation

                        By: _____
                             Stuart I. Friedman (SF-9186)
                             Andrew A. Wittenstein (AW-1943)
                             Claire L. Chau (CC-0125)

                        600 Lexington Avenue
                        New York, New York 10022
                        (212) 750-8700

                        *Attorneys for Plaintiff*