UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ALICE KRAMER, as Personal Representative of the
Estate of Arthur Kramer,

                                        Plaintiff,

                    -against-

LOCKWOOD PENSION SERVICES, INC., TALL
TREE ADVISORS, INC., LIFE PRODUCTS
CLEARING, LLC, TRANSAMERICA OCCIDENTAL
LIFE INSURANCE CO., PHOENIX LIFE
INSURANCE CO., LINCOLN LIFE & ANNUITY CO.
OF NEW YORK and JONATHAN S. BERCK,

                                        Defendants.

PHOENIX LIFE INSURANCE CO.,

                            Third-Party Plaintiff,

                    -against-

STEVEN LOCKWOOD,

                            Third-Party Defendant.

LIFE PRODUCT CLEARING LLC and JONATHAN S.
BERCK,

                            Third-Party Plaintiffs,

                    -against-

LIZA KRAMER and ANDREW B. KRAMER,

                                Third-Party Defendants.

**ECF Case**

08 Civ. 2429 (DAB) (MHD)

**DEFENDANT JONATHAN S.
BERCK'S ANSWER TO
AMENDED COMPLAINT
WITH COUNTERCLAIMS
AND CROSS-CLAIMS**

**JURY TRIAL DEMANDED**

Defendant Jonathan S. Berck, sued here solely in his capacity as the successor trustee of the Arthur Kramer Insurance Trust and the Arthur Kramer 2005 Insurance Trust, (Mr. Berck, hereinafter referred to as "Successor Trustee"), by and through his attorneys, Fein & Jakab, hereby answers the Amended Complaint of plaintiff Alice Kramer, as Personal Representative of the Estate of Arthur Kramer (the "Estate" or "Plaintiff"), filed May 7, 2008 (the "Complaint"), as follows:

## AS TO PARTIES

1.  Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in ¶ 1 of the Complaint, except admits that Plaintiff purports to bring this action as the personal representative of the Estate of Arthur Kramer.

2.  Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in ¶ 2 of the Complaint, except admits that Arthur Kramer died on January 26, 2008.

3.  Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in ¶ 3 of the Complaint.

4.  Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in ¶ 4 of the Complaint.

5.  Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in ¶ 5 of the Complaint.

6.  Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in ¶ 6 of the Complaint.

7.  Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in ¶ 7 of the Complaint.

8.  Admits on information and belief the allegations contained in ¶ 8 of the Complaint.

9.  Denies the allegations contained in ¶ 9 of the Complaint.

### AS TO JURISDICTION AND VENUE

10.  Admits the allegations contained in ¶ 10 of the Complaint.

11.  Admits the allegations contained in ¶ 11 of the Complaint.

### AS TO BACKGROUND

12.  Denies each and every allegation contained in ¶ 12 of the Complaint except denies knowledge or information sufficient to form a belief as to the truth of those allegations pertaining to persons other than Successor Trustee and states that it need not respond to those allegations which purport to set forth a conclusion of law (but if any response is required, denies such allegations).

13.  Denies each and every allegation contained in ¶ 13 of the Complaint and states that it need not respond to those allegations which purport to set forth a conclusion of law or paraphrase the text of statutes (but if any response is required, denies such allegations).

14.  Denies each and every allegation contained in ¶ 14 of the Complaint except denies knowledge or information sufficient to form a belief as to the truth of those allegations pertaining to persons other than Successor Trustee and states that it need not respond to those

allegations which purport to set forth a conclusion of law (but if any response is required, denies such allegations).

15. Denies each and every allegation contained in ¶ 15 of the Complaint except denies knowledge or information sufficient to form a belief as to the truth of those allegations pertaining to persons other than Successor Trustee and states that it need not respond to those allegations which purport to set forth a conclusion of law (but if any response is required, denies such allegations).

16. Denies each and every allegation contained in ¶ 16 of the Complaint.

## AS TO ALLEGED FACTS

17. Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in ¶ 17 of the Complaint, except admits that Arthur Kramer was or had been an attorney, and died on January 26, 2008.

18. Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in ¶ 18 of the Complaint.

19. Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in ¶ 19 of the Complaint.

20. Denies each and every allegation contained in ¶ 20 of the Complaint except denies knowledge or information sufficient to form a belief as to the truth of those allegations pertaining to persons other than Successor Trustee.

