UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————————x

ALICE KRAMER, as Personal Representative of    :
the Estate of Arthur Kramer,

                           Plaintiff,    :

        – against –    :

LOCKWOOD PENSION SERVICES, INC., TALL :
TREE ADVISORS, INC., LIFE PRODUCTS    :
CLEARING, LLC, TRANSAMERICA    :
OCCIDENTAL LIFE INSURANCE CO.,    :
PHOENIX LIFE INSURANCE CO., LINCOLN    :
LIFE & ANNUITY CO. OF NEW YORK AND    :
JONATHAN S. BERCK,    :

                    Defendants.    :

———————————————————————

     Various Third-Party Actions    :

———————————————————————————x

Civil Action No.
08 CV 2429 (DAB)(MHD)

ECF Case

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO THE
MOTION OF DEFENDANTS LOCKWOOD PENSION SERVICES, INC. AND
TALL TREE ADVISORS, INC. TO DISMISS THE AMENDED COMPLAINT**

FRIEDMAN & WITTENSTEIN
A Professional Corporation

600 Lexington Avenue
New York, New York 10022
(212) 750-8700

*Attorneys for Plaintiff*

# TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES ................................................................................. ii

Preliminary Statement .................................................................................... 1

STATEMENT OF FACTS .................................................................................. 2

    The Parties ................................................................................................. 2

    Background: "Stranger-Owned Life
    Insurance" and the Insurable Interest Rule ............................................. 3

    The Present Action .................................................................................... 4

    LPS and TTA's Involvement in the Unlawful SOLI Scheme ............................... 5

ARGUMENT

LPS AND TTA'S MOTION TO DISMISS THE
AMENDED COMPLAINT SHOULD BE DENIED ........................................................ 9

    A.    The Applicable Standard When Deciding a Motion to Dismiss ................ 9

    B.    The Amended Complaint States a Claim
        Against Defendants LPS and TTA Based on Their
        Substantial Involvement in an Unlawful SOLI Scheme .......................... 10

            *Rule 57 of the Federal Rules of Civil Procedure* ......................... 13

            *Justiciable Controversy* ............................................................. 15

Conclusion ................................................................................................... 17

## **TABLE OF AUTHORITIES**

**Cases**                                                                          **Page(s)**

ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,
    493 F.3d 87 (2d Cir. 2007)...........................................................................................1

Beacon Constr. Co. v. Matco Elec. Co., Inc.,
    521 F.2d 392 (2d Cir. 1975)......................................................................................13

Bell Atl. Corp. v. Twombly,
    127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) ........................................................... 1-2

Even St. Prods., Ltd., v. Shkat Arrow Hafer & Weber, LLP,
    No. 05 Civ. 3834, 2008 WL 2224297 (S.D.N.Y. May 29, 2008)................................. 9-10

Kidder, Peabody & Company, Inc. v. Maxus Energy Corp.,
    925 F.2d 556 (2d Cir. 1991)................................................................................. 14-15

Life Product Clearing LLC v. Angel,
    530 F. Supp. 2d 646 (S.D.N.Y. 2008)...........................................................................3

National Union Fire Ins. Co. of Pittsburgh, PA v. BP Amoco P.L.C.,
    319 F. Supp. 2d 352 (S.D.N.Y. 2004)........................................................................16

New England Mutual Life Ins. Co. v. Caruso,
    73 N.Y.2d 74, 535 N.E.2d 270, 538 N.Y.S.2d 217 (1989).......................................4

Olin Corp. v. Consolidated Aluminum Corp.,
    5 F.3d 10 (2d Cir. 1993).............................................................................................15

United States v. 0.35 of an Acre of Land, Westchester Cty.,
    706 F. Supp. 1064 (S.D.N.Y. 1988)...................................................................... 13-14


**Statutes**

Fed. R. Civ. P. 8(d). .....................................................................................................5

Fed. R. Civ. P. 12(b)(6)...........................................................................................1, 9

Fed. R. Civ. R. 57 ......................................................................................................13

N.Y. Ins. Law § 3203(a)(3)..........................................................................................4

N.Y. Ins. Law § 3205(a)(1)..............................................................................3

N.Y. Ins. Law § 3205(b)(2) ...........................................................................3, 8

N.Y. Ins. Law § 3205(b)(4) ...........................................................4-5, 10, 13

## **Preliminary Statement**

Plaintiff Alice Kramer, in her capacity as the Personal Representative of the Estate of Arthur Kramer ("Plaintiff" or "Estate"), respectfully submits this memorandum of law in opposition to the motion of Defendants Lockwood Pension Services, Inc. ("LPS") and Tall Tree Advisors, Inc. ("TTA") to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. (LPS and TTA are sometimes collectively referred to herein as the "moving defendants"). As shown below, LPS and TTA's motion is based solely on their argument that Plaintiff does not allege that LPS or TTA are the "owners" or "beneficiaries" of the life insurance policies at issue, or that they are entitled to receive any death benefits under those policies.

What LPS and TTA fail to address, however, is that the Amended Complaint clearly alleges that both LPS and TTA participated extensively in an illegal arrangement known as "stranger-owned life insurance." Such an arrangement, as the Amended Complaint describes, is designed to avoid New York's "insurable interest" rule, pursuant to which a person may not obtain an insurance policy on the life of another unless that person is a relative, loved one or business partner of the insured – i.e., someone who would have an interest in the continued life of the insured. Plaintiff's Amended Complaint contains numerous allegations – which must be accepted as true for purposes of the present motion – delineating LPS and TTA's involvement in this unlawful activity, and explaining how they violated the insurable interest rule. These allegations are more than sufficient to satisfy the requirement that "the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007) (quoting Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1965, 167 L. Ed. 2d 929

(2007)).  Whether or not LPS and TTA were "beneficiaries" or "owners" of the policies at issue, or are entitled to receive death benefits, in no way diminishes their substantial involvement in the illegal activity that is the crux of Plaintiff's Amended Complaint.

### STATEMENT OF FACTS

**The Parties**

Plaintiff Alice Kramer is the widow of Arthur Kramer and the Personal Representative of his Estate.  She brings this action in that capacity.  Mr. Kramer was a retired attorney at the time of his death on January 26, 2008 at the age of 81.  (Amended Complaint, ¶¶ 1, 17).[1]

The Amended Complaint alleges that Defendant Transamerica Occidental Life Insurance Co. ("Transamerica"), an insurance company, is an Iowa corporation with its principal place of business located in Cedar Rapids, Iowa; that Defendant Phoenix Life Insurance Co. ("Phoenix"), an insurance company, is a New York corporation with its principal place of business located in East Greenbush, New York; and that Defendant Lincoln Life & Annuity Co. of New York ("Lincoln"), an insurance company, is a New York corporation with its principal place of business located in Syracuse, New York.  (Id. at ¶¶ 6-8).

The Amended Complaint also alleges that Defendant Lockwood Pension Services, Inc. ("LPS") is a New York corporation with its principal place of business located in New York, New York; that Defendant Tall Tree Advisors, Inc. ("TTA") is a New York corporation with its principal place of business located in Pleasantville, New York; and that

_____

[1] A copy of Plaintiff's Amended Complaint is attached as Exhibit 1 to the accompanying Affidavit of Stuart I. Friedman in Opposition to the Motion of Defendants Lockwood Pension Services, Inc. and Tall Tree Advisors, Inc. to Dismiss the Amended Complaint ("Friedman Aff.").

Defendant Life Product Clearing LLC ("Life Product") is a Delaware limited liability company with its principal place of business located in New York, New York.  (Id. at ¶¶ 3-5).

