UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

————————————————————x

ALICE KRAMER, as Personal Representative of
the Estate of Arthur Kramer,        :

                        Plaintiff,        :

      – against –        :

LOCKWOOD PENSION SERVICES, INC., TALL :
TREE ADVISORS, INC., LIFE PRODUCTS        :
CLEARING, LLC, TRANSAMERICA        :
OCCIDENTAL LIFE INSURANCE CO.,        :
PHOENIX LIFE INSURANCE CO.,  LINCOLN :
LIFE & ANNUITY CO. OF NEW YORK AND    :
JONATHAN S. BERCK,        :

                     Defendants.        :

————————————————————

    Various Third-Party Actions        :

————————————————————x

Civil Action No.
08 CV 2429 (DAB)(MHD)

ECF Case

 

**AFFIDAVIT OF ANDREW A. WITTENSTEIN IN SUPPORT
OF PLAINTIFF'S AND THIRD-PARTY DEFENDANTS LIZA KRAMER
AND ANDREW B. KRAMER'S MOTION TO DISMISS THE TORTIOUS
INTERFERENCE CLAIMS ASSERTED BY DEFENDANT JONATHAN S.
BERCK IN HIS COUNTERCLAIMS AND THIRD-PARTY COMPLAINT**

STATE OF NEW YORK    )
                    )    ss.:
COUNTY OF NEW YORK  )

    Andrew A. Wittenstein, being duly sworn, deposes and says:

    1.    I am a principal in the firm of Friedman & Wittenstein, A Professional

Corporation, attorneys for Plaintiff Alice Kramer, as Personal Representative of the Estate of

Arthur Kramer, and Third-Party Defendants Liza Kramer and Andrew B. Kramer.  I respectfully

submit this affidavit in support of Plaintiff's and Third-Party Defendants Liza Kramer and

Andrew B. Kramer's Motion to Dismiss the Tortious Interference Claims Asserted by Defendant

Jonathan S. Berck in his Counterclaims and Third-Party Complaint.

2.     The following documents are attached hereto as Exhibits:

Exhibit 1:    Plaintiff's Amended Complaint, dated May 7, 2008;

Exhibit 2:    Defendant Jonathan S. Berck's Answer to Amended Complaint with Counterclaims and Cross-Claims, dated August 1, 2008;

Exhibit 3:    Defendant-Third-Party Plaintiff Jonathan S. Berck's Third-Party Complaint, dated August 1, 2008 (without exhibits);

Exhibit 4:    Lincoln Life & Annuity Company of New York Policy No. 7214471, in the amount of $10,000,000, dated November 23, 2005;

Exhibit 5:    Claimant's Statement dated February 27, 2008, and accompanying Certificate of Death of Arthur Kramer.



_____
Andrew A. Wittenstein

Sworn to before me this
22rd day of August, 2008

_____
Notary Public

PATRICIA N. TAKEMOTO
Notary Public, State of New York
No. 01TA4792771
Qualified in New York County
My Commission Expires 01/31/20 10

# Exhibit 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————— x

ALICE KRAMER, as Personal Representative of the
Estate of Arthur Kramer,

                       Plaintiff,

   – against –

LOCKWOOD PENSION SERVICES, INC., TALL
TREE ADVISORS, INC., LIFE PRODUCTS
CLEARING, LLC, TRANSAMERICA
OCCIDENTAL LIFE INSURANCE CO., PHOENIX
LIFE INSURANCE CO., LINCOLN LIFE &
ANNUITY CO. OF NEW YORK AND
JONATHAN S. BERCK,

                  Defendants.

———————————————————— x

**Civil Action No.**

**08 CV 2429 (DAB)(MHD)**

**ECF Case**

**AMENDED COMPLAINT**



RECEIVED
MAY 0 7 2008
U.S.D.C. S.D. N.Y.
CASHIERS

       Plaintiff Alice Kramer, in her fiduciary capacity as the Personal Representative of the

Estate of Arthur Kramer ("Plaintiff"), by and through her attorneys, Friedman & Wittenstein, A

Professional Corporation, hereby alleges as follows for her Amended Complaint:

## PARTIES

    1.     Plaintiff is a citizen of the state of Connecticut, and resides in Stamford,

Connecticut. She is the widow of Arthur Kramer and the Personal Representative of his Estate.

She brings this action in that capacity.

    2.     Mr. Kramer died on January 26, 2008. At the time of his death, he was a citizen

of the state of Connecticut.

    3.     Upon information and belief, defendant Lockwood Pension Services, Inc. ("LPS")

is a New York corporation with its principal place of business located in New York, New York.

4.     Upon information and belief, defendant Tall Tree Advisors, Inc. ("TTA") is a New York corporation with its principal place of business located in Pleasantville, New York.

5.     Upon information and belief, defendant Life Products Clearing, LLC ("Life Products") is a Delaware limited liability company with its principal place of business located in New York, New York.

6.     Upon information and belief, defendant Transamerica Occidental Life Insurance Co. ("Transamerica") is an Iowa corporation with its principal place of business located in Cedar Rapids, Iowa.

7.     Upon information and belief, defendant Phoenix Life Insurance Co. ("Phoenix") is a New York corporation with its principal place of business located in East Greenbush, New York.

8.     Upon information and belief, defendant Lincoln Life & Annuity Co. of New York ("Lincoln") is a New York corporation with its principal place of business located in Syracuse, New York.

9.     Upon information and belief, defendant Jonathan S. Berck is a citizen of the state of New Jersey.

## JURISDICTION AND VENUE

10.    This Court has subject matter jurisdiction over this action pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, because an actual controversy exists among the parties; and pursuant to 28 U.S.C. § 1332(a) and (c) in that the parties are citizens of different states and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

11.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(a)(2) because a substantial part of the events giving rise to Plaintiff's claims occurred here.

2

## BACKGROUND

12.     This action involves an arrangement to procure life insurance policies with the purpose of immediately transferring the beneficial interests in those policies to stranger investors, in contravention of the "insurable interest rule" as codified in the New York Insurance Law. As described herein, in a case such as this, where the procurement of life insurance violates the insurable interest rule, the remedy is either that the death benefits be paid to the personal representative of the decedent's estate (in this case, the Plaintiff) or, if already paid to a stranger investor, that they be disgorged and paid to the personal representative.

13.     The "insurable interest rule" is a well-settled principle in New York insurance law that prevents the issuance of wager life insurance policies. New York Insurance Law Section 3205(b)(2) provides that one may not obtain an insurance policy on the life of another without having an "insurable interest" in the insured's life.

14.     It is against public policy for parties to circumvent the insurable interest rule by participating in the procurement of what is known as "stranger-owned life insurance" ("SOLI"). A typical SOLI arrangement is initiated by a stranger investor or an insurance agent who approaches an elderly person and encourages him to purchase life insurance, the death benefits of which will be immediately transferred to the stranger investor. The appeal of a SOLI arrangement is that the purchase of life insurance is represented to the elderly person as a way to receive a payment of money on a risk-free basis at little or no cost. The investor typically agrees to pay the person an up-front payment in addition to paying the insurance premiums in return for the assignment of the ownership interest in the policy. The common characteristic of all SOLI arrangements is that they are structured so that the elderly person or a family member, rather than the stranger investor, is made to appear as the original beneficiary of the policy in order to

3

try to evade the insurable interest requirement. Such arrangements are contrary to public policy because they enable investors to speculate or wager on a person's death.

15.     As further described below, defendants participated in an elaborate and unlawful SOLI arrangement where every detail, from drafting the trust agreements to choosing the trustees and investors, was structured for the sole purpose of trying to avoid the insurable interest rule. The arrangement was implemented by defendants to create the appearance that an insurable interest existed when Mr. Kramer took out several policies, so that the subsequent transfers of the beneficial interests in those policies to the stranger investors would appear lawful. However, the transfers to investors took place immediately upon Mr. Kramer's obtaining of the policies at issue, and that was always their plan. At no time were Mr. Kramer or any of his family members the true owners of the beneficial interests in the policies. Upon information and belief, Mr. Kramer never intended for the death benefits of the insurance policies to benefit his family.

16.     The putative assignments of the beneficial interests in the death benefits of the policies are void under New York law.

## FACTS

17.     Arthur Kramer was a retired attorney at the time of his death on January 26, 2008 at the age of 81.

18.     Upon information and belief, as early as 2003, Steven Lockwood, the principal of LPS, approached Mr. Kramer to solicit his participation in a SOLI arrangement.

19.     Upon information and belief, during 2005, Mr. Lockwood introduced Mr. Kramer to the SOLI arrangement that is the subject matter of this litigation.

20.     Upon information and belief, the SOLI arrangement worked as follows: Mr. Kramer, at the direction of LPS and possibly other defendants, would establish trusts, naming

himself as the depositor and one or more of his children as the initial beneficiaries. An LPS affiliated person or entity would be appointed as the trustee. The witnesses to the trust instrument would be Mr. Lockwood and one of his associates. Upon the issuance of the policies, Mr. Kramer, again acting at the direction of LPS and possibly other defendants, would immediately direct his children to execute a putative assignment of their nominal interest in the trust to a stranger third-party investor arranged by Mr. Lockwood. (The three children from Mr. Kramer's marriage to Plaintiff are Andrew Kramer ("Andrew"), Rebecca Kramer ("Rebecca") and Liza Kramer ("Liza")).

21.     Upon information and belief, the insurance policies were procured on Mr. Kramer's life with the intention of _immediately_ effectuating the assignment of the beneficial interests in the policies to an investor. At no time would Mr. Kramer or any of his family members have a true beneficial interest in the policies.

22.     Upon information and belief, LPS and certain other defendants employed the above-described SOLI arrangement with respect to a series of life insurance policies totaling approximately $56,200,000 on the life of Mr. Kramer. These policies were issued by defendants Transamerica, Phoenix and Lincoln.

**The Transamerica Policies**

23.     On or about June 6, 2005, Mr. Kramer, at the direction of LPS and possibly other defendants, established the Arthur Kramer Insurance Trust (the "June Trust") and named Lori Callegari as trustee. Mr. Kramer also listed Andrew and Rebecca as the putative beneficiaries thereunder. Mr. Lockwood and his associate witnessed the June Trust agreement. Under the terms of the June Trust agreement, the trust is governed by New York law.

24.    Upon information and belief, the June Trust agreement was prepared by counsel for LPS, and Mr. Kramer had no involvement in its drafting.

25.    Upon information and belief, Mr. Kramer had no prior business relationship with Ms. Callegari, who at the time was employed by LPS or TTA.  Upon information and belief, Ms. Callegari is presently a Vice President of LPS, and works for Mr. Lockwood at 75 Rockefeller Plaza.

26.    Upon information and belief, Ms. Callegari is no longer the trustee of the June Trust.  Upon information and belief, defendant Jonathan S. Berck is the current trustee.

27.    Upon information and belief, Mr. Kramer had no business relationship with defendant Mr. Berck prior to the SOLI arrangement that is the subject matter of this litigation.

28.    Upon information and belief, in June and July 2005, Transamerica issued one or more insurance policies to the June Trust having a total death benefit of approximately $18,200,000 (the "Transamerica Policies") on the life of Mr. Kramer.

29.    Upon information and belief, upon issuance of the policies, and at the direction of LPS and possibly other defendants, Mr. Kramer directed Andrew and Rebecca to execute putative assignments of their beneficial interests in the June Trust to stranger investor TTA.

30.    Upon information and belief, at the direction of LPS and possibly other defendants, in 2007, defendant Mr. Berck in his capacity as trustee of the June Trust, sold the ownership interests in the Transamerica Policies to a non-party individual or entity.

31.    Mr. Kramer, Andrew and Rebecca never paid any premiums on the Transamerica Policies, and there was no period of time when Andrew and Rebecca were the true beneficiaries of the June Trust after the Transamerica Policies were issued.

**The Phoenix Policies**

32.    On or about August 29, 2005, Mr. Kramer, at the direction of LPS and possibly other defendants, established the Arthur Kramer 2005 Insurance Trust (the "August Trust") and named Hudson United Bank ("Hudson") as trustee. Mr. Kramer also listed Liza as the putative beneficiary thereunder. Mr. Lockwood and one of his associates witnessed the August Trust agreement. Under the terms of the August Trust agreement, the trust is governed by New York law.

33.    Upon information and belief, the August Trust agreement was prepared by counsel for LPS, and Mr. Kramer had no involvement in its drafting.

34.    Upon information and belief, at the time the August Trust was created, Hudson and LPS had a pre-existing business relationship and shared the same business address at 75 Rockefeller Plaza, New York, New York.

35.    Upon information and belief, Mr. Kramer had no prior business relationship with Hudson.

36.    Upon information and belief, Hudson is no longer the trustee of the August Trust. Upon information and belief, defendant Mr. Berck is the current trustee.

37.    Upon information and belief, in July 2005, Phoenix issued one or more insurance policies to the August Trust having a total death benefit of approximately $28,000,000 (the "Phoenix Policies") on the life of Mr. Kramer.

38.    Upon information and belief, upon issuance of the policies, and at the direction of LPS and possibly other defendants, Mr. Kramer directed Liza to execute putative assignments of her beneficial interest in the August Trust to stranger investor TTA.

39.    Upon information and belief, at the direction of LPS and possibly other defendants, in 2007, defendant Mr. Berck in his capacity as trustee of the August Trust, sold the ownership interest in the Phoenix Policies to a non-party individual or entity.

40.    Upon information and belief, Mr. Kramer and Liza never paid any premiums on the Phoenix Policies, and there was no period of time when Liza was the true beneficiary of the August Trust after the Phoenix Policies were issued.

**The Lincoln Policies**

41.    Upon information and belief, on or about November 28, 2005, Lincoln issued one or more insurance policies to the August Trust having a total death benefit of $10,000,000 (the "Lincoln Policies") on the life of Mr. Kramer.

42.    Upon information and belief, upon issuance of the policies, and at the direction of LPS and possibly other defendants, Mr. Kramer directed Liza to execute putative assignments of her beneficial interest in the August Trust to stranger investor Life Products.

43.    Mr. Kramer and Liza never paid any premiums on the Lincoln Policies, and there was no period of time when Liza was the true beneficiary of the August Trust after the Lincoln Policies were issued.

**Arthur Kramer's Death**

44.    Mr. Kramer died on January 26, 2008.

45.    Subsequently, Plaintiff or her representatives have received various communications from representatives of defendant LPS and certain stranger investors demanding copies of Mr. Kramer's death certificate so that they may submit claims to the insurance companies for a total of approximately $56,200,000 in death benefits. Plaintiff has refused all such requests.

8

46.    Pursuant to New York Insurance Law Section 3203(a)(3), all of the aforementioned life insurance policies are incontestable because they were in force during the life of Mr. Kramer for more than two years.  However, upon information and belief, none of the insurance company defendants have paid out the proceeds of any of the policies.  On April 9, 2008, approximately one month after the initial Complaint in this action was filed, Phoenix filed a pleading in this action indicating, inter alia, its intention not to pay any death benefits in connection with the Phoenix Policies.  On or about April 16, 2008, approximately five weeks after the initial Complaint in this action was filed, defendant Lincoln filed an action in Connecticut state court indicating its intention, inter alia, not to pay any death benefits in connection with the Lincoln Policies.  Defendant Transamerica has not yet responded to the initial Complaint in this action, and was granted until June 15, 2008 to do so.

## FIRST CLAIM FOR RELIEF

## (DECLARATORY JUDGMENT)

47.    Plaintiff hereby repeats and realleges each and every allegation contained in paragraphs 1-46 above.

48.    New York Insurance Law Section 3203(a)(3) provides:

(a)    All life insurance policies, except as otherwise stated herein, delivered or issued for delivery in this state, shall contain in substance the following provisions, or provisions which the superintendent deems to be more favorable to policyholders:

* * *

(3)    that the policy shall be incontestable after being in force during the life of the insured for a period of two years from its date of issue . . .

49.    New York Insurance Law Section 3205(b)(2) provides:

No person shall procure or cause to be procured, directly or by assignment or otherwise any contract of insurance upon the person of another unless the benefits under such contract are payable to the person insured or his personal representatives, or a person having, at the time when such contract is made, an insurable interest in the person insured.

50.    New York Insurance Law Section 3205(a)(1) defines an "insurable interest" as "(A) in the case of persons closely related by blood or by law, a substantial interest engendered by love and affection; (B) in the case of other persons, a lawful and substantial economic interest in the continued life, health or bodily safety of the person insured, as distinguished from an interest which would arise only by, or would be enhanced in value by, the death, disablement or injury of the insured."

51.    Neither TTA nor Life Products held an insurable interest in the life of Mr. Kramer.

52.    TTA and Life Products procured or caused to be procured, directly or by assignment or otherwise, contracts of insurance upon the person of Mr. Kramer.

53.    TTA lacked an insurable interest in Mr. Kramer at the time the Transamerica and Phoenix Policies were issued.  Life Products lacked an insurable interest in Mr. Kramer at the time the Lincoln Policies were issued.

54.    In the case of TTA, the Transamerica and Phoenix Policies on the life of Mr. Kramer were procured with the view to their immediate assignment to TTA.  In the case of Life Products, the Lincoln Policies on the life of Mr. Kramer were procured with the view to their immediate assignment to Life Products.

10

55.    Pursuant to New York Insurance Law Sections 3203(a)(3) and 3205(b)(2),

Plaintiff is entitled to a declaration that the insurance company defendants must pay the death

benefits under the aforementioned policies, and that such death benefits must be paid to her.

## SECOND CLAIM FOR RELIEF

### (AGAINST DEFENDANTS LOCKWOOD PENSION SERVICES, INC., TALL TREE ADVISORS, INC., LIFE PRODUCTS CLEARING, LLC AND JONATHAN S. BERCK FOR THE RECOVERY OF DEATH BENEFITS)

56.    Plaintiff repeats and realleges each and every allegation contained in paragraphs

1-55 above.

57.    New York Insurance Law Section 3205(b)(4) provides:

If the beneficiary, assignee or other payee under any contract made
in violation of this subsection [(b)] receives from the insurer any
benefits hereunder accruing upon the death, disablement or injury
of the person insured, the person insured or his executor or
administrator may maintain an action to recover such benefits from
the person receiving them.

58.    In the alternative, if some or all of the death benefits of the aforementioned

policies have already been paid to LPS, TTA, Life Products, Mr. Berck or their representatives

or assignees, or to other persons or entities that may claim the right to receive such death

benefits, then pursuant to this statute, Plaintiff is entitled to recover such death benefits.


WHEREFORE, Plaintiff prays for judgment against Lockwood Pension Services, Inc.,

Tall Tree Advisors, Inc., Life Products Clearing, LLC, Transamerica Occidental Life Insurance

Co., Phoenix Life Insurance Co., Lincoln Life & Annuity Co. of New York and Jonathan S.

Berck as follows:

11

A.    Declaring that the insurance company defendants must pay the death benefits

under the aforementioned life insurance policies, and that such death benefits must be paid to

Plaintiff;

B.    Awarding Plaintiff the death benefits of all the aforementioned policies;

C.    Awarding Plaintiff reasonable attorneys' fees, and the costs and disbursements of

this action; and

D.    Awarding Plaintiff such other and further relief as this Court may deem just and

proper.

Dated: New York, New York          FRIEDMAN & WITTENSTEIN
       May 7, 2008                 A Professional Corporation

                                   By: _____
                                       Stuart I. Friedman (SF-9186)
                                       Andrew A. Wittenstein (AW-1943)
                                       Claire L. Chau (CC-4738)

                                   600 Lexington Avenue
                                   New York, New York 10022
                                   (212) 750-8700

                                   *Attorneys for Plaintiff*

# Exhibit 2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ALICE KRAMER, as Personal Representative of the
Estate of Arthur Kramer,

                        Plaintiff,

            -against-

LOCKWOOD PENSION SERVICES, INC., TALL
TREE ADVISORS, INC., LIFE PRODUCTS
CLEARING, LLC, TRANSAMERICA OCCIDENTAL
LIFE INSURANCE CO., PHOENIX LIFE
INSURANCE CO., LINCOLN LIFE & ANNUITY CO.
OF NEW YORK and JONATHAN S. BERCK,

                      Defendants.

---

PHOENIX LIFE INSURANCE CO.,

            Third-Party Plaintiff,

            -against-

STEVEN LOCKWOOD,

            Third-Party Defendant.

---

LIFE PRODUCT CLEARING LLC and JONATHAN S.
BERCK,

            Third-Party Plaintiffs,

            -against-

LIZA KRAMER and ANDREW B. KRAMER,

            Third-Party Defendants.

---

ECF Case

08 Civ. 2429 (DAB) (MHD)

**DEFENDANT JONATHAN S.
BERCK'S ANSWER TO
AMENDED COMPLAINT
WITH COUNTERCLAIMS
AND CROSS-CLAIMS**

**JURY TRIAL DEMANDED**

Defendant Jonathan S. Berck, sued here solely in his capacity as the successor trustee of the Arthur Kramer Insurance Trust and the Arthur Kramer 2005 Insurance Trust, (Mr. Berck, hereinafter referred to as "Successor Trustee"), by and through his attorneys, Fein & Jakab, hereby answers the Amended Complaint of plaintiff Alice Kramer, as Personal Representative of the Estate of Arthur Kramer (the "Estate" or "Plaintiff"), filed May 7, 2008 (the "Complaint"), as follows:

## AS TO PARTIES

1. Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in ¶ 1 of the Complaint, except admits that Plaintiff purports to bring this action as the personal representative of the Estate of Arthur Kramer.

2. Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in ¶ 2 of the Complaint, except admits that Arthur Kramer died on January 26, 2008.

3. Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in ¶ 3 of the Complaint.

4. Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in ¶ 4 of the Complaint.

5. Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in ¶ 5 of the Complaint.

6. Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in ¶ 6 of the Complaint.

7. Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in ¶ 7 of the Complaint.

8. Admits on information and belief the allegations contained in ¶ 8 of the Complaint.

9. Denies the allegations contained in ¶ 9 of the Complaint.

## AS TO JURISDICTION AND VENUE

10. Admits the allegations contained in ¶ 10 of the Complaint.

11. Admits the allegations contained in ¶ 11 of the Complaint.

## AS TO BACKGROUND

12. Denies each and every allegation contained in ¶ 12 of the Complaint except denies knowledge or information sufficient to form a belief as to the truth of those allegations pertaining to persons other than Successor Trustee and states that it need not respond to those allegations which purport to set forth a conclusion of law (but if any response is required, denies such allegations).

13. Denies each and every allegation contained in ¶ 13 of the Complaint and states that it need not respond to those allegations which purport to set forth a conclusion of law or paraphrase the text of statutes (but if any response is required, denies such allegations).

14. Denies each and every allegation contained in ¶ 14 of the Complaint except denies knowledge or information sufficient to form a belief as to the truth of those allegations pertaining to persons other than Successor Trustee and states that it need not respond to those

3

allegations which purport to set forth a conclusion of law (but if any response is required, denies such allegations).

15. Denies each and every allegation contained in ¶ 15 of the Complaint except denies knowledge or information sufficient to form a belief as to the truth of those allegations pertaining to persons other than Successor Trustee and states that it need not respond to those allegations which purport to set forth a conclusion of law (but if any response is required, denies such allegations).

16. Denies each and every allegation contained in ¶ 16 of the Complaint.

## AS TO ALLEGED FACTS

17. Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in ¶ 17 of the Complaint, except admits that Arthur Kramer was or had been an attorney, and died on January 26, 2008.

18. Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in ¶ 18 of the Complaint.

19. Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in ¶ 19 of the Complaint.

20. Denies each and every allegation contained in ¶ 20 of the Complaint except denies knowledge or information sufficient to form a belief as to the truth of those allegations pertaining to persons other than Successor Trustee.

