United States District Court
Southern District of New York

-----------------------------------X
ALICE KRAMER, as Personal Representative
of the Estate of Arthur Kramer,

                    Plaintiff,

          -against-                          08 Civ. 2429 (DAB)
                                             OPINION

LOCKWOOD PENSION SERVICES, INC., TALL
TREE ADVISORS, INC., LIFE PRODUCTS
CLEARING, LLC, TRANSAMERICA OCCIDENTAL
LIFE INSURANCE CO., LINCOLN LIFE &
ANNUITY CO. OF NEW YORK AND JONATHAN
S. BERCK,

                    Defendants.
-----------------------------------X

-----------------------------------X
PHOENIX LIFE INSURANCE CO.,

                    Counterclaim
                    Crossclaim and
                    Third-Party Plaintiff,

          -against-

ALICE KRAMER, as Personal Representative
of the Estate of Arthur Kramer,

                    Counterclaim Defendant,

LOCKWOOD PENSION SERVICES, INC. and TALL
TREE ADVISORS, INC.,

                    Crossclaim Defendants,

STEVEN LOCKWOOD,

                    Third-Party Defendant.
-----------------------------------X

1

```
------------------------------------X
```
LIFE PRODUCT CLEARING, LLC,

                    Counterclaim
                    Crossclaim and
                    Third-Party Plaintiff,

       -against-

ALICE KRAMER, as Personal Representative
of the Estate of Arthur Kramer,

                    Counterclaim Defendant,

LINCOLN LIFE & ANNUITY CO.,

                    Crossclaim Defendant,

LIZA KRAMER and ANDREW B. KRAMER,

                    Third-Party Defendants.
```
------------------------------------X
```

```
------------------------------------X
```
JONATHAN S. BERCK,

                    Counterclaim
                    Crossclaim and
                    Third-Party Plaintiff,

       -against-

ALICE KRAMER, as Personal Representative
of the Estate of Arthur Kramer,

                    Counterclaim Defendant,

LINCOLN LIFE & ANNUITY CO.,

                    Crossclaim Defendant,

LIZA KRAMER and ANDREW B. KRAMER,

                    Third-Party Defendants.
```
------------------------------------X
```

------------------------------------X
LINCOLN LIFE & ANNUITY COMPANY OF NEW YORK,

                    Counterclaim
                    Crossclaim and
                    Third-Party Plaintiff,

        -against-

ALICE KRAMER, as Personal Representative
of the Estate of Arthur Kramer,

                    Counterclaim Defendant

STEVEN LOCKWOOD, LOCKWOOD PENSION SERVICES,
JONATHAN S. BERCK, individually and as
Trustee for the Leon Lobel Insurance Trust dated
November 15, 2005, LIFE PRODUCT CLEARING LLC.,

                    Crossclaim Defendants,

JOEL B. MILLER, TD BANK N.A.,

                    Third-Party Defendants.
------------------------------------X
DEBORAH A. BATTS, United States District Judge.

        Plaintiff Alice Kramer, on behalf of the estate of Arthur

Kramer, seeks a declaratory judgment that death benefits from

insurance policies on the life of her deceased husband, Arthur

Kramer, are properly paid to her.  Plaintiff alleges that her

husband established two insurance trusts following which various

insurance policies were issued naming the insurance trusts as the

beneficiaries.  At the time the trusts were established, Arthur

Kramer named his adult children, either Andrew, Rebecca or Liza

("Kramer Children") as "putative beneficiaries" of the trusts.

Plaintiff alleges that her husband directed the adult Kramer Children to execute assignments of their beneficial interests in the trusts to "stranger investors." It is elsewhere alleged that these assignments were made for cash consideration. Plaintiff alleges that the Kramer Children never paid any premiums on those policies. It is elsewhere alleged that the "investors" paid the premiums. After Arthur Kramer's death, Plaintiff alleges the "investors", now holding the beneficial interest in the insurance trusts, submitted claims on the insurance policies for the death benefits. According to Plaintiff, the insurance claims now equal approximately $56,200,000.00 in death benefits.

The Defendants in this action are variously, insurance companies who issued the policies, trustees of the insurance trusts, and insurance brokers who were also "investors" in the insurance arrangement. These Defendants in turn have counterclaimed against the Plaintiff, cross claimed against each other and brought third-party complaints against yet others.

The insurance companies seek, inter alia, to have the policies voided and therefore not paid to anyone, as well as the broker/investors held liable for their conduct. The trustees as well as the broker/investors argue, inter alia, that the benefits are properly paid to those who currently hold the beneficial interest, which they acquired from the adult Kramer Children for

4

cash consideration.

I. PARTIES TO THIS ACTION:

Plaintiff is a citizen of the state of Connecticut and
resides in Stamford, Connecticut; she is the widow of Arthur
Kramer and the Personal Representative of his Estate. (Dkt. No.
31, Am. Compl. ¶ 1.) Mr. Kramer died on January 26, 2008; at the
time of his death, Mr. Kramer was a citizen of Connecticut. (Id.
¶ 2.)

Plaintiff alleges that Defendant Lockwood Pension Services,
Inc. is a New York corporation with its principal place of
business located in New York, New York. (Dkt. No. 31 at ¶ 3.)
Plaintiff alleges that Defendant Tall Tree Advisors, Inc. is a
New York corporation with its principal place of business located
in Pleasantville, New York. (Id. at ¶ 4.)

Plaintiff alleges that Defendant Life Product Clearing, LLC
is a Delaware limited liability company with its principal place
of business located in New York, New York. (Id. at ¶ 5.)[1]
According to Life Product Clearing it "is a limited liability
company organized and existing under the laws of the State of

_____

[1] Plaintiff referred to this Defendant as Life Products Clearing,
LLC. In a third-party complaint the Defendant referred to itself
as Life Product Clearing, LLC. Hereinafter the Defendant will be
referred to as "Life Product Clearing" or "LPC".

5

Delaware, with its principal place of business in New York, New York, which, <u>inter alia</u>, acts as an agent with respect to beneficial interests under certain life insurance trusts...".
(Dkt. No. 59 at ¶ 69.)

Plaintiff alleges that Defendant Transamerica Occidental Life Insurance Co. ("Transamerica") is an Iowa corporation with its principal place of business located in Cedar Rapids, Iowa. (Dkt. No. 31 at ¶ 6.) Plaintiff alleges that Defendant Phoenix Life Insurance Co., ("Phoenix") is a New York corporation with its principal place of business located in Syracuse, New York. (<u>Id.</u> at ¶ 7.) Plaintiff alleges that Defendant Lincoln Life & Annuity Co. of New York ("Lincoln Life") is a New York corporation with its principal place of business located in Syracuse, New York. (<u>Id.</u> at ¶ 8.)

Phoenix alleges that Steven Lockwood is the owner and chief executive officer of Lockwood Pension Services, Inc. and Tall Tree Advisors, Inc. (Dkt. No. 43 at ¶ 2.) Phoenix alleges that Steven Lockwood, Lockwood Pension Services and Tall Tree Advisors all reside at the same address: 2 Tall Tree Lane, Pleasantville, NY. (<u>Id.</u> at 3.)

Plaintiff alleges that Jonathan Berck is a citizen of the state of New Jersey. (Dkt. No. 31 at ¶ 9.) Phoenix alleges that Berck has served and continues to serve as the trustee for

6

various life insurance trusts that Lockwood helped to establish. (Dkt. No. 43 at ¶ 4.) Berck alleges that he is a citizen of the state of New York and is the Successor Trustee of the Arthur Kramer 2005 Insurance Trust pursuant to the Trust Agreement of Arthur Kramer 2005 Insurance Trust dated August 29, 2005. (Dkt. No. 90 at ¶ 69)

Life Product Clearing alleges that Liza Kramer is a citizen of the state of California with an address at 1940 Los Angeles Avenue, Berkley, California 94707, and is the "daughter and heir of the plaintiff Estate's decedent, Arthur Kramer." (Dkt. No. 59 at ¶ 8.) Life Product Clearing alleges that Andrew B. Kramer is a citizen of the state of New York with a business address c/o Kramer Capital Management, Inc., 622 Third Avenue, 32nd Floor, New York, NY 10017, and is the son and heir of the plaintiff Estate's decedent, Arthur Kramer. (Id. at ¶ 9.)

Lincoln Life and Annuity alleges that Joel B. Miller is an individual residing at 721 NW 108 Ave., Plantation, Florida 33324. (Dkt. No. 140 at ¶ 4.) Lincoln Life and Annuity alleges that TD Bank, N.A. f/k/a TD Banknorth, N.A. ("TD Bank"), is a national association with its principal place of business located at One Portland Square, Portland Maine, 04112. (Id. at ¶ 7.) Lincoln Life alleges that TD Bank acquired Hudson United Bank in January 2006 and is the successor in interest to Hudson. (Id.)

7

## II.  JURISDICTION

This action is founded solely on diversity jurisdiction. Plaintiff is a citizen and resident of Connecticut. She is the representative of the estate of her husband, Arthur Kramer, who at the time of his death was also a Connecticut resident. 28 U.S.C. § 1332(a),(c).

The Court exercises jurisdiction over the third party actions pursuant to supplemental jurisdiction under 28 U.S.C. § 1367 because the third party actions, except those against Joel Miller and TD Bank (as set forth further herein), share a common nucleus of operative fact with the claims set forth by Plaintiff.


## III. FACTUAL BACKGROUND

The following facts were alleged by Plaintiff in her Amended Complaint filed on May 7, 2008. Plaintiff alleges that this action "involves an arrangement to procure life insurance policies with the purpose of immediately transferring the beneficial interests in those policies to stranger investors, in contravention of the 'insurable interest rule'". (Dkt. No. 31 at ¶ 12.)

The relevant provision of the New York Insurance Law contains the following definitions provisions:

(1) The term, "insurable interest" means:

8

(A) in the case of persons closely related by blood or by law, a substantial interest engendered by love and affection; (B) in the case of other persons, a lawful and substantial economic interest in the continued life, health or bodily safety of the person insured, as distinguished from an interest which would arise only by, or would be enhanced in value by, the death, disablement or injury of the insured. (2) The term "contract of insurance upon the person" includes any policy of life insurance and any policy of accident and health insurance. (3) The term "person insured" means the natural person, or persons, whose life, health or bodily safety is insured.

New York Insurance Law § 3205. Additional relevant sections of

New York Insurance Law state:

(b)(1) Any person of lawful age may on his own initiative procure or effect a contract of insurance upon his own person for the benefit of any person, firm, association or corporation. Nothing herein shall be deemed to prohibit the immediate transfer or assignment of a contract so procured or effectuated.

(2) No person shall procure or cause to be procured, directly or by assignment or otherwise any contract of insurance upon the person of another unless the benefits under such contract are payable to the person insured or his personal representatives, or to a person having, at the time when such contract is made, an insurable interest in the person insured.

New York Insurance Law § 3205.

Plaintiff alleges that as early as 2003, Steven Lockwood, the principal of Lockwood Pension Services approached Mr. Kramer

9

to solicit his participation in a "stranger-owned life insurance"
("SOLI" or "STOLI") arrangement.   (Dkt. No. 31 at ¶ 18.)
Plaintiff alleges that during 2005 Mr. Lockwood introduced Mr.
Kramer to the SOLI arrangement that is the subject matter of this
litigation.[2]  (Id. at ¶ 189.)  As detailed further herein, the
Amended Complaint alleges that two trusts were created, the June
Trust and the August Trust which held insurance policies issued
by the three insurance company Defendants in this case: Lincoln
Life and Annuity, Transamerica, and Phoenix Life Insurance.   The
beneficial interest in those trusts came to be owned by
"strangers" to the decedent.

     Plaintiff alleges that on or about June 6, 2005, Mr. Kramer,
at the direction of Lockwood Pension Services and possibly other
defendants, established the Arthur Kramer Insurance Trust (the
"June Trust') and named Lori Callegari as trustee.  (Dkt. No. 31
¶ 23.)   Mr. Kramer listed two of his three children with

---

[2]   According to Plaintiff, the arrangement was as follows: "Mr.
Kramer, at the direction of LPS [Lockwood Pension Services] and
possibly other defendants, would establish trusts naming himself
as the depositor and one of more of his children as the initial
beneficiaries.  An LPS affiliated person would be appointed as
the trustee.  The witnesses to the trust instrument would be Mr.
Lockwood and one of his associates."  Amended Complaint alleges
that the transfer of the beneficial interest in the policies
"took place immediately upon Mr. Kramer's obtaining the policies
at issue, and that was always their plan."    (Dkt. No. 31 ¶ 12.)

10

Plaintiff, Andrew and Rebecca, as the putative beneficiaries thereunder. (Dkt. No. 31 ¶ 23.) Plaintiff alleges that the June Trust agreement was prepared by counsel for Lockwood Pension Services, and Mr. Kramer had no involvement in its drafting. (Dkt. No. 31 ¶ 24.) At the time Callegari was employed by Lockwood Pension Services or Tall Tree Advisors, and was at the time of the Amended Complaint a Vice President of Lockwood Pensions Services. (Dkt. No. 31 ¶ 25.) Callegari is no longer the trustee of June Trust; Defendant Berck, is the current trustee. In June and July 2005, Transamerica issued one or more insurance policies on the life of Mr. Kramer to the June Trust having a total death benefit of approximately $18,200,000.00 (the "Transamerica Policies"). (Dkt. No. 31 ¶ 28.) Plaintiff alleges "upon issuance of the policies, and at the direction of Lockwood Pension Services and possibly other defendants, Mr. Kramer directed Andrew and Rebecca to execute putative assignments of their beneficial interest in the June Trust to stranger investor TTA [Tall Tree Advisors]." (Dkt. No. 31 ¶ 29.) Plaintiff alleges that at the direction of Lockwood Pension Services and possibly other defendants, in 2007, defendant Mr. Berck in his capacity as trustee of the June Trust, sold the ownership interests in the Transamerica Policies to a non-party individual or entity. (Dkt. No. 31 ¶ 30.) Neither Mr. Kramer, Andrew nor

11

Rebecca ever paid any premiums on the Transamerica Policies, and according to Plaintiff "there was no period of time when Andrew and Rebecca were the true beneficiaries of the June Trust after the Transamerica Policies were issued." (Dkt. No. 31 at ¶ 31.)

Plaintiff further alleges that on or about August 29, 2005, Mr. Kramer, at the direction of LPS and possibly other defendants, established the Arthur Kramer 2005 Insurance Trust ("the August Trust") and named Hudson United Bank as trustee. (Dkt. No. 31 ¶ 32.) Mr. Kramer listed his third child with Plaintiff, Liza, as the beneficiary. Mr. Lockwood and one of his associates witnessed the August Trust Agreement. (Dkt. No. 31 ¶ 32.) Plaintiff alleges that the August Trust agreement was prepared by counsel for LPS and Mr. Kramer had no involvement in its drafting. (Dkt. No. 31 ¶ 33.) Hudson is no longer the trustee of the August Trust; Defendant Berck is the current trustee. (Dkt. No. 31 ¶ 36.) Plaintiff alleges that in July 2005,[3] Phoenix issued one or more insurance policies to the August Trust having a total death benefit of approximately $28,000,000.00 (the "Phoenix Policies") on the life of Mr. Kramer. (Dkt. No. 31 ¶ 37.) Plaintiff alleges that "upon issuance of the policies, and at the direction of LPS [Lockwood

_____

[3] The Court notes that this date, as alleged by Plaintiff, predates the creation of the August Trust.

12

Pension Services] and possibly other defendants, Mr. Kramer directed Liza to execute putative assignments of her beneficial interest in the August Trust to stranger investor TTA [Tall Tree Advisors]." (Dkt. No. 31 ¶ 38.) Plaintiff alleges that at the direction of Lockwood Pensions Services and possibly other Defendants, in 2007, Defendant Berck, as trustee of the August Trust, sold the ownership interest in the Phoenix Policies to a non-party individual or entity. (Dkt. No. 31 ¶ 39.) Plaintiff alleges that Mr. Kramer and Liza never paid any premiums on the Phoenix Policies, and "there was no period of time when Liza was the true beneficiary of the August Trust after the Phoenix Policies were issued." (Dkt. No. 31 ¶ 40.)