21. Denies each and every allegation contained in ¶ 21 of the Complaint except denies knowledge or information sufficient to form a belief as to the truth of those allegations

pertaining to persons other than Successor Trustee and states that it need not respond to those allegations which purport to set forth a conclusion of law (but if any response is required, denies such allegations).

22.   Denies each and every allegation contained in ¶ 22 of the Complaint except admits that Lincoln issued a $10,000,000.00 life insurance policy on the life of Arthur Kramer but otherwise denies knowledge or information sufficient to form a belief as to the truth of those allegations pertaining to persons other than Successor Trustee.

**As to the Transamerica Policies**

23.   Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in ¶ 23 of the Complaint.

24.   Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in ¶ 24 of the Complaint.

25.   Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in ¶ 25 of the Complaint.

26.   Admits the allegations contained in ¶ 26 of the Complaint.

27.   Admits that Mr. Berck and Mr. Kramer had no business relationship and denies the balance of the allegations contained in ¶ 27 of the Complaint.

28.   Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in ¶ 28 of the Complaint.

29.  Denies each and every allegation contained in ¶ 29 of the Complaint except denies knowledge or information sufficient to form a belief as to the truth of those allegations pertaining to persons other than Successor Trustee.

30.  Denies each and every allegation contained in ¶ 30 of the Complaint except admits that the ownership interests in the Transamerica Policies were assigned to a non-party individual or entity and denies knowledge or information sufficient to form a belief as to the truth of those allegations pertaining to persons other than Successor Trustee.

31.  Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in ¶ 31 of the Complaint except states that it need not respond to those allegations which purport to set forth a conclusion of law (but if any response is required, denies such allegations).

**As to the Phoenix Policies**

32.  Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in ¶ 32 of the Complaint, except admits that the Arthur Kramer 2005 Insurance Trust (the "August Trust") is governed by New York law and refers to the terms of the trust agreement establishing the August Trust for the true and complete contents thereof.

33.  Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in ¶ 33 of the Complaint.

34.  Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in ¶ 34 of the Complaint.

35.  Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in ¶ 35 of the Complaint.

36.  Admits the allegations contained in ¶ 36 of the Complaint.

37.  Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in ¶ 37 of the Complaint.

38.  Denies each and every allegation contained in ¶ 38 of the Complaint except denies knowledge or information sufficient to form a belief as to the truth of those allegations pertaining to persons other than Successor Trustee.

39.  Denies each and every allegation contained in ¶ 39 of the Complaint except that the ownership interests in the Phoenix Policies were assigned to a non-party individual or entity.

40.  Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in ¶ 40 of the Complaint except states that it need not respond to those allegations which purport to set forth a conclusion of law (but if any response is required, denies such allegations).

**<u>As to the Lincoln Policies</u>**

41.  Admits the allegations contained in ¶ 41 of the Complaint except clarifies that Lincoln issued a single $10,000,000.00 life insurance policy on the life of Arthur Kramer on or about November 23, 2005.

42.  Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in ¶ 42 of the Complaint.

43.  Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in ¶ 43 of the Complaint except states that it need not respond to those allegations which purport to set forth a conclusion of law (but if any response is required, denies such allegations).

**As to Arthur Kramer's Death**

44.  Admits the allegations contained in ¶ 44 of the Complaint.

45.  Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in ¶ 45 of the Complaint.

46.  Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in ¶ 46 of the Complaint, except admits the allegations contained in the first sentence of ¶ 46, admits that Lincoln has not paid out the proceeds of the policy it issued on the life of Arthur Kramer, and refers to the terms of the pleadings and orders in this action and in the action captioned The Lincoln Life and Annuity Company of New York v. Lockwood Pensions Services, et al., CV-08-5019142-S (Conn. Super. Ct., Hartford J.D., filed April 16, 2008), for the true and complete contents thereof.

**AS TO THE FIRST CLAIM FOR RELIEF**

**(DECLARATORY JUDGMENT)**

47.  Repeats and realleges each and every allegation, admission and denial made in response to those paragraphs of the Complaint which are referred to in ¶ 47 of the Complaint, as if fully set forth at length herein.

48.  States that it need not respond to those allegations that purport only to quote the text of statutes.

49. States that it need not respond to those allegations that purport only to quote the text of statutes.

50. States that it need not respond to those allegations that purport only to quote the text of statutes.

51. Denies knowledge or information sufficient to form a belief as to the truth of those allegations contained in ¶ 51 of the Complaint.