**Background:  "Stranger-Owned Life Insurance" and the Insurable Interest Rule**

As the Court is aware, this case involves the procurement of what is known as "stranger-owned life insurance" ("SOLI").

New York Insurance Law Section 3205(b)(2) provides that one may not obtain an insurance policy on the life of another without having an "insurable interest" in the insured's life. New York Insurance Law Section 3205(a)(1) defines an "insurable interest" as the type of interest that a relative, loved one or business partner would have in the continued life of the insured.  This so-called "insurable interest rule" is a well-settled principle in New York insurance law, and it prevents the issuance of "wager" life insurance policies – i.e., life insurance contracts that give the policy owner an interest in having the insured's life come to an end as soon as possible.  (Amended Complaint, ¶¶ 13, 50).  See generally Life Product Clearing LLC v. Angel, 530 F. Supp. 2d 646, 652-54 (S.D.N.Y. 2008).

A typical SOLI arrangement – which is designed to circumvent the insurable interest rule – is initiated by a stranger investor or an insurance agent who approaches an elderly person and encourages him to purchase life insurance, the death benefits of which will be immediately transferred to the stranger investor.  The common characteristic of all SOLI arrangements is that they are structured so that the elderly person or a family member, rather than the stranger investor, is made to appear as the original beneficiary of the policy in order to try to evade the insurable interest requirement.  (Amended Complaint, ¶ 14).

3

Plaintiff alleges that the moving defendants – i.e., LPS and TTA – as well as defendants Life Product and Berck, all participated in an unlawful SOLI arrangement that was structured for the sole purpose of trying to avoid the insurable interest rule.  (Id. ¶ 15).

**The Present Action**

On March 10, 2008, the Estate commenced this action against various defendants, including LPS and TTA.  On May 7, 2008, the Estate filed an Amended Complaint.

It is important to note that under New York law, a life insurance policy that is procured by someone without an insurable interest in the life of the insured is not void.  Rather, if the two-year period of contestability has passed, the insurance company must pay out the proceeds of the policy.  See New England Mutual Life Ins. Co. v. Caruso, 73 N.Y.2d 74, 535 N.E.2d 270, 538 N.Y.S.2d 217 (1989).  Thus, where – as in the present case – insurance companies have claimed that there was no insurable interest in the life of the insured, the insurance companies must still pay the death benefits if the policy at issue was in force for at least two years during the life of the insured.[2]

However, New York effectuates its policy against wager life insurance contracts by including an important provision in its statutory scheme that is designed to prevent the "wagerer" from keeping the benefits of his wager.  That provision – New York Insurance Law Section 3205(b)(4) – states, in essence, that if someone receives from an insurer benefits under a

---

[2] New York Insurance Law Section 3203(a)(3) requires that all life insurance policies contain a two-year incontestability clause providing that the insurer is barred from contesting the validity of the policy after it has been continuously in effect for at least two years.  Pursuant to that provision, all of the life insurance policies at issue in this case are incontestable, because they were issued during 2005, and Mr. Kramer did not die until January 26, 2008.  (See Amended Complaint, ¶¶ 28, 37, 41, 44, 46).

4

policy that was made in violation of the insurable interest rule, then the insured's estate may maintain an action to recover those benefits.[3]

Plaintiff's Amended Complaint, therefore, contains two claims. First, Plaintiff seeks a declaration that the insurance company defendants must pay the death benefits under the policies, and that such death benefits must be paid to her. This claim assumes, of course, that the insurance companies have not yet paid the death benefits to anyone, and that a direct claim by Plaintiff under Section 3205(b)(4) has therefore not yet come into play. Plaintiff's second claim – which is pled in the alternative and which is not asserted against the insurance company defendants – is based on Section 3205(b)(4), and asserts that if the insurance companies have already paid out the death benefits, then Plaintiff is entitled to recover those benefits from the entity that received them.[4]

**LPS and TTA's Involvement in the Unlawful SOLI Scheme**

Plaintiff's Amended Complaint alleges that as early as 2003, defendant LPS (through its principal, Steven Lockwood) approached Arthur Kramer to solicit his participation in a SOLI arrangement. (Amended Complaint ¶ 18). The Amended Complaint also alleges that

---

[3] The logic of Section 3205(b)(4) is self-evident. The provision takes the funds out of the hands of the entity that procured the wager policy and had an improper interest in seeing the insured's life come to an end sooner rather than later, and puts those funds back into the hands of the deceased's estate, where it will typically go to a loved one (here, Arthur Kramer's 80-year-old widow, Alice Kramer), who would have had an interest in seeing the life of the insured continue. In this manner, Section 3205(b)(4) serves the salutary public interest of righting the wrong of the wager contract that bets on a person's early demise.

[4] Such pleading in the alternative is specifically authorized by Fed. R. Civ. P. 8(d). At several points in their brief, LPS and TTA incorrectly state that the Second Claim For Relief in Plaintiff's Amended Complaint is for a declaratory judgment. (See Memorandum of Law in Support of the Motion of Defendants Lockwood Pension Services, Inc., and Tall Tree Advisors, Inc. to Dismiss the Amended Complaint ("LPS/TTA Brief"), pp. 1, 3). In fact, while the First Claim for Relief is for a declaratory judgment, the Second Claim for Relief is for the recovery of death benefits. (See Friedman Aff., Ex. 1).

Mr. Lockwood, in 2005, introduced Mr. Kramer to the SOLI arrangement that is the subject

matter of this litigation.  (Id. ¶ 19).  The Amended Complaint further asserts as follows:

> 20.    Upon information and belief, the SOLI arrangement
> worked as follows:  Mr. Kramer, at the direction of LPS and
> possibly other defendants, would establish trusts, naming himself
> as the depositor and one or more of his children as the initial
> beneficiaries.  An LPS affiliated person or entity would be
> appointed as the trustee.  The witnesses to the trust instrument
> would be Mr. Lockwood and one of his associates.  Upon the
> issuance of the policies, Mr. Kramer, again acting at the direction
> of LPS and possibly other defendants, would immediately direct
> his children to execute a putative assignment of their nominal
> interest in the trust to a stranger third-party investor arranged by
> Mr. Lockwood.  (The three children from Mr. Kramer's marriage
> to Plaintiff are Andrew Kramer ("Andrew"), Rebecca Kramer
> ("Rebecca") and Liza Kramer ("Liza")).
>
> * * *
>
> 22.    Upon information and belief, LPS and certain other
> defendants employed the above-described SOLI arrangement with
> respect to a series of life insurance policies totaling approximately
> $56,200,000 on the life of Mr. Kramer.  These policies were issued
> by defendants Transamerica, Phoenix and Lincoln.

(Id. ¶¶ 20, 22) (emphasis added).

With respect to Transamerica, the Amended Complaint alleges that in June 2005,

Mr. Kramer, "at the direction of LPS and possibly other defendants," established the Arthur

Kramer Insurance Trust (the "June Trust"), and listed Andrew Kramer and Rebecca Kramer as

the putative beneficiaries thereunder.  (Id. ¶ 23).  The June Trust agreement was prepared by

LPS's counsel, and Mr. Kramer had no involvement in its drafting.  (Id. ¶ 24).

In June and July 2005, Transamerica issued several policies to the June Trust on

the life of Mr. Kramer, having a total death benefit of approximately $18,200,000.  (Id. ¶ 28).

Upon issuance of the policies, the beneficial interests in the June Trust were purportedly

transferred to defendant TTA.  As the Amended Complaint alleges:

> 29.    Upon information and belief, upon issuance of the policies, and <u>at the direction of LPS</u> and possibly other defendants, Mr. Kramer directed Andrew and Rebecca to execute putative assignments of their beneficial interests in the June Trust <u>to stranger investor TTA</u>.