21. Denies each and every allegation contained in ¶ 21 of the Complaint except denies knowledge or information sufficient to form a belief as to the truth of those allegations

4

pertaining to persons other than Successor Trustee and states that it need not respond to those allegations which purport to set forth a conclusion of law (but if any response is required, denies such allegations).

22. Denies each and every allegation contained in ¶ 22 of the Complaint except admits that Lincoln issued a $10,000,000.00 life insurance policy on the life of Arthur Kramer but otherwise denies knowledge or information sufficient to form a belief as to the truth of those allegations pertaining to persons other than Successor Trustee.

**As to the Transamerica Policies**

23. Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in ¶ 23 of the Complaint.

24. Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in ¶ 24 of the Complaint.

25. Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in ¶ 25 of the Complaint.

26. Admits the allegations contained in ¶ 26 of the Complaint.

27. Admits that Mr. Berck and Mr. Kramer had no business relationship and denies the balance of the allegations contained in ¶ 27 of the Complaint.

28. Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in ¶ 28 of the Complaint.

29. Denies each and every allegation contained in ¶ 29 of the Complaint except denies knowledge or information sufficient to form a belief as to the truth of those allegations pertaining to persons other than Successor Trustee.

30. Denies each and every allegation contained in ¶ 30 of the Complaint except admits that the ownership interests in the Transamerica Policies were assigned to a non-party individual or entity and denies knowledge or information sufficient to form a belief as to the truth of those allegations pertaining to persons other than Successor Trustee.

31. Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in ¶ 31 of the Complaint except states that it need not respond to those allegations which purport to set forth a conclusion of law (but if any response is required, denies such allegations).

**As to the Phoenix Policies**

32. Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in ¶ 32 of the Complaint, except admits that the Arthur Kramer 2005 Insurance Trust (the "August Trust") is governed by New York law and refers to the terms of the trust agreement establishing the August Trust for the true and complete contents thereof.

33. Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in ¶ 33 of the Complaint.

34. Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in ¶ 34 of the Complaint.

35.  Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in ¶ 35 of the Complaint.

36.  Admits the allegations contained in ¶ 36 of the Complaint.

37.  Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in ¶ 37 of the Complaint.

38.  Denies each and every allegation contained in ¶ 38 of the Complaint except denies knowledge or information sufficient to form a belief as to the truth of those allegations pertaining to persons other than Successor Trustee.

39.  Denies each and every allegation contained in ¶ 39 of the Complaint except that the ownership interests in the Phoenix Policies were assigned to a non-party individual or entity.

40.  Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in ¶ 40 of the Complaint except states that it need not respond to those allegations which purport to set forth a conclusion of law (but if any response is required, denies such allegations).

**As to the Lincoln Policies**

41.  Admits the allegations contained in ¶ 41 of the Complaint except clarifies that Lincoln issued a single $10,000,000.00 life insurance policy on the life of Arthur Kramer on or about November 23, 2005.

42.  Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in ¶ 42 of the Complaint.

43.  Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in ¶ 43 of the Complaint except states that it need not respond to those allegations which purport to set forth a conclusion of law (but if any response is required, denies such allegations).

**As to Arthur Kramer's Death**

44.  Admits the allegations contained in ¶ 44 of the Complaint.

45.  Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in ¶ 45 of the Complaint.

46.  Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in ¶ 46 of the Complaint, except admits the allegations contained in the first sentence of ¶ 46, admits that Lincoln has not paid out the proceeds of the policy it issued on the life of Arthur Kramer, and refers to the terms of the pleadings and orders in this action and in the action captioned <u>The Lincoln Life and Annuity Company of New York</u> v. <u>Lockwood Pensions Services, et al.</u>, CV-08-5019142-S (Conn. Super. Ct., Hartford J.D., filed April 16, 2008), for the true and complete contents thereof.

<u>**AS TO THE FIRST CLAIM FOR RELIEF**</u>

<u>**(DECLARATORY JUDGMENT)**</u>

47.  Repeats and realleges each and every allegation, admission and denial made in response to those paragraphs of the Complaint which are referred to in ¶ 47 of the Complaint, as if fully set forth at length herein.

48.  States that it need not respond to those allegations that purport only to quote the text of statutes.

49. States that it need not respond to those allegations that purport only to quote the text of statutes.

50. States that it need not respond to those allegations that purport only to quote the text of statutes.

51. Denies knowledge or information sufficient to form a belief as to the truth of those allegations contained in ¶ 51 of the Complaint.

52. Denies knowledge or information sufficient to form a belief as to the truth of those allegations contained in ¶ 52 of the Complaint.

53. Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in ¶ 53 of the Complaint, except states that Successor Trustee need not respond to those allegations which purport to set forth a conclusion of law (but if any response is required, denies such allegations).

54. Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in ¶ 54 of the Complaint.

55. Denies each and every allegation contained in ¶ 55 of the Complaint except admits that Lincoln must pay the death benefits under the policy it issued on the life of Arthur Kramer, denies knowledge or information sufficient to form a belief as to the truth of those allegations pertaining to other policies issued on the life of Arthur Kramer, and states that it need not respond to those allegations which purport to set forth a conclusion of law (but if any response is required, denies such allegations).

<u>**AS TO THE SECOND CLAIM FOR RELIEF**</u>

**(AGAINST DEFENDANTS LOCKWOOD PENSION SERVICES, INC.,
TALL TREE ADVISORS, INC. LIFE PRODUCTS CLEARING, LLC AND
<u>JONATHAN S. BERCK FOR THE RECOVERY OF DEATH BENEFITS)</u>**

56. Repeats and realleges each and every allegation, admission and denial made in response to those paragraphs of the Complaint which are referred to in ¶ 56 of the Complaint, as if fully set forth at length herein.

57. States that it need not respond to those allegations that purport only to quote the text of statutes.

58. Denies each and every allegation contained in ¶ 58 of the Complaint.

<u>**FIRST AFFIRMATIVE DEFENSE**</u>

59. The Complaint fails, in whole or in part, to state a claim upon which relief can be granted.

<u>**SECOND AFFIRMATIVE DEFENSE**</u>

60. The Estate's claims are barred, in whole or in part, by the equitable doctrines of unclean hands and *in pari delicto*.

<u>**THIRD AFFIRMATIVE DEFENSE**</u>

61. The Estate's claims are barred, in whole or in part, by the doctrines of waiver, estoppel, equitable estoppel, and/or quasi estoppel.

<u>**FOURTH AFFIRMATIVE DEFENSE**</u>

62. The Estate's claims are barred by the doctrine of ratification.

## FIFTH AFFIRMATIVE DEFENSE

63. The Estate's claims are barred, in whole or in part, by the doctrine of election of remedies.

## SIXTH AFFIRMATIVE DEFENSE

64. The Estate's claims are barred by the doctrine of laches.

## SEVENTH AFFIRMATIVE DEFENSE

65. Any award to the Estate of death benefits on the life insurance policy issued by Lincoln on the life of Arthur Kramer, or declaration that the Estate is entitled to some or all of such benefits (both of which should be denied), should in any event be accompanied by an award against the Estate refunding all payments made to Arthur Kramer (or any of his heirs) for the purchase of the rights to such death benefits, and/or a declaration that Successor Trustee is entitled to such a refund.

## EIGHTH AFFIRMATIVE DEFENSE

66. The Estate's claims are barred in whole or in part by its lack of standing to assert them.

## RESERVATION OF RIGHT TO ASSERT ADDITIONAL DEFENSES

67. Successor Trustee adopts and incorporates by reference, as if set forth fully herein, any affirmative defense asserted by any other defendant in this action to the extent that such affirmative defense would be applicable to Successor Trustee, and Successor Trustee hereby gives notice that he intends to rely upon any additional defense that may become available or appear during discovery proceedings or otherwise in this case, and Successor Trustee hereby reserves his right to amend its Answer to assert any such defense(s).

11

### COUNTERCLAIMS AND CROSS-CLAIMS

### GENERAL ALLEGATIONS

### Parties

68. Successor Trustee repeats and realleges Paragraphs 1-67 of its Answer as though fully set forth herein.

69. Successor Trustee is a citizen of the state of New York and is the successor trustee of The Arthur Kramer 2005 Insurance Trust (the "August Trust") pursuant to the Trust Agreement of Arthur Kramer 2005 Insurance Trust dated August 29, 2005 (the "August Trust Agreement").

70. Counterclaim defendant Alice Kramer alleges herself to be the personal representative of the estate of Arthur Kramer.

71. Upon information and belief, cross-claim defendant Lincoln Life & Annuity Company of New York ("Lincoln") is an insurance company organized and existing under the laws of the State of New York, with its principal place of business at 100 Madison Street, Suite 1860, Syracuse, New York 13202.

### The Insurance Policy Issued by Lincoln on Arthur Kramer's Life

72. Arthur Kramer established the August Trust pursuant to the August Trust Agreement. The parties to the August Trust Agreement were Hudson United Bank, as Trustee, Arthur Kramer, as Depositor, and Liza Kramer, the daughter of Arthur Kramer, as the Beneficiary.

73.  On or about November 23, 2005, Lincoln issued to the August Trust as owner life insurance policy number 7214471, with a total death benefit of $10,000,000.00, on the life of Arthur Kramer (the "Lincoln Policy").

74.  Liza Kramer owned the entire beneficial interest in the August Trust at the time the Lincoln Policy was procured.

75.  Liza Kramer, the named beneficiary of the August Trust, had an insurable interest in the Lincoln Policy at the time the Lincoln Policy was procured.

76.  The Lincoln Policy provided that:  "While the insured is alive, the Owner may exercise all rights and privileges under the policy including the right[s] to . . . transfer all rights and privileges to another person . . . [and] assign the policy."  The Lincoln Policy did not place any time limitations on the policy owner's exercise of these rights.

77.  The Lincoln Policy also provided that it "will be incontestable after it has been in force during the Insured's lifetime for 2 years from its Date of Issue."

78.  The Lincoln Policy was in force during Arthur Kramer's lifetime for well over two years, from on or about November 23, 2005 to January 26, 2008.

**The Transfer Agreement**

79.  After the Lincoln Policy was issued, and in consideration for a payment of $100,000.00 (the "Cash Consideration"), Liza Kramer sold her rights to the August Trust's interest in the Lincoln Policy to Defendant Life Product Clearing, LLC ("LPC"), pursuant to a Beneficial Interest Transfer Agreement dated November 29, 2005 (the "Transfer Agreement").

80. In connection with that transaction, Arthur and Liza Kramer also executed a document entitled Acknowledgements and Consents Relating to Sale of Beneficial Interest dated November 29, 2005 (the "Acknowledgements and Consents Form") in which they each expressly made, inter alia, the following acknowledgements, consents and representations relating to Liza Kramer's decision to sell to LPC the rights to the August Trust's interest in the Lincoln Policy:

    a.  "After reviewing several alternatives for maintaining the [Lincoln] Policy and paying the premium, Arthur and Liza have determined that the sale of the Beneficial Interest [in the August Trust] to [LPC] for the Cash Consideration is in their best interest and in the best interest of their Family."

    b.  "Arthur and Liza acknowledge that they have had sufficient time to thoroughly analyze and discuss the strategy of selling the Beneficial Interest in the [August] Trust to [LPC.]"

    c.  "Arthur and Liza have had the opportunity to discuss this strategy with their family advisors."

    d.  "Upon completion of the sale of [the] Beneficial Interest in the [August] Trust to [LPC] for the Cash Consideration, Arthur and Liza expressly acknowledge, understand, consent and agree to waive all rights, claims, interests, powers and privileges that they now possess, or in the future may possess, under or with respect to the [Lincoln] Policy."

**Lincoln's Failure and Refusal to Pay the
Lincoln Policy Following Arthur Kramer's Death**

81. Arthur Kramer died on January 26, 2008.

82. On February 27, 2008, Successor Trustee, in his capacity as the trustee of the August Trust, submitted to Lincoln a Claimant's Statement requesting that Lincoln process the August Trust's claim under the Lincoln Policy and pay the death benefit to the August Trust.

83. The Lincoln Policy was properly payable to the August Trust (or to LPC) under the foregoing circumstances, and Lincoln lacked any proper or valid basis under law for failing to timely pay to the August Trust (or to LPC) the death benefit under the Lincoln Policy.

84. Nevertheless, Lincoln has failed and refused to pay the proceeds of the Lincoln Policy to the August Trust (or to LPC).

## COUNTERCLAIMS

### AS AND FOR THE FIRST COUNTERCLAIM
### (Declaratory Judgment)

85. Successor Trustee repeats and realleges ¶¶ 1-84 hereof as though fully set forth at length herein.

86. Lincoln is obligated to pay the death benefit under the Lincoln Policy to the August Trust.

87. In light of the Estate's allegations in the Complaint which seek to collect the death benefit under the Lincoln Policy for the benefit of the Estate (which allegations Successor Trustee denies), there is now an actual controversy of a justiciable nature regarding whether the August Trust and LPC, rather than the Estate, are entitled to the benefits due under the Lincoln Policy.

88. The Successor Trustee has no adequate remedy at law.

89. Accordingly, the Successor Trustee is entitled to a declaration that the August Trust and LPC, and not the Estate, are entitled to the benefits due to the August Trust under the Lincoln Policy.

15

## AS AND FOR THE SECOND COUNTERCLAIM
### (Tortious Interference with Contractual Relations)

90.  Successor Trustee repeats and realleges ¶¶ 1-89 hereof as though fully set forth at length herein.

91.  Lincoln issued the Lincoln Policy to the August Trust.  The Lincoln Policy constituted a valid, binding and enforceable contract between Lincoln and the August Trust.

92.  The August Trust is the named beneficiary of the Lincoln Policy and as such, is entitled to the proceeds thereof.

93.  On March 10, 2008, the Estate commenced this action by filing a complaint alleging, _inter alia_, that the Lincoln Policy was procured with a view to its immediate assignment to a party that lacked an insurable interest in the life of Arthur Kramer.  This allegation was untrue.

94.  The Estate's filing of this action constituted a knowing, intentional and unjustified interference with the August Trust's contractual relationship with Lincoln under the Lincoln Policy and a knowing, intentional and unjustified inducement of Lincoln to breach the Lincoln Policy by refusing to pay the proceeds to the August Trust.

95.  Following the Estate's initiation of this lawsuit, Lincoln has failed and refused to make payment on the Lincoln Policy, based upon the Estate's allegations in the original complaint that the Lincoln Policy was "procured as part of a STOLI transaction and that [it] lacks an insurable interest [sic]."

96. Despite Liza Kramer's express warranty in the Acknowledgments and Consents Form that she would provide a death certificate within a reasonable time following Arthur Kramer's death, Liza Kramer and the Estate failed and refused to do so (as acknowledged in ¶ 45 of the Complaint), so as to frustrate and/or the efforts of the August Trust to successfully obtain payment by Lincoln of the proceeds of the Lincoln Policy.

97. Upon information and belief, Lincoln would have paid the Lincoln Policy proceeds to the August Trust promptly had the Estate timely cooperated with the August Trust regarding Arthur Kramer's death certificate and/or had the Estate not filed its original complaint in this action on March 10, 2008.

98. The above-referenced actions of the Estate have damaged and continue to damage the August Trust in that they have delayed the August Trust's receipt of the Lincoln Policy proceeds from Lincoln. Moreover, in the event this Court does not order that the August Trust is entitled to receive the proceeds of the Lincoln Policy, the August Trust will suffer damages in an amount not less than the face value of the Lincoln Policy, i.e., $10,000,000.00, plus interest, as a direct and proximate result of the Estate's interference with the payment of the death benefit under the Lincoln Policy.

## AS AND FOR THE THIRD COUNTERCLAIM
### (In the Hypothetical, for Misrepresentation/Breach of Warranty)

99. Successor Trustee repeats and realleges ¶¶ 1-98 hereof as though fully set forth at length herein.

100. In connection with the issuance of the Lincoln Policy, Arthur Kramer completed an application for life insurance that was submitted to Lincoln. This application was entitled

Insurance Application Part I ("Part I") and contained various representations. Part I became a part of the Lincoln Policy.

101. Arthur Kramer and Liza Kramer warranted in the Acknowledgements and Consents Form that they had "no knowledge that any representation made regarding [Arthur Kramer's] health or capacity in the procurement of the policy is false or misleading."

102. In the hypothetical event that payment of the Lincoln Policy by Lincoln is impeded in any way by any purported representation or misrepresentation, whether made fraudulently, intentionally, knowingly, recklessly, negligently, inadvertently, innocently and/or in good or bad faith, the August Trust shall be entitled to damages from the Estate for any resulting non-payment or delay of payment of the proceeds that would otherwise have been due to the August Trust under the Lincoln Policy.

## CROSS-CLAIMS

### Background: The Secondary Market for Life Insurance Policies

103. Prior to the recent emergence of a competitive secondary market for life insurance policies, the only buyer for a policy in the secondary market was the life insurance carrier that had issued the policy. These carriers had little incentive to offer substantial compensation for these policies. Today, however, a competitive secondary market for life insurance policies has developed. This secondary market for life insurance has given consumers a viable and valuable alternative to sell their policies when they determine that they are no longer needed or desired. Indeed, life settlement firms who are active in this market improve policyholder welfare by at least several hundred million dollars annually.

18

104.  Upon information and belief, certain insurance carriers have been or have become hostile to the secondary market for insurance based on their fears that, in the statistical aggregate, investors who participate in this market will not let insurance policies lapse in the same way that policyholders previously did, and that therefore insurance companies will be forced to pay a larger percentage of the policies they issued, rather than simply pocketing large volumes of premiums on policies they will never pay.  Indeed, the insurance carriers' historic business model has been based on the fact that the vast majority (perhaps approaching 90%) of universal life insurance policies do not ever pay death benefits.  Life settlement firms such as LPC pose a threat to insurance carriers' ability to continue operating on this windfall profits model based on a high lapse rate.

105.  Certain insurers have taken the approach of responding to the current secondary market environment by raising legally and/or factually unfounded issues concerning insurable interest requirements under governing law, and issuing policies for which they know they will ultimately challenge payment.  Lincoln is one such carrier, and in some cases it has sought to rescind policies while seeking to keep the premiums paid thereon, in the hopes of potentially reaping all of the benefits of its contract without bearing any of its burdens.  Under this cynical and unlawful approach, the most profitable insurance contracts are those which an insurance carrier believes it can ultimately rescind on the basis that the policy lacked an insurable interest at its procurement.

## AS AND FOR THE FIRST CROSS-CLAIM
### (Against Lincoln, for Breach of Contract)

106.  Jonathan S. Berck repeats and realleges ¶¶ 1-105 hereof as though fully set forth at length herein.

19

107. Lincoln issued the Lincoln Policy to the August Trust on or about November 23, 2005. The Lincoln Policy constituted a valid, binding and enforceable contract between Lincoln and the August Trust.

108. The Lincoln Policy provides that Lincoln would pay the proceeds of the Lincoln Policy to the beneficiary upon receipt of due proof that the death of Arthur Kramer occurred while the Lincoln Policy was in force.

109. The Lincoln Policy has remained in force at all times since its issuance.

110. Arthur Kramer died on January 26, 2008 while the Lincoln Policy was in force.

111. Successor Trustee provided due proof of Arthur Kramer's death to Lincoln.

112. Despite demand duly made, and submission of all necessary documentation, Lincoln has failed and refused to pay to the August Trust (or to LPC) the death benefit under the Lincoln Policy.

113. The August Trust (and any and all other necessary persons, if any) have substantially (if not completely) performed, and have not materially breached, any and all obligations they may have had under the Lincoln Policy.

114. Lincoln has breached the Lincoln Policy by failing to pay the benefits due under the Lincoln Policy to the August Trust (or to the LPC).

115. The August Trust has been injured by Lincoln's breach of the Lincoln Policy.

116.  Accordingly, the August Trust is entitled to a declaration that Lincoln breached the Lincoln Policy and an award of damages in an amount not less than the face value of the Lincoln Policy, i.e., $10,000,000.00, plus interest.

## AS AND FOR THE SECOND CROSS-CLAIM
### (Against Lincoln, for Declaratory Judgment)

117.  Successor Trustee repeats and realleges ¶¶ 1-116 hereof as though fully set forth at length herein.

118.  The Lincoln Policy contains an incontestability provision which states that the Lincoln Policy "will be incontestable after it has been in force during the Insured's lifetime for two years from its Date of Issue."

119.  New York law bars insurers from seeking to rescind a life insurance policy by claiming lack of "insurable interest" once two years have passed since the policy was issued.

120.  Lincoln, on April 16, 2008 — more than two years after the Lincoln Policy was issued, and after Arthur Kramer had died and a claim for death benefits under the Lincoln Policy already had been submitted — asserted for the first time that the Lincoln Policy was, or should now be deemed to be, void *ab initio*, on account of a supposed lack of a proper "insurable interest" at the time when the Lincoln Policy was issued, and that Lincoln should therefore be excused from making payment of the death benefit under the Lincoln Policy.

121.  In light of the foregoing, there is now an actual controversy of a justiciable nature regarding whether the Lincoln Policy is valid and enforceable (as opposed to void *ab initio*) and whether Lincoln must pay to the August Trust (or to LPC) the benefits due under the Lincoln Policy.

21

122. The August Trust has no adequate remedy at law.

123. Accordingly, the August Trust is entitled to a declaration that the Lincoln Policy is valid and enforceable notwithstanding any issue Lincoln might now seek to raise regarding a supposed lack of proper "insurable interest" at the time the Lincoln Policy was issued, and that Lincoln must pay to the August Trust or LPC the benefits owed under the Lincoln Policy.

## AS AND FOR THE THIRD CROSS-CLAIM
### (Against Lincoln, for Declaratory Judgment)

124. Successor Trustee repeats and realleges ¶¶ 1-123 hereof as though fully set forth at length herein.

125. Lincoln, on April 16, 2008 — more than two years after the Lincoln Policy was issued, and after Arthur Kramer had died and a claim for death benefits under the Lincoln Policy already had been submitted — asserted for the first time that it was entitled to make setoffs from the death benefit payable under the Lincoln Policy on the theory that it has sustained damages as a result of one or more alleged civil conspiracies among LPC and third-party defendant Steven Lockwood, defendant Lockwood Pension Services, Inc., original defendant TD Banknorth, Inc., defendant Successor Trustee, and/or non-party Joel Miller to fraudulently induce Lincoln to issue the Lincoln Policy and/or a life insurance policy Lincoln issued on the life of one Leon Lobel (the "Lobel Policy"), and to conceal the purported absence of an "insurable interest" in these policies. Lincoln asserted that Successor Trustee furthered these supposed civil conspiracies by, inter alia, acquiring and/or participating in the sale of the death benefits under these policies and funding premium payments for these policies.

22

126. Because the two-year incontestability period under both New York law and the express terms of the Lincoln Policy already had lapsed by the time Lincoln first made this assertion, there is no lawful basis for Lincoln to make any setoffs from the death benefit payable under the Lincoln Policy.

127. In light of the foregoing, there is now an actual controversy of a justiciable nature regarding whether Lincoln has any lawful basis to set-off any amounts from the death benefit payable under the Lincoln Policy based on these belatedly-raised allegations of supposed civil conspiracy.

128. The Successor Trustee has no adequate remedy at law.

129. Accordingly, the Successor Trustee is entitled to a declaration that Lincoln has no lawful basis to set-off any amounts from the death benefit payable under the Lincoln Policy based on its belatedly raised allegations of supposed civil conspiracy.

## AS AND FOR THE FOURTH CROSS-CLAIM
### (Against Lincoln, for Declaratory Judgment)

130. Successor Trustee repeats and realleges ¶¶ 1-129 hereof as though fully set forth at length herein.

131. Lincoln, on April 16, 2008 — more than two years after the Lincoln Policy was issued, and after Arthur Kramer had died and a claim for death benefits under the Lincoln Policy already had been submitted — asserted for the first time that it was entitled to make setoffs from the death benefit payable under the Lincoln Policy on the theory that it has sustained damages as a result of Successor Trustee's supposedly having aided and abetted third-party defendant Steven Lockwood and defendant Lockwood Pension Services, Inc. in carrying out one or more supposed

fraudulent arrangements on their part to deceive and induce Lincoln to issue the Lincoln Policy and/or the Lobel Policy, and to conceal the purported absence of an "insurable interest" in these policies.  Lincoln asserted that Successor Trustee allegedly aided and abetted these supposed frauds by, inter alia, participating in the sale of the death benefits under these policies and funding premium payments for these policies.