Finally, Plaintiff alleges that on or about November 28, 2005, Lincoln issued one or more insurance policies to the August Trust having a total death benefit of $10,000,000.00 (the "Lincoln Policies") on the life of Mr. Kramer. (Dkt. No. 31 at ¶ 41.) Plaintiff alleges that "upon issuance of the policies, and at the direction of LPS [Lockwood Pension Services] and possibly other defendants, Mr. Kramer directed Liza to execute putative assignments of her beneficial interest in the August Trust to stranger investor Life Products." (Dkt. No. 31 ¶ 42.) Mr. Kramer and Liza never paid any premiums on the Lincoln Policies, and according to Plaintiff "there was no period of time when Liza

13

was the true beneficiary of the August Trust" after the Lincoln Policies were issued. (Dkt. No. 31 ¶ 43.)

Mr. Kramer died on January 26, 2008. (Dkt. No. 31 ¶ 44.) Subsequently, Plaintiff has refused requests by representatives of Defendant Lockwood Pension Services and "certain stranger investors" for a copy of Mr. Kramer's death certificate. (Dkt. No. 31 at ¶ 45.)

Plaintiff alleges that the "arrangement to procure life insurance policies with the purpose of immediately transferring the beneficial interests in those policies to stranger investors" in which her husband participated, violates the New York Insurance Law "Insurable Interest Rule." (Dkt. No. 31 at ¶ 12.) Plaintiff alleges that "where the procurement of life insurance violates the insurable interest rule, the remedy is either that the death benefits be paid to the personal representative of the decedent's estate (in this case, the Plaintiff) or, if already paid to a stranger investor, that they be disgorged and paid to the personal representative." (Dkt. No. 31 ¶ 12.) She argues that pursuant to New York Insurance Law 3202(a)(3), "all of the aforementioned life insurance policies are incontestable because they were in force during the life of Mr. Kramer for more than two years." (Dkt. No. 31 ¶ 46.)

14

Plaintiff seeks declaratory judgment that the insurance company defendants must pay the death benefits under the policies to her (Dkt. No. 31 ¶ 52), or in the alternative, if some or all of the death benefits have already been paid to Lockwood Pension Services, Tall Tree Advisors, Life Product Clearing, Berck or their representatives or assignees, then Plaintiff is entitled to recover such death benefits. (Dkt. No. 31 ¶ 58.)

Defendant Berck filed his Answer, with cross claims and counterclaims, and also filed a third-party complaint on August 1, 2008.[4] (Dkt. No. 90.) Berck alleges the following relevant facts that are different from, a clarification of, or in addition to the facts alleged by Plaintiff. Berck is the Successor Trustee of both the August and June Trusts. Regarding the August Trust, he alleges that at the time the Lincoln Policy issued its policy to the August Trust, Liza Kramer "owned the entire beneficial interest in the August Trust." (Dkt. No. 90 at ¶ 74.) He alleges that Liza Kramer, the named beneficiary of the August Trust "had an insurable interest in the Lincoln Policy at the time the Lincoln Policy was procured." (Dkt. No. 90 ¶ 75.) The Lincoln Policy also provided that it "will be incontestable after

---

[4] Defendant Life Product Clearing filed counterclaims, cross claims, and a third-party complaint on June 20, 2008 which is essentially identical to the one filed by Berck and is not further detailed herein.

15

it has been in force during the Insured's lifetime for 2 years from its Date of Issue." (Dkt. No. 90 at ¶ 77.) The Lincoln Policy was in force during Arthur Kramer's lifetime from on or about November 23, 2005 to January 26, 2008. (Dkt. No. 90 at ¶ 78.) "After the Lincoln Policy was issued, and in consideration for a payment of $100,000.00 (the "Cash Consideration"), Liza Kramer sold her rights to the August Trust's interest in the Lincoln Policy to Defendant Life Product Clearing, LLC pursuant to a Beneficial Interest Transfer Agreement dated November 29, 2005 (the "Transfer Agreement")." (Dkt. No. 90 at ¶ 79.) Berck alleges that in connection with that transaction, Arthur and Liza Kramer also executed a document entitled Acknowledgments and Consents relating to Sale of Beneficial Interest dated November 29, 2005 ("Acknowledgments and Consents Form").[5] Berck alleges

---

[5] Arthur and Liza Kramer allegedly represented by signing the Acknowledgements and Consents Form that:

a. "After reviewing several alternatives for maintaining the [Lincoln] Policy and paying the premium, Arthur and Liza have determined that the sale of the Beneficial Interest [in the August Trust] to [LPC] for the Cash Consideration is in their best interest and in the best interest of their Family."

b. "Arthur and Liza acknowledge that they have had sufficient time to thoroughly analyze and discuss the strategy of selling the Beneficial Interest in the [August] Trust to [LPC.]"

16

that after the death of Kramer, the "Lincoln Policy was properly made payable to the August Trust (or to LPC)," but "Lincoln has failed and refused to pay the proceeds of the Lincoln Policy to the August Trust." (Dkt. No. 90 at ¶¶ 82-84.)

In addition, Berck and Life Product Clearing have filed Third Party Complaints against Liza and Andrew Kramer. They make the following relevant allegations. Liza Kramer and/or Andrew Kramer proximately caused the Estate of Arthur Kramer to file the main action, (Dkt. No. 91 at ¶ 30) and that filing of the original Complaint constituted a "knowing, intentional and unjustified interference with the August Trust's contractual relationship with Lincoln under the Lincoln Policy and a knowing, intentional and unjustified inducement of Lincoln to breach the Lincoln Policy by refusing to pay the proceeds to the August Trust and/or LPC." (Dkt. No. 91 at ¶ 29.)

---

c. "Arthur and Liza have had the opportunity to discuss this strategy with their family advisors."

d. "Upon completion of the sale of [the] Beneficial Interest in the [August] Trust to [LPC] for the Cash Consideration, Arthur and Liza expressly acknowledge, understand, consent and agree to waive all rights, claims, interests, powers and privileges that they now possess, or in the future may possess, under or with respect to the [Lincoln] Policy."

(Berck. Cross-Compl. ¶ 80.)

17

Further, despite Liza Kramer's "express warranty to LPC in the Acknowledgments and Consents Form that she would provide a death certificate to LPC within a reasonable time following Arthur Kramer's death, Liza Kramer and the Estate failed and refused to do so." (Dkt. No. 60 at ¶ 31.) Liza Kramer is an heir to the Estate of Arthur Kramer, and the Estate's claim in the main action "represents an indirect attempt by Liza Kramer to assert a claim for the proceeds of the Lincoln Policy, in violation of her express waiver of that claim in the Acknowledgments and Consents Form." (Dkt. No. 60 at ¶ 40.) LPC alleges that it relied on Liza Kramer's acknowledgments, consents and representations in the Acknowledgments and Consents Form in deciding to pay the Cash Consideration to her to purchase her beneficial interest in the August Trust. (Dkt. No. 60 at ¶ 41.)

In addition to the cross claims, counterclaims and third-party claims asserted by Berck and Life Product Clearing, two life insurance company Defendants, Lincoln Life and Annuity and Phoenix Life Insurance Co. have asserted cross claims, counterclaims and third-party claims.

Defendant Phoenix Life Insurance filed its Answer to the Amended Complaint, counterclaims, cross claims and filed a Third-Party Complaint on April 9, 2008. (Dkt. No. 43.) Phoenix

18

alleges that "Lockwood, LPS [Lockwood Pension Services], Tall
Tree, Life Product Clearing, and Berck have developed a formulaic
method of circumventing New York's insurable interest rule, using
elderly persons, and the trusts they encourage or aid them in
establishing, as strawmen to acquire life insurance policies for
the benefit of strangers who have no insurable interest in the
lives of the insureds (i.e., a 'SOLI' scheme)." (Dkt. No. 43 at ¶
7.)   Phoenix claims that,

> Lockwood colluded with Arthur Kramer to participate
> in one or more fraudulent SOLI arrangements. In
> particular, Lockwood colluded with Mr. Kramer (a) to
> establish a life insurance trust, (b) to apply for
> one or more life insurance policies in which the
> trust would be both the policyholder and beneficiary
> of  the  policies,  (c)  upon  the  issuance  of  the
> policies,  to  immediately  transfer  the  beneficial
> interest  in  the  trust  to  Tall  Tree  and/or  Life
> Product in exchange for monetary compensation, and
> (d) to replace the financial institution trustee of
> the trust with Berck.

(Id. at ¶ 8.)   Phoenix alleges that, on or about July 1 2005,
Lockwood and Phoenix entered into a contract pursuant to which
Lockwood would serve as an independent producer of various
Phoenix products, including life insurance policies. (Id. at ¶
9.)   On or about August 30, 2005, Phoenix approved the
Independent Producer Contract (the "IPC").   (Id. at ¶ 10.)
Phoenix claims that Mr. Kramer submitted (through Lockwood) a
life insurance application to Phoenix in early September 2005

19

(the "Phoenix Application"). (Id. at ¶ 13.) Phoenix alleges that Mr. Kramer did not apply for life insurance on his own initiative, but rather was induced to do so by the offer of ready cash. (Id. at ¶ 14.) Phoenix claims that at the time he submitted the Phoenix Application, Mr. Kramer had no intention of procuring life insurance for the benefit of himself or his family; rather, Mr. Kramer was attempting to procure a policy for the benefit of a stranger investor with no insurable interest in his life. (Id. at ¶ 15.)

According to Phoenix, in Sections II and III of Part I of the Phoenix Application, Mr. Kramer represented that the owner and beneficiary of the policies applied for would be the Kramer August Trust. (Phoenix Cross-Compl. ¶ 17.) Mr. Kramer signed Part I of the Phoenix Application on or about September 2, 2005. (Phoenix Cross-Compl. ¶ 18.) Above Mr. Kramer's signature on Part I of the Phoenix Application, the application states, in relevant part:

> I have reviewed this application, and the statements made herein are those of the proposed insured and all such statements made by the proposed insured in Part I or and [sic] in Part II of this application are full, complete, and true to the best knowledge and belief of the undersigned and have been correctly recorded . . . I understand and agree that the Insurance applied for shall not take effect unless and until each of the following has occurred: the policy has been issued by the Company; the

premium required for the issuance of the policy has been paid in full during the lifetime of the insured; all the representations made in the application remain true, complete and accurate as of the latest of such dates; and there has been no change in the health of any proposed insured that would change the answers to any of the questions in the application . . . .

(Phoenix Cross-Compl. ¶ 19.) Lockwood signed Part I of the Phoenix Application as the producer of the Phoenix policies numbered 97303913, 97303935, and 97303936 (the "Phoenix Policies") for a total amount of $28,000,000.00. (Phoenix Cross-Compl. ¶ 20.) Above Lockwood's signature on Part I of the Phoenix Application, the Application states, in relevant part, that "The Producer hereby confirms he/she has truly and accurately recorded on the application the information supplied by the Proposed Insured; and that he/she is qualified and authorized to discuss the contract herein applied for." (Phoenix Cross-Compl. ¶ 21.) Phoenix alleges that, given Section 3205 of the New York Insurance Law and New York's long-standing public policy against "wager" life insurance policies, Mr. Kramer, Lockwood, and the Trustee "implicitly represented" that (a) the Kramer August Trust would be the true owner and beneficiary of the requested Phoenix Policies (i.e., not just a strawman), and (b) the Kramer August Trust and its intended beneficiary had an insurable interest in Mr. Kramer's life. (Phoenix Cross-Compl. ¶

21

22.) While Phoenix was processing and underwriting Mr. Kramer's Phoenix Application, Lockwood informed Phoenix that Mr. Kramer would like a total of $28,000,000.00 of life insurance, issued to the Kramer August Trust in three separate policies, based on the same Phoenix Application. (Phoenix Cross-Compl. ¶ 23.) In reliance upon the truth of the representations made in the Phoenix Application, Phoenix issued the Phoenix Policies. (Phoenix Cross-Compl. ¶ 24.) Phoenix delivered the Phoenix Policies to Lockwood in or about October 2005. (Phoenix Cross-Compl. ¶ 25.) Phoenix alleges that the beneficial interest in the Kramer August Trust was transferred to Tall Tree on or about October 13, 2005. (Phoenix Cross-Compl. ¶ 26.) On October 21, 2005, Mr. Kramer signed three Policy Acceptance Forms acknowledging receipt of the Phoenix Policies. (Phoenix Cross-Compl. ¶ 27.) Above Mr. Kramer's signature on each Policy Acceptance Form, the Form stated, in relevant part, that "The insured(s) declares that the statements made in the application remain full, complete, and true as of this date . . . ." (Phoenix Cross-Compl. ¶ 28.) Phoenix avers that Berck was appointed the successor trustee of the Kramer August Trust on or about July 10, 2006 and that Lockwood had a relationship with Berck that involved similar SOLI arrangements; Berck's appointment as successor trustee allowed Lockwood to control tightly the Phoenix

22

Policies. (Phoenix Cross-Compl. ¶ 29.)  According to Phoenix, the identity of the parties, the clear characteristics of a SOLI scheme, the timing of the applications and transfers, and the sheer number and value of policies involved provide clear and convincing evidence of an intent to procure the Phoenix Policies for the benefit of a stranger-investor who had no valid insurable interest.   (Phoenix Cross-Compl. ¶ 32.)

The other life insurance company to enter a Complaint in this action is Lincoln Life and Annuity.  (Dkt. No. 140.) Lincoln asserts claims relating to insurance policies on the life of Arthur Kramer, and on the life of another individual, Leon Lobel. On or around April 6, 1999, Lockwood entered into a Broker Agreement with Lincoln (the "Lockwood Broker Agreement").  (Dkt. No. 140 at ¶ 22.) Pursuant to the Lockwood Broker Agreement, Lockwood agreed, inter alia, "to comply with all applicable state and federal laws and with all rules and regulations of the regulatory agencies having jurisdiction with respect to the sales of the Policies"; to offer "Policies for sale in accordance with all [Lincoln's] rules and procedures then in effect"; to review insurance applications "for completeness and suitability"; that "all policyholder files, records and premium accounts are the property of" Lincoln; and that "all such property shall be returned to" Lincoln "upon termination of" the Lockwood Broker

Agreement. (Id. at ¶ 22.) Pursuant to the Lockwood Broker Agreement, Lockwood also agreed to indemnify and hold Lincoln harmless "for all costs, expenses, losses, claims, damages or liabilities (or actions in respect thereof), including reasonable attorneys' fees, resulting from any negligent, fraudulent or unauthorized acts or omissions by" Lockwood or "any unlawful sales practices" by Lockwood in connection with the sale of Lincoln policies. (Id. at ¶ 22.)

Lincoln alleges, in early 2003, Lockwood, Lockwood Pension Services, and/or other entities engaged in secondary life insurance market transactions and solicited Kramer's participation in a "STOLI" arrangement. (Id. at ¶ 22.) The insurance was placed through M&M Brokerage Services, Inc. ("M&M") with Lockwood as the producer. (Id. at ¶ 23.) Based on medical information available at the time, in July 2005, Lincoln declined to make an offer on a policy for Kramer. (Id. at ¶ 26.) Lincoln alleges that on August 29, 2005, Kramer, at the direction of Lockwood, LPS, and/or other entities engaged in secondary life insurance market transactions, established the Arthur Kramer 2005 Insurance Trust dated August 29, 2005 (the "Kramer Trust"), in which Hudson was named as the trustee. (Id. at ¶ 27.) The original beneficiary of the Kramer Trust was Kramer's daughter, Liza. (Id. at ¶ 27.) Lincoln, like the Plaintiff, alleges that

24

the Kramer Trust documents were prepared by legal counsel for Lockwood Pension Services at the direction of Lockwood, Lockwood Pension Services, and/or other entities engaged in secondary life insurance market transactions. (Id. at ¶ 28.) On September 30, 2005, Lincoln, from its offices in Hartford, Connecticut, again declined to make an offer on a policy for Kramer based on the medical information provided. (Id. at ¶ 30.) On October 5, 2005, Lincoln, from its offices in Hartford, Connecticut, made a tentative offer to insure Kramer's life based upon updated medical information provided. (Id. at ¶ 31). On October 24, 2005, Kramer submitted an application for the Lincoln policy with the Kramer Trust (Id. at ¶ 32.) The Kramer Application was witnessed by Lockwood. (Id. at ¶ 33.)