52. Denies knowledge or information sufficient to form a belief as to the truth of those allegations contained in ¶ 52 of the Complaint.

53. Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in ¶ 53 of the Complaint, except states that Successor Trustee need not respond to those allegations which purport to set forth a conclusion of law (but if any response is required, denies such allegations).

54. Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in ¶ 54 of the Complaint.

55. Denies each and every allegation contained in ¶ 55 of the Complaint except admits that Lincoln must pay the death benefits under the policy it issued on the life of Arthur Kramer, denies knowledge or information sufficient to form a belief as to the truth of those allegations pertaining to other policies issued on the life of Arthur Kramer, and states that it need not respond to those allegations which purport to set forth a conclusion of law (but if any response is required, denies such allegations).

## AS TO THE SECOND CLAIM FOR RELIEF

## (AGAINST DEFENDANTS LOCKWOOD PENSION SERVICES, INC., TALL TREE ADVISORS, INC. LIFE PRODUCTS CLEARING, LLC AND JONATHAN S. BERCK FOR THE RECOVERY OF DEATH BENEFITS)

56.  Repeats and realleges each and every allegation, admission and denial made in response to those paragraphs of the Complaint which are referred to in ¶ 56 of the Complaint, as if fully set forth at length herein.

57.  States that it need not respond to those allegations that purport only to quote the text of statutes.

58.  Denies each and every allegation contained in ¶ 58 of the Complaint.

## FIRST AFFIRMATIVE DEFENSE

59.  The Complaint fails, in whole or in part, to state a claim upon which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE

60.  The Estate's claims are barred, in whole or in part, by the equitable doctrines of unclean hands and *in pari delicto*.

## THIRD AFFIRMATIVE DEFENSE

61.  The Estate's claims are barred, in whole or in part, by the doctrines of waiver, estoppel, equitable estoppel, and/or quasi estoppel.

## FOURTH AFFIRMATIVE DEFENSE

62.  The Estate's claims are barred by the doctrine of ratification.

## FIFTH AFFIRMATIVE DEFENSE

63. The Estate's claims are barred, in whole or in part, by the doctrine of election of remedies.

## SIXTH AFFIRMATIVE DEFENSE

64. The Estate's claims are barred by the doctrine of laches.

## SEVENTH AFFIRMATIVE DEFENSE

65. Any award to the Estate of death benefits on the life insurance policy issued by Lincoln on the life of Arthur Kramer, or declaration that the Estate is entitled to some or all of such benefits (both of which should be denied), should in any event be accompanied by an award against the Estate refunding all payments made to Arthur Kramer (or any of his heirs) for the purchase of the rights to such death benefits, and/or a declaration that Successor Trustee is entitled to such a refund.

## EIGHTH AFFIRMATIVE DEFENSE

66. The Estate's claims are barred in whole or in part by its lack of standing to assert them.

## RESERVATION OF RIGHT TO ASSERT ADDITIONAL DEFENSES

67. Successor Trustee adopts and incorporates by reference, as if set forth fully herein, any affirmative defense asserted by any other defendant in this action to the extent that such affirmative defense would be applicable to Successor Trustee, and Successor Trustee hereby gives notice that he intends to rely upon any additional defense that may become available or appear during discovery proceedings or otherwise in this case, and Successor Trustee hereby reserves his right to amend its Answer to assert any such defense(s).

## COUNTERCLAIMS AND CROSS-CLAIMS

## GENERAL ALLEGATIONS

### Parties

68. Successor Trustee repeats and realleges Paragraphs 1-67 of its Answer as though fully set forth herein.

69. Successor Trustee is a citizen of the state of New York and is the successor trustee of The Arthur Kramer 2005 Insurance Trust (the "August Trust") pursuant to the Trust Agreement of Arthur Kramer 2005 Insurance Trust dated August 29, 2005 (the "August Trust Agreement").

70. Counterclaim defendant Alice Kramer alleges herself to be the personal representative of the estate of Arthur Kramer.

71. Upon information and belief, cross-claim defendant Lincoln Life & Annuity Company of New York ("Lincoln") is an insurance company organized and existing under the laws of the State of New York, with its principal place of business at 100 Madison Street, Suite 1860, Syracuse, New York 13202.