(<u>Id.</u> ¶ 29) (emphasis added).

With respect to Phoenix, the Amended Complaint alleges that in August 2005, Mr. Kramer, "<u>at the direction of LPS</u> and possibly other defendants," established the Arthur Kramer 2005 Insurance Trust (the "August Trust") and listed Liza Kramer as the putative beneficiary.  (<u>Id.</u> ¶ 32).  The August Trust was prepared by LPS's counsel, and Mr. Kramer had no involvement in its drafting.  (<u>Id.</u> ¶ 33).  In July 2005, Phoenix issued several policies to the August Trust on the life of Mr. Kramer having a total death benefit of approximately $28,000,000.  (<u>Id.</u> ¶ 37).  Upon issuance of the policies, the beneficial interests in the August Trust were purportedly transferred <u>to defendant TTA</u>.  As the Amended Complaint alleges:

> 38.    Upon information and belief, upon issuance of the policies, and <u>at the direction of LPS</u> and possibly other defendants, Mr. Kramer directed Liza to execute putative assignments of her beneficial interest in the August Trust <u>to stranger investor TTA</u>.

(<u>Id.</u> ¶ 38) (emphasis added).

A similar arrangement was utilized with Lincoln, which issued a $10,000,000 policy to the August Trust on the life of Mr. Kramer.  The Amended Complaint alleges that upon issuance of the Lincoln Policy and "<u>at the direction of LPS</u> and possibly other defendants," Mr. Kramer directed Liza Kramer to execute putative assignments of her beneficial interests in the August Trust to defendant Life Product.  (<u>Id.</u> ¶ 42).

The Amended Complaint makes clear that the formation of the trusts, the procuring of the over $56,000,000 of insurance on the life of Mr. Kramer, and the putative

assignments of the Kramer children's interest in the trusts to stranger investors, were all part of

an illegal SOLI arrangement. As the Amended Complaint alleges:

> 15. As further described below, defendants participated in an elaborate and unlawful SOLI arrangement where every detail, from drafting the trust agreements to choosing the trustees and investors, was structured for the sole purpose of trying to avoid the insurable interest rule. The arrangement was implemented by defendants to create the appearance that an insurable interest existed when Mr. Kramer took out several policies, so that the subsequent transfers of the beneficial interests in those policies to the stranger investors would appear lawful. However, the transfers to investors took place <u>immediately</u> upon Mr. Kramer's obtaining of the policies at issue, and that was always their plan. At no time were Mr. Kramer or any of his family members the true owners of the beneficial interests in the policies. Upon information and belief, Mr. Kramer never intended for the death benefits of the insurance policies to benefit his family.

(<u>Id.</u> ¶ 15).

Finally, the Amended Complaint cites New York Insurance Law Section

3205(b)(2) – which prohibits the procurement of life insurance by someone who does not have

an insurable interest in the life of the person insured – and alleges very clearly that defendant

TTA and others violated the law:

> 51. <u>Neither TTA nor Life Products held an insurable interest in the life of Mr. Kramer</u>.

> 52. <u>TTA and Life Products procured or caused to be procured, directly or by assignment or otherwise, contracts of insurance upon the person of Mr. Kramer</u>.

> 53. <u>TTA lacked an insurable interest in Mr. Kramer at the time the Transamerica and Phoenix Policies were issued</u>. Life Products lacked an insurable interest in Mr. Kramer at the time the Lincoln Policies were issued.

> 54. <u>In the case of TTA, the Transamerica and Phoenix Policies on the life of Mr. Kramer were procured with the view to their immediate assignment to TTA</u>. In the case of Life Products, the

> Lincoln Policies on the life of Mr. Kramer were procured with the
> view to their immediate assignment to Life Products.

(Id. ¶¶ 51-54) (emphasis added).

These allegations in Plaintiff's Amended Complaint, which spell out – with far

more specificity than is required – the involvement of defendants LPS and TTA in the unlawful

SOLI scheme, state a valid claim against LPS and TTA.  Accordingly, their motion to dismiss

the Amended Complaint should be denied.

## ARGUMENT

## LPS AND TTA'S MOTION TO DISMISS THE
## AMENDED COMPLAINT SHOULD BE DENIED

### A.    The Applicable Standard When Deciding a Motion to Dismiss

This Court recently summarized the applicable standards when deciding a motion

to dismiss under Rule 12(b)(6):

> The purpose of a motion to dismiss pursuant to Fed. R. Civ. P.
> 12(b)(6) is to "test, in a streamlined fashion, the formal sufficiency
> of the plaintiff's statement of a claim for relief *without* resolving a
> contest regarding its substantive merits." *Global Network
> Communications, Inc. v. City of New York*, 458 F.3d 150, 155 (2d
> Cir. 2006).  On such a motion, the court "assesses the legal
> feasibility of the complaint, but does not weigh the evidence that
> might be offered to support it." *Id.* (citing *AmBase Corp. v. City
> Investing Co. Liquidating Trust*, 326 F.3d 63, 72 (2d Cir. 2003)).
> The court therefore "must accept as true all of the factual
> allegations set out in plaintiff's complaint, draw inferences from
> those allegations in the light most favorable to plaintiff, and
> construe the complaint liberally." *Gregory v. Daly*, 243 F.3d 687,
> 691 (2d Cir. 2001) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46,
> 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)).  However, the plaintiff must
> provide enough facts to state a claim for relief that is plausible on
> its face. *Bell Atlantic Corp. v. Twombly*, ___ U.S. ___, ___, 127 S.
> Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007).

Even St. Prods., Ltd., v. Shkat Arrow Hafer & Weber, LLP, No. 05 Civ. 3834, 2008 WL

2224297, at *2 (S.D.N.Y. May 29, 2008) (Batts, J.) (italics in original).[5]

       Under these standards, LPS and TTA's motion to dismiss the Amended

Complaint should be denied.

**B.     The Amended Complaint States a Claim
           Against Defendants LPS and TTA Based on Their
           Substantial Involvement in an Unlawful SOLI Scheme**

       In their moving brief, LPS and TTA state that "[i]n Bell Atlantic Corp. v.

Twombly, 127 S. Ct. 1955, 1966 (2007), the Supreme Court made it clear that in pleading a

cause of action a party must assert facts which demonstrate the existence of an actual injury by

virtue of the alleged actions of the defendants." (LPS/TTA Brief, p. 4) (emphasis added).

Plaintiff's Amended Complaint easily satisfies this requirement.

       Here, of course, the injury suffered by Plaintiff is that the defendants engineered

an illegal plan through which over $56,000,000 in life insurance proceeds would go to the wrong

persons – i.e., persons with no insurable interest in Mr. Kramer's life. As noted above, New

York Insurance Law Section 3205(b)(4) provides that in such cases, the insured's estate has the

right to recover those proceeds from the persons who wrongfully received them. Moreover, the

Amended Complaint is replete with specific references to LPS and TTA's involvement in the

unlawful SOLI scheme. Without repeating all of the allegations in the Amended Complaint that

specifically refer to LPS and TTA's actions (see pp. 5-9, supra), it is sufficient to note here that –

as the Amended Complaint alleges – LPS orchestrated the entire SOLI scheme, including the

formation of the trusts that were used to effectuate the scheme; LPS directed Mr. Kramer to have

his children execute putative assignments to, inter alia, the defendant TTA in order to effectuate

---

[5] A copy of this unreported decision is annexed hereto.

the scheme; and TTA acted as the "stranger investor" on the Transamerica and Phoenix policies, thus making the scheme possible. In the words of LPS and TTA, plaintiff was clearly injured "by virtue of the alleged actions of the defendants."