132.  In light of the foregoing, there is now an actual controversy of a justiciable nature regarding whether Lincoln has any lawful basis to set-off any amounts from the death benefit payable to the August Trust under the Lincoln Policy based on these belatedly-raised allegations of supposed aiding and abetting fraud.

133.  The Successor Trustee has no adequate remedy at law.

134.  Accordingly, the Successor Trustee is entitled to a declaration that Lincoln has no lawful basis to set-off any amounts from the death benefit payable under the Lincoln Policy based on its belatedly raised allegations of supposed aiding and abetting fraud.

## AS AND FOR THE FIFTH CROSS-CLAIM
### (Against Lincoln, under N.Y. Gen. Bus. Law § 349)

135.  Successor Trustee repeats and realleges ¶¶ 1-134 hereof as though fully set forth at length herein.

136.  On information and belief, the Lincoln Policy issued to the August Trust was a standard form policy sold by Lincoln to other consumers.

137.  Lincoln's representations and omissions, including representations in the Lincoln Policy, were misleading in a material respect, in that policy applicants, holders,

purchasers and beneficiaries were led to believe that claims for payment under such policies would be investigated and processed in good faith and in a timely matter, and that benefits would be paid in accordance with the terms of such policies. In fact, however, Lincoln has failed to do so with respect to the policy at issue here. Lincoln has done likewise with respect to other similar policies.

138. Accordingly, Lincoln's conduct, as alleged herein, constitutes deceptive acts or practices within the meaning of New York General Business Law § 349.

139. As a direct and proximate result of Lincoln's deceptive acts or practices, the August Trust have been injured in an amount not less than the face value of the Lincoln Policy, i.e., $10,000,000.00, plus interest and attorneys' fees.

WHEREFORE, Jonathan S. Berck, in his capacity as the successor trustee of the Arthur Kramer 2005 Insurance Trust, respectfully demands judgment in his favor as follows:

(i)    dismissing with prejudice the Estate's claims for relief in the Complaint;

(ii)    declaring that the Lincoln Policy is valid and enforceable, that Lincoln must pay the to August Trust and/or LPC the benefits owed under the Lincoln Policy;

(iii)    in the event that the Court awards to the Estate some or all of the death benefits payable under the Lincoln Policy, or issues a declaration that the Estate is entitled to some or all of such benefits, awarding to the August Trust a refund from the Estate of all payments made by the August Trust to Arthur Kramer (or to any of his heirs) for the purchase of the rights to such death benefits, and/or a declaration that the August Trust is entitled to such a refund;

(iv)    in the event this Court does not order that the August Trust is entitled to receive the proceeds of the Lincoln Policy, awarding August Trust compensatory damages from the Estate in an amount to be determined at trial but not less than $10,000,000.00;

(v)    awarding the August Trust compensatory damages from Lincoln in an amount to be determined at trial but not less than $10 million;

(vi)    declaring that Lincoln has no lawful basis to set-off any amounts from the death benefit payable under the Lincoln Policy based on its allegations of supposed civil conspiracy;

(vii)    declaring that Lincoln has no lawful basis to set-off any amounts from the death benefit payable under the Lincoln Policy based on its allegations of supposed aiding and abetting fraud; and

(viii)    awarding the August Trust attorneys' fees, interest, costs, disbursements, and such other and further relief as this Court may deem just and proper.

Dated: New York, New York
        August 1, 2008

Respectfully,

FEIN & JAKAB
233 Broadway, Suite 930
New York, New York 10279
(212) 732-9290


By_____/s/_____
        PETER JAKAB (PJ-8553)

Attorneys for
Defendant and Third-Party Plaintiff
Jonathan S. Berck

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ALICE KRAMER, as Personal Representative of the
Estate of Arthur Kramer,

                Plaintiff,

        -against-

LOCKWOOD PENSION SERVICES, INC., TALL
TREE ADVISORS, INC., LIFE PRODUCTS
CLEARING, LLC, TRANSAMERICA OCCIDENTAL
LIFE INSURANCE CO., PHOENIX LIFE
INSURANCE CO., LINCOLN LIFE & ANNUITY CO.
OF NEW YORK and JONATHAN S. BERCK,

                Defendants.

**ECF Case**

08 Civ. 2429 (DAB) (MHD)

**<ins>DEMAND FOR TRIAL BY
JURY</ins>**

---

PHOENIX LIFE INSURANCE CO.,

                Third-Party Plaintiff,

        -against-

STEVEN LOCKWOOD,

                Third-Party Defendant.

---

LIFE PRODUCT CLEARING LLC and JONATHAN S.
BERCK,

                Third-Party Plaintiffs,

        -against-

LIZA KRAMER and ANDREW B. KRAMER,

                Third-Party Defendants.

---

Defendant and Third-Party Plaintiff, Jonathan S. Berck, by and through his attorneys undersigned, pursuant to Federal Rule of Civil Procedure 38, hereby demands trial by jury of all claims and issues so triable.

Dated: New York, New York
      August 1, 2008

Respectfully,

FEIN & JAKAB
233 Broadway, Suite 930
New York, New York 10279
(212) 732-9290


By_____/s/_____
     PETER JAKAB (PJ-8553)

Attorneys for
Defendant and Third-Party Plaintiff
Jonathan S. Berck

# Exhibit 3

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALICE KRAMER, as Personal Representative of the Estate of Arthur Kramer,<br><br>                    Plaintiff,<br><br>          -against-<br><br>LOCKWOOD PENSION SERVICES, INC., TALL TREE ADVISORS, INC., LIFE PRODUCTS CLEARING, LLC, TRANSAMERICA OCCIDENTAL LIFE INSURANCE CO., PHOENIX LIFE INSURANCE CO., LINCOLN LIFE & ANNUITY CO. OF NEW YORK and JONATHAN S. BERCK,<br><br>                    Defendants. | **ECF Case**<br><br>08 Civ. 2429 (DAB) (MHD)<br><br>**DEFENDANT-THIRD-PARTY PLAINTIFF JONATHAN S. BERCK'S THIRD-PARTY COMPLAINT** |
| PHOENIX LIFE INSURANCE CO.,<br><br>                    Third-Party Plaintiff,<br><br>          -against-<br><br>STEVEN LOCKWOOD,<br><br>                    Third-Party Defendant. | |
| LIFE PRODUCT CLEARING LLC and JONATHAN S. BERCK,<br><br>                    Third-Party Plaintiffs,<br><br>          -against-<br><br>LIZA KRAMER and ANDREW B. KRAMER,<br><br>                    Third-Party Defendants. | |

Defendant-third-party plaintiff Jonathan S. Berck, in his capacity as successor trustee of the Arthur Kramer 2005 Insurance Trust, by and through its attorneys, Fein & Jakab, hereby alleges as follows for its Third-Party Complaint:

## PRIOR PLEADINGS IN THIS ACTION

1. On March 10, 2008, plaintiff Alice Kramer, as Personal Representative of the Estate of Arthur Kramer (the "Estate"), commenced this action by filing a complaint against Jonathan S. Berck, in his capacity as successor trustee of the Arthur Kramer Insurance Trust and the Arthur Kramer 2005 Insurance Trust ("Successor Trustee"), and others. A copy of this pleading is attached hereto as Exhibit A.

2. On April 9, 2008, defendant Phoenix Life Insurance Co. ("Phoenix") filed an Answer to Complaint with Counterclaims, Cross-Claims and Third Party Complaint. A copy of this pleading is attached hereto as Exhibit B.

3. On May 7, 2008, plaintiff filed an amended complaint against Jonathan S. Berck, in his capacity as the successor trustee of the Arthur Kramer Insurance Trust and the Arthur Kramer 2005 Insurance Trust, and others. A copy of this pleading is attached hereto as Exhibit C.

4. On May 29, 2008, Phoenix filed an Answer to Amended Complaint with Counterclaims, Cross-Claims and Third Party Complaint. A copy of this pleading is attached hereto as Exhibit D.

5. On June 20, 2008, Life Products Clearing, LLC ("LPC") filed an Answer to Amended Complaint with Counterclaims, Cross-Claims and Third-Party Complaint. A copy of the pleadings are attached hereto as Exhibit E.

6. On August 1, 2008, contemporaneously with the filing of this third-party complaint, is filing an Answer to Amended Complaint with Counterclaims and Cross-Claims. A copy of this pleading is attached hereto as Exhibit F.

7. To date, no other pleadings have been filed in this action.

## PARTIES

8. Defendant-third-party plaintiff Successor Trustee is a citizen of the state of New York and is the successor trustee of The Arthur Kramer 2005 Insurance Trust (the "August Trust") pursuant to the Trust Agreement of Arthur Kramer 2005 Insurance Trust dated August 29, 2005 (the "August Trust Agreement").

9. Upon information and belief, third-party defendant Liza Kramer ("Liza Kramer") is a citizen of the state of California with an address at 1940 Los Angeles Avenue, Berkley, California 94707, and is the daughter and heir of the plaintiff Estate's decedent, Arthur Kramer.

10. Upon information and belief, third-party defendant Andrew B. Kramer ("Andrew Kramer") is a citizen of the state of New York with a business address c/o Kramer Capital Management, Inc., 622 Third Avenue, 32nd Floor, New York, New York 10017, and is the son and heir of the plaintiff Estate's decedent, Arthur Kramer.

## JURISDICTION AND VENUE

11. This Court has subject-matter jurisdiction over the claims asserted in this third-party complaint pursuant to the doctrine of supplemental jurisdiction under 28 U.S.C. § 1367, because Successor Trustee's third-party claims share a common nucleus of operative fact with the claims set forth by the Estate in its amended complaint.

12. Venue is proper in this district pursuant to 28 U.S.C. § 1391(a)(2) because a substantial part of the events giving rise to Successor Trustee's third-party claims occurred here.

## BACKGROUND

### The Insurance Policy Issued by Defendant Lincoln Life & Annuity Co. of New York on the Life of Arthur Kramer

13. Arthur Kramer, the plaintiff Estate's decedent, established The Arthur Kramer 2005 Insurance Trust pursuant to the Trust Agreement of Arthur Kramer 2005 Insurance Trust dated August 29, 2005. The parties to the August Trust Agreement were Hudson United Bank, as Trustee, Arthur Kramer, as Depositor, and third-party defendant Liza Kramer, the daughter of Arthur Kramer, as the Beneficiary.

14. On or about November 23, 2005, defendant Lincoln Life & Annuity Co. of New York ("Lincoln") issued to the August Trust life insurance policy number 7214471, with a total death benefit of $10,000,000.00, on the life of Arthur Kramer (the "Lincoln Policy").

15. Liza Kramer owned the entire beneficial interest in the August Trust at the time the Lincoln Policy was procured.

16. Liza Kramer, the named beneficiary of the August Trust, had an insurable interest in the Lincoln Policy at the time the Lincoln Policy was procured.

17. The Lincoln Policy provided that: "While the insured is alive, the Owner may exercise all rights and privileges under the policy including the right[s] to . . . transfer all rights and privileges to another person . . . [and] assign the policy." The Lincoln Policy did not place any time limitations on the policy owner's exercise of these rights.

### The Transfer Agreement

18. After the Lincoln Policy was issued, and in consideration for a payment of $100,000.00 (the "Cash Consideration"), Liza Kramer sold her rights to the August Trust's interest in the Lincoln Policy to LPC, pursuant to a Beneficial Interest Transfer Agreement dated November 29, 2005 (the "Transfer Agreement").

19. In connection with that transaction, Arthur Kramer and Liza Kramer also executed a document entitled Acknowledgements and Consents Relating to Sale of Beneficial Interest dated November 29, 2005 (the "Acknowledgements and Consents Form") in which they each expressly made, inter alia, the following acknowledgements, consents and representations relating to Liza Kramer's decision to sell to LPC the rights to the August Trust's interest in the Lincoln Policy:

   a. "After reviewing several alternatives for maintaining the [Lincoln] Policy and paying the premium, Arthur and Liza have determined that the sale of the Beneficial Interest [in the August Trust] to [LPC] for the Cash Consideration is in their best interest and in the best interest of their Family."

   b. "Arthur and Liza acknowledge that they have had sufficient time to thoroughly analyze and discuss the strategy of selling the Beneficial Interest in the [August] Trust to [LPC.]"

   c. "Arthur and Liza have had the opportunity to discuss this strategy with their family advisors."

5

    d.   "Upon completion of the sale of [the] Beneficial Interest in the [August] Trust to [LPC] for the Cash Consideration, Arthur and Liza expressly acknowledge, understand, consent and agree to waive all rights, claims, interests, powers and privileges that they now possess, or in the future may possess, under or with respect to the [Lincoln] Policy."

20.  In June, 2006, Jonathan S. Berck became the successor trustee of the August Trust.

### Lincoln's Failure and Refusal to Pay the
### Lincoln Policy Following Arthur Kramer's Death

21.  Arthur Kramer died on January 26, 2008.

22.  On February 27, 2008, Successor Trustee submitted to Lincoln a Claimant's Statement requesting that Lincoln process its claim under the Lincoln Policy and pay the death benefit to the August Trust.

23.  The Lincoln Policy was properly payable to the August Trust (or to LPC) under the foregoing circumstances, and Lincoln lacked any proper or valid basis under law for failing to timely pay to the August Trust (or to LPC) the benefit under the Lincoln Policy.

24.  Nevertheless, Lincoln has failed and refused to pay the proceeds of the Lincoln Policy to the August Trust (or to LPC).

### AS AND FOR THE FIRST THIRD-PARTY CLAIM
### (Tortious Interference with Contractual Relations)

25.  Successor Trustee repeats and realleges ¶¶ 1-24 hereof as though fully set forth at length herein.

26. Lincoln issued the Lincoln Policy to the August Trust. The Lincoln Policy constituted a valid, binding and enforceable contract between Lincoln and the August Trust.

27. The August Trust is the named beneficiary of the Lincoln Policy and as such, is entitled to the proceeds thereof.

28. On March 10, 2008, the Estate commenced this action by filing a complaint alleging, inter alia, that the Lincoln Policy was procured with the view to its immediate assignment to a party that lacked an insurable interest in the life of Arthur Kramer. This allegation was untrue.

29. The Estate's filing of this action constituted a knowing, intentional and unjustified interference with the August Trust's contractual relationship with Lincoln under the Lincoln Policy, and a knowing, intentional and unjustified inducement of Lincoln to breach the Lincoln Policy by refusing to pay the proceeds to the August Trust and/or LPC.

30. Upon information and belief, Liza Kramer and/or Andrew Kramer proximately caused the Estate to file the main action.

31. Following the Estate's initiation of this lawsuit, Lincoln has failed and refused to make payment on the Lincoln Policy, based upon the Estate's allegations in the original complaint that the Lincoln Policy was "procured as part of a STOLI transaction and that [it] lacks an insurable interest [sic]."

32. Despite Liza Kramer's express warranty to LPC in the Acknowledgments and Consents Form that she would provide a death certificate to LPC within a reasonable time following Arthur Kramer's death, Liza Kramer and the Estate failed and refused to provide the

7

death certificate to the LPC nor the August Trust (as acknowledged in ¶ 45 of the Estate's original complaint in the main action), so as to delay and/or frustrate the efforts of the August Trust to successfully obtain payment by Lincoln of the proceeds of the Lincoln Policy.

33. Upon information and belief, Lincoln would have paid the Lincoln Policy proceeds to the August Trust or LPC promptly had the Estate and Liza Kramer timely cooperated with the August Trust and LPC regarding Arthur Kramer's death certificate and/or had Liza Kramer and Andrew Kramer not caused the Estate to file its original complaint in the main action on March 10, 2008.

34. The foregoing actions of Andrew and Liza Kramer have damaged and continue to damage the August Trust in that they have delayed the August Trust's receipt of the Lincoln Policy proceeds from Lincoln. In the event this Court does not order that the August Trust is entitled to receive the proceeds of the Lincoln Policy, the August Trust will suffer damages in an amount not less than the face value of the Lincoln Policy, i.e., $10,000,000.00, plus interest, as a direct and proximate result of the interference of Liza Kramer and Andrew Kramer with the payment of the death benefit under the Lincoln Policy, and the August Trust will be entitled to recover damages from Liza Kramer and Andrew Kramer, jointly and severally, for such injury.

WHEREFORE, Jonathan S. Berck as the successor trustee of the Arthur Kramer 2005 Insurance Trust respectfully demands judgment in its favor as follows:

(i)    in the event this Court does not order that the Arthur Kramer 2005 Insurance Trust is entitled to receive the proceeds of the Lincoln Policy, awarding the Arthur Kramer 2005 Insurance Trust compensatory damages from Liza Kramer and Andrew Kramer, joint and severally, in an amount to be determined at trial but not less than $10,000,000.00;

8

      (ii)     awarding the Arthur Kramer 2005 Insurance Trust interest, costs, disbursements, and such other and further relief as this Court may deem just and proper.

Dated: New York, New York
       August 1, 2008

                                   Respectfully,

                                   FEIN & JAKAB
                                   233 Broadway, Suite 930
                                   New York, New York 10279
                                   (212) 732-9290

                                   By_____/s/_____
                                         PETER JAKAB (PJ-8553)

                                   Attorneys for
                                   Defendant and Third-Party Plaintiff
                                   Jonathan S. Berck

# Exhibit 4

Policy Number  7214471

Insured   ARTHUR B KRAMER

Initial Specified Amount   $10,000,000

Date of Issue   NOVEMBER 23, 2005

# Lincoln Life & Annuity Company of New York

A Stock Company          Home Office Location:   100 Madison Street, Suite 1860
                                                  Syracuse, NY

                  Administrator Mailing Address:   Lincoln Life & Annuity Company of New York
                                                   350 Church Street
                                                   Hartford, CT 06103-1106

Lincoln Life & Annuity Company of New York ("Lincoln Life") agrees to pay the Death Benefit to the Beneficiary upon receipt of due proof of the Insured's death during the continuance of the policy. Such payment shall be made as provided under the *GENERAL PROVISIONS, Payment of Proceeds* provision. Lincoln Life further agrees to pay the Surrender Value to the Owner upon surrender of the policy.

**Right to Examine the Policy.** The policy may be returned to the insurance agent through whom it was purchased or to Lincoln Life within 10 days after its receipt (60 days after its receipt where required by law for policies issued in replacement of other insurance). If the policy is so returned, it will be deemed void from the Date of Issue, and Lincoln Life will refund the premium paid.

The policy is issued and accepted subject to the terms set forth on the following pages, which are made a part of the policy. In consideration of the application and the payment of premiums as provided, this policy is executed by Lincoln Life as of the Date of Issue.

*John N. Gulla*

President

Registrar

**Flexible Premium Adjustable Life Insurance Policy – Non-Participating**
Death Benefit payable in the event of death of the Insured. Adjustable Death Benefit.
Surrender Value payable upon surrender of the policy.
Flexible Premiums payable to the Insured's age 100 or death of the Insured, whichever is earlier.
Premium Payment Periods and Supplementary Coverages as shown in the Policy Specifications.

LN589                            NY

# Table of Contents

|  | Page |
|---|---|
| Policy Specifications | 3 |
| Table of Surrender Charges | 5 |
| Corridor Percentages Table | 6 |
| Table of Expense Charges | 7 |
| Table of Guaranteed Maximum Cost of Insurance Rates | 8 |
| Definitions | 9 |
| Premium and Reinstatement Provisions | 10 |
| Ownership, Assignment and Beneficiary Provisions | 11 |
| Insurance Coverage Provisions | 12 |
| Nonforfeiture Provisions | 16 |
| Loan Provisions | 19 |
| General Provisions | 19 |

Followed by Optional Methods of Settlement and any Riders

Page 4 is intentionally "blank".

LN589                               NY                               2

# Policy Specifications

### Policy Number  7214471

| | | | | |
|---|---|---|---|---|
| Insured | ARTHUR B KRAMER | | | |
| Initial Specified Amount | $10,000,000 | Date of Issue | NOVEMBER 23, 2005 |
| Minimum Specified Amount | $25,000 | Age at Issue | 79 |
| Monthly Anniversary Day | 23 | Premium Class | PREFERRED |

**LN589 FLEXIBLE PREMIUM ADJUSTABLE LIFE INSURANCE**

**Specified Amount:**    See Initial Specified Amount

**Effective Date:**    Date of Issue

**Monthly Insurance Cost:**    *See NONFORFEITURE PROVISIONS,* Cost of Insurance

**Years Deductible:**    21

**Death Benefit Option:**    Death Benefit Option 1 (Level)

**Minimum Initial Premium:**    $31,891.10 is the minimum amount due on or before the Date of Issue to commence coverage under this policy and to prevent the policy from lapsing prior to the first Monthly Anniversary Day.

**Payment Mode:**    QUARTERLY

**Note:**    This policy may terminate prior to age 100 if actual premiums paid are insufficient to continue coverage to that date.  However, coverage will be continued as long as the requirements under the Lapse Protection Rider are met and the No-Lapse Value, less Indebtedness, remains positive.

AN ADDITIONAL LUMP SUM PAYMENT MAY BE REQUIRED TO KEEP THE POLICY IN FORCE SHOULD BOTH THE CASH VALUE, MINUS INDEBTEDNESS, AND THE NO-LAPSE VALUE, MINUS INDEBTEDNESS, BE INSUFFICIENT TO COVER THE RESPECTIVE MONTHLY DEDUCTIONS. THE OWNER SHOULD CONTACT THE COMPANY TO OBTAIN ADDITIONAL INFORMATION ABOUT THIS.

UNDER FEDERAL LAW, THE POLICY MAY NOT QUALIFY AS LIFE INSURANCE AFTER THE INSURED REACHES OR WOULD HAVE REACHED AGE 100 AND MAY BE SUBJECT TO ADVERSE TAX CONSEQUENCES. A TAX ADVISOR SHOULD BE CONSULTED PRIOR TO THE CONTINUATION OF THE POLICY AFTER THE INSURED REACHES OR WOULD HAVE REACHED AGE 100.

Upon request, the Company will in any one policy year provide one projection of illustrative benefits and values at no cost to the Owner. However, each additional projection requested in the same policy year will be subject to a maximum service fee of $5.00.

# Policy Specifications

Policy Number 7214471

| | | | |
|---|---|---|---|
| Insured | ARTHUR B KRAMER | | |
| Initial Specified Amount | $10,000,000 | Date of Issue | NOVEMBER 23, 2005 |
| Minimum Specified Amount | $25,000 | Age at Issue | 79 |
| Monthly Anniversary Day | 23 | Premium Class | PREFERRED |

(Continued from page 3)

The guaranteed interest rate to be credited to the Cash Values is 4% on unborrowed funds. The interest rate to be credited on borrowed funds may vary, but will never be less than the loan interest rate minus 2.0% per year.

Lincoln Life will grant an additional interest at the end of Policy Years 6 and thereafter. This amount will equal 0.25% of the Cash Value in Policy Years 6-10, and will equal 0.50% of the Cash Value in Policy Years 11 and thereafter.

The following expenses are charged under this policy: (1) a policy fee of $150 as of the Date of Issue, (2) a fee of $25.00 for each partial surrender (i.e. withdrawal), (3) a monthly administrative expense charge of $10.00 beginning on the Date of Issue, (4) premium expense charges as described on page 7, Table of Expense Charges, (5) a charge per $1,000 from the table on page 7 of Initial Specified Amount is due on the Date of Issue and an additional charge per $1,000 from the table on page 7 will be applied to any increase in Specified Amount will be deducted on the effective date of the increase.