In the agent's certification to the Kramer Application, Lockwood (i) "recommend[ed] this risk to the Company without reservation"; and (ii) represented that the purpose of the insurance policy was for estate planning; that the client did not intend to use the policy for any type of viatical settlement, senior settlement, life settlement or for any other secondary market; and that Kramer's total net worth (exclusive of life insurance) was $70 million plus $3 million in other income. (Id. at ¶ 33.) On or about November 23, 2005, in reliance upon the actions and conduct of the defendants and Kramer, Lincoln issued,

a universal life insurance policy number 7214471 in the face amount of \$10 million insuring Kramer's life. (Id. at ¶ 34.) Lincoln alleges that at all relevant times, Kramer expected and understood that the right to receive the death benefit payable under any policy acquired from Lincoln would be sold to a third party having no insurable interest in Kramer's life. (Id. at ¶ 35.)  Further, it alleges that at no time did Liza intend to retain her beneficial interest in the Kramer Trust and, consequently, the right to receive the death benefit payable under the Kramer Policy. (Id. at ¶ 37.)  At no time did Kramer believe that the premiums due would be paid by Kramer or the Kramer Trust; Kramer expected and understood that the premiums due under the Kramer Policy would be advanced and/or financed by a third party. (Id. at ¶ 39.)  Lincoln alleges that the submission of the Kramer Application and the Kramer Policy that resulted were part of a collaborative effort by Lockwood, LPS, Life Product Clearing, and/or other entities engaged in secondary life insurance market transactions, to profit at Lincoln's expense from a gamble upon the life of Kramer. (Id. at ¶ 41.) Lincoln alleges that upon issuance of the Kramer Policy, at the direction of Lockwood, Lockwood Pension Services, Life Product Clearing and/or other entities engaged in secondary life insurance market transactions, Kramer instructed his daughter,

26

Liza, to execute putative assignments of her beneficial interest in the Kramer Trust to a stranger investor, Life Product Clearing. (Id. at ¶ 42.) Subsequently, Hudson, then Life Product Clearing, then later Berck began paying the premiums on the Kramer policy. (Id. at ¶¶ 44, 47.) On January 31, 2006, Hudson was acquired by and merged with TD Bank, and TD Bank became the successor trustee to the Kramer Trust. (Id. at ¶ 46.) On or about July 10, 2006, Berck succeeded TD Bank as trustee to the Kramer Trust. (Id. at ¶ 49.) On September 5, 2006, Berck submitted a premium payment to Lincoln in the amount of $400,000.00 on the Kramer Policy. Lincoln alleges, upon information and belief, subsequent to Kramer's death, the Estate of Arthur Kramer received various communications from representatives of Lockwood Pension Services and certain stranger investors demanding copies of Kramer's death certificate so they could submit claims to Lincoln and other insurance companies for the payment of death benefits on policies insuring the life of Arthur Kramer. (Id. at ¶ 54.)

In addition to the facts alleged with respect to the Kramer Policy, Lincoln brings an entirely new set of facts, concerning insurance policies on the life of Leon Lobel. Similar facts were litigated in Life Product Clearing LLC v. Linda Angel, Personal Representative of the Estate of Leon Lobel v. Leon Lobel

<u>Insurance Trust and Jonathan S. Berck, as Trustee of the Leon</u>

<u>Lobel Insurance</u>, Dkt. No. 07 Civ. 0475 (DC); Judge Chin denied

Life Product Clearing's motion for judgment on the pleadings on

January 22, 2008. 530 F.Supp.2d 646 (2008). That case was

terminated by stipulation on June 18, 2008. Lincoln Life and

Annuity filed a Complaint in Connecticut state court (Superior

Court, J.D. of Hartford) on April 16, 2008, asserting facts that

relate to insurance policies on both the lives of Arthur Kramer

and Leon Lobel. That action involves facts similar to those

asserted by Lincoln in their Complaint in this action as well as

some similar parties. The Defendants in that action include

common Defendants Lockwood Pension Services, Inc., Steven

Lockwood, Jonathan Berck, Life Product Clearing, LLC and TD

Banknorth, N.A..

Lincoln's allegations in their third-party complaints in

this case, with respect to the Lobel Policy, are substantially

different from their allegations regarding the Kramer Policy.

For example, the Broker in the Lobel case was a man named Joel

Miller, who is not otherwise a party to this action. (Dkt. No.

140, at ¶ 58.) According to the third-party complaint, Lobel

died less than a year after the policy was issued, such that

incontestability would not be an issue. (<u>Id.</u> at ¶¶ 67, 75).

And, unlike the Kramer action in which, thus far, it appears that

28

no benefits have been paid, in the Lobel case, Lincoln paid a death benefit fo $10,712,328.77 to the Lobel Trust on January 11, 2007. (Id. at ¶ 81.) Only now, after the conclusion of the prior action in this District, and after the benefits have been paid, does Lincoln seek declaratory judgment that inter alia, "the Lobel Trust is void, the transfer of the beneficial interest in the Lobel Trust is void". (Id. at ¶ 82.) For reasons stated infra, all counts based on facts relating to the life of Leon Lobel are not properly before this Court.


IV. THE MOTION TO DISMISS STANDARD

For a complaint to survive dismissal under Rule 12(b)(6), the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility," the Supreme Court has explained,

    "when the plaintiff pleads factual content that allows
    the court to draw the reasonable inference that the
    defendant is liable for the misconduct alleged. The
    plausibility standard is not akin to a 'probability
    requirement,' but it asks for more than a sheer
    possibility that a defendant has acted unlawfully. Where
    a complaint pleads facts that are 'merely consistent
    with' a defendant's liability, it 'stops short of the
    line between possibility and plausibility of 'entitlement
    to relief.'"

29

Ashcroft v. Iqbal, --- S.Ct. ----, 2009 WL 1361536, *12 (May 18, 2009) (quoting Twombly, 550 U.S. at 556-57). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (internal quotation marks omitted). "In keeping with these principles," the Supreme Court has stated,

"a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."

Iqbal, 2009 WL 1361536 at *13.

In ruling on a 12(b)(6) motion, a court may consider the complaint as well as "any written instrument attached to the complaint as an exhibit or any statements or documents incorporated in it by reference." Zdenek Marek v. Old Navy (Apparel) Inc., 348 F.Supp.2d 275, 279 (S.D.N.Y. 2004) (citing Yak v. Bank Brussels Lambert, 252 F.3d 127, 130 (2d Cir. 2001) (internal quotations omitted)).

V. THE PENDING MOTIONS:

The issue between the Plaintiff and the insurance companies on one hand, and the trustees, insurance brokers, and "investors" on the other, is whether the circuitous route of establishing trusts for the adult Kramer children and then having the children sell them created policies violative of New York Insurance Law. The issue dividing the insurance companies and the Kramer Family (including Plaintiff) is, even assuming the scheme was illegal, to whom are the benefits to be paid? The insurance companies allege that the Kramer Family cannot benefit from their allegedly knowing participation in an allegedly illegal scheme. The Plaintiff alleges that the policies are now incontestable.

The Defendants in the various complaints, counterclaims, cross claims and third-party claims have filed motions to dismiss causes of action for, inter alia fraud, aiding and abetting fraud, breach of fiduciary duty, aiding and abetting breach of fiduciary duty, breach of warranty, tortious interference with contractual relations, negligence, unjust enrichment and Civil RICO. Those motions are each addressed herein.

A. Motions to Dismiss Plaintiff's Complaint

    1.    Lincoln Life and Annuity has Moved to Dismiss
         Plaintiff's Complaint for Lack of Standing

Lincoln Life and Annuity alleges that Plaintiff lacks standing to pursue a claim under the Lincoln policy. (Dkt No. 56, Mem. of Law at 56.) Lincoln claims that "[t]he allegations contained in Plaintiff's amended complaint - disclaiming that (i) Mr. Kramer ever held any interest as owner or purchaser of the Lincoln Policy, (ii) his family members ever had any genuine interest as beneficiaries of the Lincoln Policy, and (iii) the noninsurance company defendants that did have an interest in the Lincoln Policy had any insurable interest in Mr. Kramer's life — can only lead to the one logical conclusion — which is that Plaintiff lacks standing to assert any claim under the Lincoln Policy." (Id.) In further support of its argument, Lincoln quotes that section of the Complaint which alleges "[a]t no time were Mr. Kramer or any of his family members the true owners of the beneficial interests in the policies." (Id.)

Although Lincoln asserts that the insurable interest statute does not vest Plaintiff with any right in the policy, such an allegation belies the plain language of New York Insurance Law Section 3205(b)(4) which states:

> If the beneficiary, assignee or other payee under any
> contract made in violation of this subsection ((b))
> receives from the insurer any benefits hereunder
> accruing upon the death, disablement or injury of the
> person insured, the person insured or his executor or
> administrator may maintain an action to recover such
> benefits from the person receiving them.

(Emphasis added.)

In response, Lincoln argues that the statute is
"conditional" in that "there must be receipt of proceeds from the
insurer, and only then does the main clause come into play."
(Dkt. No. 74, Rep. Mem. of Law at 2.) Such a reading would
clearly frustrate the intent of Section 3205(b)(4). But, even
more, it would frustrate the clear goal of the Declaratory
Judgment Act, under which the Plaintiff has brought suit.

The Declaratory Judgment Act empowers a federal court, "[i]n
a case of actual controversy within its jurisdiction, ... [to]
declare the rights and other legal relations of any interested
party seeking such declaration, whether or not further relief is
or could be sought." 28 U.S.C. § 2201. Further, the Circuit has
repeatedly held that the mere fact that liability may be
contingent does not necessarily defeat jurisdiction of a
declaratory judgment action. Employers Ins. of Wausau v. Fox
Entertainment Group, Inc., 522 F.3d 271, 278 (2d Cir. 2008)
(quoting Associated Indem. Corp. v. Fairchild Industries, Inc.,

33

961 F.2d 32, 35 (2d Cir. 1992)). Rather, the Circuit has instructed, Courts should focus on the practical likelihood that the contingencies will occur. Id.

This entire case turns on a reading of New York State Insurance Law that, although hotly contested, is largely unresolved. There is certainly a practical likelihood, among many others, that the Plaintiff will prevail. As such, standing under the Declaratory Judgment Act is appropriate. Luckenbach S. S. Co. v. U.S., 312 F.2d 545, 548 (2d Cir. 1963) (finding "[t]he purpose of the declaratory remedy is to 'avoid accrual of avoidable damages to one not certain of his rights and to afford him an early adjudication without waiting until his adversary should see fit to begin suit, after damage had accrued.").

Lincoln's argument suggests that in order for Plaintiff to have standing to bring suit, Lincoln must first pay the proceeds to Life Product, an entity Plaintiff claims is not entitled to those proceeds. Only then, Lincoln's argument goes, would Plaintiff have standing to sue Life Product to recover those proceeds. Such an inefficient process was exactly what the Declaratory Judgment Act was designed to prevent.

Accordingly, Defendant Lincoln's Motion to Dismiss Plaintiff's Complaint for lack of standing is HEREBY DENIED.

### 2. Lockwood Pension Services and Tall Tree Advisors Motion to Dismiss Plaintiff's Complaint

Both Lockwood Pension Services and Tall Tree Advisors have moved to dismiss Plaintiff's Complaint alleging that neither are proper parties to a Declaratory Judgment Act suit. Plaintiff's claim to relief from Lockwood Pension Services and Tall Tree Advisors is in the form of Declaratory Judgment in which she asks this Court to declare that "if some or all of the death benefits of the aforementioned [insurance] policies [on the life of Arthur Kramer] have already been paid to LPS [Lockwood Pension Services], TTA [Tall Tree Advisors], Life Product, Mr. Berck or their representatives or assignees, or to other persons or entities that may claim the right to receive such' death benefits, then pursuant to this statute, Plaintiff is entitled to recover such death benefits." (Dkt. No. 31 at ¶ 58.) Lockwood Pension Services and Tall Tree Advisors move to dismiss arguing that Plaintiff has "failed to allege any facts demonstrating a right to relief against either LPS [Lockwood Pension Services] or Tall Tree." (Dkt. No. 70 at 4.) They argue that "Plaintiff has not alleged - nor could she - that either LPS [Lockwood Pension Services] or Tall Tree has or is scheduled to receive any of the death benefits from the Kramer Policies or asserted any claims to

35

them."  (Id.)

Indeed, Plaintiff seems to concede that neither Tall Tree
Advisors nor Lockwood Pension Services would be subject to the
declaratory judgment she seeks.  She argues that "[w]hether or
not LPS [Lockwood Pension Services] and TTA [Tall Tree Advisors]
were 'beneficiaries' or 'owners' of the policies at issue, or
entitled to death benefits, in no way diminishes their
substantial involvement in the illegal activity that is the crux
of Plaintiff's Amended Complaint."  (Dkt. No. 94, Pl. Mem. of Law
in Opp. Lockwood Pension's Motion to Dismiss at 2.)  Throughout
her brief, Plaintiff argues that she can seek declaratory
judgment "against all entities - including LPS [Lockwood Pension
Services] and TTA [Tall Tree Advisors] - that actively
participated in the illegal SOLI scheme."  This argument is
facially illogical.  Plaintiff has failed to allege any facts
that suggest that either Lockwood Pension Services or Tall Tree
Advisors have any claim on the death benefits at issue in this
case, nor has she alleged any facts to suggest that either entity
now possesses or may in the future obtain the disputed death
benefits.  As such, there is no claim for Declaratory Judgment to
be had against either entity.

A Declaratory Judgment action is ripe for adjudication where

36

"there is a substantial controversy, between parties having
adverse legal interests, of sufficient immediacy and reality to
warrant the issuance of a declaratory judgment." Duane Reade,
Inc. v. St. Paul Fire and Marine Ins. Co., 411 F.3d 384, 388 (2d
Cir. 2005). The Second Circuit has repeatedly held that in order
to decide whether to entertain an action for declaratory
judgment, a District Court must ask: (1) whether the judgment
will serve a useful purpose in clarifying or settling the legal
issues involved; and (2) whether a judgment would finalize the
controversy and offer relief from uncertainty. Duane Reade, Inc.
v. St. Paul Fire and Marine Ins. Co., 411 F.3d 384, 388 (2d Cir.
2005).

Plaintiff has made no such allegations as to Tall Tree
Advisors or Lockwood Pension Services. Merely alleging
involvement in what Plaintiff terms "an illegal SOLI scheme" is
not sufficient to maintain an action for declaratory judgment
where Plaintiff has not alleged an actual controversy between
parties having adverse legal interests. To the extent that the
Plaintiff is arguing that New York Insurance Law creates an
independent cause of action for creating a SOLI scheme, such a
cause of action (if one exists) is not pled in the Complaint.
Although Plaintiff seeks to rely on Fed. R. Civ. P. 57 to argue
that "the existence of another adequate remedy does not preclude

a declaratory judgment that is otherwise appropriate" such an argument is entirely inapposite where Plaintiff has not asserted any claim other than one for declaratory judgment. The fact of the matter remains that Plaintiff has not alleged any facts or pled any causes of action which, if proved, would entitle her to relief against Tall Tree Advisors or Lockwood Pension Services. Consequently, Tall Tree Advisors and Lockwood Pension Services Motion to Dismiss the Complaint is GRANTED.

B. Plaintiff's Motions to Dismiss Counterclaims by Various Defendants

The following Defendants have counterclaimed against the Plaintiff: Phoenix Life Insurance, Lincoln Life and Annuity, Life Product Clearing and Jonathon Berck. The Plaintiff has moved to dismiss each of these Counterclaims.

1. Plaintiff's Motions to Dismiss Phoenix' Counterclaims

a. Fraud

Phoenix answered Plaintiff's Amended Complaint, indicating its intention not to pay any death benefits in connection with the Phoenix Policies and simultaneously asserting claims against

Plaintiff for fraud (Dkt. 43 at ¶¶ 35-34), aiding and/or abetting breach of fiduciary duty (id. at ¶¶ 42-47), and unjust enrichment. (Id. at ¶¶ 48-52.) Plaintiff moved to dismiss those counterclaims arguing, inter alia, that New York's two year incontestability period for life insurance policies bars Phoenix from asserting claims of fraud, or claims like aiding and abetting a breach of fiduciary duty, which is merely a fraud claim in another form. (Pl. Mem. of Law, Dismiss Phoenix Counterclaims, Dkt. 62 at 10-21.)

The New York Insurance Law contains a provision which requires: "All life insurance policies...shall contain in substance the following provisions, or provisions which the superintendent deems to be more favorable to policyholders: ... that the policy shall be incontestable after being in force during the life of the insured for a period of two years from its date of issue..." New York Insurance Law § 3203 (a)(3).