### The Insurance Policy Issued by Lincoln on Arthur Kramer's Life

72. Arthur Kramer established the August Trust pursuant to the August Trust Agreement. The parties to the August Trust Agreement were Hudson United Bank, as Trustee, Arthur Kramer, as Depositor, and Liza Kramer, the daughter of Arthur Kramer, as the Beneficiary.

73. On or about November 23, 2005, Lincoln issued to the August Trust as owner life insurance policy number 7214471, with a total death benefit of $10,000,000.00, on the life of Arthur Kramer (the "Lincoln Policy").

74. Liza Kramer owned the entire beneficial interest in the August Trust at the time the Lincoln Policy was procured.

75. Liza Kramer, the named beneficiary of the August Trust, had an insurable interest in the Lincoln Policy at the time the Lincoln Policy was procured.

76. The Lincoln Policy provided that: "While the insured is alive, the Owner may exercise all rights and privileges under the policy including the right[s] to . . . transfer all rights and privileges to another person . . . [and] assign the policy." The Lincoln Policy did not place any time limitations on the policy owner's exercise of these rights.

77. The Lincoln Policy also provided that it "will be incontestable after it has been in force during the Insured's lifetime for 2 years from its Date of Issue."

78. The Lincoln Policy was in force during Arthur Kramer's lifetime for well over two years, from on or about November 23, 2005 to January 26, 2008.

## The Transfer Agreement

79. After the Lincoln Policy was issued, and in consideration for a payment of $100,000.00 (the "Cash Consideration"), Liza Kramer sold her rights to the August Trust's interest in the Lincoln Policy to Defendant Life Product Clearing, LLC ("LPC"), pursuant to a Beneficial Interest Transfer Agreement dated November 29, 2005 (the "Transfer Agreement").

13

80. In connection with that transaction, Arthur and Liza Kramer also executed a document entitled Acknowledgements and Consents Relating to Sale of Beneficial Interest dated November 29, 2005 (the "Acknowledgements and Consents Form") in which they each expressly made, inter alia, the following acknowledgements, consents and representations relating to Liza Kramer's decision to sell to LPC the rights to the August Trust's interest in the Lincoln Policy:

    a. "After reviewing several alternatives for maintaining the [Lincoln] Policy and paying the premium, Arthur and Liza have determined that the sale of the Beneficial Interest [in the August Trust] to [LPC] for the Cash Consideration is in their best interest and in the best interest of their Family."

    b. "Arthur and Liza acknowledge that they have had sufficient time to thoroughly analyze and discuss the strategy of selling the Beneficial Interest in the [August] Trust to [LPC.]"

    c. "Arthur and Liza have had the opportunity to discuss this strategy with their family advisors."

    d. "Upon completion of the sale of [the] Beneficial Interest in the [August] Trust to [LPC] for the Cash Consideration, Arthur and Liza expressly acknowledge, understand, consent and agree to waive all rights, claims, interests, powers and privileges that they now possess, or in the future may possess, under or with respect to the [Lincoln] Policy."

**Lincoln's Failure and Refusal to Pay the
Lincoln Policy Following Arthur Kramer's Death**

81. Arthur Kramer died on January 26, 2008.

82. On February 27, 2008, Successor Trustee, in his capacity as the trustee of the August Trust, submitted to Lincoln a Claimant's Statement requesting that Lincoln process the August Trust's claim under the Lincoln Policy and pay the death benefit to the August Trust.

14

83. The Lincoln Policy was properly payable to the August Trust (or to LPC) under the foregoing circumstances, and Lincoln lacked any proper or valid basis under law for failing to timely pay to the August Trust (or to LPC) the death benefit under the Lincoln Policy.

84. Nevertheless, Lincoln has failed and refused to pay the proceeds of the Lincoln Policy to the August Trust (or to LPC).

## COUNTERCLAIMS

### AS AND FOR THE FIRST COUNTERCLAIM
### (Declaratory Judgment)

85. Successor Trustee repeats and realleges ¶¶ 1-84 hereof as though fully set forth at length herein.

86. Lincoln is obligated to pay the death benefit under the Lincoln Policy to the August Trust.

87. In light of the Estate's allegations in the Complaint which seek to collect the death benefit under the Lincoln Policy for the benefit of the Estate (which allegations Successor Trustee denies), there is now an actual controversy of a justiciable nature regarding whether the August Trust and LPC, rather than the Estate, are entitled to the benefits due under the Lincoln Policy.