In the face of these substantial allegations, which LPS and TTA completely ignore in their brief, LPS and TTA myopically focus on the fact that the Amended Complaint does not allege that LPS or TTA is an "owner" or "beneficiary" of any of the policies, or that LPS or TTA has asserted a claim to any death benefits. (See LPS/TTA Brief, pp. 1, 4-5, 7). That, however, does not absolve LPS or TTA of liability for the major roles they played in putting together the illegal SOLI scheme. Indeed, one cannot read the allegations of the Amended Complaint – which must be accepted as true here – without recognizing that the SOLI scheme would never have been possible without the participation of LPS and TTA. The simple fact is that LPS and TTA conspired with each other, and with the other non-insurance company defendants, to formulate and effectuate the SOLI scheme, and the Amended Complaint makes that absolutely clear.

In any event, it is not true that, as LPS and TTA claim, "plaintiff is well aware that Tall Tree does not hold a beneficial in the Trust [sic], or has any claim to the death benefits from any the Kramer Policies [sic]." (LPS/TTA Brief, p. 3, n.3). While Plaintiff believes that the interests in the Transamerica and Phoenix policies were eventually transferred to various non-parties, the Amended Complaint alleges that the interest in the $10,000,000 Lincoln policy was putatively assigned to defendant Life Product. (Amended Complaint, ¶ 42). As the Court is aware from other pleadings that have been filed in this case, Life Product asserts that it is entitled to receive the $10,000,000 in death benefits from the Lincoln policy. Defendant Life Product is,

upon information and belief, an entity that is connected to Steven Lockwood, the principal of

LPS and TTA, and it shares offices with LPS and TTA.

In addition, this Court may take judicial notice that allegations concerning the

inter-relationship between the Lockwood-connected defendants – including Life Product, LPS

and TTA – were also made by defendant Phoenix in the Counterclaims, Cross-Claims and Third-

Party Complaint that it filed in this case on May 29, 2008.  As Phoenix alleges:

> 3.    On information and belief, <u>Lockwood, LPS, and Tall Tree all reside at the same address</u>: 2 Tall Tree Lane, Pleasantville, New York.

> 4.    Jonathan S. Berck ("Berck") has served, and continues to serve, as the trustee for various life insurance trusts that Lockwood helped to establish.

> 5.    On information and belief, <u>Lockwood, LPS, Life Product Clearing LLC ("Life Product")</u>, M&M Brokerage Services, Inc. ("M&M"), and Berck <u>all have (or had during the time period relevant to this action) offices located at 75 Rockefeller Plaza, New York, New York.</u>

> 6.    On information and belief, <u>Lockwood, LPS, Tall Tree, Life Product, and Berck have developed a formulaic method of circumventing New York's insurable interest rule.</u>  On information and belief, this method involves using elderly persons, and the trusts they encourage or aid them in establishing, as strawmen to acquire life insurance policies for the benefit of strangers who have no insurable interest in the lives of the insureds (*i.e.*, a "SOLI" scheme).

> 7.    On information and belief, <u>Lockwood, LPS, Tall Tree, Life Product, and Berck have used fraudulent SOLI schemes to procure multiple life insurance policies worth hundreds of millions of dollars.</u>  On information and belief, all of the insurance policies at issue in this lawsuit were procured by means of fraudulent SOLI schemes <u>formulated and perpetuated by Lockwood, LPS, Tall [sic], Life Product, and Berck.</u>

> * * *

> 16.    On information and belief, <u>the stranger investor on whose</u>

12

> behalf Mr. Kramer procured the life insurance was Tall Tree.
> Thus, Tall Tree was the true intended beneficiary of the requested
> policy.

Phoenix's Answer to Amended Complaint With Counterclaims, Cross-Claims and Third-Party

Complaint, filed May 29, 2008, pp. 11-12, ¶¶ 3-7, 16) (emphasis added).[6]  Phoenix's pleading

thus highlights the murky nature of the relationship between Life Product, LPS and TTA.  Under

these circumstances, and without the benefit of any discovery (which has not yet commenced),

Plaintiff does not even know for sure at this point whether these various Lockwood-connected

organizations are truly separate legal entities.

### *Rule 57 of the Federal Rules of Civil Procedure*

Reduced to its essence, LPS and TTA's argument is that Plaintiff's only valid

claim would be against the owners or beneficiaries of the life insurance policies at issue, or

against those entities claiming entitlement to the death benefits.  While it is true that – under

New York Insurance Law Section 3205(b)(4) – Plaintiff would have a claim to recover the

insurance proceeds from an entity that received them in violation of the insurable interest rule,

that is by no means the end of the matter, nor is such a claim Plaintiff's exclusive remedy.

Indeed, Rule 57 of the Federal Rules of Civil Procedure explicitly states that the existence of

another remedy does not preclude an action for a declaratory judgment:

> These rules govern the procedure for obtaining a declaratory
> judgment under 28 U.S.C. § 2201 . . . The existence of another
> adequate remedy does not preclude a declaratory judgment that is
> otherwise appropriate.

Fed. R. Civ. P. 57 (emphasis added).  See also Beacon Constr. Co. v. Matco Elec. Co., Inc., 521

F.2d 392, 397 (2d Cir. 1975) (a declaratory judgment is an "additional remedy," and pursuant to

Rule 57, the existence of other remedies does not preclude its use); United States v. 0.35 of an

---

[6] A copy of Phoenix's pleading is attached to the Friedman Aff. as Exhibit 2.

Acre of Land, Westchester Cty., 706 F. Supp. 1064, 1073 (S.D.N.Y. 1988) (in view of Rule 57, court rejected as "frivolous" an affirmative defense that plaintiff's claim for a declaratory judgment was barred because of the existence of other adequate remedies).  Therefore, although Plaintiff may well have a claim against any persons who improperly receive the death benefits of the insurance policies at issue, that in no way precludes Plaintiff from bringing a declaratory judgment action against all entities – including LPS and TTA – that actively participated in the illegal SOLI scheme.

Indeed, as we have noted in papers we have filed in connection with other motions, a declaratory judgment is the logical and ideal vehicle for adjudicating the present action.  As the Second Circuit held in Kidder, Peabody & Company, Inc. v. Maxus Energy Corp., 925 F.2d 556 (2d Cir. 1991):

> The question in each case [in which a declaratory judgment is sought] is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.
>
> * * *
>
> [A] declaratory judgment action should be entertained when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and . . . when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.  It follows as a general corollary to this rule that if either of these objectives can be achieved the action should be entertained.

Id. at 562 (citations and quotations omitted).

The present case fits squarely within these parameters.  If the court finds (i) that the insurance companies must pay out the death benefits because the policies are incontestable, and (ii) that Plaintiff (as opposed to one of the non-insurance company defendants) is entitled to receive those death benefits, the Court can so declare.  This, of course, would obviate the

14

wasteful scenario under which the insurance companies would pay the proceeds to the wrong party, only to have Plaintiff then engage in more litigation to recover those proceeds. In the words of the Second Circuit in Kidder, Peabody, a declaratory judgment would "serve a useful purpose in clarifying and settling the legal relations in issue." Id. at 562.

*Justiciable Controversy*

LPS and TTA also argue, however, that Plaintiff's claim for a declaratory judgment should be dismissed because there is no "justiciable controversy." (LPS/TTA Brief at pp. 6-7). There is no merit to this argument whatsoever, and the moving defendants' cases on this point are plainly inapposite.