The surrender charges applied to the Policy include: (1) the applicable surrender charge (if any) from the Table of Surrender Charges on page 5 for full surrender or decreases in Specified Amount, and (2) a maximum of 4 partial surrenders (i.e. withdrawals) per Policy Year with a $25 fee for each.

Cost of Insurance rates are determined by Lincoln Life based on its expectations of future mortality experience, persistency, investment income, and expenses (including taxes), but such rates will never exceed the guaranteed maximum rates shown on page 8.

Subject to the maximums and guarantees stated in the policy, Lincoln Life has the right to change the amount of interest credited, the Cost of Insurance rates, and other expense charges deducted under the policy. This may require that more premium be paid or may result in lower policy values than were illustrated.

This policy may lapse before the Insured reaches Age 100 even if planned premiums are paid when due. This is due to the fact that current Cost of Insurance and interest rates are not guaranteed, policy loans and partial surrenders (i.e. partial withdrawals) may be taken, there may be a change in Death Benefit Option, or there may be a requested change to the Specified Amount. Any of these actions may require that more premium be paid.

This policy is intended to qualify as life insurance under the Internal Revenue Code of 1986, as amended (IRC). Changes in premium or death benefit will be allowed subject to the policy provisions, provided that the policy continues to qualify as life insurance under the IRC.

LN589                                   NY                                      3.1

# Policy Specifications

Policy Number 7214471

| | | | |
|---|---|---|---|
| Insured | ARTHUR B KRAMER | | |
| Initial Specified Amount | $10,000,000 | Date of Issue | NOVEMBER 23, 2005 |
| Minimum Specified Amount | $25,000 | Age at Issue | 79 |
| Monthly Anniversary Day | 23 | Premium Class | PREFERRED |

**Lapse Protection Rider**
   Effective Date: Date of Issue
   Date of Expiry: November 23, 2026

## Policy Specifications

Policy Number  7214471

| | | | | |
|---|---|---|---|---|
| Insured | ARTHUR B KRAMER | | | |
| Initial Specified Amount | $10,000,000 | | Date of Issue | NOVEMBER 23, 2005 |
| Minimum Specified Amount | $25,000 | | Age at Issue | 79 |
| Monthly Anniversary Day | 23 | | Premium Class | PREFERRED |

**Owner**
HUDSON UNITED BANK, TRUSTEE OF THE ARTHUR KRAMER 2005 INSURANCE TRUST,
DATED AUGUST 29, 2005, OR THE SUCCESSOR(S) IN SAID TRUST.

**Beneficiary**
HUDSON UNITED BANK, TRUSTEE OF THE ARTHUR KRAMER 2005 INSURANCE TRUST,
DATED AUGUST 29, 2005, OR THE SUCCESSOR(S) IN SAID TRUST.

This Page Intentionally Blank

## Table Of Surrender Charges

Upon either a full surrender of the policy or a decrease in Specified Amount made at the request of the Owner, a charge will be assessed based on the *TABLE OF SURRENDER CHARGES*, subject to the following conditions.

For decreases in Specified Amount, excluding full surrender of the policy, no such charge will be applied under the following circumstances:

1. where the decrease occurs after the tenth Policy Anniversary following the issuance of the Initial Specified Amount, or
2. where the decrease is directly caused by a Death Benefit Option change, or
3. where the decrease is caused by a partial surrender of Cash Value (i.e. withdrawal), or
4. where the decrease plus the sum of all prior decreases does not exceed 25% of the Initial Specified Amount.

For all other decreases in Specified Amount, the charge will be calculated as (1) minus (2), then divided by (3) and then multiplied by (4), where:

1. is the amount of this decrease plus any prior decreases,
2. is the greater of an amount equal to 25% of the Initial Specified Amount or the sum of all prior decreases,
3. is the Initial Specified Amount, and
4. is the then applicable surrender charge from the *TABLE OF SURRENDER CHARGES*.

Requests for decreases in Specified Amount may be limited by Lincoln Life to the extent there is insufficient Net Cash Value to cover the necessary charges.

Upon full surrender of the policy, the charge will be calculated as the entire amount shown in the *TABLE OF SURRENDER CHARGES* multiplied by one minus the percentage of Initial Specified Amount for which a surrender charge was previously assessed, if any. In no event will the charge assessed upon a full surrender exceed the then current Net Cash Value.

Separate surrender charge tables apply with respect to each increase in Specified Amount. For purposes of calculating charges for full surrenders of, or decreases in, such increased Specified Amounts, the amount of the increase will be considered a new "Initial Specified Amount".

| Policy Year | Surrender Charge as of Beginning of Policy Year | Policy Year | Surrender Charge as of Beginning of Policy Year |
|---|---|---|---|
| 1 | 244,100 | 11 | 146,000 |
| 2 | 232,600 | 12 | 138,000 |
| 3 | 221,300 | 13 | 129,800 |
| 4 | 210,400 | 14 | 121,400 |
| 5 | 199,800 | 15 | 112,200 |
| 6 | 189,600 | 16 | 102,000 |
| 7 | 180,000 | 17 | 90,400 |
| 8 | 171,000 | 18 | 77,000 |
| 9 | 162,300 | 19 | 61,200 |
| 10 | 154,000 | 20 | 40,800 |
| | | 21 and thereafter | 0 |

The procedures for full and partial surrenders and the imposition of surrender charges for full surrenders are described in greater detail in *NONFORFEITURE PROVISIONS*.

## Corridor Percentages Table

As of the Date of Issue of this policy the formula in effect to determine the amount under item (b) of both Death Benefit Option 1, Death Benefit Option 2 and Death Benefit Option 3 is based on a percent of the Cash Value as determined from the following table:

(i)    If on or before the Insured's age 40, 250% of the Cash Value.
(ii)   If after the Insured's age 40, a percent of the Cash Value as determined from the following table:

| Insured's Attained Age | Corridor Percentage | Insured's Attained Age | Corridor Percentage |
|---|---|---|---|
| 0-40 | 250% | 70 | 115% |
| 41 | 243 | 71 | 113 |
| 42 | 236 | 72 | 111 |
| 43 | 229 | 73 | 109 |
| 44 | 222 | 74 | 107 |
| 45 | 215 | 75 | 105 |
| 46 | 209 | 76 | 105 |
| 47 | 203 | 77 | 105 |
| 48 | 197 | 78 | 105 |
| 49 | 191 | 79 | 105 |
| 50 | 185 | 80 | 105 |
| 51 | 178 | 81 | 105 |
| 52 | 171 | 82 | 105 |
| 53 | 164 | 83 | 105 |
| 54 | 157 | 84 | 105 |
| 55 | 150 | 85 | 105 |
| 56 | 146 | 86 | 105 |
| 57 | 142 | 87 | 105 |
| 58 | 138 | 88 | 105 |
| 59 | 134 | 89 | 105 |
| 60 | 130 | 90 | 105 |
| 61 | 128 | 91 | 104 |
| 62 | 126 | 92 | 103 |
| 63 | 124 | 93 | 102 |
| 64 | 122 | 94 | 101 |
| 65 | 120. | 95 | 100 |
| 66 | 119 | 96 | 100 |
| 67 | 118 | 97 | 100 |
| 68 | 117 | 98 | 100 |
| 69 | 116 | 99 | 100 |

LN589

6

## Table of Expense Charges

The following expenses are charged under this policy:

(1)  A policy fee of $150 as of the Date of Issue.
(2)  A fee of $25.00 for each partial surrender (i.e. withdrawal).
(3)  An administrative expense charge of $10 per month beginning on the Date of Issue.
(4)  Premium expense charges as follows:

 (i)  If the premium payment received during a Policy Year, when combined with all previous premium payments for that Policy Year, results in total premium for the Policy Year that is less than or equal to an amount equal to $56.18 multiplied by the greater of: (a) the Specified Amount on the date of payment or (b) the Specified Amount on the Date of Issue, divided by 1000, the premium expense charge will be:

| In Policy Year  1 | 12.0% of each premium received |
| In Policy Years 2-10 | 6.0% of each premium received |
| In Policy Years 11 and beyond | 2.0% of each premium received |

 (ii)  If the premium payment (or any portion thereof) received during a Policy Year, when combined with all previous premium payments for that Policy Year, results in total premium for the Policy Year that is greater than an amount equal to $56.18 multiplied by the greater of: (a) the Specified Amount on the date of payment or (b) the Specified Amount on the Date of Issue, divided by 1,000, the premium expense charge for the portion of the payment in excess of such amount will be:

| In Policy Year  1 | 9.0% of each premium received |
| In Policy Years 2-10 | 4.0% of each premium received |
| In Policy Years 11 and beyond | 2.0% of each premium received |

The premium expense charge for the portion of the payment not in excess of such amount will be as described in (i) above.

(5)  A charge per $1,000 from the table below of Initial Specified Amount is due on the Date of Issue. An additional charge per $1,000 from the table below will be applied to any increase in Specified Amount and will be due on the effective date of the increase.

| Attained Age (nearest birthday) | Male expense charge Per 1,000 | Female expense charge Per 1,000 | Attained Age (nearest birthday) | Male expense charge Per 1,000 | Female expense charge Per 1,000 | Attained Age (nearest birthday) | Male expense charge Per 1,000 | Female expense charge Per 1,000 |
|---|---|---|---|---|---|---|---|---|
| 0-3 | 0.35 | 0.32 | 42 | 1.35 | 1.22 | 62 | 7.60 | 6.84 |
| 4-8 | 0.40 | 0.36 | 43 | 1.40 | 1.26 | 63 | 8.40 | 7.56 |
| 9-13 | 0.45 | 0.41 | 44 | 1.45 | 1.31 | 64 | 9.20 | 8.28 |
| 14-25 | 0.50 | 0.45 | 45 | 1.50 | 1.35 | 65 | 10.00 | 9.00 |
| 26 | 0.55 | 0.50 | 46 | 1.55 | 1.40 | 66 | 10.50 | 9.45 |
| 27 | 0.60 | 0.54 | 47 | 1.60 | 1.44 | 67 | 11.00 | 9.90 |
| 28 | 0.65 | 0.59 | 48 | 1.65 | 1.49 | 68 | 11.50 | 10.35 |
| 29 | 0.70 | 0.63 | 49 | 1.70 | 1.53 | 69 | 12.00 | 10.80 |
| 30 | 0.75 | 0.68 | 50 | 1.75 | 1.58 | 70 | 12.50 | 11.25 |
| 31 | 0.80 | 0.72 | 51 | 1.80 | 1.62 | 71 | 13.00 | 11.70 |
| 32 | 0.85 | 0.77 | 52 | 1.85 | 1.67 | 72 | 13.50 | 12.15 |
| 33 | 0.90 | 0.81 | 53 | 1.90 | 1.71 | 73 | 14.00 | 12.60 |
| 34 | 0.95 | 0.86 | 54 | 1.95 | 1.76 | 74 | 14.50 | 13.05 |
| 35 | 1.00 | 0.90 | 55 | 2.00 | 1.80 | 75-99 | 15.00 | 13.50 |
| 36 | 1.05 | 0.95 | 56 | 2.80 | 2.52 | | | |
| 37 | 1.10 | 0.99 | 57 | 3.60 | 3.24 | | | |
| 38 | 1.15 | 1.04 | 58 | 4.40 | 3.96 | | | |
| 39 | 1.20 | 1.08 | 59 | 5.20 | 4.68 | | | |
| 40 | 1.25 | 1.13 | 60 | 6.00 | 5.40 | | | |
| 41 | 1.30 | 1.17 | 61 | 6.80 | 6.12 | | | |

LN589

7

## Table of Guaranteed Maximum Cost of Insurance Rates Per $1,000

SPECIAL NOTE:     The monthly Cost of Insurance rates are based on the sex and attained age (nearest birthday), but will not exceed the rates shown in the table below. If the Insured is in a rated premium class, the Guaranteed Maximum Cost of Insurance Rates will be those in the table multiplied by the Risk Factor, if any, shown in the *POLICY SPECIFICATIONS*. In determining the Guaranteed Maximum Cost of Insurance Rates, Lincoln Life will add the amount of the Flat Extra Monthly Insurance Cost, if any, shown in *POLICY SPECIFICATIONS*. The rates below are based on the 1980 CSO Tables (Male or Female as appropriate).

| Attained Age (nearest birthday) | Male Monthly Rate | Female Monthly Rate | Attained Age (nearest birthday) | Male Monthly Rate | Female Monthly Rate | Attained Age (nearest birthday) | Male Monthly Rate | Female Monthly Rate |
|---|---|---|---|---|---|---|---|---|
| 0 | 0.34845 | 0.24089 | 35 | 0.17586 | 0.13752 | 70 | 3.30338 | 1.84590 |
| 1 | 0.08917 | 0.07251 | 36 | 0.18670 | 0.14669 | 71 | 3.62140 | 2.02325 |
| 2 | 0.08251 | 0.06750 | 37 | 0.20004 | 0.15752 | 72 | 3.98666 | 2.24419 |
| 3 | 0.08167 | 0.06584 | 38 | 0.21505 | 0.17003 | 73 | 4.40599 | 2.51548 |
| 4 | 0.07917 | 0.06417 | 39 | 0.23255 | 0.18503 | 74 | 4.87280 | 2.83552 |
| 5 | 0.07501 | 0.06334 | 40 | 0.25173 | 0.20171 | 75 | 5.37793 | 3.19685 |
| 6 | 0.07167 | 0.06084 | 41 | 0.27424 | 0.22005 | 76 | 5.91225 | 3.59370 |
| 7 | 0.06667 | 0.06000 | 42 | 0.29675 | 0.23922 | 77 | 6.46824 | 4.01942 |
| 8 | 0.06334 | 0.05834 | 43 | 0.32260 | 0.25757 | 78 | 7.04089 | 4.47410 |
| 9 | 0.06167 | 0.05750 | 44 | 0.34929 | 0.27674 | 79 | 7.64551 | 4.97042 |
| 10 | 0.06084 | 0.05667 | 45 | 0.37931 | 0.29675 | 80 | 8.30507 | 5.52957 |
| 11 | 0.06417 | 0.05750 | 46 | 0.41017 | 0.31677 | 81 | 9.03761 | 6.17118 |
| 12 | 0.07084 | 0.06000 | 47 | 0.44353 | 0.33761 | 82 | 9.86724 | 6.91414 |
| 13 | 0.08251 | 0.06250 | 48 | 0.47856 | 0.36096 | 83 | 10.80381 | 7.77075 |
| 14 | 0.09584 | 0.06667 | 49 | 0.51777 | 0.38598 | 84 | 11.82571 | 8.72632 |
| 15 | 0.11085 | 0.07084 | 50 | 0.55948 | 0.41350 | 85 | 12.91039 | 9.76952 |
| 16 | 0.12585 | 0.07501 | 51 | 0.60870 | 0.44270 | 86 | 14.03509 | 10.89151 |
| 17 | 0.13919 | 0.07917 | 52 | 0.66377 | 0.47523 | 87 | 15.18978 | 12.08770 |
| 18 | 0.14836 | 0.08167 | 53 | 0.72636 | 0.51276 | 88 | 16.36948 | 13.35774 |
| 19 | 0.15502 | 0.08501 | 54 | 0.79730 | 0.55114 | 89 | 17.57781 | 14.70820 |
| 20 | 0.15836 | 0.08751 | 55 | 0.87326 | 0.59118 | 90 | 18.82881 | 16.15259 |
| 21 | 0.15919 | 0.08917 | 56 | 0.95591 | 0.63123 | 91 | 20.14619 | 17.71416 |
| 22 | 0.15752 | 0.09084 | 57 | 1.04192 | 0.66961 | 92 | 21.57655 | 19.43814 |
| 23 | 0.15502 | 0.09251 | 58 | 1.13378 | 0.70633 | 93 | 23.20196 | 21.40786 |
| 24 | 0.15169 | 0.09501 | 59 | 1.23235 | 0.74556 | 94 | 25.28174 | 23.83051 |
| 25 | 0.14752 | 0.09668 | 60 | 1.34180 | 0.78979 | 95 | 28.27411 | 27.16158 |
| 26 | 0.14419 | 0.09918 | 61 | 1.46381 | 0.84488 | 96 | 33.10677 | 32.32378 |
| 27 | 0.14252 | 0.10168 | 62 | 1.60173 | 0.91417 | 97 | 41.68475 | 41.21204 |
| 28 | 0.14169 | 0.10501 | 63 | 1.75809 | 1.00267 | 98 | 58.01259 | 57.81394 |
| 29 | 0.14252 | 0.10835 | 64 | 1.93206 | 1.10539 | 99 | 83.33333 | 83.33333 |
| 30 | 0.14419 | 0.11251 | 65 | 2.12283 | 1.21731 | | | |
| 31 | 0.14836 | 0.11668 | 66 | 2.32623 | 1.33511 | | | |
| 32 | 0.15252 | 0.12085 | 67 | 2.54312 | 1.45461 | | | |
| 33 | 0.15919 | 0.12502 | 68 | 2.77350 | 1.57247 | | | |
| 34 | 0.16669 | 0.13168 | 69 | 3.02328 | 1.69955 | | | |

This Page Intentionally Blank

# Definitions

**Administrator Mailing Address.** The Administrator Mailing Address for the policy is shown on the front cover.

**Cash Value.** The sum of premiums received and interest credited under the policy, less partial surrenders, fees, charges and Monthly Deductions. (See *NONFORFEITURE PROVISIONS*, **Cash Value**.)

**Cost of Insurance.** See *NONFORFEITURE PROVISIONS*, **Cost of Insurance**.

**Date of Issue.** The Date of Issue is shown in the *POLICY SPECIFICATIONS*.

**Death Benefit.** The amount payable upon death of the Insured is based upon the Death Benefit Option selected under the policy and in effect at the time of death. Each option is described under *INSURANCE COVERAGE PROVISIONS*, **Death Benefit** and is payable as described under *GENERAL PROVISIONS*, **Payment of Proceeds**.

**Due Proof of Death.** A certified copy of an official death certificate, a certified copy of a decree of a court of competent jurisdiction as to the finding of death, or any other proof of death satisfactory to Lincoln Life.

**In Writing.** With respect to any notice to Lincoln Life, this term means a written form satisfactory to Lincoln Life and received at the Administrator Mailing Address. With respect to any notice by Lincoln Life to the Owner, any assignee or other person, this term means written notice by ordinary mail to such person at the most recent address in Lincoln Life's records.

**Indebtedness.** See *LOAN PROVISIONS*, **Indebtedness**.

**Monthly Deduction.** The amount deducted from the policy Cash Value on each Monthly Anniversary Day for certain expenses and the Cost of Insurance. (See *NONFORFEITURE PROVISIONS*, **Monthly Deduction**.)

**Monthly Anniversary Day.** The day of the month, as shown in the *POLICY SPECIFICATIONS*, when Lincoln Life deducts the Monthly Deduction. If that day is not a business day, then such charges will be deducted on the immediately preceding business day.

**Net Cash Value.** An amount equal to the Cash Value less the amount of any Indebtedness.

**Policy Anniversaries and Policy Years.** Twelve-month periods measured from the Date of Issue.

**Specified Amount.** The Specified Amount is shown in the *POLICY SPECIFICATIONS* or supplemental *POLICY SPECIFICATIONS*, if later changed. The Specified Amount is chosen by the Owner and used in determining the amount of the Death Benefit. It may be increased or decreased as described in *INSURANCE COVERAGE PROVISIONS*, **Changes in Insurance Coverage**.

**Surrender Value.** See *NONFORFEITURE PROVISIONS*, **Surrender and Surrender Value**.

LN589

# Premium and Reinstatement Provisions

**Payment of Premiums.** All premiums are payable at the Administrator Mailing Address or to an authorized agent of Lincoln Life. The first premium is due on the Date of Issue and is payable in advance. All subsequent premium payments may be made at any time before the Insured's age 100. Receipts signed by the President or Secretary and duly countersigned will be furnished upon request.

Monthly Anniversary Days, policy months, Policy Years and Policy Anniversaries are computed from the Date of Issue.

**Minimum Premiums.** The Minimum Initial Premium as shown in the *POLICY SPECIFICATIONS* for the Initial Specified Amount as of the Date of Issue is the amount required to commence coverage under this policy and to prevent the policy from lapsing prior to the first Monthly Anniversary Day. Thereafter, the minimum premium amount is the amount required to prevent the policy from lapsing as set forth under **Policy Lapse and Grace Period.**

**Planned Premiums.** The Owner may, from time to time, establish the amount and frequency of premium payments, subject to the maximum premium requirements permitted under the Internal Revenue Code to qualify the policy as life insurance. Lincoln Life will send premium reminder notices for the amounts and frequency of payments established by the Owner. Lincoln Life reserves the right to stop sending such notices if no premium payment is made within 2 Policy Years.

Any premium payment received by Lincoln Life shall be applied as premium and not to repay any outstanding loans, unless Lincoln Life is specifically instructed otherwise in Writing by the Owner.

The Planned Premium amount as determined by the Owner, payable in accordance with the mode specified, may not continue the policy in force until the Policy Anniversary after the Insured reaches or would have reached age 100 even if the amount is paid as scheduled. The duration for which the policy will continue will depend upon:

1.  The amount, timing, and frequency of premium payment;
2.  Changes in Specified Amount and Death Benefit options;
3.  Changes in current interest credits and insurance costs;
4.  Changes in deductions for riders, if any; and
5.  Partial withdrawals and loans.

**Additional Premium.** In addition to any planned premium, it is possible to make additional premium payments of no less than $100.00 at any time before the Insured's age 100. Lincoln Life reserves the right to limit the amount or frequency of any such additional premium payment. If a payment of any additional premium would increase the difference between the Cash Value and the Death Benefit, Lincoln Life may reject the additional premium payment unless evidence of insurability is furnished to Lincoln Life and it agrees to accept the risk. If a payment of additional premium would cause the policy to cease to qualify as life insurance for federal income tax purposes, Lincoln Life may reject all or such excess portion of the additional premium.

**Policy Lapse and Grace Period.**     This policy will lapse if the Net Cash Value on any Monthly Anniversary Day is less than the required Monthly Deduction. In such event, a grace period of 61 days will be granted to pay a premium sufficient to cover the required Monthly Deduction.

At least 31 days before the end of the grace period Lincoln Life will send a notice in Writing to the Owner and any assignee of record that there is insufficient Net Cash Value under the policy. The notice will show the amount of premium required to prevent the policy from lapsing, which will be equal to the Monthly Deductions due and unpaid plus three additional Monthly Deductions. If such premium, as billed by Lincoln Life, is not paid within the grace period, all coverage under the policy will terminate without value at the end of the grace period. If the Insured dies during the grace period, Lincoln Life will deduct any overdue Monthly Deductions from the Death Benefit Proceeds.

## Premium and Reinstatement Provisions (continued)

**Reinstatement.** After the policy has lapsed due to the failure to make a necessary payment before the end of a 60 day grace period, the policy may be reinstated within 5 years provided: (a) there is an application for reinstatement In Writing, (b) satisfactory evidence of insurability is furnished to Lincoln Life, (c) enough premium is paid, in an amount equal to the Monthly Deductions due and unpaid during the grace period plus three additional Monthly Deductions, and (d) any Indebtedness against the policy, increased by any loan interest, is paid or reinstated. The reinstated policy will be effective as of the Monthly Anniversary Day after the date on which Lincoln Life approves the application for reinstatement. The surrender charges set forth in the *TABLE OF SURRENDER CHARGES* will be reinstated as of the Policy Year in which the policy lapsed. Policies which have been surrendered cannot be reinstated.

## Ownership, Assignment and Beneficiary Provisions

**Owner.** The Owner on the Date of Issue will be the person designated in the *POLICY SPECIFICATIONS*. If no Owner is designated, the Insured will be the Owner.