The New York Court of Appeals addressed the issue of incontestability in New England Mut. Life Ins. Co. v. Caruso , opining that "[t]he requirement rests on the legislative conviction that a policyholder should not indefinitely pay premiums to an insurer, under the belief that benefits are available, only to have it judicially determined after the death

of the insured that the policy is void because of some defect existing at the time the policy was issued." 73 N.Y.2d 74, 78 (1989). Caruso, like this case, involved an insurance company's refusal to pay benefits, alleging that the beneficiary lacked an insurable interest in the decedent. The Court wrote in Caruso, "[t]he policy at issue in this case is the general public interest in preventing gambling and, in the case of life insurance contracts, of compromising public safety by furnishing a temptation to bring about the event upon which payment is conditioned to those who insure the lives of others." Caruso, 73 N.Y.2d 74, 81 (1989). Nevertheless the Court of Appeals held that, "Decedent consented to the policy's issuance and plaintiff accepted the application on the strength of the representations contained in it. If it doubted defendant's interest, the burden rested on it to investigate in a timely manner or ignore the matter at its peril." Caruso, 73 N.Y.2d 74, 82-83 (1989).

Ten years after Caruso, the Court of Appeals again addressed the reach of the incontestability period, this time in a case involving the life insurance applicant's failure to disclose his HIV status at the time he made his application. In that case the insurance companies argued (similar to Phoenix's argument here) that the Legislature could not have intended the policyholder to conceal wilfully a fact (there, a known condition) and eventually

40

collect benefits.  New England Mut. Life Ins. Co. v. Doe, 93

N.Y.2d 122, 130 (1999).  The Court of Appeals rejected that

argument and found that the insurance carriers "proposed

interpretation would undermine the predictability that the

statute was designed to engender."  Id.  However, the Court of

Appeals stated in dicta that:

> We are not insensitive to the carrier's concern
> that the policyholder's interpretation may
> encourage fraud.
>
> Were we faced with a choice between fraud and
> statutory design, a far more difficult case would
> be presented. It would be difficult for us to
> conclude that the Legislature knowingly enacted a
> statute that would encourage fraud. But that is
> not the case. A carrier may, compatibly with the
> incontestability clause, protect itself by
> including a provision in its incontestability
> clause creating an exception for "fraudulent
> misstatements." The carrier here purposely chose
> not to include a fraud exception and is bound by
> that choice--a calculation that includes marketing
> inducements.

Id.

Subsequently, other Courts applying New York law have held

insurance carriers to the language of their incontestability

clauses.  Galanty v. Paul Revere Life Ins. Co., 23 Cal.4th 368,

382 (Cal. 2000); Security Mut. Life Ins. Co. of New York v.

Herpaul, 827 N.Y.S.2d 141, 143 (N.Y.App.Div. 1st Dept. 2007

(quoting Appleman, Insurance Law & Practice § 332 as "where a

41

policy provides that it shall be contestable except for certain matters and fails to list among those defenses fraud, the defense of fraud is barred").

The rule expressed in Doe, that a carrier may protect itself by including a provision in its incontestability clause creating an exception for "fraudulent misstatements," strikes the proper balance between the policy goals expressed in Caruso and Doe, predictability and discouraging fraud. This rule is also consistent with the holding of Caruso insofar as it requires that insurers investigate claims within two years.[6] Further, as the Court of Appeals stated in Caruso, "[g]enerally, parties may contract as they wish and the courts will enforce their agreements without passing on the substance of them...Freedom of contract itself is deeply rooted in public policy, however, and therefore a decision to refrain from enforcing a particular agreement depends upon a balancing of the policy considerations against enforcement and those favoring the encouragement of transactions freely entered into by the parties." Caruso, 73 N.Y.2d 74, 81 (1989). The incontestability rule should be

---

[6] The insured's finances were a condition of insurance, which were ascertainable by the defendant at the time that the policy was issued, and which it is precluded from contesting more than two years thereafter. Ilyaich v. Bankers Life Ins. Co. of New York, 849 N.Y.S.2d 595, 596 - 597 (N.Y.App.Div. 2d Dept. 2008).

available as a shield, but not a sword; enforcing the contract

terms protects insurers from a collusion which disguises a fraud

until after two years have passed.

Turning to the terms of the Phoenix policy at issue, the

incontestability clause states:

> We rely on all statements made by or for the
> insured in the written application and in any
> supplemental application. These statements are
> considered to be representations not warranties.
> We can contest the validity of this policy and
> coverage under it for any material
> misrepresentation of fact. To do so, however, the
> misrepresentation must be contained in an
> application and the application must be attached to
> this policy when issued or made a part of this
> policy when a change is made. We cannot contest
> the validity of the original face amount of this
> policy after it has been in Force during the
> Insured's lifetime for two years from its Policy
> Date (or two years from any reinstatement, if
> applicable).[7]

It appears from the terms of this contract, that Phoenix

endeavored to protect itself by including a provision in its

incontestability clause creating an exception for

misrepresentations of fact if the misrepresentation was contained

---

[7] As a useful point of comparison, another insurance policy in
this action, issued by Lincoln Life and Annuity, states in
relevant part:"Except for nonpayment of monthly deductions, this
policy will be incontestable after it has been in force during
the Insured's lifetime for two years from its Date of Issue.
This means that Lincoln Life will not use any misstatement in the
application to challenge a claim or avoid liability after that
time."   (Dkt. 128, Carreira Aff. Ex. 1 at 20.)

43

in an application attached to the policy when issued.[8]
Therefore, contrary to Plaintiff's argument, Phoenix's claims may
not be bound by incontestability. It is another question, of
course, whether the alleged fraud was discoverable within the two
year period, which, if it were, would make the incontestability
clause applicable. See Ilyaich v. Bankers Life Ins. Co. of New
York, 849 N.Y.S.2d 595 (N.Y.App.Div. 2d Dept. 2008).

However, even if perhaps exempted from incontestability,
Phoenix's counterclaims nevertheless fail to allege sufficiently
misrepresentations by Kramer in the life insurance application.
In order to establish a cause of action for fraud, a plaintiff
must plead the following elements: (1) a false representation;
(2) of material fact; (3) with intent to defraud; (4) reasonable
reliance on the representation; (5) causing damages to the
plaintiff. Barker v. Time Warner Cable, Inc., 2009 WL 1957740, 8
(N.Y.Sup. 2009)(citing Lama Holding Co. v. Smith Barney, 88
N.Y.2d 413 (1996)). Further, all claims of fraud must be pled
with particularity.[9] Fed. R. Civ. P. 9(b); CPLR § 3016(b).

---

[8] Phoenix attempts to argue that the incontestability period only
protects bona fide policy holders. However, that argument runs
counter to the holdings of Caruso and Doe which enforced
incontestability clauses.

[9] To the extent that Phoenix alleges that there is a choice of
law issue presented, and that Connecticut law may apply, it
concedes that no Connecticut court has ruled directly on the

44

Merely alleging an "illegal SOLI scheme" is not sufficient to satisfy the elements of fraud, each of which must be met in order to survive a motion to dismiss. In this case Phoenix has failed to allege either a false representation or damages and therefore its cause of action for fraud must be dismissed.

Although Phoenix pled the existence of a "SOLI" scheme in great detail, nowhere in their counterclaim against the Plaintiff is there an articulation of an actual misrepresentation made by one of the Kramers. The closest Phoenix comes to pleading fraud at any point in their counterclaims is their allegation that "[g]iven the applicable law and public policy prohibiting 'wager' life insurance policies, Mr. Kramer, Lockwood and the Trustee implicitly represented that (a) the Kramer August Trust would be the true owner and beneficiary of the requested Phoenix Policies (i.e. not just a strawman) and (b) the Kramer August Trust and its intended beneficiary had an insurable interest in Mr. Kramer's life." (Dkt. 42, Answer, at ¶ 22.) These "implicit" representations are just that, implicit, and do not appear on the face of the application for life insurance. Kramer never

tension between the insurable interest requirement and an incontestability clause. (Phoenix Mem. of Law Opp. Pl. Motion to Dismiss Counterclaims, at 23.) Leaving aside New York's significant relationship to the transaction, there is no conflict presented here. See infra.

45

represented, nor omitted to disclose who the eventual beneficiary
of his insurance trust would be, as that question was never asked
of him in the application. The beneficiary of the policy is
listed as the Arthur Kramer Insurance Trust. If Phoenix needed
to know the beneficiaries of the Arthur Kramer Insurance Trust
prior to determining whether to issue the policy it could have
asked for that documentation or conducted an investigation. They
cannot now claim that failure to disclose the identity of the
beneficiaries of the Trust is fraud.

Further, Phoenix has failed to allege the damages element of
the fraud claim. Phoenix alleges that "[a]s result of Mr.
Kramer's misrepresentation, Mr. Kramer knowingly induced Phoenix
to issue life insurance policies that it would not have issued
but for Mr. Kramer's misrepresentation." (Dkt. NO. 43, at ¶ 40.)
Leaving aside plausibility of the claim that Phoenix would not
have issued the policies if it had known the "true" beneficiary,
despite not inquiring about the beneficiaries of the Trust, it is
nevertheless the case that Phoenix entered into a calculated
business transaction in which it risked paying a large death
benefit, but stood to gain from years of large premiums. The
damage as alleged by Phoenix here, potentially having to pay the
large death benefits, was not caused by Kramer's alleged
misrepresentation, but was always part of the bargain Phoenix

entered.

On the issue of damages to insurance companies, the facts of Universal Acupuncture Pain Services, P.C. v. State Farm Mut. Auto. Ins. Co., are instructive. 196 F.Supp.2d 378 (S.D.N.Y. 2002). In that case the Court held that, under New York law, an automobile insurer, State Farm Mutual Auto Insurance Company, had no cause of action against an unlicensed acupuncture clinic which had received no-fault benefits from the insurer, based on the clinic's violation of the state's professional services corporation statute. Id. The Court found that, although the acupuncture clinic had indeed violated the statute, the insurer's recovery under a common law fraud theory was precluded by the fact that it had lost no benefit and suffered no injury independent of the clinic's statutory violation. Id. Dismissing State Farm's Counterclaims, the Court opined that, "State Farm claims that it suffered injury in the amount of $190,000 of payments to Universal that it was not legally required to make. Id. Thus, State Farm's only injury resulted from Universal's noncompliance with section 1503." Id. at 387. The same would be true here; Phoenix's only injury, to the extent it was injured at all, resulted from Kramer's alleged noncompliance with New York Insurance Law. See also Kirk v. Heppt, 532 F.Supp.2d 586 (S.D.N.Y. 2008) (finding that, to maintain a claim for common law

fraud under New York law, a plaintiff must be able to show a causal link between the alleged fraud and his claimed damages); Glidepath Holding B.V. v. Spherion Corp., 590 F.Supp.2d 435 (S.D.N.Y. 2007) (finding that many considerations enter into the proximate cause inquiry, to establish loss causation for claims of fraud and negligent misrepresentation, under New York law, including the foreseeability of the particular injury, the intervention of other independent causes, and the factual directness of the causal connection). Failing to comply with New York Insurance Law was not causally related to the damages Phoenix alleges. Consequently, Phoenix has failed to plead sufficiently its counterclaim of fraud; Plaintiff's motion to dismiss that cause of action is therefore, GRANTED. In addition, although leave to replead should be "freely granted"; leave is not required here where any attempt to replead would be futile.

b. Aiding and Abetting Breach of Fiduciary Duty

Plaintiff further moves to dismiss Phoenix's counterclaim for aiding and abetting breach of fiduciary duty. "A claim for aiding and abetting a breach of fiduciary duty requires: (1) a breach by a fiduciary of obligations to another, (2) that the defendant knowingly induced or participated in the breach, and

(3) that plaintiff suffered damage as a result of the breach".
AHA Sales, Inc. v. Creative Bath Products, Inc., 867 N.Y.S.2d
169, 182 (N.Y.App.Div. 2d Dept. 2008) (citing Kaufman v. Cohen,
760 N.Y.S.2d 157). "Although a plaintiff is not required to
allege that the aider and abettor had an intent to harm, there
must be an allegation that such defendant had actual knowledge of
the breach of duty .... Constructive knowledge of the breach of
fiduciary duty by another is legally insufficient to impose
aiding and abetting liability." Id.

Phoenix alleges that "Mr. Kramer knew or should have known
that [Steven] Lockwood owed Phoenix a fiduciary duty" and that he
"knew or should have known that such a fiduciary duty included a
duty of full disclosure with respect to the Phoenix Application
and a duty not to procure SOLI policies which Lockwood knew or
should have known Phoenix would decline to issue if Phoenix knew
of the true nature of such policies." (Dkt. No. 43 at ¶¶ 43,
44.) To the extent that Phoenix alleges that Kramer merely
"should have known" of Lockwood's fiduciary duty, such a claim
cannot succeed as a matter of law. AHA Sales, 869 N.Y.S 2d at
182.

Although Phoenix also alleges that Kramer "knew" of the
(alleged) fiduciary duty and "knew" of the (alleged) breach, such

a claim is not plausible under the standard set forth by the Supreme Court in Iqbal. From the facts as pled by Phoenix, the Court cannot draw "the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, --- S.Ct. ----, 2009 WL 1361536, *12 (May 18, 2009). Other than the conclusory allegations that Kramer "knew or should have known that Lockwood owed Phoenix a fiduciary duty" and that "such a duty included a duty of full disclosure with respect to the Phoenix Application and a duty not to procure SOLI policies which Lockwood knew or should have known Phoenix would decline to issue if Phoenix knew of the true nature of such policies." Phoenix has alleged no facts that would support a claim that Kramer had actual knowledge of a fiduciary duty, to the extent one existed, between Lockwood and Phoenix.

What's more, even assuming, arguendo, that it could be plausibly alleged that Kramer knew of Lockwood's alleged fiduciary duty, and breach, as discussed infra, Lockwood did not in fact owe a fiduciary duty to Phoenix. As a broker, he is properly understood as the agent of the insured, Kramer in this instance, and not the insurer. Accordingly, Plaintiff's Motion to Dismiss Phoenix's Counterclaim for Aiding and Abetting a Breach of Fiduciary Duty is GRANTED. In addition, although leave to replead should be "freely granted"; leave is not required here

50

where any attempt to replead would be futile.

### c. Unjust Enrichment

Finally, Plaintiff has Moved to Dismiss Phoenix's Counterclaim of Unjust Enrichment. Phoenix alleges that in the event that the Estate of Arthur Kramer receives the proceeds of the Phoenix Policies, then Phoenix is entitled to the full amount of the Estate's "ill-gotten gains, including interest, resulting from Mr. Kramer's unlawful, unjust and inequitable conduct in connection with the Phoenix Policies, including but limited to the payments received in exchange for transfer of the beneficial interests in the Phoenix Policies that he never intended to retain." (Dkt. No. 43 at ¶ 52.) Plaintiff alleges that Phoenix fails to satisfy the "fundamental element" of an unjust enrichment claim, that the Estate was enriched by payments made by Phoenix at Phoenix's expense. (Dkt. No. 61, Pl. Mem. of Law, at 22.)

To prevail on a claim for unjust enrichment in New York, a plaintiff must establish 1) that the defendant benefitted; 2) at the plaintiff's expense; and 3) that "equity and good conscience" require restitution. Kaye v. Grossman, 202 F.3d 611, 616 (2d Cir. 2000) (citing Dolmetta v. Uintah Nat'l Corp., 712 F.2d 15,

20 (2d Cir. 1983)). The "essence" of such a claim "is that one party has received money or a benefit at the expense of another." Id. (citing City of Syracuse v. R.A.C. Holding, Inc., 685 N.Y.S.2d 381, 381 (N.Y. App. Div. 4th Dep't 1999)). There is no question that the first and third elements have been properly pled. Phoenix alleges that "it would be inequitable, if the Estate receives the proceeds of the Phoenix Policies, for the Estate to retain also any payments that Mr. Kramer (or other beneficiaries) received for the transfer of the beneficial interests in the policies." (Dkt. 43, at ¶ 51.) The question is whether the death benefits will be paid at Phoenix's expense.

While damages are not an element of unjust enrichment in the same sense as with the fraud allegations, a similar theory could apply to Phoenix's claim that Plaintiff-Counterclaim Defendant, Estate of Arthur Kramer, will be unjustly enriched. Prior to learning of the violation of the insurance laws, it was always anticipated that Phoenix would pay the death benefits. A claim for unjust enrichment does not lie to relieve a party "of the consequences of [the party's] own failure to ... exercise caution with respect to a business transaction". Dragon Inv. Co. II LLC v. Shanahan, 854 N.Y.S.2d 115, 118 (N.Y.A.D. 1 Dept. 2008). Paying what it had always planned to pay is hardly at Phoenix's "expense."

However, the Court need not reach these questions at this time because recovery for unjust enrichment is barred by a valid and enforceable contract. A quasi-contractual obligation is one imposed by law where there has been no agreement or expression of assent, by word or act, on the part of either party involved. In re Goodman, 790 N.Y.S.2d 837, 844 (N.Y.Sur. 2005). Because the relationship between Kramer and Phoenix is governed by the terms of the insurance policy, there is no cause of action for unjust enrichment. Plaintiff's Motion to Dismiss this Counterclaim is GRANTED. In addition, although leave to replead should be "freely granted"; leave is not required here where any attempt to replead would be futile.