88. The Successor Trustee has no adequate remedy at law.

89. Accordingly, the Successor Trustee is entitled to a declaration that the August Trust and LPC, and not the Estate, are entitled to the benefits due to the August Trust under the Lincoln Policy.

## AS AND FOR THE SECOND COUNTERCLAIM
### (Tortious Interference with Contractual Relations)

90.  Successor Trustee repeats and realleges ¶¶ 1-89 hereof as though fully set forth at length herein.

91.  Lincoln issued the Lincoln Policy to the August Trust.  The Lincoln Policy constituted a valid, binding and enforceable contract between Lincoln and the August Trust.

92.  The August Trust is the named beneficiary of the Lincoln Policy and as such, is entitled to the proceeds thereof.

93.  On March 10, 2008, the Estate commenced this action by filing a complaint alleging, inter alia, that the Lincoln Policy was procured with a view to its immediate assignment to a party that lacked an insurable interest in the life of Arthur Kramer.  This allegation was untrue.

94.  The Estate's filing of this action constituted a knowing, intentional and unjustified interference with the August Trust's contractual relationship with Lincoln under the Lincoln Policy and a knowing, intentional and unjustified inducement of Lincoln to breach the Lincoln Policy by refusing to pay the proceeds to the August Trust.

95.  Following the Estate's initiation of this lawsuit, Lincoln has failed and refused to make payment on the Lincoln Policy, based upon the Estate's allegations in the original complaint that the Lincoln Policy was "procured as part of a STOLI transaction and that [it] lacks an insurable interest [sic]."

96. Despite Liza Kramer's express warranty in the Acknowledgments and Consents Form that she would provide a death certificate within a reasonable time following Arthur Kramer's death, Liza Kramer and the Estate failed and refused to do so (as acknowledged in ¶ 45 of the Complaint), so as to frustrate and/or the efforts of the August Trust to successfully obtain payment by Lincoln of the proceeds of the Lincoln Policy.

97. Upon information and belief, Lincoln would have paid the Lincoln Policy proceeds to the August Trust promptly had the Estate timely cooperated with the August Trust regarding Arthur Kramer's death certificate and/or had the Estate not filed its original complaint in this action on March 10, 2008.

98. The above-referenced actions of the Estate have damaged and continue to damage the August Trust in that they have delayed the August Trust's receipt of the Lincoln Policy proceeds from Lincoln.  Moreover, in the event this Court does not order that the August Trust is entitled to receive the proceeds of the Lincoln Policy, the August Trust will suffer damages in an amount not less than the face value of the Lincoln Policy, i.e., $10,000,000.00, plus interest, as a direct and proximate result of the Estate's interference with the payment of the death benefit under the Lincoln Policy.

**AS AND FOR THE THIRD COUNTERCLAIM**
**(In the Hypothetical, for Misrepresentation/Breach of Warranty)**

99. Successor Trustee repeats and realleges ¶¶ 1-98 hereof as though fully set forth at length herein.

100. In connection with the issuance of the Lincoln Policy, Arthur Kramer completed an application for life insurance that was submitted to Lincoln.  This application was entitled

Insurance Application Part I ("Part I") and contained various representations. Part I became a part of the Lincoln Policy.

101. Arthur Kramer and Liza Kramer warranted in the Acknowledgements and Consents Form that they had "no knowledge that any representation made regarding [Arthur Kramer's] health or capacity in the procurement of the policy is false or misleading."

102. In the hypothetical event that payment of the Lincoln Policy by Lincoln is impeded in any way by any purported representation or misrepresentation, whether made fraudulently, intentionally, knowingly, recklessly, negligently, inadvertently, innocently and/or in good or bad faith, the August Trust shall be entitled to damages from the Estate for any resulting non-payment or delay of payment of the proceeds that would otherwise have been due to the August Trust under the Lincoln Policy.

## CROSS-CLAIMS

### Background:  The Secondary Market for Life Insurance Policies

103. Prior to the recent emergence of a competitive secondary market for life insurance policies, the only buyer for a policy in the secondary market was the life insurance carrier that had issued the policy.  These carriers had little incentive to offer substantial compensation for these policies.  Today, however, a competitive secondary market for life insurance policies has developed.  This secondary market for life insurance has given consumers a viable and valuable alternative to sell their policies when they determine that they are no longer needed or desired.  Indeed, life settlement firms who are active in this market improve policyholder welfare by at least several hundred million dollars annually.