For example, Olin Corp. v. Consolidated Aluminum Corp., 5 F.3d 10 (2d Cir. 1993), involved a dispute between two corporations as to which of them should bear the financial responsibility for the cleanup of certain polluted sites. The defendant in the case ("Conalco") filed a counterclaim seeking, inter alia, a declaratory judgment that the plaintiff Olin was liable for claims related to the disposal of hazardous substances at sites located in Hannibal, Ohio and Hometown, Pennsylvania, as well as *"certain unknown pieces of property* which may require cleanup." Id. at 13, 16 (italics in original). In holding that there was no actual controversy as to these "unknown" properties, the Second Circuit noted that the district court "made no mention of any third-party sites," that "we can find no mention of any pending environmental claim as to any third-party site in the pleadings or record," and that "[t]he record fails to indicate the location of these sites, and we do not even know the types of claims that might be asserted in the future." Id. at 17 (footnote omitted). Under these circumstances, the Second Circuit understandably held that there was no actual controversy between Olin and Conalco with respect to sites other than those in Hannibal, Ohio and Hometown, Pennsylvania.

In <u>National Union Fire Ins. Co. of Pittsburgh, PA v. BP Amoco P.L.C.</u>, 319 F. Supp. 2d 352 (S.D.N.Y. 2004), also cited by LPS and TTA, the plaintiffs brought a declaratory judgment action against numerous defendants regarding an insurance coverage dispute pertaining to oil and gas properties. Some defendants, however – who referred to themselves as the "Wrongly Named Defendants" – claimed that they were not even insured by the policies at issue, and were thus named as defendants by mistake. <u>Id.</u> at 357, 371-73. The court stated that "[b]ecause the Wrongly Named Defendants agree with plaintiffs that the [insurance policy] does not insure them, it seems clear that no case or controversy exists for the Court to adjudicate." <u>Id.</u> at 371-72. The court rejected as speculative plaintiff's argument that the "Wrongly Named Defendants" might – at some future time – acquire interests in properties that were covered by the insurance policy. <u>Id.</u> at 372-73. In short, the court agreed with the Wrongly Named Defendants that they had no connection whatsoever to the matter being sued upon. <u>Id.</u>

Needless to say, LPS and TTA's position in the present case is diametrically opposite from the position of the "Wrongly Named Defendants" in <u>National Union</u>. Unlike the "Wrongly Named Defendants" in that case, LPS and TTA were "up to their ears" in the illegal SOLI scheme that they devised and actively participated in. As shown above, and as alleged in the Amended Complaint, LPS orchestrated the entire scheme, and TTA served as the "stranger investor" on the Transamerica and Phoenix policies – a critical role that enabled the scheme to be effectuated. Under these circumstances, there is clearly a justiciable controversy between the parties, and LPS and TTA's motion to dismiss on that ground should be rejected.

## Conclusion

For all the foregoing reasons, the Motion of Defendants Lockwood Pension

Services, Inc. and Tall Tree Advisors, Inc. to Dismiss the Amended Complaint should be denied.

Dated: New York, New York
      August 15, 2008

                    FRIEDMAN & WITTENSTEIN
                    A Professional Corporation

By: _Andrew A. Wittenstein_
                    Stuart I. Friedman (SF-9186)
                    Andrew A. Wittenstein (AW-1943)
                    Claire L. Chau (CC-0125)

                    600 Lexington Avenue
                    New York, New York 10022
                    (212) 750-8700

                    *Attorneys for Plaintiff*

Westlaw.

Slip Copy                                                                    Page 1
Slip Copy, 2008 WL 2224297 (S.D.N.Y.)
2008 WL 2224297 (S.D.N.Y.)

**C**Even Street Productions, Ltd. v. Shkat Arrow Hafer &
Weber, LLP.
S.D.N.Y.,2008.
Only the Westlaw citation is currently available.
United States District Court,S.D. New York.
EVEN STREET PRODUCTIONS, LTD., Plaintiff,
v.
SHKAT ARROW HAFER & WEBER, LLP,
Defendant.
No. 05 CV 3834(DAB).

May 29, 2008.

*OPINION*

DEBORAH A. BATTS, District Judge.
*1 Plaintiff Even Street Productions filed the
above-captioned case against Defendant Shukat Arrow
Hafer & Weber, LLP., for legal malpractice. Now before
the Court is the Defendant's Motion to Dismiss. Plaintiff
opposes the Motion to Dismiss.

For the reasons that follow, Defendant's Motion to
Dismiss is DENIED.

I. *Background*[FN1]

FN1. Unless otherwise indicated, the facts herein
are taken from the First Amended Complaint and
are accepted as true by the Court for the purposes
of this Motion to Dismiss.

Plaintiff Even Street Productions is a corporation
incorporated in the State of New York. (Am.Compl.¶ 1.)
Its principal place of business is likewise located in New
York County, New York. (*Id*.) Plaintiff is the assignee of
all the rights and interests of the musical career of
Sylvester Stewart, professionally known as Sly Stone. (*Id*.)
These rights and interests include, but are not limited to,
his rights and interests as a composer, publisher, recording
artist and entertainer. (*Id*.) Plaintiff is likewise the assignee
of the rights and interests of Frederick Stewart, Rose
Stewart, Cynthia Robinson, Larry Graham, Greg Errico
and Gerald Martini with respect to their past activities as
members of the musical group Sly and the Family
Stone.(*Id*.) Plaintiff benefits from royalties and income
generated by the exploitation of compositions written by
Sylvester Stewart, and from royalties on the sale and
exploitation of master recordings made by Sly and the
Family Stone. (Am.Compl.¶¶ 2, 3.)

Defendant Shukat Arrow Hafer & Webber, LLP., is a
limited liability partnership practicing law; its principal
office is in New York County, New York. (Compl.¶ 5.)

In 2000, Diamond Time Ltd. and New York Times
Television produced a documentary titled *Jimi and Sly:
The Skin I'm In.*(Compl.¶ 11.) This documentary was
broadcast on the cable television network Showtime on
September 17, 2000 and on at least two other occasions,
in September and October of 2000. (Compl.¶ 13.) The
documentary incorporated, without the authorization or
permission of any of the rights holders, 39 musical
compositions (the "Compositions") and 10 master
recordings (the "Master Recordings") made by Sly and the
Family Stone, as well as several film clips containing the
image and likeness of Sly and the Family Stone. (Compl.¶
12.) All the Master Recordings were and are the exclusive
property of Sony Music Entertainment, Inc. ("Sony").
(Compl.¶ 6.) Copyrights in all the Compositions were and
are owned by Mijac Music and administered by

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                Page 2
Slip Copy, 2008 WL 2224297 (S.D.N.Y.)
2008 WL 2224297 (S.D.N.Y.)

Warner/Chappell Music, Inc. ("Warner/Chappell")
(Compl.¶ 4.)

Prior to September 2003, Sony and Warner/Chappell
retained Shukat Arrow Hafer & Webber to prosecute a
copyright infringement action against New York Times
Television, Showtime Networks, Inc. and Diamond Time
Ltd. (Compl.¶ 16.) On September 17, 2003, Shukat Arrow
Hafer & Webber entered a written agreement with
attorneys representing New York Times Television.
(Compl.¶ 18.) This agreement tolled the statute of
limitations from September 17, 2003 to December 15,
2003. (*Id.*) The Parties were unable to reach agreement
during that time. (Compl.¶ 19.) They also did not
commence any litigation relating to the copyright
infringement during this period. (Compl.¶ 20.) Instead, the
Parties discussed reaching agreement to extend further the
statute of limitations. (Compl.¶ 21.) However, no such
agreement was formalized. (*Id .*) On December 16, 2003,
when the statute of limitations expired for the Sony and
Warner/Chappell *The Skin I'm In* copyright claims,
attorneys for the New York Times and Showtime
Networks declined to enter another tolling agreement.
(Compl.¶¶ 21, 22.)