**Rights of Owner.** While the Insured is alive, the Owner may exercise all rights and privileges under the policy including the right to: (a) release or surrender the policy to Lincoln Life, (b) agree with Lincoln Life to any change in or amendment to the policy, (c) transfer all rights and privileges to another person, (d) change the Beneficiary, and (e) assign the policy.

All rights and privileges of the Owner may be exercised without the consent of any designated transferee, or any Beneficiary if the Owner has reserved the right to change the Beneficiary. All such rights and privileges, however, may be exercised only with the consent of any assignee recorded with Lincoln Life.

Unless provided otherwise, if the Owner is a person other than the Insured and dies before the Insured, all of the rights and privileges of the Owner will vest in the Owner's executors, administrators or assigns.

**Transfer of Owner.** The Owner may transfer all rights and privileges of the Owner. On the effective date of transfer, the transferee will become the Owner and will have all the rights and privileges of the Owner. The Owner may revoke any transfer prior to its effective date.

Unless provided otherwise, a transfer will not affect the interest of any Beneficiary designated prior to the effective date of transfer.

A transfer of Owner, or a revocation of transfer, will be In Writing on a form satisfactory to Lincoln Life and filed at the Administrator Mailing Address. A transfer, or a revocation, will not take effect until the notice of change is received In Writing by Lincoln Life. When a transfer or revocation has been so received, it will take effect as of the effective date specified by the Owner. Any payment made or any action taken or allowed by Lincoln Life before the transfer, or revocation, is received will be without prejudice to Lincoln Life.

**Assignment.** Lincoln Life will not be affected by any assignment of the policy until the original assignment or a certified copy of the assignment is filed at the Administrator Mailing Address.

Lincoln Life does not assume responsibility for the validity or sufficiency of any assignment. An assignment of the policy will operate so long as the assignment remains in force.

To the extent provided under the terms of the assignment, an assignment will transfer the interest of any designated transferee or of any Beneficiary if the Owner has reserved the right to change the Beneficiary.

## Ownership, Assignment and Beneficiary Provisions (continued)

**Beneficiary.**  The Beneficiary on the Date of Issue will be the person designated in the *POLICY SPECIFICATIONS*.

Unless provided otherwise, the interest of any Beneficiary who dies before the Insured will vest in the Owner or the Owner's executors, administrators or assigns.

**Change of Beneficiary.**  A new Beneficiary may be designated from time to time.  A request for change of Beneficiary must be in Writing and filed at the Administrator Mailing Address.  The request must be signed by the Owner.  The request must also be signed by any irrevocable Beneficiary.

A change of Beneficiary will not take effect until the notice of change is received by Lincoln Life.  When a change of Beneficiary has been so received it will take effect as of the date the request was signed.  Any payment made or any action taken or allowed by Lincoln Life before the change of Beneficiary is received will be without prejudice to Lincoln Life.

Unless provided otherwise, the right to change any Beneficiary is reserved to the Owner.

## Insurance Coverage Provisions

**Date of Coverage.**  The date of coverage will be the Date of Issue provided the initial premium has been paid and the policy has been accepted by the Owner: (a) while the Insured is alive, and (b) prior to any change in health and insurability as represented in the original application.  This provision will not, however, affect the terms of any Temporary Insurance Agreement.

For any increase or addition to coverage, the effective date will be the Monthly Anniversary Day that coincides with or next follows the date the supplemental application is approved by Lincoln Life provided: (a) sufficient Net Cash Value exists under the policy to cover the cost for the increase, (b) sufficient premium for the increase or addition has been paid, and (c) the Insured is alive on such day.  The effective date for any change in insurance coverage will be shown under the effective date on the supplement to the *POLICY SPECIFICATIONS* page that will be sent to the Owner.

**Termination of Coverage.**  All coverage under this policy terminates on the first of the following to occur:

1.    A full surrender of the policy.

2.    Death of the Insured.

3.    Failure to pay the amount of premium necessary to avoid termination before the end of any applicable grace period.

No action by Lincoln Life after such a termination of the policy, including any Monthly Deduction made after termination of coverage, will constitute a reinstatement of the policy or waiver of the termination. Any such deduction will be refunded.

**Death Benefit.**  The amount payable upon death is based upon the Death Benefit Option in effect on the date of death.  (See *GENERAL PROVISIONS*, Payment of Proceeds.).  The Death Benefit Options available under this policy are as follows:

LN589                                   NY                                   12

## Insurance Coverage Provisions (continued)

**DEATH BENEFIT OPTION 1**

The Specified Amount includes the Cash Value. The Death Benefit (before deduction of any Indebtedness against the policy) will equal the greater of:

(a)  the Specified Amount on the date of death, or

(b)  the amount determined by Lincoln Life equal to that required by the Internal Revenue Code to maintain this contract as a life insurance policy as shown in the *CORRIDOR PERCENTAGES TABLE*. Any amount so determined will be set forth in the annual report which Lincoln Life will send to the Owner.

For Option 1, a partial surrender will reduce the Cash Value, Death Benefit, and Specified Amount.

**DEATH BENEFIT OPTION 2**

The Specified Amount is in addition to the Cash Value. The Death Benefit (before deduction of any Indebtedness against the policy) will equal the greater of:

(a)  the Specified Amount on the date of death plus the Cash Value on the date of death, or

(b)  the amount determined by Lincoln Life equal to that required by the Internal Revenue Code to maintain this contract as a life insurance policy as shown in the *CORRIDOR PERCENTAGES TABLE*. Any amount so determined will be set forth in the annual report which Lincoln Life will send to the Owner.

For Option 2, a partial surrender will reduce the Cash Value and the Death Benefit. The Specified Amount will not be reduced.

**DEATH BENEFIT OPTION 3**

The Specified Amount in addition to the Accumulated Premium(s). The Death Benefit (before deduction of any Indebtedness against the policy) will equal the greater of:

(a)  the sum of the Specified Amount plus the Accumulated Premium(s) on the date of death, up to the Death Benefit Option 3 Limit shown in the *POLICY SPECIFICATIONS*, or

(b)  the amount determined by Lincoln Life equal to that required by the Internal Revenue Code to maintain this contract as a life insurance policy as shown in the *CORRIDOR PERCENTAGES TABLE*. Any amount so determined will be set forth in the annual report which Lincoln Life will send to the Owner.

For Option 3, a partial surrender will reduce the Accumulated Premium(s), the Death Benefit, Cash Value, and the Death Benefit Option 3 Limit by the amount of the partial surrender. If the amount of the partial surrender exceeds the Accumulated Premium(s), the Specified Amount will be reduced by the excess amount.

**Accumulated Premium(s) for Death Benefit Option 3.** The Accumulated Premium(s) is determined on each Monthly Anniversary Day and is based on the sum of all premiums paid, less the Cumulative Policy Factor (if elected) from the later of the Date of Issue or the effective date of change to Option 3. Any premium paid that will cause the Death Benefit amount to exceed the Death Benefit Option 3 Limit will be applied to the policy, but will only increase the Death Benefit up to the Death Benefit Option 3 Limit.

LN589                                   NY                                        13

## Insurance Coverage Provisions (continued)

**Increases in the Death Benefit Option 3 Limit.** The Owner may request an increase to the Death Benefit Option 3 Limit. If an increase is requested, a supplemental application must be submitted and evidence of insurability satisfactory to Lincoln Life must be furnished. If Lincoln Life approves the request, the increase will become effective upon the Monthly Anniversary Day that coincides with or next follows the date the request is approved.

**Cumulative Policy Factor for Death Benefit Option 3.** The Cumulative Policy Factor, if elected by the Owner, is an amount calculated as (1) multiplied by (2) accumulated monthly from the later of the Date of Issue of the policy or the effective date of change to Death Benefit Option, where:

(1)    is the applicable monthly rate from the table then used by the Internal Revenue Service (IRS) to determine the economic benefit attributable to life insurance coverage, or an alternative table permitted by the IRS, as selected by the Owner at issue; and

(2)    is the Specified Amount divided by 1,000.

If the Owner elects to have a Cumulative Policy Factor and later changes this election, any accumulation of the Cumulative Policy Factor to that date will be carried forward, but will not continue to accumulate. If the Owner does not elect to have a Cumulative Policy Factor and later changes this election, the accumulation of a Cumulative Policy Factor will begin as of the date of the change.

Unless Death Benefit Option 2 or 3 is elected on the application, the Owner will be deemed to have elected Death Benefit Option 1.

**Changes in Insurance Coverage.** The Owner may effect a change in coverage under this policy, subject to the following conditions:

1.    **General**
       Lincoln Life will require the Owner to submit a supplemental application for any change in coverage. A supplement to the *POLICY SPECIFICATIONS* will be endorsed to the policy and sent to the Owner once the change is completed.

2.    **Decrease in Specified Amount**
       The Owner may decrease the Specified Amount of this policy at any time up to 12 times per Policy Year, subject to IRS guidelines. The Owner cannot reduce the Specified Amount below $25,000.

       The decrease in the Specified Amount will take effect on the Monthly Anniversary day on or next following the date on which the Owner's request In Writing is received at the Administrator's Mailing Address. If Death Benefit Option 3 is in effect, a decrease in Specified Amount will also reduce the Death Benefit Option 3 Limit. A decrease in Specified Amount may be subject to a surrender charge, if any, as set forth in the *TABLE OF SURRENDER CHARGES*, which will be deducted from the Cash Value.

       The decrease will reduce any past increases in the reverse order in which they occurred.

3.    **Increase in Specified Amount**
       The Owner may make a minimum increase of $1,000 to the Specified Amount of this policy at any time up to 12 times in the first Policy Year subject to satisfactory evidence of insurability. After the first Policy Year the Owner may make one increase per Policy Year. The Date of Issue of any increase will be shown on the supplemental *POLICY SPECIFICATIONS* sent to the Owner. Increases in Specified Amount that are not initiated by the Owner, but are initiated by Lincoln Life, will not require evidence of insurability.

## Insurance Coverage Provisions (continued)

If Lincoln Life approves the request, the increase will become effective upon (i) the Monthly Anniversary Day that coincides with or next follows the date Lincoln Life approves the request, and, (ii) the deduction from the Cash Value of the first month's cost for the increase, using the Insured's then attained age (nearest birthday) as the issue age for such coverage provided the Insured is alive on such day. If Death Benefit Option 3 is in effect, an increase in Specified Amount will increase the Death Benefit Option 3 Limit, unless requested otherwise by the Owner.

4.   **Change in Death Benefit Option**
     The Owner may change the Death Benefit Option after the first Policy Year. If such change results in an increase in the net amount at risk, it will be subject to satisfactory evidence of insurability. The change will take effect on the Monthly Anniversary Day on or next following the date on which the Owner's request In Writing is received at the Administrator Mailing Address and approved by Lincoln Life.

     (a)   Change from Option 1 to Option 2

           The Specified Amount will be reduced to equal the Specified Amount immediately prior to the change less the Cash Value at the time of the change.

     (b)   Change from Option 2 to Option 1

           The Specified Amount will be increased to equal the Specified Amount immediately prior to the change plus the Cash Value at the time of the change.

     (c)   Change from Option 3 to Option 1

           The Specified Amount will be increased by Accumulated Premium(s) at the time of change.

     (d)   Change from Option 3 to Option 2 and the Cash Value is greater than the Accumulated Premium(s)

           The Specified Amount will be reduced by the Cash Value less Accumulated Premium(s) at the time of change.

     (e)   Change from Option 3 to Option 2 and the Cash Value is less than Accumulated Premium(s)

           The Specified Amount will be increased by the Accumulated Premium(s) less the Cash Value at the time of change.

     (f)   Change from Option 2 to Option 3

           The Specified Amount will be increased to equal the Specified Amount immediately prior to the change plus the Cash Value at the time of the change.


**Projection of Benefits and Values.** Lincoln Life will provide a projection of illustrative future Death Benefits and Cash Values at any time upon written request and payment of a reasonable service fee. The fee payable will be the one then in effect for this service. The illustration will be based on (a) assumptions as to Specified Amount(s), type of coverage option(s) and future planned annual premium payments, and (b) such other assumptions (e.g., mortality and interest) as are necessary and specified.

# Nonforfeiture Provisions

The following provisions describe how values are calculated under the policy and the amounts that would be payable if the policy is terminated before a death benefit becomes payable.

**Cash Value.** On each Monthly Anniversary Day, the Cash Value will be calculated as (1), plus (2), plus (3), minus (4), minus (5), minus (6), minus (7) where:

(1)     is the Cash Value on the preceding Monthly Anniversary Day.

(2)     is all premiums received since the preceding Monthly Anniversary Day less the percentage of premium expense charge from the *TABLE OF EXPENSE CHARGES*.

(3)     is interest on items (1) and (2).

(4)     is the Monthly Deduction for the month following the Monthly Anniversary Day.

(5)     is the applicable charge per $1,000 from the *TABLE OF EXPENSE CHARGES*, if any.

(6)     is the amount of any partial surrenders (i.e. withdrawals) and associated fees on the Monthly Anniversary Day.

(7)     is the surrender charge for any decrease in Specified Amount from the *TABLE OF SURRENDER CHARGES*, if any.

If premium is received at any time other than the beginning of a policy month, the rate of interest used in the calculation of item (3) above will be determined pro rata from the date of receipt.

On any day other than a Monthly Anniversary Day, the Cash Value will be the Cash Value as of the preceding Monthly Anniversary Day, plus all premiums received since the preceding Monthly Anniversary Day less the premium expense charge from the *TABLE OF EXPENSE CHARGES* plus accumulated interest and less partial surrenders and associated fees. The Cash Value on the Date of Issue will be the initial premium received less: (i) the initial policy fee from the *TABLE OF EXPENSE CHARGES*, (ii) the Monthly Deduction for the first policy month, (iii) the premium expense charge from the *TABLE OF EXPENSE CHARGES*, and (iv) the charge per $1,000 of Initial Specified Amount from the *TABLE OF EXPENSE CHARGES*.

**Net Cash Value.** The Net Cash Value as of any date will equal the Cash Value on that date as determined above less any Indebtedness against the policy.

**Monthly Deduction.** The Monthly Deduction for a policy month will be calculated as Charge (1) plus Charge (2) where:

CHARGE (1)     is the Cost of Insurance (as described in the **Cost of Insurance** provision) and the cost of any additional benefits provided by rider for the policy month; and

CHARGE (2)     is the monthly administrative expense charge from the *TABLE OF EXPENSE CHARGES*.

**Interest Rates.** Lincoln Life will credit interest to the Cash Value of the policy daily. The interest rate applied to the Net Cash Value of the policy will be the greater of:

(a)     0.01074598% per day, compounded daily (4.0% annually), or

(b)     a rate determined by Lincoln Life from time to time. Such rate will be established on a prospective basis.

The interest rate applied to that borrowed portion of the Cash Value which secures any outstanding policy loan when expressed as an equivalent annual rate will be equal to the policy loan rate less a percentage no greater than 2.0%, but not less than the guaranteed interest rate of 4%. (See *LOAN PROVISIONS*, **Loan Interest**.)

LN589                              NY                              16

## Nonforfeiture Provisions (continued)

**Additional Interest.** In addition to the interest being credited under the policy, Lincoln Life will grant an additional interest at the end of Policy Years 6 and thereafter. This amount will equal 0.25% of the Cash Value in Policy Years 6-10, and will equal 0.50% of Cash Value in Policy Years 11 and thereafter and will be applied automatically to increase the then current Cash Value of the policy. Any additional interest credited does not change the guaranteed rate of 4%.

The additional excess interest is the result of a reduction in the interest margin for profit and expenses. The guaranteed interest rate will not be increased by the additional excess interest rate.

**Cost of Insurance.** The Cost of Insurance under this policy is determined on a monthly basis. Such cost will be the result of (1) minus (2), multiplied by (3), and divided by 1,000, where:

(1)    is the Death Benefit at the beginning of the policy month, divided by 1.0032737.

(2)    is the Cash Value at the beginning of the policy month prior to the deduction for the monthly Cost of Insurance, or zero if greater, and

(3)    is the Cost of Insurance rate as described in the **Cost of Insurance Rates** provision.

**Cost of Insurance Rates.** Monthly Cost of Insurance rates will be determined by Lincoln Life, based on its expectations as to future mortality, investment earnings, persistency, and expenses (including taxes). Any change in Cost of Insurance rates will apply to all individuals of the same class as the Insured. If the Insured is in a rated premium class, the monthly Cost of Insurance rates for that premium class will reflect the Risk Factor, if any, shown in the *POLICY SPECIFICATIONS*. In determining the monthly Cost of Insurance, Lincoln Life will add the amount of the Flat Extra Monthly Insurance Cost, if any, shown in the *POLICY SPECIFICATIONS*. Under no circumstances will the Cost of Insurance rates ever be greater than those specified in the *TABLE OF GUARANTEED MAXIMUM COST OF INSURANCE RATES PER $1,000.*

**Insufficient Value.** If the Net Cash Value, on the day preceding a Monthly Anniversary Day is insufficient to cover the Monthly Deduction for the month following such Monthly Anniversary Day, the policy will terminate. (See *PREMIUM AND REINSTATEMENT PROVISIONS*, **Policy Lapse and Grace Period**.)

**Basis of Computations.** The minimum Cash Values under this policy are guaranteed to be no less than those calculated based on the applicable Commissioners 1980 Standard Ordinary Mortality Table (age nearest birthday) with interest at 4% per year, compounded yearly.

The Cash Values are at least equal to those required on the Date of Issue by the jurisdiction in which this policy is delivered. A detailed statement of the method of computing values has been filed with the insurance supervisory official of that jurisdiction.

**Continuation of Insurance.** Insurance coverage under this policy and any benefits provided by rider will be continued until the Net Cash Value is insufficient to cover the Monthly Deduction. (See *PREMIUM AND REINSTATEMENT PROVISIONS*, **Policy Lapse and Grace Period**). If the Insured is still living at age 100 and the policy has not lapsed or been surrendered, Lincoln Life will: a) continue to credit interest to the Cash Value as defined in the **Interest Rate** provision; b) no longer charge Monthly Deductions under the policy; c) no longer accept premium payments (except as needed to keep the policy from lapsing); d) continue to charge loan interest; and e) continue the policy in force and pay the Death Benefit upon receipt of Due Proof of Death of the Insured. This provision will not continue any rider attached to the policy beyond the date for its termination, as provided in the rider.

# Nonforfeiture Provisions (continued)

**Surrender and Surrender Value.** This policy may be surrendered on any Monthly Anniversary Day during the lifetime of the Insured and during the continuance of the policy. The amount payable on surrender of this policy (i.e., the Surrender Value) will be the Net Cash Value on the date of surrender less a charge determined from the *TABLE OF SURRENDER CHARGES*. (The charges shown in the table are the charges imposed at the beginning of the Policy Year; charges imposed upon surrender during the Policy Year will be determined on a consistent basis allowing for the lapse of time within such year).

The Surrender Value will be paid in cash or under an elected Optional Method of Settlement. Lincoln Life may defer the payment of the Surrender Value for the period permitted by law, but not for more than 6 months from the date of request for surrender.

If surrender is requested under this section within 30 days after a Policy Anniversary, the Surrender Value will not be less than the Surrender Value on that anniversary, less any policy loans or partial surrenders made on or after such anniversary.

**Partial Surrender.** A partial surrender (i.e. withdrawal) of this policy may be elected on any Monthly Anniversary Day during the lifetime of the Insured and while the policy is in force by submitting a request In Writing to Lincoln Life. The amount of the partial surrender (a) must be at least $500.00 but (b) may not exceed 90% of the then current Surrender Value. The amount of the partial surrender shall be withdrawn against the most recent increases first, then against the recent increases successively. Partial Surrender may continue to be made even after the Insured's age 100.

When a partial surrender is made, the amount of the partial surrender and the applicable fee will be deducted from the Cash Value. Also, the Death Benefit payable will be reduced by the amount of the partial surrender and the applicable fee. (See *INSURANCE COVERAGE PROVISIONS, Death Benefit*). The Specified Amount remaining in force after any partial surrender will be subject to the limits imposed by IRS guidelines and minimum Specified Amount. (See *INSURANCE COVERAGE PROVISIONS, Changes in Insurance Coverage*). A partial surrender impacting the Specified Amount will reduce any past increases to the Specified Amount in the reverse order in which they occurred.

A fee as set forth in the *TABLE OF EXPENSE CHARGES* will be deducted from the Cash Value for each partial surrender. Lincoln Life reserves the right to limit the number of partial surrenders in a Policy Year to four. Lincoln Life also reserves the right to defer payment for the period permitted by law, but not for more than 6 months from the date of request for the partial surrender, unless such partial surrender amount is to be applied to the payment of premiums on policies with Lincoln Life.

**Paid-up Insurance.**    The Owner may at any time request that Lincoln Life grant guaranteed nonparticipating paid-up insurance, which shall be payable at a like time and in like manner with the original policy. The amount of paid-up insurance will be that which the Net Cash Value will purchase when applied as a net single premium at the Insured's then attained age using the guaranteed interest of 4% per annum and mortality basis set forth under the **Basis of Computations** provision. The amount of such paid-up insurance, however, shall be limited to the current Death Benefit under the policy, and the amount of any Net Cash Value in excess of that required to purchase such paid-up insurance will be paid to the Owner in cash. After election of this option, no further premiums will be accepted or excess interest credits applied. The paid-up insurance will not include any supplementary or additional benefits provided by rider under the original policy.

The Owner, at any time after election of the paid-up option, may surrender the policy for the Net Cash Value and is not subject to any expense charge on any monthly anniversary after the election.

# Loan Provisions

**Policy Loans.** If the policy has a Surrender Value available, Lincoln Life will grant a loan against the policy provided: (a) a proper loan agreement is executed, and (b) a satisfactory assignment of the policy to Lincoln Life is made. The policy will be the sole security for the loan. The total amount of all loans with interest may not exceed the Surrender Value of the policy. Loans may continue to be made even after the Insured's age 100. The Owner should consult his/her tax advisor before making any loan under the policy.

Lincoln Life may defer a loan for 6 months from the date of the request for the loan. Lincoln Life will not, however, defer a loan to be used to pay premiums on policies with Lincoln Life. If the loan is deferred for more than 10 days, Lincoln Life will pay interest on the loan amount at a rate equal to 3% per year.

**Loan Interest.** Interest on any policy loan will be at a rate equivalent to 6% per year payable in arrears. Loan interest is payable annually on each Policy Anniversary or as otherwise agreed In Writing by the Owner and Lincoln Life. Interest not paid when due will then be added to the loan and bear interest at the same rate. Interest, as it accrues from day to day, will constitute an Indebtedness.

**Indebtedness.** The term Indebtedness means money which is owed on this policy due to an outstanding loan and interest accrued thereon but not yet charged. Any Indebtedness at time of settlement will reduce the proceeds. Indebtedness may be repaid in whole or in part at any time even after the Insured's age 100. If, however, a premium is not paid within the grace period, any outstanding Indebtedness can be repaid only if the policy is reinstated.

If at any time the total Indebtedness against the policy, including interest accrued but not due, equals or exceeds the then current Cash Value, less any applicable surrender charge(s), the policy will thereupon terminate without value. (See *PREMIUM AND REINSTATEMENT PROVISIONS*, **Policy Lapse and Grace Period**.)

# General Provisions

**Entire Contract.** The policy and the application for the policy (including any supplemental applications for additional Specified Amounts) constitute the entire contract between the parties. All statements made in the application will be deemed representations and not warranties. No statement will be used in defense of a claim under the policy unless it is contained in the application, and a copy of the application is attached to the policy when issued.

Only the President, a Vice President, an Assistant Vice President, a Secretary, a Director or an Assistant Director of Lincoln Life may make or modify this policy.

The policy is executed at the Administrator Mailing Address shown on the front cover of the policy.