2. Motions to Dismiss Counterclaims and Third Party Claims of Life Product Clearing and Jonathan Berck against Plaintiff, Liza and Andrew Kramer

Both Life Product Clearing and Jonathon Berck have counterclaimed against the Plaintiff asserting an entitlement to Declaratory Judgment and claimed Tortious Interference with Contractual Relations and Breach of Warranty. Further, Berck asserted Third-Party Claims against Liza and Andrew B. Kramer asserting Tortious Interference with Contractual Relations. (Dkt. 91, Berck TPC at ¶ 25.) Life Product Clearing asserted

Third Party Claims against Liza and Andrew Kramer alleging Tortious Interference with Contractual Relations and against Liza Kramer for Breach of Warranty and Breach of Contract. (Dkt. No. 60 at ¶¶ 23, 34, 43.) Plaintiff and Third Party Defendants Liza and Andrew Kramer have moved to dismiss the tortious interference claims against them. Liza Kramer has not moved against either the Breach of Contract or Breach of Warranty claim against her; Plaintiff has not moved against the Declaratory Judgment claims.

a. Elements of a Tortious Interference Claim

To establish a claim for tortious interference with contractual relations under New York law a plaintiff must demonstrate (1) that a contract between plaintiff and a third party exists; (2) that defendant was aware of the contract; (3) that defendant intentionally interfered with that contract without justification; and (4) that damages resulted. Universal City Studios, Inc. v. Nintendo Co., 797 F.2d 70 (2d Cir.), cert. denied, 479 U.S. 987 (1986); Kronos, Inc. v. ABX Corp., 81 N.Y.2d 90, 94 (1993). It has been clearly established under New York law that litigation or the threat of litigation can give rise to a claim for tortious interference with contractual relations. Universal City Studios, 797 F.2d at 75 (citing Guard-Life Corp.

v. S. Parker Hardware Mfg. Corp., 50 N.Y.2d 183, 191 (1980)).

Liability can arise in two situations: 1)"if the actor has no

belief in the merit of the litigation" or 2) if the actor, having

some belief in the merit of the suit, "nevertheless institutes or

threatens to institute the litigation in bad faith, intending

only to harass the third parties and not to bring his claim to

definitive adjudication." Id.

> b.   Plaintiff's and/or the Estate's Lawsuit a
>      Basis for Tortious Interference

In their Counterclaims against Plaintiff and their Third

Party Complaints against Liza and/or Andrew Kramer, Berck and

Life Product failed to allege plausibly that any of the Kramers

lacked belief in the merits of this litigation or that they

intended this litigation only to harass. Although, arguably, the

intent of the Parties is an issue to be determined as a matter of

fact, dismissal is appropriate where, as here, such a factual

allegation, if asserted, would lack plausibility. Iqbal, ---

S.Ct. ----, 2009 WL 1361536, *12 (May 18, 2009) (quoting Twombly,

550 U.S. at 556-57) (holding that "[w]here a complaint pleads

facts that are 'merely consistent with' a defendant's liability,

it 'stops short of the line between possibility and plausibility

of 'entitlement to relief.'").

Without drawing any conclusions as to the merits of Plaintiff's claim, at the very least the recent decision of Judge Chin in Life Product v. Angel, suggests a window of opportunity for Plaintiff to prevail on the merits. Therefore, neither Berck nor Life Product Clearing could plausibly argue that Plaintiff and/or the adult Kramer children lacked belief in the merits of this litigation or intended this litigation merely to harass. In addition, although leave to replead should be "freely granted"; leave is not required here where any attempt to replead would be futile.

As a result, Plaintiff's Motion to Dismiss Berck and Life Product's Counterclaims against her for Tortious Interference with Contractual Relations is GRANTED without leave to replead. Likewise, Liza and Andrew Kramer's Motions to Dismiss the Third Party claims against them for Tortious Interference with Contractual Relations is GRANTED without leave to replead to the extent the claims were predicated on their involvement with the Estate's determination to file this lawsuit. Although leave to replead should be "freely granted"; leave is not required here where any attempt to replead would be futile.

c. Liza Kramer's Failure to Provide a Death
Certificate as a Basis for a Tortious
Interference Claim

Both Life Product and Berck have asserted Third Party claims

against Liza Kramer for Tortious Interference with Contractual

Relations on the additional ground that she "failed and refused

to provide the death certificate [of Arthur Kramer] to [Life

Product] nor the August Trust [sic]... so as to delay and/or

frustrate the efforts of the August Trust to successfully obtain

payment by Lincoln of the proceeds of the Lincoln Policy." (Dkt.

No. 91 at ¶ 32.) Liza Kramer has moved to dismiss the Tortious

Interference claim on this additional ground as well. (Dkt. No.

83, 103.) Liza Kramer has argued that there was no damage to the

August Trust or Life Product because the Trust was ultimately

able to obtain a copy of the death certificate and submit their

claim to Lincoln. In response, Life Product accuses Liza Kramer

of failing to understand a "fundamental point of basic contract

law" that "the obligee may be able to mitigate the damages

flowing from the obligor's breach." (Dkt. No. 122 at 19.) While

the law of mitigation is, indeed, fundamental, it is Berck and

Life Product who have failed to allege a necessary element of a

tortious interference claim: damages. Although they state in

their Third Party Complaint that they will suffer damages in an

amount not less that the face value of the Lincoln Policy, i.e.
$10,000,000.00, there is no plausible connection between that
loss and the failure of any of the Kramers to provide the death
certificate. To the extent Life Product is alleging that Liza
Kramer's failure to provide the death certificate prevented them
from keeping their insurance arrangement concealed from the
insurers, such an argument is without merit. Consequently, Liza
Kramer's Motion to Dismiss Berck and Life Product Clearing's
Tortious Interference claims is GRANTED without leave to replead
on the additional ground that she failed to provide timely the
death certificate of Arthur Kramer. Although leave to replead
should be "freely granted"; leave is not required here where any
attempt to replead would be futile. Nevertheless, Life Product
Clearings claims against Liza Kramer for Breach of Express
Warranty and Breach of Contract survive.

C. Lincoln Life and Annuity's Motion to Dismiss Life
   Product Clearing and Jonathan Berck's Cross Claims

Both Life Product Clearing (LPC) and Jonathan Berck Cross-
Claimed against Insurer Defendant Lincoln Life and Annuity
claiming, among other things, breach of contract, deceptive
practices and entitlement to Declaratory Judgment. Lincoln Life
and Annuity moved to dismiss on the grounds of abstention, forum

non conveniens, and, with respect to the fifth cross claim for violation of New York General Business Law 349, failure to state a claim. The abstention and forum non conveniens arguments are predicated on a Connecticut state court lawsuit filed by Lincoln against Berck, Life Product Clearing, Lockwood Pension Services, Steven Lockwood, Joel Miller and TD Banknorth alleging breach of contract, fraud, fraudulent concealment, negligent misrepresentation, aiding and abetting fraud, and civil conspiracy, allegedly arising out of two SOLI policies issued by Lincoln insuring the lives of Arthur Kramer and Leon Lobel. As already noted, all claims stemming from insurance policies on the life of Leon Lobel are not properly before this Court.

## 1. Abstention and Forum Non Conveniens

On December 4, 2008, the Court received in Chambers a letter of Robert Schwinger counsel to Life Product Clearing in which he argued that "[o]n November 26, 2008, the Superior Court of Hartford issued a decision staying the Connecticut Action in deference to this first-filed action until this action is fully adjudicated." (Schwinger Ltr. Dec. 3, 2008 at 1.) Therefore, the letter argues, this Court "should deny the abstention and forum non conveniens portions of Lincoln's pending motion to

59

dismiss LPC's cross claims." (Id.) Indeed, Judge Domnarski wrote in the Hartford, Connecticut action that "[t]he fact that Lincoln has chosen not to raise its claims in the earlier filed New York action in which it is a party, but has instead chosen to bring another later action in Connecticut, raises the possibility that Lincoln is forum shopping." (Nov. 26, 2008, Memorandum of Decision, No. Cv. 08-5019142 Superior Court, J.D. of Hartford, at 5.) Counsel for Lincoln argued in response that because "Plaintiff's claims against Lincoln were - and still are - fatally deficient" and because the Connecticut action asserts claims against four additional parties, that abstention was nevertheless appropriate. (Dec. 9, 2008 Ltr. of Michael Miller at 1-2.) However, because the Court has held that Plaintiff does have standing to sue Lincoln in this Court, and because the Connecticut Action has been stayed pending the resolution of this case, neither abstention nor a change of forum is appropriate in this matter. Accordingly, to the extent they are based on abstention doctrines and forum non conveniens, Lincoln Life and Annuity's Motion to Dismiss the Cross-claims of Life Product Clearing and Jonathan Berck are HEREBY DISMISSED.

2.   Lincoln Life and Annuity's 12(b)(6) Motion to
     Dismiss the New York General Business Law 349
     Claims

According to Lincoln's Motion to Dismiss, the Court should

dismiss Life Product Clearing and Berck's New York General

Business Law Claims under Section 349 because the cross-claims

represent private disputes and not the type of "consumer

oriented" conduct that Section 349 regulates.   The issue

presented by this motion is whether the dispute between Life

Product/Berck and Lincoln represents a contract dispute over

policy coverage unique to the parties, or the type of dispute

that has a broad impact on consumers at large.

As a threshold matter, plaintiffs claiming the benefit of

section 349 "must charge conduct of the defendant that is

consumer-oriented."   Oswego Laborers' Local 214 Pension Fund v.

Marine Midland Bank, N.A., 85 N.Y.2d 20, 25 (N.Y. 1995).

Consumer-oriented conduct does not require a repetition or

pattern of deceptive behavior.   Id.   However, "[p]rivate contract

disputes, unique to the parties ...would not fall within the

ambit of the statute."   Id.   Further, "[a] prima facie case

requires as well a showing that defendant is engaging in an act

or practice that is deceptive or misleading in a material way and

that plaintiff has been injured by reason thereof."   Id.

In Berck's fifth Cross-Claim he alleges that the Lincoln
Policy issued to the August Trust was a standard form policy sold
by Lincoln to other consumers. (Dkt. No. 90, Berck Answer with
Cross Claims, at ¶ 136; Dkt. No. 59, Life Product Clearing LLC
Answer with Cross Claims at ¶ 139.) He further alleges that
Lincoln's representations and omissions were misleading in that
policy applicants, holders, purchasers and beneficiaries were led
to believe that claims for payment under such policies would be
investigated and processed in good faith and in a timely matter
[sic], and that benefits would be paid in accordance with the
terms of such policies." (Id. at 137; 140.) The Cross-claim
further alleges that Lincoln has failed to process and pay
benefits according to the terms of this policy and other similar
policies. (Id.)

Although it is true that Lincoln has issued a standard form
policy and then resisted paying benefits associated with that
policy, such behavior is not properly considered "consumer-
oriented" where, as here, the parties include sophisticated
insurance brokers and not ordinary consumers to whom the statute
is directed. Furthermore, the allegation here is not that the
insurance companies have failed to pay benefits in all cases, but
rather, have resisted making payments on policies which,
arguably, violated New York Insurance Laws. Accordingly, Lincoln

Life and Annuity's 12(b)(6) Motion to Dismiss the New York
General Business Law 349 Claims asserted by Life Product Clearing
and Jonathan Berck are GRANTED.  In addition, although leave to
replead should be "freely granted"; leave is not required here
where any attempt to replead would be futile.

> D.    Steven Lockwood, Lockwood Pension Services Inc., and
>       Tall Tree Advisors Motions to Dismiss Phoenix's Cross
>       Claims/Third Party Claims Against

Phoenix Life Insurance Co. Answered the Amended Complaint
and counterclaimed against the Plaintiff for Fraud, Aiding and
Abetting a Breach of Fiduciary Duty and Unjust Enrichment
(discussed supra).  They also cross claimed against Lockwood
Pension Services Inc. and Tall Tree Advisors Inc for aiding and
abetting fraud, aiding and abetting breach of fiduciary duty, and
civil RICO and third-party claimed against Steven Lockwood for
fraud, breach of fiduciary duty, breach of contract, negligence,
contractual indemnification, unjust enrichment and civil RICO.
(Dkt. 43, Phoenix Ans. at ¶¶ 35-206.)  This section addresses
Phoenix's cross claims and third-party claims.

1.     Phoenix Cross Claims Against Lockwood Pension
       Services and Tall Tree Advisors and Third Party
       Complaint Against Steven Lockwood for Fraud and
       Aiding and Abetting Fraud

Lockwood Pension Services, Tall Tree Advisors and Steven

Lockwood ("Investor Defendants") have moved to dismiss all of the

Cross-Claims and Third Party claims against them arguing, inter

alia, that there is no underlying fraud in this case, that

Phoenix failed to plead sufficiently RICO, and failed to plead

adequately breach of contract.  (Dkt. 68, Mem. of Law,

generally.)


a.    Fraud

For the reasons stated, supra, dismissing Phoenix's

Counterclaims against Plaintiff for fraud, Steven Lockwood's

motions to dismiss Phoenix's claims of fraud, and Lockwood

Pension Services and Tall Tree Advisors motions to dismiss

Phoenix's cross-claims for aiding and abetting fraud are GRANTED

as well.  As with the counterclaims against Plaintiff, Phoenix

has failed to allege either actual (and not merely "implicit")

misrepresentations or damages apart from those that are inherent

in an insurance transaction.  In addition, although leave to

replead should be "freely granted"; leave is not required here

64

where any attempt to replead would be futile.

b. Phoenix's Breach of Contract Claims Against Lockwood

Phoenix has third-party claimed against Steven Lockwood for, among other things, breach of contract. It is well-settled under New York law that to establish a claim of breach of contract, a plaintiff must prove the following elements: (1) the existence of a contract; (2) plaintiff's performance of the contract; (3) defendant's breach of the contract; and (4) damages suffered as a result of the breach. See Terwilliger v. Terwilliger, 206 F.3d 240, 245-46 (2d Cir. 2000) (citation and quotation marks omitted). In pleading such a claim, a plaintiff must provide specific allegations as to an agreement between the parties, the terms of that agreement, and what provisions of the agreement were breached as a result of the acts at issue. See Americorp Fin., Inc. v. St. Joseph's Hosp. Health Ctr., 180 F.Supp.2d 387, 390 (N.D.N.Y. 2001); Levy v. Bessemer Trust Co., N.A., No. 97 Civ. 1785, 1997 WL 431079, at *5 (S.D.N.Y. July 30, 1997).

Phoenix has alleged that Lockwood breached provisions of the August 30, 2005 Independent Producer Contract ("IPC") that he entered with Phoenix allowing him to be an "independent producer

65

of various Phoenix products, including life insurance policies."
(Dkt. No. 43, ¶¶ 9-10.) In one provision of the IPC, as alleged
by Phoenix, Lockwood agreed that the contract and his conduct is
subject to "applicable federal or state laws, statutes and
regulations or directives issued by any regulatory entity having
jurisdiction over the matters covered in this contract . . . ."
(Id. at ¶ 85.) Phoenix further alleged that Lockwood breached
the IPC by among other things, "(a) inducing Mr. Kramer to apply
for life insurance policies for the benefit of a person or
persons without an insurable interest in Mr. Kramer's life, (b)
facilitating the creation of trust and/or related documents to
hide the transfer of the beneficial interest in the Phoenix
Policies from Phoenix, (c) failing to disclose to Phoenix
information he knew Phoenix would deem relevant to determining
whether the insurance would issue, including but not limited to
the failure to disclose the lack of an insurable interest on Mr.
Kramer's life, and (d) arranging for the immediate transfer of
the beneficial interest in the Kramer August Trust (and thus the
Phoenix Policies) to LPS's affiliate, Tall Tree." (Id. at ¶ 85.)

    Lockwood argues that "Phoenix's claims all suffer from the
same fundamental flaw" that Phoenix's reading of the relevant
insurance law provisions is in fact contrary to law, as Section
3205(b)(1) "expressly permits an individual to procure or effect

66

a contract of insurance on his/her own life or for the benefit of a third party." (Id. at 13.) "Put simply" the Investor Defendants argue, "where the Trust is created by the party whose life is insured, there is no need to prove the 'insurable interest' of any beneficiary of the trust." (Id. at 14.)