104. Upon information and belief, certain insurance carriers have been or have become hostile to the secondary market for insurance based on their fears that, in the statistical aggregate, investors who participate in this market will not let insurance policies lapse in the same way that policyholders previously did, and that therefore insurance companies will be forced to pay a larger percentage of the policies they issued, rather than simply pocketing large volumes of premiums on policies they will never pay. Indeed, the insurance carriers' historic business model has been based on the fact that the vast majority (perhaps approaching 90%) of universal life insurance policies do not ever pay death benefits. Life settlement firms such as LPC pose a threat to insurance carriers' ability to continue operating on this windfall profits model based on a high lapse rate.

105. Certain insurers have taken the approach of responding to the current secondary market environment by raising legally and/or factually unfounded issues concerning insurable interest requirements under governing law, and issuing policies for which they know they will ultimately challenge payment. Lincoln is one such carrier, and in some cases it has sought to rescind policies while seeking to keep the premiums paid thereon, in the hopes of potentially reaping all of the benefits of its contract without bearing any of its burdens. Under this cynical and unlawful approach, the most profitable insurance contracts are those which an insurance carrier believes it can ultimately rescind on the basis that the policy lacked an insurable interest at its procurement.

## AS AND FOR THE FIRST CROSS-CLAIM
### (Against Lincoln, for Breach of Contract)

106. Jonathan S. Berck repeats and realleges ¶¶ 1-105 hereof as though fully set forth at length herein.

107. Lincoln issued the Lincoln Policy to the August Trust on or about November 23, 2005. The Lincoln Policy constituted a valid, binding and enforceable contract between Lincoln and the August Trust.

108. The Lincoln Policy provides that Lincoln would pay the proceeds of the Lincoln Policy to the beneficiary upon receipt of due proof that the death of Arthur Kramer occurred while the Lincoln Policy was in force.

109. The Lincoln Policy has remained in force at all times since its issuance.

110. Arthur Kramer died on January 26, 2008 while the Lincoln Policy was in force.

111. Successor Trustee provided due proof of Arthur Kramer's death to Lincoln.

112. Despite demand duly made, and submission of all necessary documentation, Lincoln has failed and refused to pay to the August Trust (or to LPC) the death benefit under the Lincoln Policy.

113. The August Trust (and any and all other necessary persons, if any) have substantially (if not completely) performed, and have not materially breached, any and all obligations they may have had under the Lincoln Policy.

114. Lincoln has breached the Lincoln Policy by failing to pay the benefits due under the Lincoln Policy to the August Trust (or to the LPC).

115. The August Trust has been injured by Lincoln's breach of the Lincoln Policy.

116.  Accordingly, the August Trust is entitled to a declaration that Lincoln breached the Lincoln Policy and an award of damages in an amount not less than the face value of the Lincoln Policy, i.e., $10,000,000.00, plus interest.

## AS AND FOR THE SECOND CROSS-CLAIM
### (Against Lincoln, for Declaratory Judgment)

117.  Successor Trustee repeats and realleges ¶¶ 1-116 hereof as though fully set forth at length herein.

118.  The Lincoln Policy contains an incontestability provision which states that the Lincoln Policy "will be incontestable after it has been in force during the Insured's lifetime for two years from its Date of Issue."

119.  New York law bars insurers from seeking to rescind a life insurance policy by claiming lack of "insurable interest" once two years have passed since the policy was issued.

120.  Lincoln, on April 16, 2008 — more than two years after the Lincoln Policy was issued, and after Arthur Kramer had died and a claim for death benefits under the Lincoln Policy already had been submitted — asserted for the first time that the Lincoln Policy was, or should now be deemed to be, void *ab initio*, on account of a supposed lack of a proper "insurable interest" at the time when the Lincoln Policy was issued, and that Lincoln should therefore be excused from making payment of the death benefit under the Lincoln Policy.

121.  In light of the foregoing, there is now an actual controversy of a justiciable nature regarding whether the Lincoln Policy is valid and enforceable (as opposed to void *ab initio*) and whether Lincoln must pay to the August Trust (or to LPC) the benefits due under the Lincoln Policy.