**\*2** Plaintiff expected to benefit from resolution of the
copyright infringement claims against New York Times
Television and Showtime Networks because allegedly any
amounts awarded to Sony and Warner/Chappell would
directly result in an increase in the royalties and other
monies paid to Plaintiff. (Compl.¶ 17.) In 2004, Plaintiff
entered into separate agreements with Sony and
Warner/Chappell, in each case assigning, conveying and
transferring any and all claims, rights, suits, or causes of
action which the assignor had against any third party,
including but not limited to New York Times Television
and Showtime Networks, arising from their unauthorized
use of the Master Recordings and Compositions. (Compl.
¶¶ 23, 24; Pl's Mem. in Opp'n to Mot. to Dis. Ex. B & C
[FN2].) The terms of the Warner/Chappell assignment
agreement include a release which reads:

FN2. These exhibits are misnumbered in
Plaintiff's Memorandum: there are two different
Exhibit As and two different Exhibit Bs.

Grantee will not bring, institute or assert, or authorize or
permit others to bring, institute or assert, any claim or
action against Grantor or Mijac Music, its or their
predecessors, successors, licensees, agents, or assigns in
any way relating to the use of the Compositions in the
Program.
(Herbsman Decl., Exh. G. ¶ 3(d).)


II. *Discussion*


A. *Legal Standard for Motion to Dismiss*


The purpose of a motion to dismiss pursuant to
Fed.R.Civ.P. 12(b)(6) is to "test, in a streamlined
fashion, the formal sufficiency of the plaintiff's statement of a
claim for relief *without* resolving a contest regarding its
substantive merits."*Global Network Communications, Inc.
v. City of New York,* 458 F.3d 150, 155 (2d Cir.2006). On
such a motion, the court "assesses the legal feasibility of
the complaint, but does not weigh the evidence that might
be offered to support it."*Id.* (citing *AmBase Corp. v. City
Investing Co. Liquidating Trust,* 326 F.3d 63, 72 (2d
Cir.2003)). The court therefore "must accept as true all of
the factual allegations set out in plaintiff's complaint, draw
inferences from those allegations in the light most
favorable to plaintiff, and construe the complaint
liberally."*Gregory v. Daly,* 243 F.3d 687, 691 (2d
Cir.2001) (quoting *Conley v. Gibson,* 355 U.S. 41, 45-46,
78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). However, the plaintiff
must provide enough facts to state a claim for relief that is
plausible on its face. *Bell Atlantic Corp. v. Twombly,* ---
U.S. ----, ----, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929
(2007). Pleading legal conclusions is not sufficient to

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2008 WL 2224297 (S.D.N.Y.)
2008 WL 2224297 (S.D.N.Y.)

Page 3

prevent dismissal. *Smith v. Local 819, IBT Pension Plan,* 291 F.3d 236, 240 (2d Cir.2002). Finally, " '[d]ocuments that are attached to the complaint or incorporated in it by reference are deemed part of the pleading and may be considered."*Roth v. Jennings,* 489 F.3d 499, 509 (2d Cir.2007) (citing *Pani v. Empire Blue Cross Blue Shield,* 152 F.3d 67, 71 (2d Cir.1998), *cert. denied,*525 U.S. 1103, 119 S.Ct. 868, 142 L.Ed.2d 770 (1999)).

Federal Rule of Civil Procedure 8(a)(2) provides that civil complaints "shall contain ... a short and plain statement of the claim showing that the pleader is entitled to relief."The Supreme Court has explained that Rule 8(a)(2) requires that a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true ...."*Bell Atlantic v. Twombly,* --- U.S. ----, ----, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929, (2007) (internal citations omitted). However, under Rule 8(a)(2), "[s]pecific facts are not necessary; the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'"*Erickson v. Pardus,* --- U.S. ----, ----, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007) (per curiam) (citations omitted). Thus, on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), "the bottom-line principle is that 'once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint.'"*Roth,* 489 F.3d at 510 (quoting *Bell Atlantic,* 127 S.Ct. at 1969)."In order to withstand a motion to dismiss, a complaint must plead, 'enough facts to state a claim for relief that is plausible on its face.'"*Patane v. Clark,* No. 06-3446-CV, 2007 WL 4179838, at *3 (2d Cir. Nov.28, 2007).

B. *The Legal Malpractice Claim*

*3 Plaintiff argues that Defendant committed malpractice by allowing the statute of limitations to expire on Sony and Warner/Chappell's copyright infringement claims

against Showtime and New York Times Television. (Pl. Mem. Law at 2.) At this stage of the litigation, Defendant does not dispute that its oversight led to the loss of these claims.

In New York, "[i]n deciding a motion to dismiss a legal malpractice action, the facts alleged by plaintiff are assumed to be true, and plaintiff is afforded the benefit of every possible favorable inference."*Mercantile Capital Partners Fund, LP. v. Morrison Cohen, LLP.* 2008 WL 1777431, *3 (N.Y.Sup.2008) (citations omitted). In order to state a claim for legal malpractice under New York law, a Plaintiff must allege "(1) the negligence of an attorney; (2) the negligence was the proximate cause of the loss sustained; and (3) proof of actual damages."*Rondout Landing at the Strand, Inc. v. Hudson Land Dev. Corp.,* 361 F.Supp.2d 218, 223 (S.D.N.Y.2005).

To establish causation adequately in a legal malpractice claim, the plaintiff must show that, but for the attorney's negligence, "what would have been a favorable outcome was an unfavorable outcome. The test is whether a proper defense would have altered the result of the prior action."*D'Jamoos v. Griffith,* 2001 U.S. Dist. LEXIS 17595, 2001 WL 1328592 No. 00 Civ. 1361, at *5 (E.D.N.Y. Aug. 1, 2001); *see also, Pellegrino v. File,* 291 A.D.2d 60, 738 N.Y.S.2d 320, 323 (1st Dep't) (citations omitted), *lv. denied,*98 N.Y.2d 606, 774 N.E.2d 221, 746 N.Y.S.2d 456 (2002). This causation requirement, "seeks to insure a tight causal relationship exists between the claimed injuries and the alleged malpractice, and demands a nexus between loss and injury ...."*Sloane v. Reich,* 1994 U.S. Dist. LEXIS 2851, No. 90 Civ. 8187, 1994 WL 88008, at *3 (S.D.N.Y. Mar.11, 1994). The ' "but for' prong requires the trier of fact in effect [to] decide a lawsuit within a lawsuit, because it demands a hypothetical re-examination of the events at issue absent the alleged malpractice."*Littman Krooks Roth Ball, P.C. v. N.J. Sports Prod., Inc.,* 2001 U.S. Dist. LEXIS 12677, No. 00 Civ. 9419, 2001 WL 963949, at *3 (S.D.N.Y. Aug.22, 2001) (citing *N.A. Kerson Co. v. Shayne, Dachs, Weiss,*

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

*Kolbrenner, Levy, et al.,* 59 A.D.2d 551, 397 N.Y.S.2d 142, 143 (2d Dep't 1977) (internal quotations marks omitted)).