**Non-Participation.** The policy is not entitled to share in surplus distribution.

**Notice of Claim.** Due Proof of Death must be furnished to Lincoln Life within 30 days or as soon as reasonably possible after the death of the Insured. Such notice shall be given by or on behalf of the Owner to Lincoln Life at its Administrator Mailing Address located on the front cover of the policy.

**Payment of Proceeds.** Proceeds, as used in this policy, means the amount payable (a) upon the surrender of this policy, or (b) upon the death of the Insured.

## General Provisions (continued)

Upon the death of the Insured, while the policy is still inforce, the proceeds payable will be the Death Benefit less any Indebtedness against the policy. Such Death Benefit Proceeds are payable subject to the receipt of Due Proof of Death. Payment shall include interest on proceeds from the date of death of the Insured to the date of payment. The interest shall be computed daily at the rate currently paid by Lincoln Life on proceeds left under settlement options. If the policy is surrendered before the death of the Insured, the proceeds payable upon surrender will be the Surrender Value as described in *NONFORFEITURE PROVISIONS*. The proceeds payable under the policy are subject to the adjustments described in the following provisions:

1.  Misstatement of Age or Sex;
2.  Suicide;
3.  Incontestability;
4.  Partial Surrender;
5.  Policy Lapse and Grace Period; and
6.  Indebtedness.

When settlement is made, Lincoln Life may require return of the policy. Proceeds will be paid in a lump sum unless an Optional Method of Settlement is elected.

Policy proceeds are exempt from the claims of creditors and the rights of beneficiaries and assignees thereof shall be protected.

**Misstatement of Age or Sex.**  If the age or sex of the Insured is misstated, Lincoln Life will adjust all benefits to the amounts that would have been purchased for the correct age and sex according to the basis specified in the *TABLE OF GUARANTEED MAXIMUM COST OF INSURANCE RATES PER $1,000;* that is, all benefits will be adjusted for the difference between the Monthly Deductions made and the Monthly Deductions that would have been made on the correct age and sex.

**Suicide.**  If the Insured commits suicide within 2 years from the Date of Issue, the Death Benefit Proceeds will be limited to a refund of premiums paid, less (a) any Indebtedness against the policy and (b) the amount of any partial surrenders.

If the Insured commits suicide within 2 years from the date of any applied increase in the Specified Amount (other than an applied for increase solely attributable to a change in Specified Amount Option), the Death Benefit Proceeds with respect to such increase will be limited to a refund of the monthly charges for the cost of such additional insurance and the amount of insurance will be based on the Specified Amount before such increase was made, provided that the increase became effective at least 2 years from the Date of Issue of the policy.

If the policy lapses and is reinstated (See *PREMIUM AND REINSTATEMENT*, Reinstatement), the 2 year period for suicide does not begin anew.

**Incontestability.**  Except for nonpayment of Monthly Deductions, this policy will be incontestable after it has been in force during the Insured's lifetime for 2 years from its Date of Issue. This means that Lincoln Life will not use any misstatement in the application to challenge a claim or avoid liability after that time.

Any applied for increase in the Specified Amount (other than an applied for increase solely attributable to a change in Specified Amount Option) effective after the Date of Issue will be incontestable only after such increase has been in force for 2 years during the Insured's lifetime. The basis for contesting an increase in Specified Amount will be limited to material misrepresentations made in the supplemental application for the increase. The basis for contesting after reinstatement will be (a) limited for a period of 2 years from the date of reinstatement, and (b) limited to material misrepresentations made in the reinstatement application.

## General Provisions (continued)

**Effect of Waiver of Provisions.** If at some time Lincoln Life chooses not to enforce a policy provision, it still retains the right to enforce that provision at any other time. To be effective, a waiver of any terms of the policy must be in Writing and signed by a person authorized by Lincoln Life to waive such terms.

**Policy Changes – Applicable Law.** This policy must qualify initially and continue to qualify as life insurance under the Internal Revenue Code in order for the Owner to receive the tax treatment accorded to life insurance under Federal Law. Therefore, to maintain this qualification to the maximum extent permitted by law, Lincoln Life reserves the right to return any premium payments that would cause this policy to fail to qualify as life insurance under applicable tax law as interpreted by Lincoln Life. Further, Lincoln Life reserves the right to make changes in this policy or to make distributions from the policy to the extent it deems necessary, in its sole discretion, to continue to qualify this policy as life insurance. Any such changes will apply uniformly to all policies that are affected.

**Annual Report.** Lincoln Life will send a report to the Owner at least once a year without charge. The report will show (a) the current Death Benefit, (b) the current Net Cash Value, (c) premiums paid and all deductions made since the last report, (d) outstanding policy loans, and (e) any other information required by the Superintendent of Insurance. In addition, the report will indicate when the policy is projected to lapse based on current and guaranteed factors.

**Change of Plan.** This policy may be exchanged for another policy only if Lincoln Life consents to the exchange and all requirements for the exchange as determined by Lincoln Life, are met.

LN589                                    NY                                    21

# Optional Methods of Settlement

This rider is made part of the policy to which it is attached as of the Date of Issue. Upon written request, the Company will agree to pay in accordance with any one of the options shown below all or part of the net proceeds that may be payable under the policy.

If any optional income settlement provides for instalment payments for a given age of payee for an amount which would be the same for different periods certain, the Company will deem that an election has been made for the longest period certain for such age and amount.

While the Insured is alive, the request, including the designation of the payee, may be made by the Owner. Unless the Owner has previously elected a settlement option, at the time a Death Benefit becomes payable under the policy, the request, including the designation of the payee, may then be made by the Beneficiary. Once Income Payments have begun, the policy cannot be surrendered and the payee cannot be changed, nor can the settlement option be changed.

**Payment Dates.** The first Income Payment under the settlement option selected will become payable on the date proceeds are settled under the option. Subsequent payments will be made on the first day of each month in accordance with the manner of payment selected.

**Minimum Payment Amount.** The settlement option elected must result in an Income Payment at least equal to the minimum payment amount in accordance with the Company's rules then in effect. If at any time payments are less than the minimum payment amount, the Company has the right to change the frequency to an interval that will provide the minimum payment amount. If any amount due is less than the minimum per year, the Company may make other arrangements that are equitable.

**Income Payments.** Income Payments will remain constant pursuant to the terms of the settlement option(s) selected. The amount of each Income Payment shall be determined in accordance with the terms of the settlement option and the table(s) set forth in this rider, as applicable. The mortality table used is the Annuity 2000 Table and 3% interest. In determining the settlement amount, the settlement age of the payee will be reduced by one year when the first installment is payable during 2010-2019, reduced by two years when the first installment is payable during the decade 2020-2029, and so on.

**First Option: Life Annuity.** An annuity payable monthly to the payee during the lifetime of the payee, ceasing with the last payment due prior to the death of the payee.

**Second Option: Life Annuity with Certain Period.** An annuity providing monthly income to the payee for a fixed period of 60, 120, 180, or 240 months (as selected), and for as long thereafter as the payee shall live.

**Third Option: Annuity Certain.** An amount payable monthly for the number of years selected which may be from 5 to 30 years.

**Fourth Option: As a Deposit at Interest.** The Company will retain the proceeds while the payee is alive and will pay interest annually thereon at a rate of not less than 3% per year. Upon the payee's death, the amount on deposit will be paid.

**Excess Interest.** At the sole discretion of the Company, excess interest may be paid or credited from time to time in addition to the payments guaranteed under any Optional Method of Settlement.

**Additional Options.** Any proceeds payable under the policy may also be settled under any other method of settlement offered by the Company at the time of the request.

Lincoln Life & Annuity Company of New York

*John N. Gatta*

President

## Optional Methods of Settlement (Continued)

**Life Annuity and Life Annuity with Certain Period Table for Each $1,000 Applied – Male**

| Settlement age of payee nearest birthday | Life Annuity | Number of instalments certain | | | |
| --- | --- | --- | --- | --- | --- |
| Age | | 60 | 120 | 180 | 240 |
| 10 | 2.84 | 2.84 | 2.84 | 2.84 | 2.84 |
| 11 | 2.85 | 2.85 | 2.85 | 2.85 | 2.85 |
| 12 | 2.87 | 2.87 | 2.86 | 2.86 | 2.86 |
| 13 | 2.88 | 2.88 | 2.88 | 2.88 | 2.87 |
| 14 | 2.89 | 2.89 | 2.89 | 2.89 | 2.89 |
| 15 | 2.91 | 2.91 | 2.91 | 2.90 | 2.90 |
| 16 | 2.92 | 2.92 | 2.92 | 2.92 | 2.91 |
| 17 | 2.94 | 2.94 | 2.93 | 2.93 | 2.93 |
| 18 | 2.95 | 2.95 | 2.95 | 2.95 | 2.94 |
| 19 | 2.97 | 2.97 | 2.97 | 2.96 | 2.96 |
| 20 | 2.99 | 2.99 | 2.98 | 2.98 | 2.98 |
| 21 | 3.00 | 3.00 | 3.00 | 3.00 | 2.99 |
| 22 | 3.02 | 3.02 | 3.02 | 3.02 | 3.01 |
| 23 | 3.04 | 3.04 | 3.04 | 3.04 | 3.03 |
| 24 | 3.06 | 3.06 | 3.06 | 3.06 | 3.05 |
| 25 | 3.08 | 3.08 | 3.08 | 3.08 | 3.07 |
| 26 | 3.10 | 3.10 | 3.10 | 3.10 | 3.09 |
| 27 | 3.13 | 3.13 | 3.12 | 3.12 | 3.11 |
| 28 | 3.15 | 3.15 | 3.15 | 3.14 | 3.14 |
| 29 | 3.17 | 3.17 | 3.17 | 3.17 | 3.16 |
| 30 | 3.20 | 3.20 | 3.20 | 3.19 | 3.19 |
| 31 | 3.23 | 3.23 | 3.22 | 3.22 | 3.21 |
| 32 | 3.26 | 3.25 | 3.25 | 3.25 | 3.24 |
| 33 | 3.28 | 3.28 | 3.28 | 3.28 | 3.27 |
| 34 | 3.32 | 3.31 | 3.31 | 3.31 | 3.30 |
| 35 | 3.35 | 3.35 | 3.34 | 3.34 | 3.33 |
| 36 | 3.38 | 3.38 | 3.38 | 3.37 | 3.36 |
| 37 | 3.42 | 3.42 | 3.41 | 3.40 | 3.39 |
| 38 | 3.46 | 3.46 | 3.45 | 3.44 | 3.42 |
| 39 | 3.50 | 3.49 | 3.49 | 3.48 | 3.46 |
| 40 | 3.54 | 3.54 | 3.53 | 3.52 | 3.50 |
| 41 | 3.58 | 3.58 | 3.57 | 3.56 | 3.53 |
| 42 | 3.63 | 3.62 | 3.62 | 3.60 | 3.57 |
| 43 | 3.68 | 3.67 | 3.66 | 3.64 | 3.62 |
| 44 | 3.73 | 3.72 | 3.71 | 3.69 | 3.66 |
| 45 | 3.78 | 3.77 | 3.76 | 3.74 | 3.70 |
| 46 | 3.83 | 3.83 | 3.81 | 3.79 | 3.75 |
| 47 | 3.89 | 3.88 | 3.87 | 3.84 | 3.80 |
| 48 | 3.95 | 3.94 | 3.93 | 3.89 | 3.85 |
| 49 | 4.01 | 4.01 | 3.99 | 3.95 | 3.90 |
| 50 | 4.08 | 4.07 | 4.05 | 4.01 | 3.95 |
| 51 | 4.15 | 4.14 | 4.11 | 4.07 | 4.00 |
| 52 | 4.22 | 4.21 | 4.18 | 4.13 | 4.06 |
| 53 | 4.30 | 4.29 | 4.26 | 4.20 | 4.12 |
| 54 | 4.38 | 4.37 | 4.33 | 4.27 | 4.18 |
| 55 | 4.46 | 4.45 | 4.41 | 4.34 | 4.24 |
| 56 | 4.55 | 4.54 | 4.50 | 4.42 | 4.30 |
| 57 | 4.65 | 4.63 | 4.58 | 4.50 | 4.35 |
| 58 | 4.75 | 4.73 | 4.68 | 4.58 | 4.43 |
| 59 | 4.86 | 4.84 | 4.78 | 4.66 | 4.49 |
| 60 | 4.98 | 4.95 | 4.88 | 4.75 | 4.56 |
| 61 | 5.10 | 5.07 | 4.99 | 4.84 | 4.62 |
| 62 | 5.23 | 5.20 | 5.11 | 4.93 | 4.69 |
| 63 | 5.37 | 5.34 | 5.23 | 5.03 | 4.75 |
| 64 | 5.53 | 5.49 | 5.35 | 5.13 | 4.82 |
| 65 | 5.69 | 5.64 | 5.49 | 5.23 | 4.88 |
| 66 | 5.86 | 5.80 | 5.62 | 5.33 | 4.94 |
| 67 | 6.04 | 5.98 | 5.77 | 5.43 | 5.00 |
| 68 | 6.24 | 6.16 | 5.92 | 5.53 | 5.06 |
| 69 | 6.45 | 6.35 | 6.07 | 5.63 | 5.11 |
| 70 | 6.67 | 6.56 | 6.23 | 5.73 | 5.16 |
| 71 | 6.91 | 6.78 | 6.39 | 5.83 | 5.21 |
| 72 | 7.16 | 7.00 | 6.56 | 5.93 | 5.25 |
| 73 | 7.43 | 7.25 | 6.73 | 6.02 | 5.29 |
| 74 | 7.72 | 7.50 | 6.90 | 6.11 | 5.33 |
| 75 | 8.02 | 7.77 | 7.08 | 6.20 | 5.36 |
| 76 | 8.35 | 8.05 | 7.26 | 6.28 | 5.39 |
| 77 | 8.70 | 8.34 | 7.43 | 6.36 | 5.41 |
| 78 | 9.08 | 8.65 | 7.61 | 6.43 | 5.43 |
| 79 | 9.48 | 8.98 | 7.78 | 6.49 | 5.45 |
| 80 | 9.91 | 9.31 | 7.95 | 6.55 | 5.46 |
| 81 | 10.38 | 9.66 | 8.11 | 6.60 | 5.47 |
| 82 | 10.87 | 10.02 | 8.27 | 6.65 | 5.48 |
| 83 | 11.39 | 10.40 | 8.42 | 6.69 | 5.49 |
| 84 | 11.95 | 10.78 | 8.56 | 6.72 | 5.50 |
| 85 | 12.55 | 11.16 | 8.69 | 6.75 | 5.50 |

# Optional Methods of Settlement (Continued)

## Life Annuity and Life Annuity with Certain Period Table for Each $1,000 Applied — Female

| Settlement age of payee nearest birthday Age | Life Annuity | Number of instalments certain | | | | Settlement age of payee nearest birthday Age | Life Annuity | Number of instalments certain | | | | Settlement age of payee nearest birthday Age | Life Annuity | Number of instalments certain | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | 60 | 120 | 180 | 240 | | | 60 | 120 | 180 | 240 | | | 60 | 120 | 180 | 240 |
| 10 | 2.78 | 2.78 | 2.78 | 2.78 | 2.78 | 35 | 3.22 | 3.22 | 3.22 | 3.21 | 3.21 | 60 | 4.59 | 4.58 | 4.54 | 4.46 | 4.35 |
| 11 | 2.79 | 2.79 | 2.79 | 2.79 | 2.79 | 36 | 3.25 | 3.25 | 3.24 | 3.24 | 3.23 | 61 | 4.69 | 4.68 | 4.63 | 4.56 | 4.42 |
| 12 | 2.81 | 2.81 | 2.81 | 2.80 | 2.80 | 37 | 3.28 | 3.28 | 3.27 | 3.27 | 3.26 | 62 | 4.80 | 4.79 | 4.73 | 4.64 | 4.49 |
| 13 | 2.82 | 2.82 | 2.82 | 2.82 | 2.81 | 38 | 3.31 | 3.31 | 3.30 | 3.30 | 3.29 | 63 | 4.92 | 4.90 | 4.84 | 4.73 | 4.57 |
| 14 | 2.83 | 2.83 | 2.83 | 2.83 | 2.83 | 39 | 3.34 | 3.34 | 3.34 | 3.33 | 3.32 | 64 | 5.04 | 5.02 | 4.95 | 4.83 | 4.64 |
| 15 | 2.84 | 2.84 | 2.84 | 2.84 | 2.84 | 40 | 3.38 | 3.37 | 3.37 | 3.36 | 3.35 | 65 | 5.18 | 5.15 | 5.07 | 4.93 | 4.71 |
| 16 | 2.85 | 2.85 | 2.85 | 2.85 | 2.85 | 41 | 3.41 | 3.41 | 3.41 | 3.40 | 3.39 | 66 | 5.32 | 5.29 | 5.20 | 5.03 | 4.78 |
| 17 | 2.87 | 2.87 | 2.87 | 2.87 | 2.86 | 42 | 3.45 | 3.45 | 3.44 | 3.44 | 3.42 | 67 | 5.48 | 5.44 | 5.33 | 5.14 | 4.85 |
| 18 | 2.88 | 2.88 | 2.88 | 2.88 | 2.88 | 43 | 3.49 | 3.49 | 3.48 | 3.47 | 3.46 | 68 | 5.64 | 5.60 | 5.47 | 5.25 | 4.92 |
| 19 | 2.90 | 2.90 | 2.89 | 2.89 | 2.89 | 44 | 3.53 | 3.53 | 3.52 | 3.51 | 3.50 | 69 | 5.82 | 5.77 | 5.62 | 5.36 | 4.99 |
| 20 | 2.91 | 2.91 | 2.91 | 2.91 | 2.91 | 45 | 3.57 | 3.57 | 3.57 | 3.55 | 3.54 | 70 | 6.01 | 5.95 | 5.78 | 5.47 | 5.05 |
| 21 | 2.93 | 2.93 | 2.92 | 2.92 | 2.92 | 46 | 3.62 | 3.62 | 3.61 | 3.60 | 3.58 | 71 | 6.21 | 6.15 | 5.94 | 5.58 | 5.11 |
| 22 | 2.94 | 2.94 | 2.94 | 2.94 | 2.94 | 47 | 3.67 | 3.67 | 3.66 | 3.64 | 3.62 | 72 | 6.44 | 6.36 | 6.11 | 5.70 | 5.17 |
| 23 | 2.96 | 2.96 | 2.96 | 2.96 | 2.95 | 48 | 3.72 | 3.72 | 3.71 | 3.69 | 3.67 | 73 | 6.68 | 6.59 | 6.29 | 5.81 | 5.22 |
| 24 | 2.98 | 2.97 | 2.97 | 2.97 | 2.97 | 49 | 3.77 | 3.77 | 3.76 | 3.74 | 3.71 | 74 | 6.94 | 6.83 | 6.48 | 5.92 | 5.27 |
| 25 | 2.99 | 2.99 | 2.99 | 2.99 | 2.99 | 50 | 3.83 | 3.82 | 3.81 | 3.79 | 3.76 | 75 | 7.22 | 7.09 | 6.67 | 6.03 | 5.31 |
| 26 | 3.01 | 3.01 | 3.01 | 3.01 | 3.01 | 51 | 3.89 | 3.88 | 3.87 | 3.85 | 3.81 | 76 | 7.53 | 7.36 | 6.86 | 6.13 | 5.35 |
| 27 | 3.03 | 3.03 | 3.03 | 3.02 | 3.02 | 52 | 3.95 | 3.94 | 3.93 | 3.90 | 3.86 | 77 | 7.86 | 7.65 | 7.06 | 6.22 | 5.38 |
| 28 | 3.05 | 3.05 | 3.05 | 3.05 | 3.04 | 53 | 4.01 | 4.01 | 3.99 | 3.96 | 3.92 | 78 | 8.21 | 7.97 | 7.26 | 6.31 | 5.40 |
| 29 | 3.07 | 3.07 | 3.07 | 3.07 | 3.06 | 54 | 4.08 | 4.08 | 4.06 | 4.02 | 3.97 | 79 | 8.60 | 8.30 | 7.46 | 6.40 | 5.43 |
| 30 | 3.09 | 3.09 | 3.09 | 3.09 | 3.09 | 55 | 4.15 | 4.15 | 4.13 | 4.09 | 4.03 | 80 | 9.02 | 8.65 | 7.66 | 6.47 | 5.45 |
| 31 | 3.12 | 3.12 | 3.11 | 3.11 | 3.11 | 56 | 4.23 | 4.22 | 4.20 | 4.16 | 4.09 | 81 | 9.48 | 9.02 | 7.86 | 6.54 | 5.46 |
| 32 | 3.14 | 3.14 | 3.14 | 3.14 | 3.13 | 57 | 4.31 | 4.30 | 4.28 | 4.23 | 4.15 | 82 | 9.97 | 9.41 | 8.05 | 6.59 | 5.48 |
| 33 | 3.17 | 3.17 | 3.16 | 3.16 | 3.16 | 58 | 4.40 | 4.39 | 4.36 | 4.30 | 4.22 | 83 | 10.50 | 9.82 | 8.23 | 6.64 | 5.49 |
| 34 | 3.19 | 3.19 | 3.19 | 3.19 | 3.18 | 59 | 4.49 | 4.48 | 4.45 | 4.38 | 4.29 | 84 | 11.08 | 10.24 | 8.40 | 6.69 | 5.49 |
| | | | | | | | | | | | | 85 | 11.70 | 10.67 | 8.55 | 6.73 | 5.50 |

## Annuity Certain Table for Each $1,000 Applied

| Number of years during which instalments will be paid | Amount of each instalment Annual | Monthly | Number of years during which instalments will be paid | Amount of each instalment Annual | Monthly | Number of years during which instalments will be paid | Amount of each instalment Annual | Monthly |
|---|---|---|---|---|---|---|---|---|
| 5 | $211.99 | $17.91 | 12 | $97.54 | $8.24 | 19 | $67.78 | $5.73 |
| 6 | 179.22 | 15.14 | 13 | 91.29 | 7.71 | 20 | 65.26 | 5.51 |
| 7 | 155.83 | 13.16 | 14 | 85.95 | 7.26 | 25 | 55.76 | 4.71 |
| 8 | 138.31 | 11.68 | 15 | 81.33 | 6.87 | 30 | 49.53 | 4.18 |
| 9 | 124.69 | 10.53 | 16 | 77.29 | 6.53 | | | |
| 10 | 113.82 | 9.61 | 17 | 73.74 | 6.23 | | | |
| 11 | 104.93 | 8.86 | 18 | 70.59 | 5.96 | | | |

LR521

# Lapse Protection Rider

This rider is made part of the policy to which it is attached if "Lapse Protection Rider" is shown on the *POLICY SPECIFICATIONS*.

**Lapse Protection.**  The policy will not lapse as long as the No-Lapse Value, less Indebtedness, is greater than zero even if the Cash Value, less Indebtedness, under the policy is insufficient to cover the Monthly Deduction.

On any Monthly Anniversary Day on which the Cash Value, less Indebtedness, under the policy is insufficient to cover the required Monthly Deductions, the policy will not lapse as long as the No-Lapse Value, less Indebtedness, is positive.  Under these circumstances, if the Cash Value becomes negative, the Cash Value will continue to be calculated, but with the following modifications:

(a)     Interest credited will be set at zero.

(b)     The negative Cash Value will be considered zero for the purpose of calculating the cost of insurance charges.

Under these circumstances, in the absence of additional premium payments, the Cash Value will become a larger negative value.

On any Monthly Anniversary Day on which both the No-Lapse Value, less Indebtedness, and the Cash Value, less Indebtedness, under the policy are less than or equal to zero, the Owner will be notified of the pending lapse as provided under the **Policy Lapse and Grace Period** provision of the policy.  Negative Cash Value would need to be repaid if the Owner wished to maintain the policy in force based upon a positive Cash Value, less Indebtedness.