Again, New York Insurance Law §3205 (b)(1) states:

Any person of lawful age may on his own initiative procure or effect a contract of insurance upon his own person for the benefit of any person, firm, association or corporation. Nothing herein shall be deemed to prohibit the immediate transfer or assignment of a contract so procured or effectuated.

In order for the Insurer Defendants to prevail that provision must be read in isolation, or as entirely separate from the following provision, §3205(b)(2) which states:

No person shall procure or cause to be procured, directly or by assignment or otherwise any contract of insurance upon the person of another unless the benefits under such contract are payable to the person insured or his personal representatives, or to a person having, at the time when such contract is made, an insurable interest in the person insured.

The Court finds that, contrary to the suggestion of Lockwood and the cross claim Defendants, the two provisions are properly read together. The fact that the language of (b)(2) tracks the language of (b)(1), in that it refers to "procuring" and "assigning" insurance policies, suggest that the two provisions

67

are meant to inform one another. Consequently, to allege that an assignment violated the Insurance Law Phoenix must establish that either (1) the insured was not of legal age, or (2) that the policy was not obtained on the initiative of the insured. The question of whether the assignment was indeed on the initiative of the insured is informed by the following section, 3205(b)(2), in that the plaintiff must set forth in the Complaint facts that allege defendants (1) procured or caused to be procured directly or through assignment or other means, a contract of insurance upon the life of the decedent (2) for the benefit of strangers who did not have an insurable interest in his life at the time the policy was obtained.[10] Therefore, although the Investor Defendants are correct inasmuch as they assert that not all "SOLI schemes" are fraudulent, it is possible that the facts alleged by Phoenix would constitute a violation of the New York Insurance

---

[10]  Importantly, the statute requires that the policyholder have an insurable interest in the life of decedent only at the time the contract was made (Insurance Law § 3205(b)(2); cf., § 3401 [insurable interest in property at time of loss required]). "Finally, it should be noted that when the statute was recodified in 1939 a new provision was added enabling the person insured or his representative to recover proceeds paid to a policyholder without an insurable interest see, Insurance Law § 3205 [b] [3]). Manifestly the relief granted by the provision contemplates that such policies, although improper, may be issued and enforced." New England Mut. Life Ins. Co. v. Caruso, 73 N.Y.2d 74, 80 (1989).

Law.[11]

This reading is further consistent with the holding of the Court in <u>Life Product Clearing v. Angel</u>, which held that "[o]nly one who obtains a life insurance policy on himself 'on his own initiative' and in good faith--that is, with a genuine intent to obtain insurance protection for a family member, loved one, or business partner, rather than an intent to disguise what would otherwise be a gambling transaction by a stranger on his life-- may freely assign the policy to one who does not have an insurable interest in him." <u>Life Product Clearing, LLC v. Angel</u>, 530 F.Supp.2d 646, 654 (S.D.N.Y. 2008).

Consequently, Phoenix has alleged a contract violation because it has alleged that Lockwood breached provisions of the New York Insurance Law in that he "caused to be procured directly or through assignment or other means, a contract of insurance upon the life of the decedent [Kramer] for the benefit of strangers who did not have an insurable interest in his life at the time the policy was obtained." Accordingly, Steven Lockwood's Motion to Dismiss Phoenix's cross claim for breach of contract is DENIED.

---

[11] It is a separate question, of course, whether such facts would also constitute fraud.

c.   Phoenix's Civil RICO Claims

Phoenix's Seventh Third Party Claim and its Combined Cross Claim and Third Party Claim are Civil RICO allegations against Steven Lockwood, Lockwood Pension Services and Tall Tree Advisors.  18 U.S.C. § 1962(c).  As an initial matter, Phoenix arguably lacks standing to pursue a civil RICO action.  The Circuit has held that, "the reasonably foreseeable victims of a RICO violation are the targets, competitors and intended victims of the racketeering enterprise."  Lerner v. Fleet Bank, N.A., 318 F.3d 113, 124 (2d Cir.2003).  "[C]ourts routinely find that ... plaintiffs lack standing to bring a RICO claim, where the plaintiff's injuries are caused not by the RICO violations themselves, but by the exposure of those acts, or where the plaintiff seeks to recover for injuries caused by his refusal to aid and abet the violations."  Donelli v. County of Sullivan, 2009 WL 2365551, 9(S.D.N.Y. 2009) (citing  Hollander v. Flash Dancers Topless Club, 340 F.Supp.2d 453, 459-60 (S.D.N.Y. 2004)).  As discussed above, Phoenix has not alleged a cognizable injury; merely alleging that it would not have issued the Kramer policies if it had known the "true" beneficiary is not sufficient where the application itself did not require more detail about the beneficiary and there is no allegation of misrepresentations going to risk.  But even assuming, arguendo, that Phoenix has

standing, it has failed to plead the underlying fraud with particularity.

The predicate acts alleged by Phoenix are several instances of alleged mail and wire fraud. (Dkt. No. 24, RICO Stmt., at 7.) Mail fraud occurs whenever a person, "having devised or intending to devise any scheme or artifice to defraud," uses the mail "for the purpose of executing such scheme or artifice ...." 18 U.S.C. § 1341. Wire fraud occurs whenever a person, "having devised or intending to devise any scheme or artifice to defraud," "transmits or causes to be transmitted by means of wire ... communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice ...." 18 U.S.C. § 1343. In a RICO action, "all allegations of fraudulent predicate acts[ ] are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b)." First Capital Asset Mgmt., Inc. v. Satinwood, Inc., 385 F.3d 159, 178 (2d Cir. 2004); see also In re Sumitomo Copper Litig., 995 F.Supp. 451, 455 (S.D.N.Y. 1998) ("Rule 9(b) has great urgency in civil RICO actions." (internal quotation marks omitted)).

Therefore in order to assert a RICO claim based upon mail or wire fraud, a "complaint must: (1) specify the statements that

the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." <u>Mills v. Polar Molecular Corp.</u>, 12 F.3d 1170, 1175 (2d Cir. 1993); <u>McGee v. State Farm Mut. Auto. Ins. Co.</u>, 2009 WL 2132439, 4 (E.D.N.Y.,2009). Phoenix has fallen far short of this mark.

Phoenix regularly refers to "SOLI schemes" as though they are per se "fraudulent" where, in fact as discussed <u>supra</u>, the law permits individuals to own life insurance policies on the lives of "strangers" as long as, for example, the policy was obtained on the initiative of the insured.[12] Therefore, merely alleging a SOLI Scheme is insufficient to plead a RICO enterprise. Indeed, to plead civil RICO, Phoenix must allege

[12] <u>See</u> <u>also</u> <u>Lincoln Life and Annuity Co. of New York v. Bernstein</u>, 2009 WL 1912468, 3 (N.Y.Sup. Ct. 2009) (noting that "STOLI arrangements are legal as long as there is an insurable interest at the inception of the policy and there is not violation of any provision of the policy contract. As is clear, insurance trusts are a useful vehicle in such arrangements because the trust, as beneficiary of the policy, never changes; only the beneficial interest in the trust is changed. Not only are insurance trusts legitimate, but STOLI arrangements are also legal and many insurance companies, plaintiff company included, have life settlement subsidiaries active in the market of buying life insurance polices.") This Court went on to say: "[t]hese are questions of fact, not currently before this Court concerning the manner of procurement of the policy and whether the life insurance policy was procured with the intention of circumventing governing Insurable Interest Laws or otherwise in contravention of the policy contract." <u>Id.</u>

72

specific statements that were fraudulent, and explain why they were fraudulent. Nowhere in their allegations or RICO statement are those facts pled with particularity. Again, it seems that Phoenix has relied on "implicit" misstatements to support its claim.

Consequently, Steven Lockwood, Lockwood Pension Services Inc., and Tall Tree Advisors Motions to Dismiss Phoenix's Civil RICO claims are GRANTED. In addition, although leave to replead should be "freely granted"; leave is not required here where any attempt to replead would be futile.

### d.   Phoenix's Claims of Negligence Against Lockwood

Phoenix alleges that "[a]s a producer of the Phoenix Policies, Lockwood owed a common law duty of care to Phoenix that required it to provide full disclosure with respect the Phoenix Application including all facts relevant to the risk insured." (Dkt. No. 43 at ¶ 91.) Phoenix alleges that Lockwood breached that duty. (Id. at ¶ 92.) However, "a simple breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated. This legal duty must spring from circumstances extraneous to, and not constituting

73

elements of, the contract, although it may be connected with and dependent upon the contract." Clemens Realty, LLC v. New York City Dept. of Educ., 850 N.Y.S.2d 172, 173 (N.Y. 2d Dept. 2008)(citations omitted); In re Chateaugay Corp., 10 F.3d 944, 958 (2d Cir. 1993) (a tort claim will not arise "where plaintiff is essentially seeking enforcement of the bargain.").

Elsewhere in the Third Party Complaint, Phoenix alleged that in Section 11 of the IPC Lockwood "acknowledge[d] that [Phoenix] relies upon [him] for a careful and frank presentation of the facts necessary for the proper underwriting and acceptance of the requested insurance coverages" and that he "agreed to give complete and accurate answers in the application and associated forms, and agreed to promptly transmit to [Phoenix] any and all information that will enable [Phoenix] determine if the insurance applied for should be issued by [Phoenix] and upon what terms and rates." Because the breach of the common duty of care alleged by Phoenix ("full disclosure" of "all facts relevant to the risk insured") is essentially identical to a contract provision that Phoenix claims that Lockwood breached, there can be no independent cause of action for the tort. Consequently, Lockwood's Motion to Dismiss Phoenix Third Party Claim for Negligence is GRANTED. In addition, although leave to replead should be "freely granted"; leave is not required here where any

74

attempt to replead would be futile.

        e.    Phoenix's Claims of Unjust Enrichment

        Phoenix has alleged that Lockwood "has received benefits
from his wrongful actions described herein, including but not
limited to commissions that he received from Phoenix for
procuring the Phoenix Policies" and that the "circumstances as
described herein are such that it would be inequitable for
Lockwood to retain these ill-gotten benefits without disgorging
the value thereof to Phoenix." (Dkt. No. 43 at ¶¶ 101, 103.)  To
prevail on a claim for unjust enrichment in New York, a plaintiff
must establish 1) that the defendant benefitted; 2) at the
plaintiff's expense; and 3) that "equity and good conscience"
require restitution. Kaye v. Grossman, 202 F.3d 611, 616 (2d
Cir. 2000) (citing Dolmetta v. Uintah Nat'l Corp., 712 F.2d 15,
20 (2d Cir. 1983)).  The "essence" of such a claim "is that one
party has received money or a benefit at the expense of another."
Id. (citing City of Syracuse v. R.A.C. Holding, Inc., 685
N.Y.S.2d 381, 381 (4th Dep't 1999)).  Again, recovery for unjust
enrichment is barred by a valid and enforceable contract. A
quasi-contractual obligation is one imposed by law where there
has been no agreement or expression of assent, by word or act, on

                                75

the part of either party involved.  <u>In re Goodman</u>, 790 N.Y.S.2d
837, 844 (N.Y.Sur. 2005).  Because the relationship between
Phoenix and Lockwood is governed by the terms of the IPC, there
is no cause of action for unjust enrichment.  Lockwood's Motion
to Dismiss Phoenix's Third Party Claim of Unjust Enrichment
GRANTED.  In addition, although leave to replead should be
"freely granted"; leave is not required here where any attempt to
replead would be futile.

> f.  Phoenix Claims of Breach of Fiduciary Duty and
> Aiding and Abetting Breach of Fiduciary Duty
> Against the Investor Defendants

Phoenix has asserted claims of Breach of Fiduciary Duty and
Aiding and Abetting Breach of Fiduciary Duty against Steven
Lockwood, Lockwood Pensions Services and Tall Tree Advisors.
(Dkt. 43 at ¶¶ 66-71, ¶¶ 77-81.)  The elements of breach of
fiducuiary duty and aiding and abetting a breach of fidicuiary
duty have been articulated above.  <u>Supra</u>; <u>AHA Sales, Inc. v.
Creative Bath Products, Inc.</u>, 867 N.Y.S.2d 169, 182 (N.Y.App.Div.
2d Dept. 2008) (citing <u>Kaufman v. Cohen</u>, 760 N.Y.S.2d 157).

The extent of Lockwood's fiduciary duty to Phoenix is
dependent, in part, on whether his relationship was one of an
"Insurance Agent", which would be an agent of Phoenix, or an

76

"Insurance Broker", which would be an agent of Kramer. Lockwood
was properly understood as an "Insurance Broker" in that it is
not alleged that he was "a salaried insurance company employee or
otherwise identified with a single insurer." Rather the
Complaint alleges facts consistent with the understanding that he
operated as an "independent middleman." 758 Practicing Law
Institute 131, 138 (2007). A broker is generally considered to
be the insured's agent. Peerless Ins. Co. v. Young, 749 N.Y.S.2d
29, 30 (N.Y.App.Div. 1st Dept. 2002); 2540 Associates, Inc. v.
Assicurazioni Generali, S.p.A., 707 N.Y.S.2d 59, 61 (N.Y.App.Div.
1st Dept. 2000)("It is settled that an insurance broker is the
agent of the insured"). However, a Broker can have dual
loyalties to the extent that "the agent or broker who acts as a
salesperson has a duty to supply correct information to the
insurer and to make full disclosure of the nature of the risk
whether or not he is an agent of the insurer." Panepinto v.
Allstate Ins. Co., 439 N.Y.S.2d 240, 242 (N.Y.Sup. 1981). "To
establish that the broker was acting as the insurer's agent,
[t]here must be evidence of some action on the insurer's part, or
facts from which a general authority to represent the insurer may
be inferred." Precision Auto Accessories, Inc. v. Utica First
Ins. Co., 859 N.Y.S.2d 799, 803 (N.Y.App.Div. 4th Dept. 2008).
There is no duty where, as here, it is not alleged that Lockwood

77

held the general authority to represent the insurer; in fact, it may be inferred that "the broker who completed the application was hired by plaintiff as its agent and was an independent contractor with no connection to defendant." Id.

However, even to the extent that Lockwood possessed "essential facts regarding the nature of the transaction," failure to disclose those facts when not asked on the insurance application would not constitute a breach of a common law duty. (See supra, discussion of fraud). There is no allegation here that Lockwood failed to supply correct information to the insurer or failed to make full disclosure of the nature of the risk; rather, what is alleged is that Lockwood failed to notify the insurer of the "true" beneficiary of the policy. Phoenix has not alleged that it made any independent attempt to discover the "true" beneficiary of the Arthur Kramer Insurance Trust, and therefore, cannot now claim breach of fiduciary duty by one who was neither its agent, nor explicitly (rather than "implicitly") misrepresented any fact.

Therefore, Steven Lockwood, Lockwood Pension Services, and Tall Tree Advisors Motions to Dismiss Phoenix's Cross Claims and Third Party Claims for Breach of Fiduciary Duty and Aiding and Abetting a Breach of Fiduciary Duty are GRANTED. In addition,

although leave to replead should be "freely granted"; leave is not required here where any attempt to replead would be futile.

g. Contractual Indemnification

Phoenix' Fifth Third Party Claim alleges that both the IPC and a separate "2007 Broker Agreement" contain indemnification provisions. (Dkt. No. 45 at ¶¶ 94-98.) Lockwood argues that a "claim for indemnification is premature until a judgment have [sic] been entered and both the issue of liability and the amount of liability has been established." (Dkt. No. 68 at 48.) Phoenix argues that it "may assert cross-claims and third-party claims that are contingent on its liability on the main claims and that are factually and legally intertwined with the main claims." (Dkt. No. 131 at 58.) "Doing so serves the interests of judicial economy, and avoids the potential inconsistent fact-finding and adjudication of issues that may otherwise occur if the issues raised by this lawsuit are litigated in multiple actions before a different court." (Id.) The Court agrees that Phoenix's claims for indemnification should be preserved until such time as they become ripe for adjudication, or moot. Consequently, Steven Lockwood's Motion to Dismiss Phoenix's claim for contractual indemnification is DENIED at this time.