122.  The August Trust has no adequate remedy at law.

123.  Accordingly, the August Trust is entitled to a declaration that the Lincoln Policy is valid and enforceable notwithstanding any issue Lincoln might now seek to raise regarding a supposed lack of proper "insurable interest" at the time the Lincoln Policy was issued, and that Lincoln must pay to the August Trust or LPC the benefits owed under the Lincoln Policy.

## AS AND FOR THE THIRD CROSS-CLAIM
### (Against Lincoln, for Declaratory Judgment)

124.  Successor Trustee repeats and realleges ¶¶ 1-123 hereof as though fully set forth at length herein.

125.  Lincoln, on April 16, 2008 — more than two years after the Lincoln Policy was issued, and after Arthur Kramer had died and a claim for death benefits under the Lincoln Policy already had been submitted — asserted for the first time that it was entitled to make setoffs from the death benefit payable under the Lincoln Policy on the theory that it has sustained damages as a result of one or more alleged civil conspiracies among LPC and third-party defendant Steven Lockwood, defendant Lockwood Pension Services, Inc., original defendant TD Banknorth, Inc., defendant Successor Trustee, and/or non-party Joel Miller to fraudulently induce Lincoln to issue the Lincoln Policy and/or a life insurance policy Lincoln issued on the life of one Leon Lobel (the "Lobel Policy"), and to conceal the purported absence of an "insurable interest" in these policies.  Lincoln asserted that Successor Trustee furthered these supposed civil conspiracies by, inter alia, acquiring and/or participating in the sale of the death benefits under these policies and funding premium payments for these policies.

126.  Because the two-year incontestability period under both New York law and the express terms of the Lincoln Policy already had lapsed by the time Lincoln first made this assertion, there is no lawful basis for Lincoln to make any setoffs from the death benefit payable under the Lincoln Policy.

127.  In light of the foregoing, there is now an actual controversy of a justiciable nature regarding whether Lincoln has any lawful basis to set-off any amounts from the death benefit payable under the Lincoln Policy based on these belatedly-raised allegations of supposed civil conspiracy.

128.  The Successor Trustee has no adequate remedy at law.

129.  Accordingly, the Successor Trustee is entitled to a declaration that Lincoln has no lawful basis to set-off any amounts from the death benefit payable under the Lincoln Policy based on its belatedly raised allegations of supposed civil conspiracy.

## AS AND FOR THE FOURTH CROSS-CLAIM
### (Against Lincoln, for Declaratory Judgment)

130.  Successor Trustee repeats and realleges ¶¶ 1-129 hereof as though fully set forth at length herein.

131.  Lincoln, on April 16, 2008 — more than two years after the Lincoln Policy was issued, and after Arthur Kramer had died and a claim for death benefits under the Lincoln Policy already had been submitted — asserted for the first time that it was entitled to make setoffs from the death benefit payable under the Lincoln Policy on the theory that it has sustained damages as a result of Successor Trustee's supposedly having aided and abetted third-party defendant Steven Lockwood and defendant Lockwood Pension Services, Inc. in carrying out one or more supposed

fraudulent arrangements on their part to deceive and induce Lincoln to issue the Lincoln Policy and/or the Lobel Policy, and to conceal the purported absence of an "insurable interest" in these policies. Lincoln asserted that Successor Trustee allegedly aided and abetted these supposed frauds by, inter alia, participating in the sale of the death benefits under these policies and funding premium payments for these policies.

132. In light of the foregoing, there is now an actual controversy of a justiciable nature regarding whether Lincoln has any lawful basis to set-off any amounts from the death benefit payable to the August Trust under the Lincoln Policy based on these belatedly-raised allegations of supposed aiding and abetting fraud.

133. The Successor Trustee has no adequate remedy at law.

134. Accordingly, the Successor Trustee is entitled to a declaration that Lincoln has no lawful basis to set-off any amounts from the death benefit payable under the Lincoln Policy based on its belatedly raised allegations of supposed aiding and abetting fraud.

### AS AND FOR THE FIFTH CROSS-CLAIM
### (Against Lincoln, under N.Y. Gen. Bus. Law § 349)

135. Successor Trustee repeats and realleges ¶¶ 1-134 hereof as though fully set forth at length herein.

136. On information and belief, the Lincoln Policy issued to the August Trust was a standard form policy sold by Lincoln to other consumers.