At this early stage of the litigation, however, Plaintiff need only allege, not prove, the proximate cause element of the legal malpractice claim.*Mercantile,* 2008 WL 1777431 at *4 (citing *Gamiel v. Curtis & Reiss-Curtis, P.C.,* 16 A.D.3d 140, 791 N.Y.S.2d 78, 79 (First Dep't 2005); *see also, Abuhouran v. Lans,* N. 06-2857-PR, 2008 WL 739903, *1 (2d Cir.2008) (observing that to state properly a claim for legal malpractice based on an underlying criminal proceeding, plaintiff must only allege his innocence, or a colorable claim of his innocence).

For the purposes of this Motion to Dismiss, Defendant does not dispute that the factual allegations set forth in Plaintiff's Amended Complaint, if proven, and if Plaintiff had standing, would be sufficient to state a claim for a judgment of malpractice against Defendant. The Court agrees and finds that Plaintiff has pleaded adequately the causation prong of this legal malpractice claim.[FN3] Instead of challenging whether Plaintiff has pleaded adequately the elements of the malpractice claim, Defendant argues for dismissal on the grounds that Plaintiff lacks standing to pursue this claim.[FN4]

FN3. Should this case proceed through the completion of discovery and evidence calls into question Plaintiff's allegation that, but for Defendant's negligence, the outcome of the underlying copyright litigation would have terminated favorably, Defendant could use this evidence to challenge the merits of Plaintiff's claim.

FN4. Defendant moves to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (Def. Mem. Law at 1). However, standing can be raised on either a Rule 12(b)(1) or a Rule 12(b)(6) motion. *RBCI Holdings, Inc. v. Drinks Americas Holdings, Ltd.,* 2008 WL 759339 at *3 (S.D.N.Y.2008) (citations omitted). Where standing goes to the existence of a case or controversy, a prerequisite to jurisdiction, it is proper for the district court to first consider standing on a Rule 12(b)(1) motion before considering issues that maybe be inextricably intertwined with the merits. *Id.* Because the Court needed to review documents outside the pleadings in this case, namely the assignment agreements, in order to make factual findings about whether Plaintiff had standing, in this case, the Court considered Defendant's motion under both a 12(b)(1) and 12(b) (6) standards. *See e.g., Winn v. Schafer,* 499 F.Supp.2d 390, 395 (S.D.N.Y.2007). The distinction is largely immaterial here, and the Court does not detail the Rule 12(b)(1) legal standard since, even under a Rule 12(b)(6) standard, the assignment agreements would be reviewed by the Court because the contracts were incorporated in the Amended Complaint by reference.

*C. Plaintiff's Standing*

**\*4** Defendant raises three challenges to Plaintiff's standing. First, Defendant argues that no attorney-client relationship existed between Plaintiff and Defendant, and therefore Plaintiff has no legally cognizable malpractice claim. (Def. Mem. Law at 6-7.) Second, Defendant avers that Plaintiff was not an intended third-party beneficiary of the retainer agreements. (Def. Mem. Law at 8-10.) Finally, Defendant argues that the assignment of Sony and Warner/Chappell's copyright claims to Plaintiff does not create a basis for Plaintiff's malpractice claims against Defendant. (Def. Mem. Law at 11.)

*1. Defendant's Attorney-Client Relationship and Third*

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2008 WL 2224297 (S.D.N.Y.)
2008 WL 2224297 (S.D.N.Y.)

Page 5

*party Beneficiary Arguments*

Plaintiff asserts that it can legally pursue these claims because they were assigned to Plaintiff by Defendant's clients, Sony and Warner/Chappell. It is undisputed that the Plaintiff in this case did not retain Defendant as their counsel. Thus, Defendant's first argument is irrelevant.[FN5] Nor does Plaintiff rely on its disputed status as a third-party beneficiary to the contract in bringing this claim. Thus, Defendant's second argument also does not warrant consideration. The only issue that remains is whether the assignment agreements between Plaintiff, Sony and Warner/Chappell give Plaintiff standing to proceed in this action.

> FN5. In support of its argument, Defendant cites to *Uehiqashi v. Kanamori*, 161 F.Supp.2d 221, 225 (S.D.N.Y.2001) for the proposition that, "only the party retaining the services of an attorney can bring a legal malpractice action against the attorney." However, this authority is miscited and inapposite; Defendant both ignores the prefatory phrase *Uehiqashi* uses to qualify this rule, "in general," and overlooks the fact that *Uehiqashi* does not consider the *assignment* of a legal malpractice claim. It is well-settled that in New York, pursuant to General Obligations Law § 13-101, all claims are assignable except those expressly prohibited, or contrary to public policy. The claims that are expressly prohibited do not include a claim for legal malpractice. *Greevy by Greevy v. Becker, Isserlis, Sullivan & Kurtz*, 240 A.D.2d 539, 541, 658 N.Y.S.2d 693 (N.Y.App.Div.1997). In fact, legal malpractice claims are often assigned in New York State. *See e.g., Chang v. Chang*, 226 A.D.2d 316, 642 N.Y.S.2d 628 (N.Y.App.Div.1996); *Tawil v. Finkelstein Bruckman Wohl Most & Rothman*, 223 A.D.2d 52, 56, 646 N.Y.S.2d 691 (N.Y.App.Div.1996); *Am. Hemisphere Marine Agencies, Inc. v. Kreis*,

40 Misc.2d 1090, 244 N.Y.S.2d 602 (N.Y.Misc.1963); *Oppel v. Empire Mut. Ins. Co.*, 517 F.Supp. 1305 (S.D.N.Y.1981).

*1. Defendant's Arguments that the Assignment Agreements Do Not Contemplate a Suit Against Shukat Arrow & Weber, LLP.*

Defendant argues that even if legal malpractice claims can be assigned, in this particular case, Plaintiff has no standing because the right to bring this claim was *not* among the rights assigned in the agreements between Plaintiff, Sony and Warner/Chappell. Defendant contends that the terms of the assignment agreements between Plaintiff and, respectively, Sony and Warner/Chappell do not include claims against Shukat Arrow & Weber, LLP. (Def. Mem. Law at 11-13.) With respect to the Warner/Chappell agreement specifically, Defendant further claims that, as an agent, it is released by the terms of that contract. (*Id.* at 14.) Defendant's arguments put into consideration the issue of contract interpretation.

The primary objective in contract interpretation is to give effect to the intent of the contracting parties "as revealed by the language they chose to use." *Sayers v. Rochester Tel. Corp. Supplemental Mgmt. Pension Plan*, 7 F.3d 1091, 1094 (2d Cir.1993) (quoting *Seiden Assocs. v. ANC Holdings, Inc.*, 959 F.2d 425, 428 (2d Cir.1992)); *accord, Care Travel Co. v. Pan Am. World Airways, Inc.*, 944 F.2d 983, 987 (2d Cir.1991); *W.W.W. Assocs. v. Giancontieri*, 77 N.Y.2d 157, 162, 565 N.Y.S.2d 440, 566 N.E.2d 639 (1990); *Hartford Accident & Idem. Co. v. Wesolowski*, 33 N.Y.2d 169, 171, 350 N.Y.S.2d 895, 305 N.E.2d 907 (1973). Issues of contract interpretation are "generally matters of law and therefore [are] suitable for disposition on a motion to dismiss." *Citadel Equity Fund, Ltd. v. Aquila, Inc.*, 371 F.Supp.2d 510, 516 (S.D.N.Y.2005) (quoting *Thayer v. Dial Indus. Sales, Inc.*, 85 F.Supp.2d 263, 269 (S.D.N.Y.2000)) (internal quotation marks omitted); *see also, Lind v. Vanguard*

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2008 WL 2224297 (S.D.N.Y.)
2008 WL 2224297 (S.D.N.Y.)