The duration of the Lapse Protection provided by this rider may be reduced if: (a) scheduled premiums are not received on or before their due date; or (b) the Owner initiates any policy change that decreases the Cash Value, less Indebtedness, under the policy.  Policy changes that could decrease the Cash Value, less Indebtedness, include partial surrenders, loans, increases in Specified Amount, and a change from Death Benefit Option 1 to Death Benefit Option 2 or 3.

**No-Lapse Value.**  The No-Lapse Value, No-Lapse Death Benefit, No-Lapse Monthly Deduction, and No-Lapse Cost of Insurance are reference values and are not used in determining the actual Cash Value or Death Benefit provided by the policy.  On each Monthly Anniversary Day, the No-Lapse Value will be calculated as (1), plus (2), plus (3), minus (4), minus (5), minus (6) where:

(1)     is the No-Lapse Value on the preceding Monthly Anniversary Day.

(2)     is all premiums received since the preceding Monthly Anniversary Day, less a premium expense charge as follows:

(i)     If the premium payment received during a Policy Year, when combined with all previous premium payments for that Policy Year, results in total premium for the Policy Year that is less than or equal to an amount equal to $56.18 multiplied by the greater of: (a) the Specified Amount on the date of payment or (b) the Specified Amount on the Date of Issue, divided by 1000, the premium expense charge will be:

| | |
|---|---|
| In Policy Year  1 | 60.0% of each premium received |
| In Policy Years 2 and beyond | 55.0% of each premium received |

(ii)  If the premium payment (or any portion thereof) received during a Policy Year, when combined with all previous premium payments for that Policy Year, results in total premium for the Policy Year that is greater than an amount equal to $56.18 multiplied by the greater of: (a) the Specified Amount on the date of payment or (b) the Specified Amount on the Date of Issue, divided by 1,000, the premium expense charge for the portion of the payment in excess of such amount will be:

In Policy Year   1                              55.0% of each premium received
In Policy Years 2 and beyond                    50.0% of each premium received

The premium expense charge for the portion of the payment not in excess of such amount will be as described in (i) above.

(3)    is interest on items (1) and (2) above paid at the rates listed in the **Interest Credited on No-Lapse Value** provision.

(4)    is the **No-Lapse Monthly Deduction** for the month following the Monthly Anniversary Day.

(5)    is the amount of any partial surrenders (i.e. withdrawals) and associated fees under the policy on the Monthly Anniversary Day.

(6)    is the surrender charge for any decrease in Specified Amount, from the *TABLE OF SURRENDER CHARGES* shown in the policy, if any.

If premium is received at any time other than the beginning of a policy month, the rate of interest used in the calculation of item (3) above will be determined pro rata from the date of receipt.

On any day other than a Monthly Anniversary Day, the No-Lapse Value will be the No-Lapse Value as of the preceding Monthly Anniversary Day, plus all premiums received since the preceding Monthly Anniversary Day, less the premium expense charge noted in item (2) above, plus accumulated interest and less partial surrenders and associated fees.

The No-Lapse Value on the Date of Issue will be the initial premium received less: (i) the initial policy fee of $150.00, (ii) the No-Lapse Monthly Deduction for the first policy month and (iii) the premium expense charge.

The No-Lapse Value may become less than zero. If the No-Lapse Value, less Indebtedness, is less than or equal to zero, the policy may lapse as provided by the *POLICY LAPSE AND GRACE PERIOD* provision of the policy.

**No-Lapse Monthly Deduction.** The No-Lapse Monthly Deduction for a policy month will be calculated as Charge (1) plus Charge (2) where:

CHARGE 1    is the No-Lapse Cost of Insurance (as described in the **No-Lapse Cost of Insurance** provision) and the cost of any additional benefits provided by rider for the policy month; and

CHARGE 2    is an administrative expense charge of $10 per month beginning on the Date of Issue.

**Interest Credited on No-Lapse Value.** Lincoln Life will credit interest to the No-Lapse Value daily. The interest rate applied to that portion equal to the No-Lapse Value less Indebtedness  will be based on the table below:

| Attained Age | Daily Rate Compounded Daily | Annual Rate |
|---|---|---|
| 0-86 | 0.01596536% | 6.0% |
| 87-89 | 0.01853833% | 7.0% |
| 90-94 | 0.02361312% | 9.0% |
| 95-99 | 0.02611579% | 10.0% |

The interest rate credited on that portion of the No-Lapse Value equal to Indebtedness will be no less than 0.01206015% per day, compounded daily (4.5% annually).

On any Monthly Anniversary Day on which the No-Lapse Value is or becomes negative, the **Interest Credited on No-Lapse Value** will be set at zero.

**No-Lapse Cost of Insurance.**  The No-Lapse Cost of Insurance under this rider is determined on a monthly basis.  Such cost will be the result of (1) minus (2), multiplied by (3), and divided by 1,000, where:

(1)      is the **No-Lapse Death Benefit** at the beginning of the policy month, divided by 1.0032737,

(2)      is the No-Lapse Value at the beginning of the policy month prior to the **No-Lapse Monthly Deduction**, or zero, if greater, and

(3)      is the No-Lapse Factor as described in the **No-Lapse Cost of Insurance Rates** provision.

On any Monthly Anniversary Day on which the No-Lapse Value is or becomes negative, the negative No-Lapse Value will be considered zero for the purpose of calculating the **No-Lapse Cost of Insurance.**

**No-Lapse Death Benefit.**  The No-Lapse Death Benefit is calculated as described in the **Death Benefit** provision of the policy using the No-Lapse Value in lieu of the Cash Value.

For purposes of calculating the No-Lapse Death Benefit, if the No-Lapse Value is negative, it will be considered equal to zero.

**No-Lapse Cost of Insurance Rates.**  The No-Lapse Cost of Insurance Rates are described in the *TABLE OF NO-LAPSE FACTORS* attached to this rider.

A new *TABLE OF NO-LAPSE FACTORS* will be provided with respect to any increase in Specified Amount under the policy and will apply to the increase for the purpose of determining the No-Lapse Value.

**Termination.**  This rider and all rights provided under it will terminate automatically upon whichever of the following occurs first: (a) the Insured reaches insurance age 100, or (b) surrender or other termination of the policy.  If the rider terminates due to (a) above, coverage will continue as provided under the **Continuation of Insurance** provision of the policy. If the policy terminates and is reinstated, this rider will likewise be reinstated as set forth in the Reinstatement provision of the policy.

The duration of the Lapse Protection provided by this rider may be reduced if: (a) premiums or other deposits are not received on or before their due date; or (b) the Owner initiates any policy change that decreases the No-Lapse Value under the policy. Policy changes that could decrease the No-Lapse Value include, but are not limited to, partial surrenders, loans, increases in Specified Amount, or changes to Death Benefit Options 2 or 3.

**Policy Provisions.**  Except as provided above, this rider is subject to all the terms of the policy.

**Effective Date.**  This rider becomes effective as of its Date of Issue which is the Date of Issue of the policy.

Lincoln Life & Annuity Company of New York

*John N. Gatta*

Precedent

This Page is Intentionally Blank

## Table of No-Lapse Factors

SPECIAL NOTE:    These monthly reference factors are based on the sex, issue age (nearest birthday) and premium class of the Insured. If the Insured is in a rated premium class, the No-Lapse rates will be those in the table multiplied by the Risk Factor, if any, shown in the *POLICY SPECIFICATIONS*.  In determining the No-Lapse Cost of Insurance used in the calculation of the No-Lapse Value, Lincoln Life will add the amount of the Flat Extra Monthly Insurance Cost, if any, shown in the *POLICY SPECIFICATIONS*. These factors are not used in calculating the actual Cash Value or Death Benefit provided under the policy.

| Duration | Monthly Rate | Duration | Monthly Rate | Duration | Monthly Rate |
|---|---|---|---|---|---|
| 1 | 1.133320 | 2 | 1.133320 | 3 | 1.133320 |
| 4 | 1.133320 | 5 | 1.133320 | 6 | 1.133320 |
| 7 | 1.901320 | 8 | 2.065000 | 9 | 2.232720 |
| 10 | 2.403740 | 11 | 2.578560 | 12 | 2.759180 |
| 13 | 2.948980 | 14 | 3.154580 | 15 | 3.387620 |
| 16 | 3.684880 | 17 | 3.684880 | 18 | 3.684880 |
| 19 | 3.684880 | 20 | 3.684880 | 21 | 3.684880 |

LR589A

# Lincoln Life & Annuity Company of New York

Hartford, CT 06103-1106

1891

Insured(s):    ARTHUR B KRAMER

Policy or Annuity Number:    7214471

I hereby amend my application for the above numbered policy or annuity so that:

BENEFICIARY IS AS SPECIFIED ON THE POLICY/CERTIFICATE SPECIFICATIONS PAGE OF THE POLICY/CERTIFICATE, AS DELIVERED TO ME.

Dated at _____ on _____
                          City and State

Witness _____    1st Insured or Annuitant    _____

Witness _____    2nd Insured or Annuitant    _____

Witness _____    Applicant/Owner    _____
                                                                    (if other than Insured or Annuitant)

RETURN ONE SIGNED COPY TO:    Lincoln Life & Annuity Company of New York
                               New Business MBR2
                               350 Church Street
                               Hartford, CT 06103-1106

B2758e LNY

*Life Insurance Application Part I*     •• *Lincoln Life & Annuity Company of New York*

| PROPOSED INSURED A | *(Please Print in Blue or Black Ink)* | B35 NY – Page 1a |
|---|---|---|

**1a.** Name *(First, Middle Initial & Last)*        **1b.** ☐ Female ☒ Male
Arthur B Kramer

**1c.** Residence Address *(No, Street, P.O. Box)*
688 Westover Road

City    Stamford, CT 06902     State          Zip Code

**1d.** US Citizen ☒ Yes ☐ No      If No, what country?

**1e.** DOB *(MM/DD/YY)* 1-10-27    **1f.** Birth State New York    **1g.** SSN 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

**1h.** Occupation retired     **1i.** Driver's License No. & State 014836023 CT

**1j.** Business Name & Address     **1k.** Insured phone number & most convenient time to contact
Home (203) 357-7886   ☐ AM ☐ PM
Work (____) ____   ☐ AM ☐ PM

**2a.** List all Life Insurance or Annuities presently in force or currently applied for.  *(Provide details.)*    ☐None

| COMPANY | AMOUNT | IN FORCE | APPLIED FOR |
|---|---|---|---|
| Transamerica | 22,000,000 | ☒ | ☐ |
| Phoenix | 28,000,000 | ☒ | ☐ |
|  |  | ☐ | ☐ |

**2b.** What is the total amount of new life insurance coverage that will be placed in force with all companies, including this application? 10 mill p

**3.** Have you or will you replace, discontinue coverage, stop paying premiums, initiate a reduction in face amount, or borrow or surrender cash value on any Life Insurance or Annuity if this insurance is issued? *(If "Yes", provide details.)*   ☐Yes ☒No

| COMPANY | POLICY NO. | AMOUNT | ISSUE DATE | 1035 EXCHANGE |
|---|---|---|---|---|
|  |  |  |  | ☐ Yes |
|  |  |  |  | ☐ Yes |
|  |  |  |  | ☐ Yes |
|  |  |  |  | ☐ Yes |

**4a.** Do you contemplate flying, or have you flown during the past 2 years as a pilot, student pilot or crew member? *(If "Yes", an Aviation supplement is required.)*   ☐Yes ☒No

**4b.** Do you plan to participate or, have you participated within the past 2 years, in motor vehicle or boat racing, hang gliding, sky, or scuba diving or similar sports? *(If "Yes", an Avocation Questionnaire is required.)*   ☐Yes ☒No

**4c.** Do you contemplate residence or any travel outside of the United States or Canada within the next year? *(If "Yes", a Foreign Travel or Residence Questionnaire is required.)*   ☐Yes ☒No

**4d.** Have you ever used tobacco or products containing nicotine? *(If "Yes", check all that apply.)*   ☒Yes ☐No

| Type | Cigarettes ☒ | Cigar ☐ | Pipe ☐ | Chewing Tobacco ☐ | Snuff ☐ | Nicotine Patches/Gum ☐ |
|---|---|---|---|---|---|---|
| Date First Used |  |  |  |  |  |  |
| Date Last Used | Over 30 yrs ago |  |  |  |  |  |
| Quantity |  |  |  |  |  |  |

*If you answer "Yes" to any of the following questions, please give details in space provided below.*

**4e.** Have you had any convictions within the past 3 years for motor vehicle moving violations, or had your license suspended, revoked or restricted?   ☐Yes ☒No

**4f.** Have you ever applied for any Life or Health Insurance which was denied, required an extra premium or was issued for a reduced amount?   ☐Yes ☒No

**4g.** Have you ever been convicted of a felony?   ☐Yes ☒No

**5.** Details *(List details from questions above; please include question number details pertain to. An additional sheet of paper may be attached if necessary.)*

B35 NY

| POLICY INFORMATION | | B35 NY – Page 2 |
|---|---|---|

6a. Plan of Insurance   *ULLPR S*       6b. Amount $ *10,000,000*

6c. Death Benefit Option *(Complete for Universal Life and Variable Universal Life Products)*
☒ 1-Level   ☐ 2-Increase/Cash Value   ☐ 3-Increase by: *(Check one)* ☐Premium   ☐ Premium Less Policy Factor

6d. Supplemental Benefits or Riders/If Available *(Provide full details if applicable; e.g. face amounts, start year, end year, etc.)*

_____

_____

_____

6e. Save Age   ☒ Yes ☐ No  *(If not saving age, policy will be current dated.)*

| BILLING INFORMATION | | |
|---|---|---|

7a. Premium Frequency   ☒Annually   ☐ Semi-Annually   ☒Quarterly   ☐ Monthly (PAC/EFT)
7b. Special Billing *(Check one, if applicable.)*   ☐ New List Bill   ☐ Existing List Bill *(provide #)* _____
7c. Automatic Premium Loan *(Complete for Term & Whole Life only.)*   ☐ Yes   ☒ No
7d. Premium Notices To       *(Check all that apply.)*
☐ Insured at Residence   ☐ Insured at Business   ☒Owner *(Provide address below.)* ☐ Other _____
7e. Initial Premium Amount $ *131,175 per Quarter*   7f. Planned Premium Amount $ *131,175 Qr*
*(7f. & 7g. Complete for Universal Life Products)*

| OWNER |
|---|
- If a **Trust**, provide Trustee Name(s), Trust Name and Date of Trust.
- If **Split Dollar Endorsement**, provide Owner's Name & Interest, Sub-Owner name and Relationship.
- If **Split Dollar Assignment**, submit appropriate assignment form **AFTER** policy is in force.

8a. Primary *(Provide full name, Social Security Numbers and relationship.)*

*Arthur Kramer 2005 Insurance Trust dated August 29, 2005*

*Hudson United Bank, Trustee*

8b. If Multiple owners *(Check one.)* ☐ Joint with Right of Survivorship ☐ Tenants in Common *(Specify shares in fractions or percentages.)*
8c. Contingent *(Provide full name, Social Security Numbers and relationship)*

_____

8d. Owner Address *( No, Street, P.O. Box)* *C/o Hudson United Bank*
*75 Rockefeller Plaza*
City *New York*           State *NY*       Zip Code *10019*
8e. Owner Social Security/Tax Identification Number *20-6662290*
8f. Will this policy be funded through a split dollar arrangement? ☐ Yes ☒No

| TRUST VERIFICATION |
|---|

I/WE hereby certify that the Trustee(s) named in this application are the Trustee(s) for the named Trust, which is in full force and effect. Lincoln Life & Annuity Company of New York (hereinafter "Company") shall not be obliged to inquire into the terms of any trust agreement affecting this policy and shall not be chargeable with knowledge of the terms thereof. The Company may rely solely upon the signature(s) of the Trustee(s) named in this application to any receipt, release or waiver, or to any transfer or other instrument affecting this policy or any options privileges or benefits thereunder. Unless otherwise indicated, the signature(s) of all Trustee(s) named, or their successors, will be required to exercise any contractual right under the policy. The Company shall have no obligation to see to the use or application of any funds paid to the Trustee(s) in accordance with the terms of the policy. Any such payment made by the Company to the Trustee(s) shall fully discharge the Company with respect to any amounts so paid.

| BENEFICIARY *Beneficiaries share equally unless otherwise indicated.* |
|---|
- If a **Trust**, provide Trustee Name(s), Trust Name and Date of Trust.

9a. Primary *(Provide full name, Social Security Numbers and relationship.)*

*Arthur Kramer 2005 Insurance Trust*

*Hudson United Bank, Trustee*

9b. Contingent *(Provide full name, Social Security Numbers and relationship.)*

_____

_____

B35 NY

NON-MEDICAL PROPOSED INSUR___ A *(Answer this section only when required.) (l__ ___ answer "Yes"*     B3s5 NY – Page 3a
*to any of the following questions, please give details in space provided below.  An additional sheet of paper*
*may be attached if necessary.)*

10.  Provide full name/address/phone number of personal physician(s) and any other physicians seen.  Include date of last visit, reason, tests performed except HIV & treatment received:

Dr. Thomas Nash
New York, NY  6/05

| | | Yes | No |
|---|---|---|---|
| 11. | Have you had or been advised to have a check-up, EKG, x-ray, blood or urine test or any other diagnostic test (other than HIV tests)? | ☒ | ☐ |
| 12. | Have you been a patient in a hospital, clinic, sanatorium or other medical facility, or been advised to have any hospitalization or surgery which has not been completed? | ☒ | ☐ |
| 13. | **Have you ever had any Indication of, or been treated for:** | **Yes** | **No** |
| a. | Chest pain, high blood pressure, heart disease, heart murmur or other disorders of the heart or blood vessels? | ☐ | ☒ |
| b. | Ulcers, colitis, jaundice, or other diseases of the stomach, liver, intestines, gallbladder, kidney or urinary bladder? | ☐ | ☒ |
| c. | Seizures, fainting, dizziness, epilepsy, stroke or paralysis? | ☐ | ☒ |
| d. | Any nervous, mental, or emotional disorder, or received counseling for anxiety, depression, stress or any other emotional condition? | ☐ | ☒ |
| e. | Any tumor, cancer, cysts, skin disorder or any disorder of the lymph nodes? | ☒ | ☐ |
| f. | Arthritis, gout, or any disorder of the back, spine, muscles, nerves, bones or joints? | ☒ | ☐ |
| g. | Diabetes, thyroid, or other endocrine or glandular disorder? | ☐ | ☒ |
| h. | Anemia or any other blood disorder? | ☐ | ☒ |
| i. | Asthma, emphysema, shortness of breath, allergies,  sleep apnea or any other disorder of the respiratory system? | ☐ | ☒ |
| j. | Any disorder of the eyes, ears, nose or throat? | ☐ | ☒ |
| k. | Any complication of pregnancy or disorder of the testicles, prostate, breasts, ovaries, uterus or cervix? | ☐ | ☒ |
| l. | Any mental or physical disorder not listed above? | ☐ | ☒ |
| 14. | Have you ever been diagnosed as having or been treated by a physician for Acquired Immune Deficiency Syndrome or an AIDS related condition? | ☐ | ☒ |
| 15. | Have you used alcoholic beverages?  *(If Yes, Provide Type, Frequency & Amount.)*  Type _____ Frequency *Social occn* Amount _____ | ☒ | ☐ |
| 16. | Have you ever been treated for drug or alcohol abuse or been advised by your doctor to limit your use of alcohol or any medication, prescribed or not? Have you ever used hallucinogenic or narcotic drugs not prescribed by a doctor? | ☐ | ☒ |

17.  List all medication and dosages you are currently taking to include prescriptions, over the counter drugs, aspirin and herbal supplements.

Flomax

18.  Details *(List details from questions above; please include question number and insured details pertain to.  An additional sheet of paper may be attached if necessary.)*

11. routine exams ckss + lab work v/ Dr. Nash.
12. 2 knee replacements 7½ yrs ago, Light hip replacement 2-3 yrs ago Greenwich Hosp.
13e basal cell carcinoma removed 3yrs ago Dr. Kahan  13e see #12

19.  Height 5' 10"  Weight 180  Indicate any weight change in past year _____  Birth Weight _____  *(If age 5 or younger.)*

20.

| | Age if Living & Health Status | Diabetes, Cancer, Heart Disease? | Age at Death & Cause | Diabetes, Cancer, Heart Disease? |
|---|---|---|---|---|
| a. | Father | | 72 unknown | |
| b. | Mother | | 96 old age | no |
| c. | Sibling(s) | | | |

B35 NY

ILLUSTRATION OF BENEFITS                                                    B35 NY – Page 4

Illustration of benefits, including death benefits, policy values and cash surrender values are available upon request.

## TAXPAYER IDENTIFICATION NUMBER CERTIFICATION

Under penalties of perjury, it is certified that (a) the social security or Employer ID numbers shown in this application are correct taxpayer identification numbers, and (b) the holders of said numbers are not subject to any backup withholding of U.S. Federal income tax for failure to report interest or dividends.

## CERTIFICATIONS

I/WE have read the questions and answers in this application and declare that they are complete and true to the best of my (our) knowledge and belief. I/WE understand, a) that this Application shall form a part of any Policy issued, and b) that no Agent/Representative of the Company shall have the authority to waive a complete answer to any question in this Application, make or alter any contract, or waive any of the Company's other rights or requirements. I/WE further understand that (except as provided in the Temporary Life Insurance Agreement if advance payment has been made or acknowledged below and such Agreement issued), insurance will take effect under the Policy only when: 1) the Policy has been delivered to me/us; 2) the initial premium has been paid in full during the lifetime of the Proposed Insured(s); and 3) the Proposed Insured(s) remain in the same state of health and insurability as described in each part of the application at the time conditions 1) and 2) are met.

I/WE have paid $ -0-      to the Agent/Representative in exchange for the Temporary Life Insurance Agreement, and I/we acknowledge that I/we fully understand its terms.

## AUTHORIZATION

The purpose of this authorization is to allow Lincoln Life & Annuity Company of New York, hereinafter Company, to determine eligibility for life coverage or a claim for benefits under a life policy.

I/WE authorize any medical professional, hospital or other medical institution, insurer, MIB, Inc., or any other person or organization that has any records or knowledge of me/us or my/our physical or mental health or insurability to disclose that information to the Company, its reinsurers, or any other party acting on the Company's behalf.

I/WE authorize the Company to disclose medical information to MIB, Inc., and to other insurers to whom I/we may apply for coverage.

This authorization shall be valid for two years after it is signed. A photographic copy of this authorization shall be as valid as the original. I/We will be given a copy of this authorization at my/our request.

I/WE understand that I/we may revoke this authorization at any time by written notification to the Company; however, any action taken prior to notification will not be affected. I/WE acknowledge that if I/we revoke this authorization, the Company will be unable to consider any application for insurance.

If an investigative consumer report is obtained, I/we ☐ DO    ☐ DO NOT request to be interviewed.

I/WE ACKNOWLEDGE receipt of the Important Notice containing the Privacy Notice, Investigative Consumer Report, and MIB, Inc., Information.

Dated at (City and State)   _New York    NY_

Signature of Proposed Insured A                    Witness                                    Date   _10/24/05_

Signature of Proposed Insured B                    Witness                                    Date

Signature of Applicant/Owner/Trustee   _Robert J. Davis_   Witness                          Date   _10/24/05_
(Provide Officer's Title if policy is owned by   VF
a Corporation )

B35 NY

# Lincoln Life & Annuity Company of New York

**Flexible Premium Adjustable Life Insurance Policy – Non-Participating**
Death Benefit payable in the event of death of the Insured.  Adjustable Death Benefit.
Surrender Value payable upon surrender of the policy.
Flexible Premiums payable to the Insured's age 100 or death of the Insured, whichever is earlier.
Premium Payment Periods and Supplementary Coverages as shown in the Policy Specifications.