> h.   Lockwood Pension Services, Life Product Clearing,
>      Jonathan Berck, Steven Lockwood, and TD Bank's
>      Motions to Dismiss Lincoln Life's Cross Claims and
>      Third Party Claims

Lincoln Life and Annuity has asserted the following claims:

Count 1,[13] Breach of Contract against Steven Lockwood, Count 2,

Breach of Contract Against Joel Miller, Count 3, Crossclaims

Against Steven Lockwood and Lockwood Pension Services for Fraud,

Count 4, Crossclaims Against Miller, Lockwood, and Lockwood

Pension Services for fraud associated with the Leon Lobel policy,

Count 5, Fraudulent Concealment Against Steven Lockwood and

Lockwood Pension Services, Count 6, Fradulent Concealment Against

Miller, Lockwood, and Lockwood Pension Services associated with

the Leon Lobel policy, Count 7, Aiding and Abetting Fraud[14]

Against TD Bank, Jonathan Berck, and Life Product Clearing, Count

8, Aiding and Abetting Fraud Against TD Bank, Berck, and Life

Product associated with the Leon Lobel policies, Count 9, Common

---

[13]   The Court notes that the courtesy copies of the Third-Party
Complaint served on Chambers was clearly an early draft, and was
missing numerous counts contained in the electronically filed
version and had numerous mislabeled counts.   The Court has
discarded those copies and is working from the electronically
filed copy, and encourages opposing counsel to do the same to
avoid additional confusion.

[14] This Count asserts that it is a "counterclaim" however, no
facts are alleged against Plaintiff, and it is properly construed
as asserting only third-party claims and cross-claims.   (Dkt. No.
140 at ¶ 112-113 (heading).)

Law Conspiracy against Steven Lockwood, Lockwood Pension

Services, TD Bank, Jonathan Berk and Life Product Clearing, Count

10, Common Law Conspiracy[15] Against Joel Miller, Steven Lockwood,

Lockwood Pension Services, TD Bank, Jonathan Berk, and Life

Product associated with the Leon Lobel policies, Count 11,

Negligent Misrepresentation Against Steven Lockwood, Count 12,

Negligent Misrepresentation Against Joel Miller, Count 13,

Declaratory Judgment Against Joel Miller, Steven Lockwood,

Lockwood Pension Services, TD Bank, Jonathan Berk and Life

Product, and Count 14, Equitable Accounting Against Miller and

Steven Lockwood.   (Dkt. No. 140.)


### 1.  Jurisdiction Over the Leon Lobel Claims

Lincoln Life and Annuity seeks to add to this suit a

separate suit relating to life insurance policies on the life of

Leon Lobel.  Lincoln asserts that jurisdiction over the Lobel

case is proper under 28 U.S.C. § 1367, which states:

Except as provided in subsections (b) and (c) or as
expressly provided otherwise by Federal statute, in
any civil action of which the district courts have
original jurisdiction, the district courts shall have
supplemental jurisdiction over all other claims that

---

[15] Count 10 purports to assert a "counterclaim" but does not even
allege facts involving Arthur Kramer.  (Dkt. No. 140 at ¶¶ 135-
130 (heading).)

are <u>so related to claims in the action within such</u> <u>original jurisdiction that they form part of the same</u> <u>case or controversy under Article III</u> of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties such facts are not properly before this Court.

(Emphasis added)(Dkt. No. 140 at ¶ 8.)   See also World Trade Center Properties, L.L.C. v. Hartford Fire Ins. Co., 345 F.3d 154 (2d Cir. 2003) (holding that where complete diversity existed between plaintiff insurer and all of the defendants in declaratory judgment action regarding insurance coverage for destruction of office towers during the September 11th terrorist attack, supplemental jurisdiction provided jurisdiction over insured's counterclaims against other insurers even though some of those insurers possibly were non-diverse).   The determination of whether supplemental jurisdiction is proper in a diversity case such as this one, is generally in the discretion of the Court.   Valencia ex rel. Franco v. Lee, 316 F.3d 299, 305 (2d Cir. 2003).

However, the Court's discretion is not even triggered in this case because Lincoln has not alleged sufficiently that the Lobel claims form part of the same case or controversy under Article III of the Constitution as the Kramer claims.   The Circuit has not definitively ruled on the reach of the case or

controversy requirement of 28 U.S.C. § 1367, whether it is the same as the Gibbs test of "a common nucleus of operative facts," or, as Judge Easterbrook stated, requires only "[a] loose factual connection between the claims." Jones v. Ford Motor Credit Co., 358 F.3d 205, 213 (2d Cir. 2004) (citing United Mine Workers v. Gibbs, 383 U.S. 715 (1966)). Nevertheless, the Court need not resolve this question because Lincoln's claims against Lobel would fail under either standard. Lincoln's claims against Lobel form an entirely separate case, overlapping only to the extent that Jonathan Berck eventually became the trustee for both decedents' insurance trusts and that Life Product Clearing stood to profit from both trusts. However, the original action before this Court is the case brought by Alice Kramer seeking declaratory judgment that she is entitled to the proceeds of her deceased husband's insurance trusts. The resolution of that case in no way turns on whether the payment Lincoln has already made on the Lobel policy was proper. The subject of the current litigation is the proper recipient of the Kramer death benefits. The fact that one or more Defendants in the main action may have been involved in other policies Lincoln issued does not extend the subject of the litigation to include all potential SOLI policies. Therefore, because the claims relating to Leon Lobel do not form the same case or controversy under Article III of the

Constitution as the original action, the Court does not have supplemental jurisdiction over those claims.[16]

Accordingly, Count 2, Count 4, Count 6, Count 8, Count 10, Count 12, and Counts 13 and 14 (to the extent they name Joel Miller) of Lincoln Life and Annuity's Third-party Complaint with Counterclaims and Cross claims, filed on December 23, 2008 (Dkt. No. 140) are DISMISSED. All causes of action against Joel Miller are DISMISSED and he is to be terminated as a Defendant in this case.

2. Choice of Law

Lincoln Life and Annuity argues that its claims are governed by Connecticut Law. (Dkt. No. 167 at 2-3.) Lincoln correctly asserts that a federal court sitting in diversity jurisdiction applies the choice of law rules of the forum state, and that in

_____

[16] To the extent that these facts, pertaining to the Lobel case, are related to any case, they would be related to Life Product Clearing, LLC v. Angel, 07 Civ. 475; however, that case was terminated by stipulation on June 18, 2008. The Court agrees with Miller that it is indeed "improper for Lincoln to now attempt to back-door Miller into a case Judge Chin already determined to be factually unrelated to the transaction in which Miller allegedly participated." (Dkt. No. 159 at 13-14.) If Judge Chin thought that the Lobel claims and the Kramer claims formed the same case he may very well have accepted this case as related. That he did not is only further evidence that these two cases are not "so related" as to permit the Court to exercise supplemental jurisdiction.

New York, courts apply the "center of gravity" or "grouping of contacts" inquiry considering factors such as the places of contracting, negotiation and performance, the location of the subject matter, and the domicile or place of business of the contracting parties. See Zurich Ins. Co. v. Shearson Lehman Hutton, Inc., 84 N.Y.2d 309 (N.Y. 1994) (citing Restatement (Second) Conflict of Laws § 188(1)(1971)); see also Tri-State Employment Servs., Inc. v. Mountbatten Sur. Co., 295 F.3d 256, 260-61 (2d Cir. 2002); Lazard Freres & Co. v. Protective Life Ins. Co., 108 F.3d 1531, 1539 (2d Cir. 1997). However, contrary to Lincoln's assertion, it is New York, rather than Connecticut that has the most significant contacts to this action.

Lincoln concedes that they are a New York corporation and that the policy at issue was delivered in New York. (Dkt. No. 167 at 3.) However, they argue, inter alia, that the "the subject matter of the contract is Connecticut inasmuch as Mr. Kramer was a Connecticut resident" and that the policy was "underwritten, issued and administered by Lincoln's Hartford office." (Id.) However, such arguments are unavailing where the Broker for Lincoln negotiating the policy was based at all relevant times in New York and the beneficiary of the policy was a New York trust. The trust documents themselves select New York law. Indeed, it appears that Lincoln's attempts to apply

85

Connecticut, first by filing a parallel action in Connecticut and then by raising the choice of law issue in this Court, are merely attempts to avoid the application of the two year incontestability rule, addressed supra. Consequently, because the more significant contacts to this action are in New York, the Court shall apply New York Law.

### 3. Application of Incontestability Rules

Because New York Law applies to this action, New York's incontestability provisions govern. As discussed supra, n. 7, the policy issued by Lincoln Life and Annuity, states in relevant part: "[e]xcept for nonpayment of monthly deductions, this policy will be incontestable after it has been in force during the Insured's lifetime for two years from its Date of Issue. This means that Lincoln Life will not use any misstatement in the application to challenge a claim or avoid liability after that time." (Dkt. 128, Carreira Aff. Ex. 1 at 20.) As the Court previously held with respect to the Phoenix Policies, the New York Court of Appeals has made clear that the Insurance Law does not permit a policy to be voided for any reason, including fraud, unless such an exception was contracted-for by the insurer and insured. As the New York Court of Appeals has held "[a] carrier

86

may, compatibly with the incontestability clause, protect itself by including a provision in its incontestability clause creating an exception for "fraudulent misstatements" . . . a calculation that includes marketing inducements." New England Mut. Life Ins. Co. v. Doe, 93 N.Y.2d 122, 130 (1999). Because, as in that case, Lincoln purposely chose not to include such an exception it cannot now attempt to void the policy, which all parties agree was in force for at least two years during the life of the insured Arthur Kramer.

### 4. Lincoln's Claims Stemming From the Insurance Policy are Dismissed Pursuant to Caruso

The following Counts are properly considered attempts to void the insurance policy for lack of an insurable interest and are properly dismissed pursuant to Caruso: Count 3, Lincoln's Crossclaims Against Steven Lockwood and Lockwood Pension Services for Fraud, Count 5, Fraudulent Concealment Against Steven Lockwood and Lockwood Pension Services, Count 7, Aiding and Abetting Fraud Against TD Bank, Jonathan Berck, and Life Product, Count 9, Common Law Conspiracy against Plaintiff, Steven Lockwood, Lockwood Pension Services, TD Bank, Jonathan Berk and

Life Product Clearing,[17] Count 11, Negligent Misrepresentation
Against Steven Lockwood, and Count 13 Declaratory Judgment
Against Miller, Lockwood, Lockwood Pension Services, TD Bank,
Jonathan Berck and Life Product Clearing[18]. (Dkt. No. 140.)

5. Lincoln's Count One Breach of Contract Against
Steven Lockwood

Count One of Lincoln Life and Annuity's Complaint with cross
claims and Third Party Claims asserts a Breach of Contract action
against Steven Lockwood for breaches of the Lockwood Broker
Agreement. (Dkt. No. 140, ¶¶ 22, 83-86.) The breach of contract
claims are grounded in a separate agreement, the Broker

---

[17]Count 9 is dismissed as to all Defendants on the additional
ground that it is not an independent cause of action under New
York law.

[18] In Count 13, Lincoln seeks Declaratory Judgment that "[t]he
Kramer Policy lacks an insurable interest and is the product of a
STOLI arrangement." (Dkt. No. 140 at ¶ 155.) As stated, supra,
the Declaratory Judgment Act empowers a federal court, "[i]n a
case of actual controversy within its jurisdiction, ... [to]
declare the rights and other legal relations of any interested
party seeking such declaration, whether or not further relief is
or could be sought." 28 U.S.C. § 2201. In denying Lincoln's
Motion to Dismiss the Complaint for lack of standing, the Court
found that this action is appropriate for resolution by
Declaratory Judgment. Nevertheless, a Declaratory Judgment that
the Kramer Policy lacks an insurable interest and is the product
of a STOLI scheme would only provide an end-run around the
incontestability rules properly applied to the Kramer policies
issued by Lincoln Life and Annuity.

Agreement, and not the insurance policy at issue, and as such are not barred by the New York incontestability rules.

As set forth, supra, to establish a claim of breach of contract, a plaintiff must prove the following elements: (1) the existence of a contract; (2) plaintiff's performance of the contract; (3) defendant's breach of the contract; and (4) damages suffered as a result of the breach. See Terwilliger v. Terwilliger, 206 F.3d 240, 245-46 (2d Cir. 2000) (citation and quotation marks omitted).

Pursuant to the Broker Agreement, Lincoln alleges that Lockwood agreed, inter alia, "to comply with all applicable state and federal laws...". (Id. at ¶ 22.) Lincoln alleges that Lockwood breached that agreement when, among other things, he certified that Kramer did not intend to use the Kramer Policy for any type of life settlement or for any other secondary market, and submitted an application for the Kramer Policy that Lockwood knew lacked an insurable interest. (Id. at ¶ 84.) Lockwood argues that the breach of contract claims should be dismissed because the complaint "contains no claim that any alleged misrepresentations by Kramer, Lobel or Lockwood impacted any underwriting of risk." (Dkt. No. 155 at 14-15.) Indeed, supra, the Court has noted that damages as alleged by Phoenix,

potentially having to pay large death benefits, could not support a fraud claim against the Plaintiff because those "damages" were an inherent part of the insurance agreement Phoenix entered. Lincoln has alleged only that it "has sustained damages and may sustain damages in the future." (Dkt. No. 140, at ¶ 85.)

However, unlike Phoenix, Lincoln apparently endeavored to inquire of Lockwood whether the policy would be used for any life settlement or for any other secondary market. (Id. ¶ 84.) Lincoln has alleged that he falsely certified that the Kramer Policy would not be used for those purposes. (Id.) Accordingly, at this motion to dismiss stage, the Court finds that Lincoln has alleged sufficiently the elements of a breach of contract claim against Lockwood. Accordingly, Steven Lockwood's Motion to Dismiss Lincoln Life and Annuity's Breach of Contract Claim is DENIED.

6.    Lincoln's Count 14 Seeking an Equitable Accounting
Against Steven Lockwood

Count 14 alleges a claim for an Equitable Accounting in
which Lincoln states that "Lincoln has reason to believe that it
may have been damaged by additional instances of unlawful
activity by defendants similar to the Kramer and Lobel
situations."  In order to sustain an equitable action for
accounting under New York law, a plaintiff must show either a
fiduciary or confidential relationship with the defendant.
Leveraged Leasing Admin. Corp. v. PacifiCorp Capital, Inc., 87
F.3d 44, 49 (2d Cir. 1996) (citing Palazzo v. Palazzo, N.Y.S.2d
381, 384 (N.Y. App.Div. 1st Dep't 1986)).  The purpose of an
equitable accounting is to require a fiduciary to show what he
did with the principal's property.  Wilde v. Wilde, 576 F.Supp.2d
595, 607 (S.D.N.Y 2008).  In addition to returning the property,
a fiduciary must return any profits generated by the use of the
property. Id. (citing Vinlis Constr. Co. v. Roreck, 291 N.Y.S.2d
924 (N.Y. App.Div. 2d Dep't 1968) (requiring "disgorgement of any
benefits or profits received as a result of a fiduciary's breach
of the duty of loyalty"), modified on other grounds, 27 N.Y.2d
687, 689 (N.Y. 1970)).  Upon a showing that plaintiff entrusted
property to a fiduciary, the fiduciary is bound to reveal his
dealings with that property.  Bouley v. Bouley, 797 N.Y.S.2d 221

(4th Dep't 2005).

As noted above, in order to establish that a broker was acting as the insurer's agent, there must be evidence of some action on the insurer's part, or facts from which a general authority to represent the insurer may be inferred. <u>Precision Auto Accessories, Inc. v. Utica First Ins. Co.</u>, 859 N.Y.S.2d 799, 803 (N.Y.App.Div. 4th Dept. 2008). Otherwise, a broker is typically not the fiduciary of the insurer but rather acts as an agent of the insured. Lincoln has alleged no fiduciary relationship nor facts from which it could be inferred that Lockwood had a general authority to represent Lincoln.

However, even assuming that a fiduciary duty existed, there is no allegation that Lincoln entrusted property to Lockwood, other than policyholder files, records and premium accounts. To the extent that this claim is predicated on the notion that Lockwood improperly benefitted from his access to Lincoln's records, such a cause of action would be duplicative of the contract claim Lincoln has asserted against Lockwood. Consequently, Lockwood's Motion to Dismiss Lincoln's Thirteenth Cross Claim for an Equitable Accounting is GRANTED. In addition, although leave to replead should be "freely granted"; leave is not required here where any attempt to replead would be futile.

F.   Lifemark's Unopposed Motion to Intervene.

Lifemark N.A.'s unopposed motion to intervene is HEREBY
GRANTED.  As the owner of one of the Phoenix policies at issue in
this litigation, Lifemark is a proper party before this Court and
may intervene as a matter of right pursuant to Fed. R. Civ. P.
24(a)(2) as a party claiming an interest in the property (here,
death benefits) that are the subject of this litigation.

VI. INTERLOCUTORY APPEAL

A federal court is necessarily limited in its ability to
speak to questions of state law with any certitude.  Falise v.
American Tobacco Co., 94 F.Supp.2d 316, 356 (E.D.N.Y. 2000);
Hamilton v. Accu-Tek, 62 F.Supp.2d 802, 847 (E.D.N.Y. 1999).  Of
course, federal courts must be more conservative in resolving
novel issues of state law than the highest state court, since, of
course, they are limited to predicting the proper outcome using
earlier precedents.  Id.   However, neither the New York Court of
Appeals rule implementing the relevant state constitutional
provision nor the federal provisions providing for certification
to New York's highest court allows for a decision to certify by
the district courts in the Second Circuit.  See 22 NYCRR §
500.17; Second Circuit Local Rule 0.27.

93

Were this Court able to certify the interpretation of the New York Insurance Law § 3205 to the New York Court of Appeals, it would do so. See e.g., People ex rel. Maula v. Freckleton, 782 F.Supp. 889, 897 (S.D.N.Y. 1992). The meaning of this provision is being litigated in multiple federal courts and courts of other states, and, as evidenced by this opinion, will necessarily ensnare many parties and force the litigation of numerous extraneous issues. Accordingly, a final, dispositive interpretation of the provision, in particular the relationship between New York Insurance Law § 3205(b)(1) and (b)(2), with respect to those who take out an insurance policy on their own lives and then transfer or assign the beneficial interest in that policy to a stranger (via an insurance trust, an assignment to a person with an insurable interest, or directly) would control the proper determination of this matter in all of these cases.

Although this Court cannot certify a question, 28 U.S.C.A. § 1292, provides for interlocutory appeals.[19] In order not to

[19] "When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the

over-burden the Circuit, interlocutory appeals should not be certified in all circumstances where the statutory prerequisites are satisfied. Zakrzewska v. The New School, 598 F.Supp.2d 426, 437 (S.D.N.Y. 2009). Nevertheless, an exception should be made "for consideration [of a] case ... of unusual significance, one in which a ruling is of practical importance going well beyond run-of-the-mill concerns of parties before the Court." Id.

This Court is aware of several other cases currently being litigated that involve similar issues: The Lincoln Life and Annuity Co. of New York v. Lockwood Pension Services, et al., cv-08-5019142-S (Conn. Super. Ct. Hartford Dist.); The Lincoln Life and Annuity Co. of New York v. Bernstein, No. 08-2641, 2009 WL 1912468 (N.Y. Sup Cit. June 29, 2009); The Lincoln Life and Annuity Co. of New York v. Jack Teren and Jonathan S. Berck, as Trustee of the Jack Teren Insurance Trust Dated March 20, 2006, Case No. 00083905 (Cal. Super Ct.); The 2004 Stuart Moldaw Trust v. XE L.I.F.E., LLC, et al., 2009 WL 2222935 (S.D.N.Y. July 27, 2009). And, there will almost certainly be more similar cases on the heels of these. Numerous claims in this suit, including but not limited to the initial Declaratory Judgment action by

order: Provided, however, that application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order." 28 U.S.C.A. § 1292.

Plaintiff, turn on the interpretation of this state law provision.  But an interlocutory appeal is clearly appropriate here, where the Court's determination will have a significant impact on estate planning decisions made by New Yorkers.

Because the Court finds that there is indeed substantial ground for difference of opinion on the application of New York Insurance Law to SOLI arrangements of this type, and that an immediate appeal from this Order would materially advance the ultimate termination of this litigation, the Court further certifies this ORDER for an interlocutory appeal to the Second Circuit.  28 U.S.C. § 1292.  And, in order to promote the most efficient use of resources, the Court also stays this action pending the ten day period for taking an appeal, the Circuit's determination whether certification is appropriate, and if it is further certified to the New York Court of Appeals, pending that Court's determination.

V. CONCLUSION:

ALICE KRAMER, as Personal Representative of the Estate of Arthur Kramer, sued for Declaratory Judgment against LOCKWOOD PENSION SERVICES, INC., TALL TREE ADVISORS, INC., LIFE PRODUCT CLEARING, LLC, TRANSAMERICA OCCIDENTAL LIFE INSURANCE CO.,

LINCOLN LIFE & ANNUITY CO. OF NEW YORK and JONATHAN S. BERCK. (Dkt. No. 31.) For the reasons stated herein:

1.      Defendant Lincoln Life & Annuity Co. Of New York's Motion to Dismiss Plaintiff's Amended Complaint for lack of standing is DENIED.

2.      Tall Tree Advisors, Inc. and Lockwood Pension Services, Inc.'s Motion to Dismiss Plaintiff's Amended Complaint is GRANTED.  Therefore, Tall Tree and Lockwood Pension Services are to be terminated as Defendants in the Amended Complaint.  All other Defendants remain as parties to the Declaratory Judgment action.

PHOENIX LIFE INSURANCE CO. counterclaimed against ALICE KRAMER, as Personal Representative of the Estate of Arthur Kramer, for Fraud, Aiding and/or Abetting Breach of Fiduciary Duty, and Unjust Enrichment.  (Dkt. No. 43.) For the reasons stated herein:

3.      Plaintiff's Motion to Dismiss Defendant Phoenix's counterclaims of Fraud, Aiding and Abetting a Breach of Fiduciary Duty, and Unjust Enrichment are GRANTED. Consequently, Phoenix has no further claims pending against Plaintiff, and Plaintiff should be terminated as a Counterclaim Defendant in the complaint filed by

97

Phoenix.

PHOENIX LIFE INSURANCE CO. cross-claimed against LOCKWOOD
PENSION SERVICES, INC. and TALL TREE ADVISORS, INC., for Aiding
and/or Abetting Fraud, Aiding and/or Abetting Breach of Fiduciary
Duty, and civil RICO. (Dkt. No. 43.) For the reasons stated
herein:

4.   Lockwood Pension Services Inc. and Tall Tree Advisors
     Motions to Dismiss Phoenix's Claims of Aiding and/or
     Abetting Fraud, Aiding and/or Abetting Breach of
     Fiduciary Duty, Civil RICO are GRANTED. Consequently,
     Phoenix has no further claims pending against Lockwood
     Pension Services or Tall Tree Advisors and they should
     be terminated as Cross-claim Defendants in the
     complaint filed by Phoenix.

PHOENIX LIFE INSURANCE third-party claimed against STEVEN
LOCKWOOD, for Fraud, Breach of Fiduciary Duty, Breach of
Contract, Negligence, Contractual Indemnification, Unjust
Enrichment, and Civil RICO. (Dkt. No. 43.) For the reasons
stated herein:

5.   Steven Lockwood's Motions to Dismiss Phoenix's Cross-
     Claims for Breach of Contract and Contractual
     Indemnification are DENIED.

98

6. Steven Lockwood's Motions to Dismiss Phoenix's Claims of Fraud, Breach of Fiduciary Duty, Negligence, Unjust Enrichment, and Civil RICO are GRANTED.

LIFE PRODUCT CLEARING, LLC counterclaimed against ALICE KRAMER, as Personal Representative of the Estate of Arthur Kramer for Declaratory Judgment, Tortious Interference with Contractual Relations, and in the hypothetical for Misrepresentation/Breach of Warranty. (Dkt. No. 59.) For the reasons stated herein:

7. Plaintiff's Motion to Dismiss Life Product's Counterclaims against her for Tortious Interference with Contractual Relations is GRANTED. Therefore, Life Product's counterclaims for Declaratory Judgment and in the hypothetical for Misrepresentation/Breach of Warranty remain.

LIFE PRODUCT CLEARING, LLC cross-claimed against LINCOLN LIFE & ANNUITY CO. for Breach of Contract, three Declaratory Judgment claims, and N.Y. Gen. Bus. Law § 349. (Dkt. No. 59.)

8. Lincoln Life and Annuity's Motion to Dismiss the Cross-claim of Life Product Clearing based on abstention doctrines and forum non conveniens is DENIED.

9. Lincoln Life and Annuity's Motion to Dismiss the N.Y. Gen. Bus. Law § 349 Cross-claim of Life Product

Clearing is GRANTED. Therefore, Life Product

Clearing's cross-claims against Lincoln Life for Breach

of Contract and Declaratory Judgment remain.

LIFE PRODUCT CLEARING, LLC third-party claimed against LIZA KRAMER and ANDREW B. KRAMER, for Tortious Interference with Contractual Relations and against LIZA KRAMER for Breach of Express Warranty and Breach of Contract. (Dkt. No. 60.) For the reasons stated herein:

10. Third Party Defendants Liza and Andrew Kramer's Motions to Dismiss Life Product's Third Party claims against them for Tortious Interference with Contractual Relations are GRANTED without leave to replead to the extent the claims were predicated on their involvement with the Estate's determination to file this lawsuit. Further, Liza Kramer's Motion to Dismiss Life Product's Tortious Interference claims are GRANTED on the additional ground that she failed to provide timely the death certificate of Arthur Kramer. Therefore, the Breach of Express Warranty and Breach of Contract claims against Liza Kramer remain.

JONATHAN S. BERCK, counterclaimed against Plaintiff ALICE KRAMER, as Personal Representative of the Estate of Arthur

Kramer, for Declaratory Judgment, Tortious Interference with Contractual Relations, and in the hypothetical, for Misrepresentation/Breach of Warranty. (Dkt. No. 90) For the reasons stated herein:

11. Plaintiff's Motion to Dismiss Defendant Jonathan Berck's Counterclaims against her for Tortious Interference with Contractual Relations is GRANTED. Therefore, Berck's counterclaims for Declaratory Judgment and in the hypothetical for Misrepresentation/Breach of Warranty remain.

JONATHAN S. BERCK, cross-claimed against LINCOLN LIFE & ANNUITY CO., for Breach of Contract, three Declaratory Judgment claims, and N.Y. Gen. Bus. Law § 349. (Dkt. No. 90) For the reasons stated herein:

12. Lincoln Life and Annuity's Motion to Dismiss the Cross-claims of Life Product Clearing based on abstention doctrines and forum non conveniens are DENIED.

13. Lincoln Life and Annuity's Motion to Dismiss Berck's N.Y. Gen. Bus. Law § 349 Cross-claim is GRANTED. Therefore, Berck's cross-claims against Lincoln Life for Breach of Contract and Declaratory Judgment remain.

JONATHAN S. BERCK, third-party claimed against LIZA KRAMER

and ANDREW B. KRAMER, for Tortious Interference with Contractual Relations. (Dkt. No. 91.) For the reasons stated herein:

14. Third Party Defendants Liza and Andrew Kramer's Motions to Dismiss Jonathan Berck's Third Party claims against them for Tortious Interference with Contractual Relations are GRANTED. Therefore, Berck has no remaining claims against Liza and Andrew Kramer and his Third-Party Complaint is DISMISSED.

LINCOLN LIFE & ANNUITY COMPANY OF NEW YORK, counterclaimed against Plaintiff ALICE KRAMER, as Personal Representative of the Estate of Arthur Kramer, for Common Law Conspiracy (Count 9) and Declaratory Judgment (Count 13). (Dkt. No. 140.) For the reasons stated herein:

15. Counts 9 and 13 are DISMISSED because the two year contestability period has elapsed. Plaintiff is to be terminated as a Counterclaim Defendant in the suit filed by Lincoln Life and Annuity.

LINCOLN LIFE & ANNUITY COMPANY OF NEW YORK, cross-claimed against STEVEN LOCKWOOD, LOCKWOOD PENSION SERVICES, JONATHAN S. BERCK, individually and as Trustee for the Leon Lobel Insurance Trust dated November 15, 2005, and LIFE PRODUCT CLEARING LLC., for Count 1, Breach of Contract against Steven Lockwood, Count 3,

Fraud against Steven Lockwood and Lockwood Pension Services, Count 4, Fraud against Lockwood, and Lockwood Pension Services associated with the Leon Lobel policy, Count 5, Fraudulent Concealment Against Steven Lockwood and Lockwood Pension Services, Count 6, Fraudulent Concealment Against Lockwood, and Lockwood Pension Services associated with the Leon Lobel policy, Count 7, Aiding and Abetting Fraud against Jonathan Berck, and Life Product, Count 8, Aiding and Abetting Fraud against Berck, and Life Product associated with the Leon Lobel policies, Count 9, Common Law Conspiracy against Steven Lockwood, Lockwood Pension Services, Jonathan Berk and Life Product Clearing, Count 10, Common Law Conspiracy Against Steven Lockwood, Lockwood Pension Services, Jonathan Berk, and Life Product associated with the Leon Lobel policies, Count 11, Negligent Misrepresentation against Steven Lockwood, Count 13, Declaratory Judgment against Steven Lockwood, Lockwood Pension Services, Jonathan Berk and Life Product, and Count 14, Equitable Accounting against and Steven Lockwood. (Dkt. No. 140.) For the reasons stated herein:

16. Counts 4, 6, 8, and 10, are DISMISSED because this Court declines to exercise jurisdiction over claims relating to the Leon Lobel insurance policies, as is Count 14 to the extent it names Joel Miller.

103

17.   Counts 3, 5, 7, 9, 11, and 13 are dismissed as to all
      Cross-claim Defendants because the two year
      contestability period has run.

18.   Steven Lockwood's Motion to Dismiss, Count 14 seeking
      an Equitable Accounting is GRANTED.

19.   Steven Lockwood's Motion to Dismiss Lincoln Life and
      Annuity's Count 1, for Breach of Contract is DENIED.
      Therefore all cross-claims asserted by Lincoln Life and
      Annuity are dismissed except Count 1, and LOCKWOOD
      PENSION SERVICES and JONATHAN S. BERCK are to be
      terminated as Cross-claim Defendants in the suit filed
      by Lincoln Life and Annuity.

LINCOLN LIFE & ANNUITY COMPANY OF NEW YORK, third-party claimed
against JOEL B. MILLER and TD BANK N.A., for Count 2, Breach of
Contract Against Joel Miller, Count 4, Crossclaims Against Miller
for fraud associated with the Leon Lobel policy, Count 6,
Fraudulent Concealment Against Miller, Count 7, Aiding and
Abetting Fraud Against TD Bank, Count 8, Aiding and Abetting
Fraud Against TD Bank, Count 9, Common Law Conspiracy against TD
Bank, Count 10, Common Law Conspiracy Against Joel Miller and TD
Bank, Count 12, Negligent Misrepresentation Against Joel Miller,
Count 13, Declaratory Judgment Against Joel Miller and TD Bank,

and Count 14, Equitable Accounting Against Miller. (Dkt. No. 140.) For the reasons stated herein:

20. The Motions of Joel Miller and TD Bank to DISMISS Counts 2, 4, 6, 8, 10, 12 are GRANTED because this Court declines to exercise jurisdiction over claims relating to the Leon Lobel insurance policies.

21. Joel Miller's Motion to Dismiss Count 14 is GRANTED.

22. Counts 7, 9, and 13 against TD BANK are dismissed because the two year contestability period has run. Therefore, the third-party suit against Joel Miller and TD Bank is DISMISSED in its entirety and they are to be terminated as Defendants.

Finally, for the reasons stated herein: Lifemark's Motion to Intervene is GRANTED.

The Clerk of Court is directed to terminate all pending motions in this case.

Because the Court finds that there is indeed substantial ground for difference of opinion on the application of New York Insurance Law to SOLI arrangements, and that an immediate appeal from this Order would materially advance the ultimate termination of this litigation, the Court further certifies this order for an interlocutory appeal to the Second Circuit. 28 U.S.C. § 1292.

And, in order to promote the most efficient use of resources, the Court also stays this action pending the ten-day period for taking an appeal, and if taken, while the Circuit determines whether certification is appropriate, and if it is further certified to the New York Court of Appeals, pending that Court's determination.

For ease of identification this case shall be re-captioned "In re Arthur Kramer Insurance Trust Litigation."

Parties are directed to review the Court's Individual Practice Rules and note that under no circumstances are any letters to the Court to exceed two pages. Any further motion papers or letters by any party shall not exceed the page limits set by the Court in the Individual Practice Rules; requests for enlargement will not be entertained or granted. The Court will not read beyond the specified length. Furthermore, for ease of reference, opposing parties submissions shall be referred to by the number on the docket rather than the name of the submission. Parties shall refer to one another by full names and not acronyms.

Notwithstanding the stay discussed above, LIFEMARK N.A. SHALL DOCKET its proposed Intervenor-Third Party Complaint immediately. (Dkt. No. 110-2.) However, Count 2 is DISMISSED

consistent with this Opinion.

After the stay is lifted, Parties who have not yet Answered will be Ordered to do so, and Defendants to the Intervenor/Third-party Complaint shall be afforded the opportunity Move or Answer, consistent with this OPINION.

SO ORDERED.

Dated:    New York, New York

September 1, 2009

_Deborah A. Batts_
Deborah A. Batts
United States District Judge