137. Lincoln's representations and omissions, including representations in the Lincoln Policy, were misleading in a material respect, in that policy applicants, holders,

purchasers and beneficiaries were led to believe that claims for payment under such policies would be investigated and processed in good faith and in a timely matter, and that benefits would be paid in accordance with the terms of such policies. In fact, however, Lincoln has failed to do so with respect to the policy at issue here. Lincoln has done likewise with respect to other similar policies.

138. Accordingly, Lincoln's conduct, as alleged herein, constitutes deceptive acts or practices within the meaning of New York General Business Law § 349.

139. As a direct and proximate result of Lincoln's deceptive acts or practices, the August Trust have been injured in an amount not less than the face value of the Lincoln Policy, i.e., $10,000,000.00, plus interest and attorneys' fees.

WHEREFORE, Jonathan S. Berck, in his capacity as the successor trustee of the Arthur Kramer 2005 Insurance Trust, respectfully demands judgment in his favor as follows:

(i)    dismissing with prejudice the Estate's claims for relief in the Complaint;

(ii)    declaring that the Lincoln Policy is valid and enforceable, that Lincoln must pay the to August Trust and/or LPC the benefits owed under the Lincoln Policy;

(iii)    in the event that the Court awards to the Estate some or all of the death benefits payable under the Lincoln Policy, or issues a declaration that the Estate is entitled to some or all of such benefits, awarding to the August Trust a refund from the Estate of all payments made by the August Trust to Arthur Kramer (or to any of his heirs) for the purchase of the rights to such death benefits, and/or a declaration that the August Trust is entitled to such a refund;

(iv)    in the event this Court does not order that the August Trust is entitled to receive the proceeds of the Lincoln Policy, awarding August Trust compensatory damages from the Estate in an amount to be determined at trial but not less than $10,000,000.00;

(v)    awarding the August Trust compensatory damages from Lincoln in an amount to be determined at trial but not less than $10 million;

(vi)    declaring that Lincoln has no lawful basis to set-off any amounts from the death benefit payable under the Lincoln Policy based on its allegations of supposed civil conspiracy;

(vii)    declaring that Lincoln has no lawful basis to set-off any amounts from the death benefit payable under the Lincoln Policy based on its allegations of supposed aiding and abetting fraud; and

(viii)    awarding the August Trust attorneys' fees, interest, costs, disbursements, and such other and further relief as this Court may deem just and proper.

Dated: New York, New York
       August 1, 2008

                                        Respectfully,

                                        FEIN & JAKAB
                                        233 Broadway, Suite 930
                                        New York, New York 10279
                                        (212) 732-9290


                                        By_____/s/_____
                                               PETER JAKAB (PJ-8553)


                                        Attorneys for
                                        Defendant and Third-Party Plaintiff
                                        Jonathan S. Berck

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ALICE KRAMER, as Personal Representative of the
Estate of Arthur Kramer,

                Plaintiff,

        -against-

LOCKWOOD PENSION SERVICES, INC., TALL
TREE ADVISORS, INC., LIFE PRODUCTS
CLEARING, LLC, TRANSAMERICA OCCIDENTAL
LIFE INSURANCE CO., PHOENIX LIFE
INSURANCE CO., LINCOLN LIFE & ANNUITY CO.
OF NEW YORK and JONATHAN S. BERCK,

                Defendants.

**ECF Case**

08 Civ. 2429 (DAB) (MHD)

**<u>DEMAND FOR TRIAL BY
JURY</u>**

---

PHOENIX LIFE INSURANCE CO.,

                Third-Party Plaintiff,

        -against-

STEVEN LOCKWOOD,

                Third-Party Defendant.

---

LIFE PRODUCT CLEARING LLC and JONATHAN S.
BERCK,

                Third-Party Plaintiffs,

        -against-

LIZA KRAMER and ANDREW B. KRAMER,

                Third-Party Defendants.

---

Defendant and Third-Party Plaintiff, Jonathan S. Berck, by and through his attorneys undersigned, pursuant to Federal Rule of Civil Procedure 38, hereby demands trial by jury of all claims and issues so triable.

Dated: New York, New York
      August 1, 2008

Respectfully,

FEIN & JAKAB
233 Broadway, Suite 930
New York, New York 10279
(212) 732-9290


By_____/s/_____
         PETER JAKAB (PJ-8553)

Attorneys for
Defendant and Third-Party Plaintiff
Jonathan S. Berck