Page 6

*Offset Printers, Inc.,* 857 F.Supp. 1060, 1065 (S.D.N.Y.1994). Further, in deciding a motion to dismiss, the Court may consider exhibits to the complaint and documents incorporated in the complaint by reference; in this case such exhibits include the contracts themselves. *See, Chambers v. Time Warner, Inc.,* 282 F.3d 147, 153 (2d Cir.2002).

**\*5** It is long established that "the fundamental, neutral precept of contract interpretation is that agreements are construed in accord with the parties' intent."*Computer Assocs. Int'l, Inc. v. U.S. Balloon Mfg. Co.,* 10 A.D.3d 699, 782 N.Y.S.2d 117 (N.Y.App.Div.2004), citing *Greenfield v. Philles Records,* 98 N.Y.2d 562, 569, 780 N.E.2d 166, 750 N.Y.S.2d 565 (2002); *Slatt v. Slatt,* 64 N.Y.2d 966, 967, 477 N.E.2d 1099, 488 N.Y.S.2d 645 (1985). Therefore, a written agreement that is "complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms."*Greenfield,* 98 N.Y.2d at 569, 750 N.Y.S.2d 565, 780 N.E.2d 166;*R/S Assoc. v. New York Job Dev. Auth.,* 98 N.Y.2d 29, 771 N.E.2d 240, 744 N.Y.S.2d 358 (2002); *W.W.W. Assoc. v. Giancontieri,* 77 N.Y.2d 157, 162, 566 N.E.2d 639, 565 N.Y.S.2d 440 (1990). A contract is unambiguous if the language it uses has "a definite and precise meaning, unattended by danger of misconception in the purport of the [agreement] itself, and concerning which there is no reasonable basis for a difference of opinion."*Breed v. Insurance Co. of N. Am.,* 46 N.Y.2d 351, 355, 385 N.E.2d 1280, 413 N.Y.S.2d 352 (1978).

In this action, neither of the assignment agreements explicitly refer to the Defendant by name as someone included or excluded in the assignment of a malpractice claim. The question, then, is whether the agreements are, respectively, reasonably susceptible of more than one interpretation.

a. *The Sony Assignment Agreement*

The Sony Assignment Agreement was signed March 3, 2004. The legal malpractice claim arose December 16, 2003, yet there is no explicit mention of that claim in the assignment agreement. The agreement does say that it assigns: *"any and all claims* Sony has against a *third party (including but not limited to* New York Times Television and Showtime Networks) ... arising from the unauthorized use of the [Master Recordings] on the Infringing Program."(Def.'s Mot. to Dis., Ex. F) (emphasis added). The Plaintiffs argue that this includes the legal malpractice claims; the Defendant argues it does not. Looking at the Agreement in the light most favorable to Plaintiff, it is ambiguous:

"WHEREAS, the parties wish to structure a procedure pursuant to which any and all claims relating to the use of the Original Masters on the Infringing program may be pursued;

THEREFORE ... the parties agree as follows:

1. Sony hereby forever assigns conveys and transfers any and all claims, rights, suits, or causes of action Sony has against any third party ('including but not limited to New York Times Television and Showtime Networks) (the "Claims"), arising from the unauthorized use of the original Masters on the Infringing Program, to Even St. Productions Ltd."

Or

"WHEREAS, the parties wish to structure a procedure pursuant to which any and all claims relating to the use of the Original Masters on the Infringing program may be pursued;

**\*6** THEREFORE ... the parties agree as follows:

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                          Page 7
Slip Copy, 2008 WL 2224297 (S.D.N.Y.)
2008 WL 2224297 (S.D.N.Y.)

assignment agreement was entered. <u>FN6</u>

1. Sony hereby forever assigns conveys and transfers any and all claims, rights, suits, or causes of action Sony has against any third party (including but not limited to New York Times Television and Showtime Networks) (the "Claims"), arising from the unauthorized use of the original Masters On the Infringing Program, to Even St. Productions Ltd."

b. *The Warner/Chappell Assignment Agreement*

The Warner/Chappell Assignment Agreement states that it assigns "all right, title and interest in and to any claims, rights, suits, and causes of action of any nature whatsoever ... against *any third party, including hut not limited to* Producers/Distributors *and/or other parties* for failure to enforce, protect or prosecute the aforesaid claims ... with respect to the use of the Compositions in Broadcasts of the Program."(Def.'s Mot. to Dis ., Ex. G.) (emphasis added).

In this case, the Warner/Chappell Assignment Agreement is clear. Notwithstanding that one stated purpose of the assignment agreement was to allow Plaintiff to sue Showtime and New York Times Television, the legal malpractice claim against Defendant here is based on Defendant's "failure to enforce, protect or prosecute the aforesaid claims ... with respect to the use of the Compositions in Broadcasts of the Program."(Def.'s Mot. to Dis., Ex. G.)

Finally, the Court addresses the merits of Defendant's argument that it is released by the terms of the Warner/Chappell assignment agreement. Defendant argues that the provisions of that agreement which bar Plaintiff from pursuing actions against Warner/Chappell's agents act as a release of Shukat Arrow Hafer & Weber, LLP. The merits of this argument turn on whether Defendant was an agent of Warner/Chappell at the time the

> <u>FN6.</u> Under general contract principles there can be no agreement unless the parties to the contract have mutual assent, or a meeting of the minds. Such understanding requires that all parties agree the stated terms of the contract as they exist at the time the contract is entered into. *See generally,* Calamari and Perillo, *Contracts,* Third Ed. Thus, if the Warner/Chapell agreement provides a release for its "agents," and, at the time the contract was entered into, Defendant was in fact a "former agent" of Warner/Chapell, that release cannot be said to have contemplated Defendant.

Although Defendant argues that, "There is not a single allegation in the Amended Complaint that justifies plaintiff's conclusion that the attorney-client relationship between [Shukat Arrow Hafer & Weber, LLP] and Warner/Chapell had ended at the time the assignment was executed," the Court disagrees. Plaintiff alleges that Defendant was retained for representation in the underlying copyright litigation in September of 2003 and that Defendant negligently allowed the statute of limitations on that action to expire in December of 2003; the assignment agreements at issue were entered into in March of 2004 and July of 2004. (Am.Compl.¶¶ 16-24.) Since, an "attorney is considered [to be an] agent when acting, or failing to act, in furtherance of the litigation,"<u>*Gilfus v. Vargason,* Nos. 9:04-CV-188, 9:04-CV-189, 9:04-CV-190, 2008 WL 65579, *7 (N.D.N.Y.2008),</u> P laintiff has pleaded plausibly that Defendant's role as Warner/Chappell's agent was terminated well before Plaintiff and Warner/Chapell entered into an assignment agreement. *See also,*<u>2A N.Y.Jur2d, Agency § 35</u> (an agency that is limited to a particular accomplishment of some particular transaction terminates upon completion of the transaction for the accomplishment of which it was created).

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                    Page 8
Slip Copy, 2008 WL 2224297 (S.D.N.Y.)
2008 WL 2224297 (S.D.N.Y.)


**\*7** If so, Plaintiff has pleaded sufficiently.


           III. *CONCLUSION*


Accordingly, Defendant's Motion to Dismiss is DENIED.
Defendant shall answer within forty five (45) days of the
date of this Memorandum and Order.


SO ORDERED.


S.D.N.Y.,2008.
Even Street Productions, Ltd. v. Shkat Arrow Hafer
&amp; Weber, LLP
Slip Copy, 2008 WL 2224297 (S.D.N.Y.)


END OF DOCUMENT


© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.