LN589

# Exhibit 5



**JSB, Esq.**

Jonathan S. Berck, LLC
75 Rockefeller Plaza
18th Floor
New York, New York 10019
Tel: +1.212.812.2165
Fax: +1.866.285.9202
E-Mail: law@jsberck.com
Web Site: www.jsberck.com

February 27, 2008

Lincoln Financial Group
Claim Dept. – 5310
100 North Greene Street
Greensboro, NC 27401

Re: Arthur Kramer Death Claim

Dear Sir/Madam:

I am the trustee of the Arthur Kramer 2005 Insurance Trust dated August 29, 2005 (the "Trust"). The Trust owns a $10 million insurance policy on the life of Arthur Kramer (the "Insured"). The following information is contained on the enclosed Claimant's Statement:

Insurer: Lincoln Life and Annuity Company of New York
Policy No: 7214471
Date of Death: January 26, 2008
Social Security Number of Insured: 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

Along with the Claimant's Statement and Distinctive Payee Arrangement forms, I have enclosed a certified copy of the Insured's Certificate of Death obtained from the City of New York.

Please process this claim and forward the death benefit payable to the Trust to the address listed above.

Sincerely,

*Jonathan S. Berck*

Jonathan S. Berck, Trustee of the
Arthur Kramer Insurance Trust

**TAL RECORDS CERTIFICATE**

DATE FILED    THE CITY OF NEW YORK – DEPARTMENT OF HEALTH AND MENTAL HYGIENE

NEW YORK CITY
DEPARTMENT OF HEALTH
AND MENTAL HYGIENE
JAN-28-2008 06:34 PM

**CERTIFICATE OF DEATH**    Certificate No.    **156-08-003758**

1. DECEDENT'S
LEGAL NAME    *Arthur* (First Name)    (Middle Name)    *Kramer* (Last Name)

**Place Of Death**

| 2a. New York City | 2c. Type of Place | 2d. Name of hospital or other facility (if not facility, street address) |
|---|---|---|
| 2b. Borough *Manhattan* | 1 ☐ Hospital Inpatient  4 ☐ Nursing Home/Long Term Care Facility  5 ☐ Hospice Facility  2 ☐ Emergency Dept/Outpatient  6 ☐ Decedent's Residence  3 ☐ Dead on Arrival  7 ☐ Other Specify | *New York Weill Cornell* |

| Date and Time of Death | 3a. (Month) (Day) (Year-yyyy) *January 26 2008* | 3b. Time *3:50* ☐ AM ☒ PM | 4. Sex? *Male* | 5. Date last attended by a Physician *01 mm 26 dd 2008 yyyy* |
|---|---|---|---|---|

6. Certifier. I certify that death occurred at the time, date and place indicated and that to the best of my knowledge traumatic injury or poisoning DID NOT play any part in causing death, and that death did not occur in any unusual manner and was due entirely to NATURAL CAUSES. See instructions on reverse of certificate.

Name of Physician *Reena Khianey*    Signature    M.D.

Address *585 East 68th Street-New York 1065*    License No. *243518*    Date *January 26 2008*

| 7a. Usual Residence State *Connecticut* | 7b. County *Fairfield* | 7c. City or Town *Stamford* | 7d. Street and Number *688 Westover Road* | Apt. No. *069202* | 7e. Inside City Limits? ☒ Yes 2 ☐ No |
|---|---|---|---|---|---|

| 8. Date of Birth (Month) (Day) (Year-yyyy) *January 10 1927* | 9. Age at last birthday (years) *81* | Under 1 Year  Months  Days | Under 1 Day  Hours  Minutes | 10. Social Security No. *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* |
|---|---|---|---|---|

| 11a. Usual Occupation (Type of work done during most of working life. Do not use "retired") *Attorney* | 11b. Kind of business or industry *Law* | 12. Aliases or AKAs |
|---|---|---|

| 13. Birthplace (City & State or Foreign Country) *New York, NY* | 14. Education (Check the box that best describes the highest degree or level of school completed at the time of death)  1 ☐ 8th grade or less, none  2 ☐ 9th – 12th grade, no diploma  3 ☐ High school graduate or GED  4 ☐ Some college credit, but no degree  5 ☐ Associate degree (e.g., AA, AS)  6 ☐ Bachelor's degree (e.g., BA, AB, BS)  7 ☐ Master's degree (e.g., MA, MS, MEng, MEd, MSW, MBA)  8 ☒ Doctorate degree (e.g., PhD, EdD) or Professional degree (e.g., MD, DDS, DVM, LLB, JD) |
|---|---|

| 15. Ever in U.S. Armed Forces? 1 ☒ Yes 2 ☐ No | 16. Marital Status at Time of Death 1 ☒ Married  2 ☐ Married, but separated  3 ☐ Divorced  4 ☐ Never married  5 ☐ Widowed  6 ☐ Unknown | 17. Surviving Spouse's Name (If wife, name prior to first marriage) (First, Middle, Last) *Alice Blumenfeld* |
|---|---|---|

| 18. Father's Name (First, Middle, Last) *George Leon Kramer* | Mother's Maiden Name (Prior to first marriage) (First, Middle, Last) *Rebecca Sarah Wishengrad* |
|---|---|

| 20a. Informant's Name *Alice Kramer* | 20b. Relationship to Decedent *Wife* | 20c. Address (Street and Number) City & State) ZIP Code) *688 Westover Road, Stamford, CT 069202* |
|---|---|---|

| 21a. Method of Disposition 1 ☐ Burial  2 ☒ Cremation  3 ☐ Entombment  4 ☐ City Cemetery  5 ☐ Other Specify | 21b. Place of Disposition (Name of cemetery, crematory, other place) *Garden State Crematory* |
|---|---|

| 21c. Location of Disposition (City & State or Foreign Country) *North Bergen, NJ* | 21d. Date of Disposition mm *01* dd *29* yyyy *2008* |
|---|---|

| 22a. Funeral Establishment *Frank E. Campbell-The Funeral Chapel* | 22b. Address (Street and Number) City & State) ZIP Code) *1076 Madison Avenue, New York, NY 10028* |
|---|---|

VR 16 (Rev. 01/06)

This is to certify that the foregoing is a true copy of a record on file in the Department of Health and Mental Hygiene. The Department of Health and Mental Hygiene does not certify to the truth of the statements made thereon as no inquiry as to the facts has been provided by law.

Do not accept this transcript unless it bears the security features listed on the back. Reproduction or alteration of this transcript is prohibited by §3.21 of the New York City Health Code and the purpose is the evasion or violation of any provision of the Health Code or any other law.

DATE ISSUED
- February 20, 2008 ..

Steven P. Schwartz, Ph.D., City Registrar



Q 00001488

The City of New York


**Lincoln**
Financial Group®

Claim Dept. - 5310
P.O. Box 21008
Greensboro, NC 27420-1008
Phone: 800-487-1485
Fax: 336-691-3152

Overnight Address:
Lincoln Financial Group
Claim Dept. - 5310
100 North Greene Street
Greensboro, NC 27401

## DISTINCTIVE PAYEE ARRANGEMENTS

<u>Insured Information</u>

Name _Arthur B. Kramer_

Policy/Certificate Number(s) _721447/_

SSN/TIN _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_

This form provides information on what is needed if the proceeds from this policy/certificate are to be paid to someone other than an individual beneficiary. If one of the situations listed applies to you, please check that box and follow the instructions given. Return this section, with the completed Claimant's Statement.

☐ **Estate**

If the proceeds of this policy/certificate are to be paid to an estate, you must submit a certified copy of the executor's, personal representative's or administrator's court appointment. The Claimant's Statement must be fully completed and signed by the executor, personal representative or administrator including the estate tax identification number. The decedent's Social Security Number should not be used. If a Tax ID Number is not provided, mandatory tax withholding will be assessed.

If an executor, personal representative or administrator is not to be appointed, please contact the Clerk of Court in the county/parrish of the insured's residence to obtain the proper small estate procedure.

☒ **Trust** - Please furnish the trust's tax identification number and a copy of the first and last pages of the trust document. (Failure to include this information may cause considerable delay in processing the claim.) The decedent's Social Security Number should not be used. If a tax identification number is not provided, mandatory tax withholdings will be assessed.

Lincoln Financial recommends that before completing this form, the Trustee consult with legal and/or tax advisors that are not only familiar with the terms of the Trust, but also the requirements and provisions of the generation skipping transfer taxes imposed by the Internal Revenue Code. This declaration may be completed by either the Trustee or an attorney that represents the Trust. The person signing this declaration on behalf of the Trust should understand that Lincoln Financial is relying on this declaration in complying with the generation skipping transfer tax withholding and reporting rules.

Name of Trust _Arthur Kramer 2005 Insurance Trust_ Date of Trust _August 29, 2005_

Printed Name of Trustee _Jonathan Berck_

Trustee Tax ID Number _20-6662290_

If This Declaration Is Completed By An Attorney Representing The Trust, Please Print Name and Address:

Name _____

Address _____

The Internal Revenue Code imposes a Generation Skipping Transfer ("GST") tax on transfers of property to individuals that are two or more generation below the generation of the individual making the transfer. The GST applies to both lifetime transfer and transfer at death. The GST applies to direct gifts as well as gifts to trusts. The GST rules are very complex, and if you are not familiar with them, you should seek out and rely upon the advice of your attorney or other advisor before completing this Declaration.

The IRS requires Lincoln Financial to report and collect the GST tax on any life insurance death benefit of $250,000 or more. In order for Lincoln Financial to know if GST taxes should be withheld from the death benefits, we need this Declaration completed and returned to us.

☒ - The undersigned certifies that the above identified Trust is not a generation skipping transfer trust.
*Check this box , if for example, the only beneficiaries of the trust are the children of the insured. This box would also be appropriate if a grandchild is a beneficiary only because his or her parent (the insured's child) has died.*

☐ - The undersigned certifies that although the trust is a generation skipping transfer trust, the payment of the life insurance death proceeds is (i) excluded from the definition of a generation skipping transfer by IRC §2611(b) or (ii) is otherwise not subject to current generation skipping transfer taxes (e.g., the insured had no incidents of ownership in the policy at the time of his or her death).
*Check this box if, for example, the insured established, while living, an irrevocable life insurance trust for the benefit of his children and grandchildren, and the assets in that trust are not included in the insured's taxable estate under IRS rules. Even if the only beneficiaries are the insured's grandchildren, if the insured has no "incidence of ownership" in the trust, the GST tax will not apply at the time Lincoln Financial pays the life insurance death benefit. In some cases, the insured may have been required to report and pay GST taxes (or allocate part of his or her lifetime exemption to the contributions) on prior gifts to the trust. There are numerous special estate tax rules that should be considered, including the rule that transfers of property within three years of the date of death can result in the transferred property being included in the individual's estate.*

☐ - The undersigned certifies that the above identified Trust is a generation skipping transfer trust as that term is defined and used in the Internal Revenue Code. Attached to this statement is a true and correct copy of an allocation of all or a portion of the generation skipping transfer tax exemption (Schedule R-1 to IRS Form 706) to this Trust.
*Check this box if the payment of the death benefit is subject to the GST tax, but you wish to allocate all or a portion of the GST tax exemption to this policy. Lincoln Financial must receive a completed Schedule R-1 before any amount can be allocated to the policy death benefit. If the allocation is for less than the policy proceeds, Lincoln Financial will withhold GST taxes on the balance.*

☐ - The undersigned certifies that the above identified Trust is a generation skipping transfer trust as that term is defined and used in the Internal Revenue Code and that the Trust has an inclusion ratio of one (i.e., there is no exemption remaining to be allocated to this Trust). If this box is checked, Lincoln Financial will withhold generation skipping transfer taxes from the payment at the amount required by law.
*Check this box if the entire amount of the death benefit is subject to the GST tax. Lincoln Financial will withhold at the applicable rate on the entire amount.*

By signing this declaration on behalf of the Trust, the undersigned represents (1) that a full and complete inquiry as to the facts has been made, (2) that this declaration is true and correct to the best of my knowledge and belief, and (3) that this declaration is made with the specific knowledge that Lincoln Financial will rely on this statement in tax reporting.

Trustee Signature _____    Date _2/27/08_

SWORN TO AND SUBSCRIBED before me, this _27_ day of _February_ 20 _08_

Notary Public _____

My Commission Expires _____

> BARBARA NI'sRO
> Notary Public, State of New York
> No. 41-4668815
> Qualified in Nassau County
> commission Expires Feb. 28, 20__

☐ **Guardian** - *Includes; minors, incompetent or physically incapacitated beneficiaries*

If the proceeds of this policy/certificate are to be paid to a minor, you must submit a certified copy of the court order appointing the guardian of the minor's Estate. The guardian must fully complete and sign the Claimant's Statement. Include the minor's Social Security Number on the Claimant's Statement. If no guardian has been appointed, the Company will hold the proceeds at interest until age of majority. A supplementary contract will be opened after the Company has received a current address and copies of the birth certificate and a Social Security Number for each minor.

If the proceeds of this policy/certificate are to be paid to a beneficiary who has been declared mentally incompetent, you must submit a certified copy of the court order appointing the guardian of the beneficiary's Estate. The guardian must complete and sign the Claimant's Statement and include the beneficiary's Social Security Number.

If the proceeds of this policy/certificate are to be paid to a beneficiary who is physically incapacitated, the beneficiary can make his or her mark on the Claimant's Statement, witnessed by two persons, including the full addresses of both witnesses.

☐ **Corporate**

If the proceeds of this policy/certificate are to be paid to a corporation, the Claimant's Statement must be fully completed and signed by an officer of the corporation, including the officer's title. Include the corporate tax identification number and a corporate resolution or similar document signed by officers of that corporation that clearly defines who can act on behalf of the corporation.

Is the company incorporated?    ☐ Yes    ☐ No

☐ **Partnership**

If the proceeds of this policy/certificate are to be paid to a partnership, a Claimant's Statement must be fully completed and signed by the surviving partner(s). Include the partnership's tax identification number and a partnership agreement or similar document signed by the partners that clearly defines who can act on behalf of the partnership.

☐ **Split-Dollar**

The beneficiary and the employer must come to an agreement based on the split dollar document provisions. A Claimant's Statement must be fully completed and signed by each party for their share of the proceeds, stating also the other's interest based on their mutual agreement.

Employer's Share $ _____

Employer's Signature _____  Date _____

Title of Signer _____

Employer Address _____

Employer Address _____

City, State, Zip _____

Employer's Tax ID number _____

Beneficiary's Signature _____  Date _____

☐ **Assignment**

If the policy/certificate has been collaterally assigned, you must complete this section.

Policy/certificate number(s) _____  Pay this amount to assignee $ _____

By signing below, you agree that all claims paid under the policy(ies)/certificate named may be settled by paying the indicated amount to the assignee. The balance, if any, will be paid to the beneficiary of the policy/certificate.

Assignee's Signature _____  Date _____

Assignee's Title _____

Assignee's Company Name _____

Address _____

City, State, Zip _____

Beneficiary's Signature _____  Date _____

Under the terms of the assignment, the assignee may have the right to collect the entire proceeds. The assignee should fully complete and sign the Claimant's Statement. If the assignee is not claiming any of the proceeds, a formal release should be furnished along with the beneficiary's fully completed Claimant's Statement.

☐ **Family Policy/Certificate, Family Rider or Spouse/Child Rider** - *To be completed only if primary insured has deceased.*

If the claim is being made under a family policy/certificate, family rider or a child/spouse rider, list the full names and dates of birth of all living children born of the marriage, step-children or legally adopted children. If additional space is needed, attach a separate sheet with the requested information.

Name _____  SSN _____  Date of Birth _____

Name _____  SSN _____  Date of Birth _____

Name _____  SSN _____  Date of Birth _____

☐   Children of the Insured or Born of the Marriage and the date of birth

If the proceeds of this policy/certificate are to be paid to either the children of the Insured or children born of the marriage, please provide a list of the full names, addresses, social security numbers, and the dates of birth for each child living or deceased.

I, _____, hereby certify that the names, dates of birth, dates of death and martial status of

all the children, including legally adopted children of _____.

(Insured or Insured Parent)

Are as follows:
(If any child is adopted so indicate beside the name)

| Name | Date of Birth | Date of Death | Address | SSN |
|---|---|---|---|---|
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |

A posthumous child is to be born (answer Yes or No)     ☐ Yes    ☐ No

I further certify that my relationship to *Arthur B. Kramer*_____, the insured named above, is that of

*trustee under insurance trust.*

I understand that Lincoln Financial Group may rely on the truth of the aforesaid statements in making payment under its policy or contract.

*Jonathan L. Beide, Trustee*
Signature

*75 Rockefeller Plaza, 18th Floor*
Address

*New York            NY          10019*
City                        State         Zip Code

TRUST AGREEMENT

OF

ARTHUR KRAMER 2005 INSURANCE TRUST

By and Among

Hudson United Bank, the Trustee, Arthur Kramer, the Depositor

and Liza Kramer, the Beneficiary

Dated as of August 29, 2005

IN WITNESS WHEREOF, the undersigned have caused these presents to be executed as of the day and year above written.

Arthur Kramer,
as Depositor

By: _____
Name:  Arthur Kramer


Arthur Kramer 2005 Insurance Trust
Hudson United Bank, Trustee

By: _____


Liza Kramer,
as initial Beneficiary

By: _____
Liza Kramer


Witnesses:

_____
Steven Lockwood

_____
David Capitelli


11



**Financial Group®**

| | Claim Dept. - 5310 | Overnight Address: |
| | P.O. Box 21008 | Lincoln Financial Group |
| | Greensboro, NC 27420-1008 | Claim Dept. - 5310 |
| | Phone: 800-487-1485 | 100 North Greene Street |
| | Fax: 336-691-3152 | Greensboro, NC 27401 |

## CLAIMANT'S STATEMENT

### IMPORTANT INFORMATION

Claim Number: _____0 5 7 0 4 9 4_____

- Please complete all necessary sections and submit a certified copy of the insured's/certificate holder's death certificate, if not already provided, stating the cause and manner of death.
- If any beneficiary entitled to receive the proceeds at the insured's/certificate holder's death died before the insured/certificate holder, you must submit a copy of that beneficiary's death certificate.
- Power of Attorney: If an attorney-in-fact under a Power of Attorney is completing the Claimant's Statement on behalf of the claimant, a copy of the Power of Attorney document must be provided. If the Power of Attorney document was executed more than ten years ago, additional information from the attorney-in-fact may be required. The Social Security number of the person who granted the Power of Attorney must be used. The attorney-in-fact's Social Security number may not be used.
- We *do not require* the policy(ies)/certificate(s) be returned to us for filing of a claim. However, we do ask that they be *destroyed* once payment is received.
- If you have any questions, please contact Claim Services at 800-487-1485.
- Please return all required documents to the address provided above.

*Please type or print all information.*

### GENERAL INFORMATION

Issued by (the Company) _Lincoln Life and Annuity Company of New York_

Policy/Certificate Number(s) _7 2 1 4 4 7 1_

### DECEASED INSURED'S INFORMATION: *Please list any other name that may have been used by this insured/certificate holder, such as maiden name or nickname.*

Name _Arthur B. Kramer_

Address _688 Westover Road_

City, State, Zip _Stamford, CT  06902_

Date of Birth _1/10/27_          Date of Death _1/26/08_

Social Security Number _578 - 30 - 2203_

Cause of Death _Stroke_

If the policy(ies)/certificate(s) contains an accidental death benefit, are you claiming it?    ☐ Yes*   ☒ No

*\*Furnish all detailed newspaper clippings, police reports and coroner's report. We may require additional information, depending on the circumstances of the death.*

### PAYMENT INFORMATION

Lump sum payments of $5,000 or more from one or more policies will be placed in an interest bearing account called SecureLine. This account provides immediate and easy access to your account the day you receive your account checkbook - simply by writing a check. You can write as many checks as you wish. Each check must be for at least $250 and the total of all checks written may not exceed your balance.

- Interest Rates - Your SecureLine account starts earning interest the day the account is opened. Interest is compounded daily and credited to your account on the last day of each month. The minimum rate credited is equal to the national average for interest bearing checking accounts as published daily by Bloomberg, plus 1%. The company may increase that minimum rate at our discretion. The interest rate will be updated monthly. You earn interest the same day your proceeds are paid to the account and continue to earn interest until all the funds are withdrawn. Interest earned on your account balance may be taxable; form 1099INT will be sent in January of each year to report taxable income. You should consult your tax advisor for more information.

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.
CL05983

Page 1 of 3
7/07

• No Fees or Administrative Charges - There are no fees for checks and no fees for monthly checking account services. You will be charged a fee if you stop a payment, present a check for payment without sufficient funds or order a copy of a cancelled check.

Your checkbook will be enclosed with your account opening packet. You may order additional checks at no cost. Just contact a Customer Service Representative at the toll free number provided in the opening packet.

• Minimum Balance - Your SecureLine account will remain open until your balance drops below $250, at which time your account will be automatically closed and a check for the remaining funds plus the interest will be mailed to you.

The SecureLine account is not available in Alaska, Arkansas, Colorado, Florida, Kansas, Louisiana, Nevada, North Carolina and North Dakota.

To help fight the funding of terrorism and money-laundering activities, the U.S. Government has passed the USA Patriot Act, which requires banks, including our processing bank, to obtain, verify and record information that identifies persons who engage in certain transactions with or through a bank. This means that we will need to verify the name, residential or street address (no P.O. Boxes), date of birth and social security number or other tax identification number of all account owners.

CLAIMANT INFORMATION: *The beneficiary must complete this section. If name change has occurred due to marriage, divorce, etc., please include both names with documentation showing such name change (such as certificate of marriage, etc.)*

Name __Arthur Kramer 2005 Insurance Trust dated August 29 2005__

Address __c/o Jonathan Berck, trustee, 75 Rockefeller Plaza, 18th Floor__

City, State, Zip __New York, NY    10019__

SSN/TIN __20-6662290__

Under penalties of perjury, I certify that:

1. The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me), and

2. Iam not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding, and

3. I am a U.S. person (including a U.S. resident alien).

Date of Birth __3/24/59__                    Relationship to Deceased __Trustee of Insurance Trust__

Day Phone Number __(212) 812-2165__          Evening Phone Number __(917) 470-2404__

Are you a US citizen?  ☒ Yes   ☐ No, indicate country _____

If you would like us to mail your proceeds to an address other than the above, please specify:

Name _____

Address _____

City, State, Zip _____

SIGNATURE: *The beneficiary must complete this section.*

The Internal Revenue Service does not require your consent to any provision of this document other than the certifications required to avoid backup withholding.

You understand that by furnishing a claim form, the "Company" does not acknowledge that there is any insurance in force or that you are the designated beneficiary. If necessary, the "Company" may ask for more information to confirm this claim.

By signing below, I certify that the information provided is complete and accurate as shown.

__Jonathan R. Berck, Trustee__                     __1/27/08__

Beneficiary's Signature                              Date

## Fraud Warning

WARNING: Any person who knowingly and with intent to injure, defraud or deceive any insurance company or other person files a statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material on this form, commits a fraudulent insurance act, and is guilty of a crime, as determined by a court of competent jurisdiction. Penalties may include imprisonment, fines or denial of insurance benefits.

*These states require the following fraud warnings:*

*California (For your protection, California law requires this to appear.):* Any person who knowingly presents a false or fraudulent claim for the payment of a loss is guilty of a crime and may be subject to fines and confinement in prison.

*Kentucky:* Any person who knowingly and with intent to defraud any insurance company or other person files a statement of claim containing any materially false information or conceals, for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime.

*New Jersey:* Any person who knowingly files a statement of claim containing any false or misleading information is subject to criminal and civil penalties.

*New York:* Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed five thousand dollars and the stated value of the claim for each such violation.

*Pennsylvania:* Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties.